

**Office of the Attorney General**
**Douglas B. Moylan**
Attorney General of Guam
**Civil Division**
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3324 ● (671) 472-2493 (Fax)
www.guamattorneygeneral.com ● law@mail.justice.gov.gu

Attorneys for the Government of Guam

FILED
DISTRICT COURT OF GUAM
MAY 0 8 2003
MARY L. M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT

# TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CIVIL CASE NO. 02-00022 |
| ) | |
| Plaintiff, ) | MOTION FOR DECLARATORY RELIEF |
| ) | |
| vs. ) | |
| ) | |
| GOVERNMENT OF GUAM, ) | |
| ) | |
| Defendant. ) | |

## MOTION

The Attorney General of Guam respectfully moves this Court for an order or decree determining that by signing the proposed Consent Decree in the above-captioned case, the Attorney General will not be violating 5 G.C.A. § 22401, which prohibits officers and employees of the government of Guam from making illegal expenditures of government funds. This motion is based

Page 1
Motion for Declaratory Relief
District Court Civil Case No. 02-00022

F:\Civil Litigation\eheisel\02F0112W.P05

upon the memorandum of points and authorities below and the record on file herein.

Dated May 8, 2003.

**OFFICE OF THE ATTORNEY GENERAL**

BY: _____
ERIC A. HEISEL
Assistant Attorney General
Civil Division

## MEMORANDUM OF POINTS AND AUTHORITIES

### FACTS

On August 7, 2002, plaintiff filed its complaint in the above-captioned case, seeking an injunction requiring the government of Guam to comply with the Clean Water Act and to pay civil penalties for violating the Act. In its complaint, plaintiff has alleged that untreated leachate from the Ordot Landfill has been discharged into the Lonfit River. The Ordot Landfill is operated by the Department of Public Works, Government of Guam.

On or about September 20, 2002, the government of Guam entered into a professional services agreement with the Law Offices of Mair Mair Spade and Thompson, whereby the Mair firm agreed to provide legal services to the government of Guam in connection with the above-captioned case. In February 2003, the Office of the Attorney General of Guam substituted as counsel for the government of Guam in this case, in place of the Mair firm.

Over the past several months, the parties have been engaged in intensive settlement negotiations in an attempt to reach a resolution of the case by means of a mutually satisfactory Consent Decree. The parties have reached an agreement in principle regarding the material provisions in the proposed Consent Decree. However, in settlement negotiations conducted on April 1, 2003, a concern was raised concerning the Attorney General's ability to sign the Consent Decree. The concern was that, by signing the Consent Decree, the Attorney General might be in violation of 5 G.C.A. § 22401(a)(2) or (a)(3). The relevant subsections of this statute read as follows:

> § 22401. **Illegal Expenditures.** (a) No officer or employee of the government of Guam, including the Governor of Guam, shall:
>
> . . . .
>
> (2) Commence, continue, or proceed with any operational activity, construction, improvement, contract, or obligation without an appropriation or fund for the payment thereof; or after any such appropriation or fund is exhausted.
>
> (3) Involve the government of Guam in any contract or other obligation, for the payment of money for any purpose, in advance of the appropriation made for such purpose.

If the proposed Consent Decree is signed by the parties and by the Court, the government of Guam will be obligated to undertake actions which will require the expenditure of substantial sums of money. Although some funds have been identified which are available now and which can be used to fulfill some of the obligations under the Consent Decree, most of the funds that would be required are as yet unavailable. The Guam Legislature has not yet appropriated the funds that would enable the government to fulfill all of its obligations under the Consent Decree, nor have other funds, such as grant money, been identified which would be sufficient to fully comply with the Consent Decree.

If the Attorney General's signature on the Consent Decree would require the government of Guam to proceed with an "operational activity, construction, improvement, contract or obligation," or if it would involve the government of Guam in a contract or other obligation for the payment of money, an argument could be made that the Attorney General is violating 5 G.C.A. § 22401(a)(2) or (a)(3) if, at the time of his signature, there is no appropriation or funding source identified to pay for the government's obligations under the Consent Decree.

At the time that the concern was addressed on April 1, it was the Attorney General's belief that signing the Consent Decree could result in a violation of 5 G.C.A. § 22401. However, recently the Attorney General's office has reviewed the issue further, and now believes that by signing the Consent Decree, the Attorney General may not be violating 5 G.C.A. § 22401.

# DISCUSSION

### A. A consent decree is not binding until the Court has signed it.

A consent decree is a contract that has been negotiated by the parties. *Brown v. Neeb*, 644 F.2d 551, 557 (6th Cir. 1981). If this is the case, the Attorney General's signature may be required on the Consent Decree proposed in this case, pursuant to 5 G.C.A. § 5150. However, a consent decree is not binding on the parties <u>unless and until it is signed by the court</u>.

The Court has authority under its statutory and equitable powers to require the government of Guam to expend funds to comply with the provisions of the Consent Decree. In *United States v. City of Detroit*, 476 F. Supp. 512 (D. C. Mich. 1979), the Environmental Protection Agency of the United States brought a lawsuit against the city of Detroit, asking for sanctions under the federal Water Pollution Control Act. The parties agreed to a consent judgment, which mandated compliance by the city, which included financing for purposes of compliance. The court has available to it a broad range of equitable powers to enforce and effectuate its orders and judgments, *id.* at 520, which can include the expenditure of funds.

The signing of the Consent Decree by the parties, then, does not in and of itself obligate the government to spend money. The government is not obligated to spend money until the Court signs the Consent Decree. The government's obligation to spend money is then enforceable by the Court pursuant to the decree.

### B. The Attorney General has statutory authority to settle lawsuits.

Under the Government Claims Act, subject to the approval of the court in which a case is pending, the Attorney General is authorized to settle a lawsuit at any time before final judgment. 5 G.C.A. § 6210(a). Although the Guam Legislature has granted this authority within the context of the Government Claims Act, arguably the authority would extend to cases that have not been filed under the Government Claims Act.[1] This authority is undermined if the Attorney General is allowed

---

[1] As an example, it would unlikely be disputed that the Attorney General can settle actions for writs of mandamus filed pursuant to 7 G.C.A. § 31202. Petitions for writs of mandamus are not filed pursuant to the Government Claims Act.

1 to settle cases only if funds for the payment of the full amount of the judgment have already been
2 appropriated or identified. It should also be pointed out that if the Attorney General's signature
3 obligates the government of Guam to pay stipulated penalties in the event the time lines in the
4 Consent Decree are not met, it would be impractical to require an appropriation before committing
5 the government to this potential obligation. Accordingly, arguably the Attorney General has
6 authority to settle a case by signing a consent decree when the funding needed to fully comply with
7 the decree has not been appropriated in full.

8 It should also be noted that if the Attorney General is unable to sign a consent decree in this
9 case because all of the funds needed to effectuate the decree are not currently available, the
10 alternative is that the government could be subjected to tens of millions of dollars in fines under the
11 Clean Water Act. Therefore, if the Attorney General's hands are tied and he cannot settle this case,
12 the government of Guam may be liable to pay penalties that far exceed the cost of complying with
13 the terms of the Consent Decree.

14 For the foregoing reasons, the Attorney General respectfully requests the Court to issue an
15 order or decree determining that the Attorney General has authority to sign a consent decree in this
16 case without violating 5 G.C.A. § 22401.

17 Dated May 8, 2003.

OFFICE OF THE ATTORNEY GENERAL

BY: _____
ERIC A. HEISEL
Assistant Attorney General
Civil Division

02F0112W.P05

Page 5
Motion for Declaratory Relief
District Court Civil Case No. 02-00022

F:\Civil Litigation\eheisel\02F0112W.P05