# ORIGINAL

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division
ROBERT D. MULLANEY
Environmental Enforcement Section
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California 94105
Tel: (415) 744-6483
Fax: (415) 744-6476

LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant United States Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez
Hagåtña, Guam 96910
Tel: (671) 472-7332
Fax: (671) 472-7215

Attorneys for United States of America

**FILED**
DISTRICT COURT OF GUAM

DEC - 6 2006

MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL CASE NO. 02-00022 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | UNITED STATES' REQUEST |
| | ) | FOR STATUS CONFERENCE |
| | ) | |
| GOVERNMENT OF GUAM, | ) | |
| Defendant. | ) | |

On August 7, 2002, the United States filed a Complaint in this case under Section 309 of the Clean Water Act (the "Act" or "CWA"), 33 U.S.C. § 1319, alleging that the Government of Guam ("GovGuam") violated the Act by: (1) discharging pollutants from the Ordot Dump to waters of the United States without a National Pollutant Discharge Elimination System ("NPDES") permit; and (2) violating the terms of an Order from the U.S. Environmental Protection Agency ("EPA"), requiring GovGuam to eliminate the unpermitted discharges. The

1  United States sought both injunctive relief and civil penalties to address the violations of the Act.

2  After more than one year of Court-supervised negotiations, the United States and

3  GovGuam reached an agreement on the terms of a Consent Decree. Both parties agreed that the

4  Consent Decree should address not only the closure of the Ordot Dump, but also the opening of a

5  new landfill. Technical staff at Guam Environmental Protection Agency ("Guam EPA") and the

6  Guam Department of Public Works ("DPW") worked collaboratively with EPA to create realistic

7  deadlines in the Decree to achieve both of these goals. The Court entered the Consent Decree on

8  February 11, 2004.

9  The United States, on behalf of EPA, now requests a status conference to advise the

10  Court of GovGuam's very significant violations of the Consent Decree entered by this Court and

11  of the need to ensure GovGuam's compliance with the terms of the Consent Decree. As of

12  December 4, 2006, GovGuam's continued inability to meet the terms of the Decree has resulted

13  in the payment of $73,250 in stipulated penalties, and the accrual of an additional $516,500 in

14  penalties for missed deadlines.

15  **I.**      **BACKGROUND**

16        A.      Clean Water Act

17  The objective of the Clean Water Act is to restore and maintain the chemical, physical,

18  and biological integrity of the Nation's waters. 33 U.S.C. § 1251(a). In order to achieve this

19  objective, CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants into

20  waters of the United States by any persons except as authorized by, and in compliance with,

21  specific sections of the Act. Pursuant to CWA Section 402, 33 U.S.C. § 1342, EPA may issue an

22  NPDES permit to authorize discharges of pollutants into waters of the United States. Such

23  discharges are subject to the conditions and limitations set forth in the NPDES permit.

24  EPA has broad authority under CWA Section 309(a), 33 U.S.C. § 1319(a), to issue

25  compliance orders to persons whenever EPA finds that a person has violated Section 301 of the

26  Act. In addition, Section 309(b) authorizes EPA to commence a civil action for appropriate

27  relief, including a permanent or temporary injunction, against any person who violates CWA

28  Section 301 and for any violation for which EPA is authorized to issue a compliance order.

Pursuant to CWA Section 309(d), 33 U.S.C. § 1319(d), any person who violates CWA Section 301 or an order issued by EPA under Section 309(a) is subject to civil penalties not to exceed $25,000 per day for each violation that occurred on or before January 30, 1997. The maximum civil penalty has been increased to $27,500 for each violation occurring between January 30, 1997, and March 15, 2004, and up to $32,500 per day per violation for violations occurring after March 15, 2004. 40 C.F.R. §§ 19.2, 19.4.

## B. The Ordot Dump

GovGuam owns and operates the Ordot Dump, which is located on high ground north of the Lonfit River.[1]/ Because the Dump is unlined on its bottom and uncapped at its top, it acts like a sponge, retaining rain water and releasing it after it has percolated through the landfill and absorbed contaminants. As a direct result of these conditions, the Ordot Dump has discharged, and continues to discharge, leachate into the Lonfit River along the surface of the ground via two streams, in violation of the Act.

On November 24, 2006, a fire started at the Ordot Dump, and continued to burn until November 27, 2006. In addition, there have been a series of major fires at the Ordot Dump in 1998, 2000, 2002, and 2003. Smoke from Dump fires has repeatedly caused the temporary evacuation of residents in the nearby village of Ordot. Odors and vectors (rats, flies, and mosquitoes) have also been serious and constant problems for nearby residents. Both the residents of Guam and individual agencies of GovGuam have expressed their frustration and lack of ability to get the Ordot Dump closed and a new sanitary landfill opened.

The Ordot Dump serves Guam's civilian population of about 115,000 and currently receives approximately 250 to 300 tons of municipal solid waste per day. It is the only municipal landfill on the Island of Guam and is already filled beyond capacity. The Guam Legislature has attempted to address the landfill issue, including setting deadlines for closure of the Ordot

---

[1]/     The Lonfit River merges with the Sigua River to form the Pago River and then drains into Pago Bay and the Pacific Ocean.

Dump.²/ For years, however, GovGuam was not able to come up with the funding required for closure. Thus, the Dump has remained open, leachate discharges have continued in violation of the Act, and the Dump continues to be a public nuisance.

        C.    EPA's Administrative Actions Involving the Ordot Dump

            1.    EPA's CERCLA Investigation

On June 1, 1982, EPA Region 9 approved a "formal investigation" of the Ordot Dump under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). The Ordot Dump was included on the original National Priorities List. In a 1988 Record of Decision, EPA decided to take no further action under CERCLA to address the Dump. EPA concluded that "applying standard operation practices to control landfill leachate to receiving waters" and "improved leachate control measures consisting of capping and surface water control" could be implemented through enforcement of EPA's 1986 Order under the CWA. (See Section C.2. below.)

            2.    EPA's Clean Water Act Actions

EPA issued administrative Orders under the CWA against GovGuam in both 1986 and 1990. The 1986 EPA Order required GovGuam to submit a detailed compliance plan by May 1, 1986, assess landfill operations by June 15, 1986, assess past discharges by May 1, 1986, and cease the discharges by May 1, 1987. Despite the administrative Order, GovGuam continued to discharge and violated other provisions of the 1986 Order.

---

²/    As the Guam Legislature stated in 1995:

    (1) the Ordot Landfill is a threat to the health and safety of the residents of Guam, and specifically for the residents of Ordot-Chalan Pago, Yona and the villages downriver and downwind;

    (2) solid waste collection and disposal on Guam does not adequately eliminate the threat that improperly disposed solid waste poses to the health, safety, and welfare of Guam residents;

          . . . .

    (4) the Ordot Landfill reached its capacity in the 1990's, and the closure of the dump is necessary in order to eliminate this existing serious environmental hazard.

10 GCA § 51101 (Legislative Findings).

- 4 -

1　　　EPA issued another administrative Order pursuant to the CWA in July 1990, requiring

2　　GovGuam to cover the Ordot Dump to prevent discharges by June 30, 1992, and to submit plans

3　　for capping and for the continued operations for the remaining life of the landfill. The 1990

4　　Order did not explicitly require closure. In February 1991, EPA approved an extension of the

5　　cover deadline to August 15, 1992. That deadline was missed and the capping was never done.

6　　　In April 1997, EPA amended the 1990 Order to require, by July 9, 1997, a schedule for

7　　the design of a cover system to eliminate the untreated leachate discharges. GovGuam submitted

8　　a proposed schedule. In September 1997, EPA rejected the schedule because it lacked funding

9　　commitments to make the plan credible. GovGuam has continued to fail to comply with the

10　　amended 1990 Order.

11　**II.　　THE COMPLAINT AND CONSENT DECREE**

12　　　A.　　Complaint

13　　　On August 7, 2002, the United States filed a Complaint against GovGuam under the Act.

14　　The Complaint alleged that: (1) GovGuam does not have a permit from EPA authorizing the

15　　discharge of any pollutant from the Ordot Dump to waters of the United States; (2) from at least

16　　1988 to the present, GovGuam has routinely discharged untreated leachate from the Ordot Dump

17　　into the Lonfit River and two of its tributaries; (3) leachate is a pollutant under the Act; (4) the

18　　Lonfit River and its tributaries are waters of the United States; and (5) the Ordot Dump and the

19　　earthen channels, gullies, trenches, and ditches that carry leachate to the Lonfit River's tributaries

20　　are point sources under the Act. In sum, the United States alleged that illegal discharges from the

21　　Ordot Dump polluted waters of the United States, in violation of the Act. Accordingly, the

22　　United States sought civil penalties and injunctive relief for violations of the Act.

23　　　B.　　Consent Decree

24　　　The United States had negotiated with GovGuam for over a year before filing the

25　　Complaint in this case. After the Complaint was filed, the parties participated in a number of

26　　Court-supervised negotiations beginning in November 2002, and were able to reach agreement

27　　on the terms of the Consent Decree that the United States lodged with the Court on December 3,

28　　2003.

The Consent Decree established a schedule for the closure of the Ordot Dump. Pursuant to the Decree, Guam DPW was required to submit a closure plan that includes a site investigation, a baseline survey, and the design of a landfill cover system and a perimeter surface water diversion system. The Decree required Guam DPW to submit a permit application to Guam EPA to comply with requirements for the disposal of municipal solid waste at Ordot Dump for the interim period until the Dump is closed. Guam DPW also needed to obtain the Army Corps of Engineers' approval of a Wetland Mitigation Plan for the closure. After its closure plan is approved, Guam DPW is required to award a construction contract for closure. By October 2007, Guam DPW shall complete closure, certify that it no longer accepts municipal waste at Ordot Dump, cease all discharges to the waters of the United States, and begin implementing a post-closure plan.

The Ordot Dump is presently the sole municipal landfill on Guam. Thus, in addition to requiring the closure of the Ordot Dump, the Consent Decree also directed Guam DPW to construct and operate a new sanitary landfill. The Decree required Guam DPW to complete an Environmental Impact Statement regarding at least 3 alternative sites for the new landfill, choose a site, and submit design and construction plans to EPA. Thereafter, Guam DPW must submit a permit application and obtain a permit from Guam EPA, submit a permit application and obtain a Wetland Development Permit from the Army Corps of Engineers, award a construction contract, and construct and operate a new sanitary landfill by September 2007.

## III.    CURRENT CONSENT DECREE COMPLIANCE ISSUES

GovGuam has not been able to meet the compliance deadlines set out in the Decree. On May 5, 2006, EPA assessed stipulated penalties against GovGuam in the amount of $51,500 for failure to submit a draft wetlands mitigation plan required under Paragraph 8.c.iii. of the Decree, and in the amount of $7,000 for failure to award a construction contract for the Ordot Dump closure by April 21, 2006, as required by Paragraph 8.g. The wetlands plan was finally submitted on July 9, 2006, but GovGuam has yet to award the construction contract for the closure of the Ordot Dump. The accrued stipulated penalty for this missed deadline is currently $379,000, and is accruing at $2,000 per day.

On January 5, 2005, EPA assessed stipulated penalties against GovGuam in the amount of $7,250 for its failure to identify a preferred site for the new landfill, in violation of Paragraph 9.a. EPA also assessed stipulated penalties against GovGuam in the amount of $7,500 on February 13 and March 7, 2006, for failure to submit the 90% Draft Final Plan for the new landfill pursuant to Paragraph 9.d. In addition, GovGuam has failed to submit the final plan for the new landfill at Layon, which was due on June 5, 2006. (¶ 9.f.) Pursuant to Paragraph 12.a.i., the stipulated penalty for this violation is now $137,500, and is accruing at a rate of $1,000 per day.

Accordingly, GovGuam has failed to meet critical Consent Decree deadlines in connection with its obligation to properly close the Ordot Dump and to construct a new sanitary landfill, and is currently in violation of the Consent Decree.

The most troubling aspect of the GovGuam's failure to meet the deadlines in the Decree is its recent decision to ignore these deadlines altogether. On October 20, 2006, Guam EPA informed the United States that DPW planned to embark on a "new direction" with Ordot. DPW now proposes to construct an interceptor trench around the Ordot Dump, which, in conjunction with a pumping system, is supposed to prevent discharges to the Lonfit River. DPW will then direct its resources towards building the new landfill at Layon; closure of the Ordot Dump will no longer be a priority.

EPA responded to this proposal in its letter dated November 2, 2006. See Attachment A. EPA registered its concern that DPW's proposal would directly conflict with the requirements of Paragraph 8 of the Consent Decree, which set a deadline of April 21, 2006, to award a construction contract for the closure of the Ordot Dump (¶ 8.g.) and a deadline of October 23, 2007, to complete the closure of the Ordot Dump. (¶ 8.h.) EPA emphasized that while an interceptor trench approach focused on minimizing or preventing discharges to the Lonfit River, the proposed project failed to address numerous other concerns associated with the proper closure of the Ordot Dump and did not comply with the Consent Decree's time schedules for awarding a closure contract and closing the Dump.

DPW's responded in a letter dated November 10, 2006. See Attachment B. DPW

confirmed that it intends to award a contract to design and build an interceptor trench. DPW justified this change in approach based on the following factors: (1) the closure design for the Ordot Dump, which had been submitted to EPA pursuant to the Consent Decree as a Draft Final Closure Plan on May 6, 2005, must be modified; (2) financial reasons favor this new approach in light of the construction cost for the closure design; (3) capping the Ordot Dump is not critical; and (4) building a new landfill is critical.

DPW's unilateral decision to change its approach completely ignores the legally enforceable deadlines in the Decree concerning the closure of the Ordot Dump. The Draft Final Closure Plan for the Ordot Dump was submitted more than 1 ½ years ago to allow for the proper and timely closure of this Dump. Even assuming that DPW were able to properly construct and operate a new interceptor trench, this change in plans will assure that DPW fails to close the Ordot Dump on time. More importantly, this new approach also fails to consider the real environmental, health, and engineering differences between closing the Ordot Dump, as required by the Consent Decree, and leaving it open (but not accepting garbage) for several extra years. DPW's preferred alternative, leaving Ordot open in violation of the Consent Decree, means that the vector issue (i.e., flies, rodents, and other pests), the odor problem, and the fire hazard posed by Ordot will continue unabated. As demonstrated once again by the Ordot November 2006 fire, the persistent threat of fires at the Ordot Dump not only causes increased air pollution levels, but it also leads to the trauma of emergency evacuations for nearby residents.

Moreover, none of the purported benefits of DPW's "new direction" address the current operational problems at the Ordot Dump. For example, there is no certified landfill operations manager on duty. In fact, DPW does not even have a tracking system for incoming waste, making any projections of waste being handled an impossible task. Thus, DPW cannot ascertain the remaining capacity at the Ordot Dump, which the Legislature found had reached its capacity in the 1990's. As the amount of untracked garbage rises, the slopes of Ordot continue to steepen, leading to serious engineering issues of slope stability. DPW has even failed to consistently apply a daily cover of dirt over the trash because DPW did not have functioning heavy duty equipment available at the Dump for a period of time in 2006. According to news reports, DPW

- 8 -

had failed to cover at least four days' worth of trash with dirt before the November 2006 fire at the Ordot Dump. DPW's deputy director explained: "Our biggest challenge now is money and a lot of our equipment is down. In order for us to properly cover the landfill or the amount of trash that comes in daily, we need more equipment." See Attachment C for news reports of the November 2006 fire. As a direct result of these daily operational issues, EPA continues to receive complaints directly from Guam's residents expressing concerns about the safety and operation of the Ordot Dump.

Because the Dump is open to the elements, rain will continue to percolate through it. This will generate more leachate, which may overwhelm the proposed interceptor system and result in continued illegal discharges of pollutants directly to the Lonfit River. Based on DPW's past practices, DPW has not operated the Ordot Dump in a safe manner to protect the health of the nearby residents or to prevent illegal discharges to the Lonfit River. At this point, DPW has not shown that it is capable of effectively designing, constructing, operating, and maintaining an interceptor trench. The Ordot Dump needs to be closed properly *and* needs to be closed as soon as possible.

The recent Ordot fire highlights DPW's problems managing the day-to-day operations of the Ordot Dump; DPW's failure to meet critical deadlines for closing the Dump and constructing a new landfill illustrates DPW's inability to comply with the Consent Decree. DPW's problems were recently addressed in the Guam Public Utilities Commission's ("PUC") Order of September 2, 2006.[3]/ This Order concerns an August 2006 audit conducted by the Georgetown Consulting Group of DPW's billing and collection practices. The audit concluded, and the PUC concurred, that DPW cannot manage the $90 million in bond financing required to meet the terms of the Decree. The PUC recommended in its Order that DPW's solid waste management functions be transferred to a public corporation under the governance of the Consolidated Commission on Utilities.

Furthermore, GovGuam's inability to comply with the Consent Decree continues despite

---

[3]/     See Attachment D.

1  Governor Camacho's creation of an Ordot Compliance Team on May 6, 2006, and his Executive
2  Order on May 17, 2006, which declared that the Ordot Dump is an emergency. This Executive
3  Order was intended to release funds to help GovGuam comply with the Decree requirements.
4  Notwithstanding these efforts from the highest level of government on Guam, however, the
5  Decree's deadlines are not being met. In fact, based on DPW's letter of November 10, 2006, it
6  now appears that DPW intends to purposely violate the Consent Decree.

7      For these reasons, the United States has concluded that GovGuam is unable or unwilling
8  to meet its obligations under the Decree. Serious accountability problems at DPW, together with
9  GovGuam's failure to finance the construction projects required by the Consent Decree, have
10  resulted in a seemingly endless cycle of violations. In light of these violations, the United States
11  could demand stipulated penalties of over $500,000. Unfortunately, even if GovGuam promptly
12  paid these penalties, that payment would not ensure either the proper and timely closure of the
13  Ordot Dump or the opening of a new landfill. Therefore, the United States requests a status
14  conference to apprise the Court of GovGuam's significant violations of the Consent Decree and
15  of the need for measures to bring about compliance with the Consent Decree.

16
17                                Respectfully submitted,
18                                LEONARDO M. RAPADAS
                                  United States Attorney
19                                Districts of Guam and NMI
20
21  Dated: _11_/_6_/_06_
22                                MIKEL W. SCHWAB
                                  Assistant U.S. Attorney
23
24  OF COUNSEL:
25  JULIA JACKSON
    Assistant Regional Counsel
26  U.S. Environmental Protection Agency
    75 Hawthorne Street
27  San Francisco, California 94105
28



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**REGION IX**
75 Hawthorne Street
San Francisco, CA 94105

November 2, 2006

Mr. Lawrence Perez
Director
Department of Public Works
542 N. Marine Corps Drive
Tamuning, Guam 96913

    RE: Ordot Teleconference of October 20, 2006. DPW Position Clarification.

Dear Mr. Perez:

    On October 20, 2006, the U.S. Environmental Protection Agency ("EPA") participated in a monthly Ordot Consent Decree status call with your staff and Guam EPA. From this call, it is our understanding that DPW does not intend to comply with the conditions set forth in Paragraphs 8(g) and 8(h) of the Consent Decree; instead, DPW plans to construct an interceptor trench to stop discharge to the Lonfit River, shift resources towards the opening of the new landfill, then return to advertise for closure plan bids, and award the construction contract for Ordot closure.

    EPA considers this proposed approach to directly conflict with the requirements of the Consent Decree. While this approach focuses on minimizing and preventing discharges to the Lonfit River, it fails to address numerous concerns associated with the proper closure of the Ordot Dump and does not comply with the time schedules provided in Paragraphs 8(g) and 8(h) of the existing Consent Decree.

    Because our understanding is based on information presented by Guam EPA and not directly by DPW, we are uncertain if this is DPW's official position. Therefore, within 7 calendar days from receipt of this letter, EPA requests written clarification and/or confirmation from DPW on its position.

    If DPW does not provide USEPA with a response within this time frame, EPA will assume that Guam EPA has correctly presented DPW's position in the October 20 conference call as summarized by this letter, and we will take appropriate action to enforce the Consent Decree's requirements.

             Sincerely,

             John McCarroll
             Chief, Pacific Islands Office

*ATTACHMENT*
*A*

Cc:     Helen Kennedy, Guam AG
        Robert Mullany, USDOJ
        Cynthia Jackson, DPW



FELIX P. CAMACHO
Governor of Guam
KALEO C. MOYLAN
Lt. Governor of Guam



public works
DIPATTAMENTON CHE'CHO' PUBLEKO
LAWRENCE P. PEREZ
Director
ANDREW LEON GUERRERO
Deputy Director

**November 10, 2006**

**Mr. John McCarroll**
**Chief, Pacific Islands Office**
**USEPA, Region IX**
**75 Hawthorne Street**
**San Francisco, CA 94105**

Dear Mr. McCarroll:

The Department of Public Works (DPW) is in receipt of your November 2nd letter on the above subject. Thank you for the opportunity to clarify our position, as it was never DPW's intention not to comply with the conditions set forth in Paragraphs 8(g) and 8(h) of the Consent Decree.

It is the Department of Public Works intention to begin compliance with Paragraphs 8(g) with the award of a design/build contract that would construct the interceptor trench. This trench as a component of the Closure Construction Design is viewed as a fundamental immediate action that the Government of Guam can afford, to prevent further threat to human health and the environment. Construction of this trench is not a ruse to avoid addressing the numerous USEPA/GEPA closure design concerns or the timelines of Paragraphs 8(g) and 8(h).

Two critical issues prevent the Government of Guam from moving forward with the RFP for the construction of the Ordot Dump Closure, lack of funding and design integrity issues. These issues and the escalating penalties of Paragraphs 8(g) and 8(h) have forced the Consent Decree Teams of both DPW and GEPA to rethink the process of compliance of these two paragraphs with respect to the RCRA/CERCLA Closure Process. In doing so, two options were presented by GEPA:

1. Use existing design (extravagant remedy, and with information presented by the WERI Technical Report No. 113, probably not required)*
2. Design/Install leachate interceptor trench (comply with Consent Decree) and perform investigations to determine the type of capping system required (design and build an appropriate remedy).

The Department of Public Works Consent Decree Team and the majority of the Governor's Consent Decree Compliance Team are in favor of the second option. Justification being that:

- Ordot Closure Design must be modified
- Modify Design appropriately upon conducting thorough investigation to fill in data gaps presented in the Environmental Baseline Study.
- Financially sound, given the current Closure Design Construction cost.

542 North Marine Corps Drive
Tamuning, Guam 96911
Tel: 671. 646-3131 / 3259
Fax: 671.649-6178

ATTACHMENT
B





- Based on new information presented in the WERI technical report, the urgency to "cap" Ordot is not critical. Building the new landfill is critical.

The Department of Public Works can assure the US EPA, that work will continue with both projects concurrently. Should you wish to discuss this further, please contact me at (671)646-3131.

*All the best,*

**LAWRENCE P. PEREZ**
**Chairperson, Consent Decree**
**Compliance Team**

---

* WATER AND ENVIRONMENTAL RESEARCH INSTITUTE OF THE WESTERN PACIFIC, UNIVERSITY OF GUAM, Technical Report No. 113, May 2006.

542 North Marine Corps Drive
Tamuning, Guam 96911
Tel: 671. 646-3131 / 3259
Fax: 671.649-6178

[ Print this story ]

# Lack of federal compliance is fire's larger concern

**by Mindy Fothergill, KUAM News**
**Monday, November 27, 2006**

Today marked Day 4 of efforts to smother the blaze that ignited at the Ordot Dump on Friday evening. While Department of Public Works staffers attempt to dump more cover material at Ordot, there are bigger concerns about the agency's failure to comply with a federal consent decree.

A cloud of white smoke engulfed much of one home in the central island village of Ordot today, as DPW employees attempted to douse the flames of a smoldering fire just a few feet away at the Ordot Dump. Solid waste operations manager Dominic Muna maintains the federal mandate for daily coverage of the dump has been complied with, but he admits there have been some challenges in getting enough cover material to properly cover fifty acres of trash and the 350 tons of waste that comes to the dump each day. "It was not four days of inactivity what I mentioned there was a possible area of four days worth of trash that hadn't been covered," he explained, "but it wasn't because of inactivity, it was the incoming waste stream beating us. So there's daily cover activity going on, it's how much we can cover on any given day is what I meant about four days of an area of space of work space that was not cover, it was not four days of inactivity."

Along with daily covering of the dump, compliance with a two-year-old 2004 consent decree has proven difficult for DPW. In February the U.S. Environmental Protection Agency fined the agency $2,000 for missing the deadline to submit plans a permit application for a new solid waste landfill. In May the agency was fined an additional $58,000 for missing more deadlines. Earlier this month the federal government also increased·fines to DPW by $5,500 for the continued failure to comply with the consent decree. DPW deputy director Andrew Leon Guerrero says the obstacles for the agency to abide by federal mandates keep mounting, telling KUAM News, "Our biggest challenge right now is money and a lot of our equipment is down. In order for us to properly cover the landfill or the amount of trash that comes in daily we need more equipment."

Aside from equipment, DPW also needs money to repair a number of heavy equipment machinery that remain inoperable, including a federally-funded bulldozer that was severely damaged in Babulao, Talofofo. Instead of being used to clear trash at the dump, the bulldozer got stuck in mud as then-DPW deputy director Mike James authorized the use of the machine to clear land.

On top of concerns about a lack of equipment, personnel and resources, DPW officials are also concerned about an upcoming visit by USEPA officials during their biannual assessment of the island, which will include a visit to the Ordot dump. "We're trying our best in every way we can to mitigate the problem," expressed Leon Guerrero. "We're trying to comply with the USEPA, but monetary constraints are the issue. We're going to keep chugging along with whatever monies we were

given at the time, but until then we're going to keep going and we're going to do whatever is asked of us. I'm sure we're going to get fined again but we're not going to sit back and wait for money. We're going to do whatever we can within our means."

The Guam Environmental Protection Agency continues to monitor and analyze air quality near the dump. DPW officials are also making housing arrangements for Ordot residents living around the area. In the meantime, a team of federal EPA representatives will begin their biannual assessment of the island tomorrow.

A press conference is scheduled for this Friday to release the results of their assessment.

**Copyright © 2000-2006 by Pacific Telestations, Inc.**

Print this story

This is a printer friendly version of an article from **guampdn.com**
To print this article open the file menu and choose Print.

Back

Article published Nov 28, 2006

# DPW: Too much trash to cover

**By Eric Palacios**
**Pacific Daily News**
**ejpalacios@guampdn.com**

The Ordot dump continued releasing smoke throughout the day yesterday, the result of a fire that started at the dump late Friday afternoon and had subsided by yesterday.

For four consecutive days before the start of the fire, Department of Public Works employees at the dump each day failed to cover new trash with a layer of soil. Federal law requires DPW to cover exposed trash at the dump daily.

Yesterday, Public Works Director Larry Perez and Deputy Director Andrew Leon Guerrero said that the lack of soil cover may have helped cause the fire.

But, said Leon Guerrero, it was not a situation in which duties were "neglected" but rather a matter of being overwhelmed and under-equipped.

"There's no real mystery," he said. "Right now, as in the past, we have equipment problems and we do the best we can with what we've got. Many of the agency's heavy equipment are down right now."

This, coupled with the "about 300 tons of trash" that come in each day, might have contributed to the fire starting Leon Guerrero said.

"It wasn't that we didn't cover trash for four straight days, it's that we were four days behind schedule in covering the trash," he said. "The amount of trash that comes in is remarkable and we were playing catch-up."

"Can you imagine what kind of resources it would take to cover that amount of trash daily?" he asked.

## Communication lag

To clarify comments made by DPW Director Larry Perez about the fire, Leon Guerrero said that there might have been a communication glitch with Perez, giving him the impression that employees at the dump had abandoned their duties.

"His initial assumption, probably, was that nothing was being done by our staff for four days, and not that we were actually four days behind," Leon Guerrero said. "Obviously, we couldn't cover everything in a timely manner so there were portions of the landfill that were (uncovered)."

In an interview with the Pacific Daily News yesterday afternoon, Perez said Leon Guerrero's statements were accurate.

Perez also was able to meet with DPW staff yesterday morning on the matter.

Guam Environmental Protection Agency spokeswoman Tammy Anderson yesterday said it was too early to tell whether the agency would fine DPW for not covering the trash or for the fire.

## Air samples

Case 1:02-cv-00022  Document 56  Filed 12/06/2006  Page 17 of 21

According to Anderson, Guam EPA has been using new equipment to collect air samples and measure the smoke released by the dump.

The new gear consists of four "pods" and a wireless laptop computer. Three of the pods are placed outside where air samples are to be taken, while the fourth monitors the air in the van containing the laptop and the environmental health specialist running the computer.

The pods are capable of continuously gathering data and sending it to the laptop within a two-mile radius, keeping the person monitoring a situation out of harms way.

Case 1:02-cv-00022  Document 56  Filed 12/06/2006  Page 18 of 21

**BEFORE THE GUAM PUBLIC UTILITIES COMMISSION**

FOCUSED MANAGEMENT AUDIT
OF DEPARTMENT OF PUBLIC
WORKS' SOLID WASTE MANAGEMENT      **DOCKET 06-2**
DIVISION BILLING AND COLLECTION
SYSTEM

### ORDER

In response to its administrative law judge's [ALJ] April 20, 2006 memorandum
*[Attachment A]*, the Guam Public Utilities Commission [PUC] at its April 20, 2006
meeting directed ALJ to oversee a focused management audit by Georgetown
Consulting Group [GCG] of the Department of Public Works' [DPW] solid waste
management's [SWM] billing and collection practices and the Department of
Administration's restricted account management.  On August 18, 2006, GCG
filed its audit report *[Attachment B]* with PUC. On September 21, 2006 GCG
presented its report to PUC at a workshop.

After careful review of the GCG audit report and the record herein, including
comments from DPW, for good cause shown and on motion duly made,
seconded and carried by the undersigned commissioners, the Guam Public
Utilities Commission **HEREBY FINDS AND ORDERS THAT:**

1. The audit report presents compelling and convincing evidence that DPW
   is not prepared to assume the financial responsibilities, which would be
   imposed upon it by the proposed $90 million dollar revenue bonds
   financing, which is necessary to fund the Government of Guam's
   compliance with the Federal Consent Decree[1].

2. DPW does not have adequate resources *[management, staff, financial, legal,
   engineering and systems]* to implement the audit recommendations in a
   timely manner.

3. Accordingly, it is critical that the legislation recommended in the audit
   report be implemented *concurrently* with any legislative authorization for
   the Government to proceed with the revenue bond financing - *paramount
   of which is the recommendation that SWM be reconstituted as a public
   corporation under the governance of the Consolidated Commission on Utilities.*
   PUC respectfully cautions the Government of Guam, in furtherance of its
   May 2, 2006 letter to Vice Speaker Brown *[Attachment C]* that without

---

[1] Consent Decree dated February 11, 2004 in *USA v. Government of Guam*, District Court Civil Case
02-22.

these legislative reforms, PUC has material concern over DPW's ability to collect, deposit, account for and properly expend the *just and reasonable* rate revenues awarded by PUC in a manner which will enable DPW and the Government of Guam to comply with its proposed bond covenants.

4. PUC stands ready, upon request, to propose specific legislation to implement the audit recommendations.

5. In the interim, PUC is committed to do its part in implementing those audit recommendations, which are within its power to address. Accordingly, the following regulatory activities shall be commenced under ALJ's oversight:

   a. In anticipation of the revenue requirements, which would be imposed on DPW by the revenue bond financing, DPW has requested GCG's assistance in preparing a petition for FY07 rate relief for PUC consideration during the January 2007 regulatory session. ALJ is authorized and directed to oversee the preparation of this petition by GCG in collaboration with DPW. As part of this rate proceeding, GCG shall: i] propose a residential lifeline rate, a variable residential rate and a prepaid decal system for residential service; ii] propose necessary amendments to SWM's service rules; and iii] examine and make recommendations regarding SWM's $10 million dollar accounts receivable.

   b. PUC is encouraged by DPW's acceleration of the timeline for outsourcing the collection of residential waste for the entire island not later than July 2007. On or before October 15, 2006, DPW shall inform PUC of the additional resources, which it will require to successfully meet this deadline. DPW's progress under the timeline will be examined during the January 2007 rate proceeding.

6. PUC stands ready to issue necessary regulatory orders, which will be required to secure revenue bond financing; subject to its strong reservation that without the concurrent legislation recommended above, it is questionable whether DPW and the Government of Guam will be able to meet the requirements of the bond covenants.

7. Except as provided herein, the deadlines for action recommended in the audit report will be suspended pending further consideration during the January 2007 regulatory session.

2

8. A copy of this Order shall be transmitted to the Speaker of the 28th Guam Legislature, to the Governor of Guam, to the Department of Public Works and to the Consolidated Commission on Utilities.

Dated this 28th day of September 2006.

_____
Terrence M. Brooks

_____
Edward C. Crisostomo

_____
Rowena E. Perez

_____
Joseph M. McDonald

_____
Filomena M. Cantoria

_____
Jeffrey C. Johnson

3