

Office of the Attorney General
**Douglas B. Moylan**
Attorney General of Guam
**Solicitors Division**
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3324 ● (671) 472-2493 (Fax)
www.guamattorneygeneral.com ● law@mail.justice.gov.gu

**Attorneys for the Government of Guam**

**FILED**
DISTRICT COURT OF GUAM
DEC 15 2006
MARY L.M. MORAN
CLERK OF COURT

# IN THE DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL CASE NO. 02-00022 |
| Plaintiff, | |
| vs. | |
| GOVERNMENT OF GUAM, | **RESPONSE TO THE UNITED STATES'** |
| | **CONCERNS RAISED IN ITS REQUEST** |
| Defendant. | **FOR A STATUS CONFERENCE** |

The Government of Guam ("GovGuam") has accomplished numerous Consent Decree tasks at a contracted cost in excess of $9.3 million and with thousands of GovGuam employee hours. The United States overlooked these accomplishments in its request for a status conference. Hence these are outlined below.

GovGuam has encountered difficulties in meeting some of the Consent Decree deadlines. Admittedly the Department of Public Works ("DPW") has not entered into the construction contracts either for Ordot Closure, which was due no later than April 24, 2006, or for the Layon Landfill, which was due no later than October 13, 2006. *Consent Decree at*

¶ ¶ *8(g) and 9(h), respectively.* However, it has become impossible for DPW to meet these and other Consent Decree deadlines because it currently lacks the funds for these large construction projects. Currently, GovGuam can fund the leachate collection, removal and disposal component of the Ordot closure construction. Hence, GovGuam respectfully disagrees with certain statements made by the United States in its Request for a Status Conference. Further, progress on Consent Decree tasks has been hampered by technicalities and cumbersome government hierarchies, and by additional requirements imposed upon DPW by Guam's laws and the Public Utilities Commission ("PUC"), and by unforeseen circumstances.

## I. Accomplishments

GovGuam has achieved significant progress in implementing the Consent Decree requirements. It has spent more than $2 million in completing the paragraphs 8(a) – (c) requirements for the Ordot Closure design, wetlands mitigation plan, and the permit application. The accomplishments include: an environmental baseline survey, 40% and 100% closure design submittals as defined in the Consent Decree, the Closure Plan, the permit application, and the wetlands mitigation plan. The more recent accomplishments are detailed in *Attachment 1*. In 2004, DPW also spent $45,100 on the Financial Plan, which was required by paragraph 10 and which outlined the financing strategy for the design and construction of both the landfill and Ordot closure.[1] It has contracted with procurement advisor at a cost of up to $400,000 over the next two years to assist it in the Consent Decree and other solid waste procurements.

---

[1] The Financial Plan is available at *guamlandfill.org*. Select public docs from the public link menu.

Page 2
*Response to the United States' Concerns Raised In Its Request for a Status Conference*
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022     Document 64     Filed 12/15/2006     Page 2 of 28

In addition, GovGuam has spent and contracted for more than $7 million in completing the paragraph 9(a) – (f) requirements for landfill site selection and for the 90% design of the Layon Landfill, including its access road and other infrastructure. These efforts have absorbed thousands of hours by GovGuam employees, not only in contract management, but also in significant and unprecedented outreach to the community and Guam's elected officials. DPW and the Guam Environmental Protection Agency ("Guam EPA") have faced legal challenges to the Layon site selection, and DPW employees have entered a steep learning curve regarding finances, financing and PUC regulation. *E.g., San Miguel, et. al v. DPW, et. al., (Guam Super. Ct. D& O July 6,, 2005), appeal pending.*

DPW is one of GovGuam's oldest line agencies. Until 1999, it had never charged solid waste collection ("user") or disposal ("tipping") fees for its solid waste services. *Public Laws 24-272 and 24-313.* Due to a legal impediment, until late 2005, the PUC had never evaluated DPW's solid waste operations or increased the solid waste tipping and user fees. Now the PUC is fully engaged and DPW has recently added staff with rate making experience. Also, DPW has selected a contractor to provide an experienced technical advisor in landfill construction and dump closure. The Court should consider GovGuam's accomplishments in light of the funding challenges GovGuam now faces.

**II.     Funding and the Leachate Collection, Removal, and Disposal System**

DPW has spent or is under contract to spend more than $2 million in completing the paragraphs 8(a) – (c) requirements for the Ordot closure and more than $7 million on the Layon Landfill. In accordance with the Financial Plan's financing strategy for design, most of this funding has been through Department of Interior ("DOI") grant funds, with about $ 4 million in local funds and about $800,000 in tipping and user fees.

Page 3
*Response to the United States' Concerns Raised In Its Request for a Status Conference*
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022     Document 64     Filed 12/15/2006     Page 3 of 28

1  However, currently DPW does not have the funds of the large construction projects.

2  For Layon Landfill, including buildings, the 90% design estimated costs at $47,769,590, and

3  the revised access road improvements design estimated costs at $16,008,962. *Attachment 2.*

4  However, a recent value engineering study ("VE study") identified design changes which

5  could result in a potential costs saving of up to $ 13.7 million. *Attachment 3.* So, these best of

6  these changes will be incorporated into the final design. *Attachment 1.* Likewise, based on the

7  VE study for Ordot closure, the construction are estimated to be $15- 22 million, depending

8  upon the design changes which will be selected after completion of a cost/benefit analysis of

9  the potential design changes Guam EPA qualified as potentially meeting the regulatory

10 requirements. *Attachment 4.* The Financial Plan concluded that preferred funding sources

11 were: (1) bonds, grants and loans for Ordot, and (2) private financing for a fixed fee paid by

12 GovGuam for the landfill, and its access road and other infrastructure. However, in March of

13 2005, based on advice from the Guam Economic Development Authority's ("GEDCA's")

14 financial advisor that a tax free government revenue bond would be more economical to

15 GovGuam, and hence to the ratepayers, DPW decided to pursue a revenue bond for all

16 Consent Decree construction costs.

17      As discussed in the Impediments section below, DPW has encountered complications

18 regarding financing that are beyond its immediate control. GovGuam anticipates that the $15-

19 22 million needed for Ordot Closure will not be available for at least another four to six

20 months because the legislature must pass the bond legislation, followed by the bond rating

21 process and PUC approval. Consequently, in October of 2006, the classified employees were

22 asked to evaluate what could be accomplished, with limited funds and limited staff, to achieve

23 partial compliance with the Consent Decree requirements.

24      DPW is concerned that the lack of funds impedes it from beginning closure

25 construction as required by paragraph 8(g), that the lack of funds may also impedes DPW

Page 4
*Response to the United States' Concerns Raised In Its Request for a Status Conference*
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022    Document 64    Filed 12/15/2006    Page 4 of 28

from meeting the October 23, 2007 deadlines for completion of closure construction and of ceasing all discharges to the Lonfit River. *Consent Decree at ¶¶ 8(h) and (i), respectively.* One of the less expensive and somewhat independent closure tasks is the leachate collection, removal, and disposal system ("leachate system"), which is composed of a leachate collection trench, pump, storage tank and transport of leachate to the public sewer.[2] Its estimated construction costs are around $1.5 million. *Attachment 5.* If construction and operation of the leachate system could proceed while design modifications are being made, then DPW would achieve compliance with paragraph 8(g) if the contract includes all of the closure construction tasks. This is true even if phase one of construction would be limited to the leachate collection, removal and disposal system, and the remaining construction tasks were to begin later when the funds become available.[3] In addition, once the leachate collection, removal and disposal system is functioning and is maintained, then DPW should be able cease all leachate discharges to the Lonfit River, and during dry season it may also be able to cease all surface water discharges as well, and hence DPW could achieve substantial compliance with paragraph 8(i).

However, the communication to the United States about the relationship to the Consent Decree and interceptor trench or leachate collection, removal and disposal system was not as clear as it could have been, and hence the misunderstanding. As early as May 27, 2005, DPW had informed the US Environmental Protection Agency ("USEPA") that it was considering construction of the interceptor trench before awarding the rest of the closure construction tasks. *Attachment 6.* The September 2005 100% Ordot design submittal scheduled construction of the leachate collection and removal system to be completed early

---

[2] Also called the interceptor trench. The other Closure construction components are: mobilization and earthwork, a mechanically stabilized wall, surface water runoff management system, landfill gas management system, waste relocation and final cover system (capping), and electrical system. *See Attachment 4.*
[3] Alternatively, if DPW enters into a separate contract for the leachate collection and disposal system than for

Page 5
*Response to the United States' Concerns Raised In Its Request for a Status Conference*
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022    Document 64    Filed 12/15/2006    Page 5 of 28

(by November of 2006), and included calculations of the volume of leachate generated without the final cover system so that DPW could decide the disposal method later (using pump trucks or installing a pipeline to the public sewer). Hence, from DPW's standpoint, the idea of constructing the leachate collection, removal and disposal system earlier than the rest of the closure construction components is not a "new direction," as the Untied States claims.

Similarly, the United States misunderstands GovGuam's intent regarding the other components of the closure construction. The 100% design needs to be revised for several reasons. First, because DPW did not have the funds for the Layon landfill construction to begin in October of 2006 or earlier - so that the Layon Landfill could open on or before September 27, 2007, the Ordot Dump will have to receive significantly more waste than the volume used for the 100% design. Hence, design specifications for waste relocation, filling, the final cover system, etc. must change. Second, as DPW informed USEPA in September of 2005, the contractor submitted to DPW a 100% design that was much more expensive than is standard in the industry as it, *inter alia*, included a final cover system that was proprietary to the subcontracted design firm. *Attachment 7*. So, in December of 2005 DPW completed the Ordot VE Study, which identified potential design changes that could result in significant cost saving. A cost/benefit analysis should be conducted on the Guam EPA qualified possibilities, and the most valuable design changes should be made. Third, the 100% design has integrity issues, some of which USEPA identified. *Attachment 8*. For example, some local regulations were addressed inadequately, and the side slopes were too steep to hold the soil cushion needed to protect the cover. Despite these and other shortcomings, in order to meet the Consent Decree deadlines, DPW submitted the 100% design and Guam EPA permitted it, but there were consequences: (1) Guam EPA's permit requires design changes necessary to meet

all closure construction tasks, then paragraph 8(g) would be met once all closure construction work is contracted.

Page 6
*Response to the United States' Concerns Raised In Its Request for a Status Conference*
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022    Document 64    Filed 12/15/2006    Page 6 of 28

1  local regulations that the DPW and the contractor had misunderstood, (2) DPW did not pay
2  the contractor, and (3) the contractor has not given DPW engineering drawings stamped by a
3  professional engineer, which are essential to an invitation to bid package. Currently, DPW is
4  seeking to settle this contract dispute. *Attachment 1.*

5      However, the fact that the closure design revisions are needed does not mean that the
6  design revisions should wait until DPW has filled the data gaps regarding the nature and
7  extent of contamination at and beyond the Dump's footprint. The Consent Decree provided a
8  time frame (from 2002, or earlier, until September 2005 when the 100% design was due) in
9  which DPW had the opportunity to collect additional environmental data and to use it in the
10  design of the final cover system.   Although some might prefer and recommend that the gaps
11  be filled before beginning any design modifications to the "final cover system," local and
12  federal solid waste regulations require minimum design standards for the final cover system
13  consisting of an "erosion layer underlain by an infiltration layer," each of which must meet
14  specific standards. *Guam Solid Waste Landfill Regulation at §2361(Attachment 9); see also,*
15  *40 CFR 258.60.* These standards apply irrespective of any contamination.   As discussed
16  above, the lack of construction money, the contract dispute, the opportunities for costs saving
17  from the Ordot VE Study, and the opening date of the landfill are the deciding factors on all of
18  the design revisions, including the final cover system. *Attachment 1.*

19  **III.     Impediments to Construction Financing for Layon and Ordot**

20      The Financial Plan, which outlined a schedule for the revenue bond approvals, was
21  submitted to the Legislature. *Attachment 10.* The PUC will set the tipping and user fee rates
22  needed to pay the long term debt for the construction of the capital improvements. However,
23  DPW has encountered numerous impediments to the capital financing. First, the PUC needed
24  a new legislation, which became effective June 30, 2005, requiring that the PUC's technical
25  review costs be paid from tipping and user fee revenues. *Public Law 28- 56.* Thereafter the

Page 7
*Response to the United States' Concerns Raised In Its Request for a Status Conference*
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022     Document 64     Filed 12/15/2006     Page 7 of 28

1   PUC evaluated DPW's residential solid waste collection services and GovGuam's revenue
2   collection of the user and tipping fees.

3       The PUC is reluctant to raise significantly the residential tipping and user fees until
4   DPW improves the residential solid waste collection services and revenue collections. The
5   deadlines the PUC has established for these improvements are in addition to and in conflict
6   with the Consent Decree deadlines and the Financial Plan schedule. *Attachment 11.* Several
7   legislators agreed and the PUC ordered DPW to contract out at least two thirds of the solid
8   waste collection services, which contracting had been legislatively mandated to be completed
9   in 2002 by Public Law 26-99. *DPW is pursuing the out sourcing. Id. and Attachment 11.*

10      Several legislators and the PUC maintain that DPW and DOA need to improve the rate
11  of collecting revenues for solid waste services. Hence, the limited DPW Consent Decree staff
12  has assumed collateral duties related to improved solid waste collection services and revenue
13  collection.   Apparently some Legislators favor improved revenue collection before
14  entertaining bond legislation.

15      Some legislators and the PUC also identified impediments to improved revenue
16  collection. *Attachment 11.* These include the preference for advanced payment of services,
17  similar to advanced payment for telephone service, rather than the current regulations/law,
18  Public Law 24-313, which allows customers to incur up to 90 days of arrearages. *Id.* Other
19  legal impediments include the mayor's tipping fee exemption, which is abused by many who
20  do not pay any residential user/tipping fees, the need for tipping fee deposits or bonding for
21  the commercial haulers, and the ability of the Governor to suspend the tipping/user fees for up
22  to thirty day in every declaration of an emergency. *See 10 GCA § 51118.*

23      Under Guam's Organic Act, *48 U.S.C. §1423a,* the Guam Legislature has the power
24  to approve revenue bonds, including any private activity bond. Based on a 1997 law, Public
25  Law 24-06, some legislators appear to prefer private financing for the Layon Landfill

Page 8
*Response to the United States' Concerns Raised In Its Request for a Status Conference*
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022    Document 64    Filed 12/15/2006    Page 8 of 28

development, even though GEDCA's financial advisor recommends a revenue bond as more economical to Govguam and the rate payers. Consequently, DPW is now also pursing private financing for the Layon Landfill construction. In addition, the Guam Legislature appropriates the revenues from the tipping and user fees, and for this fiscal year it has not appropriated any funds for the Consent Decree construction projects. These legislative matters are beyond DPW's control. DPW maintains that it has made best efforts to fund all the Consent Decree projects, including the construction projects.

## IV.    Governmental Challenges and Unforeseen Circumstances.

DPW maintains that the United States mistakenly presumes that because currently DPW does not have the $6 to 7 million xx for the final cover system, then it also does not have the funds to meet: (1) the local and federal regulations for the daily cover, *Guam Solid Waste Regulations at § 23304; 40 CFR 258. 21*, (2) the local permit requirement to install a scale and to survey the dump's waste limits, *DPW's Solid Waste Facility Permit at 20( Attachment 12)*,   and (3) the permit requirement for a manager of landfill operations ("MOLO") certified by the Solid Waste Association of North America("SWANA") and experienced in modern landfill operations, *Id at 19*. DPW has sufficient funds to implement these requirements, but has encountered other impediments. Because DPW is a line agency within GovGuam, the delivery and placement of daily cover is hampered by the governmental bureaucracy - it is dependant upon actions outside the control of the Solid Waste Division. If the DPW equipment used to deliver the coral cover material is broken or is needed for another purpose, then the Dump goes without cover until the delivery can be resumed or cover material can be purchased and delivered from the private sector. If equipment breaks, or if replacement parts or new equipment such as the scales are needed, then DPW must rely on the Department of Administration ("DOA") in the procurement. Consequently, although the DPW's solid waste request have priority, the pressing needs of the Dump cannot be met

Page 9
*Response to the United States' Concerns Raised In Its Request for a Status Conference*
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022    Document 64    Filed 12/15/2006    Page 9 of 28

expeditiously due to the mountains of purchase orders DOA process daily for all line agencies. *Attachment 13.* DPW has also encountered difficulties in hiring engineers for the Consent Decree, as DOA's hiring process is lengthy. In addition, because other utilities are independent public corporations, Guam Power Authority and Guam Waterworks Authority can hire more quickly and now they can pay higher salaries.

The hiring of the experienced certified MOLO and the technical advisor have been hampered by government bureaucracy and private sector forces. Initially DOA advertised for the positions locally, but then cancelled the advertisement and informed DPW it needed to advertise and hire the experienced and certified MOLO, the technical advisor and the chief financial officer. DPW and DOA then arranged for advertisement in national solid waste publications. DPW selected a MOLO contractor, but unforeseeably, only one firm responded and fee negotiations with it were unsuccessful. Hence, in order to achieve partial compliance, DPW recently assigned a new employee to the Dump who is certified by SWANA in municipal solid waste management. Although the new employee has never managed a landfill directly, he has training in overall modern solid waste management and he is qualified to train the Dump employees in basic safety and waste screening and identification. The technical advisor advertisement attracted greater competition. DPW has selected a contractor, which should be working in January 2007.

DPW has also encountered other unforeseeable barriers. For example, GovGuam and USEPA could not foresee that Department of Interior grant funds for design work would be delayed because DOI retroactively apply a new policy of applying the National Environmental Policy Act ("NEPA") procedural requirements to its construction grant funds after it was sued in cases such as *Sierra Club v. U. S. Fish and Wildlife Service*, 235 F. Supp. 2d 1109 (D. Or 2002). As a consequence, GovGaum's grant funds for Layon design were withheld until DOI determined that the percentage contribution of federal funds to the project were so small as to

Page 10
*Response to the United States' Concerns Raised In Its Request for a Status Conference*
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022    Document 64    Filed 12/15/2006    Page 10 of 28

1 | not constitute a major federal action triggering the NEPA process. It also took several weeks
2 | for DOI to realize that Guam had conducted the substantial equivalent of the NEPA process
3 | under the Consent Decree ¶ 9 when it prepared an environmental impact statement on the
4 | three most suitable landfill sites. GovGuam sought assistance from USEPA in clearing the
5 | DOI log jam, but none was provided. Also, no one could foresee that some of the landowners
6 | of the Layon site would file a partition action against the other landowners, which dispute has
7 | hampered GovGuam's access to the site. Despite these and other impediments, GovGuam
8 | continues to make progress on the Consent Decree projects. *See Attachment 1.*

## V. Opportunities

DPW believes that the Court should use this status conference as an opportunity to revise milestones and deadlines in the Consent Decree. DPW believes that appropriate timelines for financing and design modifications should be incorporated into a Consent Decree modification. DPW also believes that it should be clear that Guam Legislature and the PUC are bound by the new schedule and requirements.

Dated this 15th day of December, 2006

OFFICE OF THE ATTORNEY GENERAL
**Douglas B. Moylan, Attorney General**

HELEN M. KENNEDY
Assistant Attorney General

Page 11
*Response to the United States' Concerns Raised In Its Request for a Status Conference*
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022    Document 64    Filed 12/15/2006    Page 11 of 28

# ATTACHMENT 1

# Consent Decree Project Accomplishments From August to December 2006

Date Revised: 12/14/2006

| Project | Task Description | Accomplishments | Anticipated/Date of Accomplishments | Status |
|---|---|---|---|---|
| **Ordot Dump Closure** | | | | |
| A | Closure Design Project : Amendment No. 2 - Closure design modifications and finalization of closure Plans, Specifications, & Estimates, based on the 1.)Significant comments made by U.S. EPA and CH2M Hill on the 100% Closure Design submittal; 2.) The anticipated additional incoming waste based on delays with the new landfill project; 3.) Incorporation of Value Engineering (VE) Study approved design recommendations and alternatives and;4.) Incorporation of the Solid Waste Management Permit conditions issued by Guam EPA | Received revised Scope of Work (SOW), Fee Proposal, and comments on draft contract amendment agreement for Amendment No. 2 from Duenas, Bordallo, & Associates, Inc.(DBA) | 8/2006 -9/2006 | DPW/Guam EPA has been negotiating/revising the SOW for Amendment No. 2. However, negotiations were halted until DPW & Guam EPA got approval from the Consent Decree Compliance Team regarding the option to design/install a leachate interceptor trench prior to closure construction operations, and to perform site investigations to fill in data gaps in the Environmental Baseline Survey (EBS) for the Ordot Dump for characterize site conditions and revise the design as appropriate (See the following accomplishments for more information.) |
| B | | Guam EPA presented their recommendations on Ordot Dump project, i.e. to modify closure design, design/install leachate interceptor trench and perform investigations to fill in data gaps from the Environmental Baseline Survey for the Ordot Dump. Consent Decree Compliance Team (CDCT) did not have any objections to the proposed recommendations. | 10/17/2006 | |
| C | | Based on approval from CDCT, DPW has sent letter to DBA requesting that they revise and finalize the SOW for Amendment No. 2 to include field investigations to fill in EBS data gaps, and then to commence fee proposal negotiations after SOW is finalized. | 11/7/2006 | DBA had requested for clarification on SOW via e-mail, DPW has replied and followed-up on SOW and fee proposal but there has been no reply. DPW to follow-up again. |
| D | Design/Build Leachate Collection, and Removal System | Received approval from CDCT to move forward with project | 10/17/2006 | The Invitation for Bid (IFB) Package for the design/build of leachate collection and removal system for Ordot Dump prior to closure construction is being prepared by Procurement Advisor. DPW is currently trying to obtain data on leachate management system design from our design consultant to be included in the IFB package. |

| Project | Task Description | Accomplishments | Anticipated/Date of Accomplishments | Status |
|---|---|---|---|---|
| E | Wetland Mitigation Plan | 100% Wetland Mitigation Wetland Plan was submitted to DPW, Guam EPA, US Army Corps of Engineers, and Bureau of Statistics and Planning for final review and comment | 11/1/2006 | The 100% wetland mitigation plan includes wetland permits and responses to comments on the Draft Wetland Mitigation Plan. No other comments have been received. DPW will instruct TGE to follow-up on final review comments. Once final comments are received, they will be reviewed, responded to and incorporated into the Final Wetland Mitigation Plan, and the Final plan will be issued for processing. |
| **New Municipal Solid Waste Landfill** | | | | |
| A | Amendment No. 3: Complete Task IV: Final (100%) PS&E, also includes Value Engineering (VE) Study design for leachate disposal via sanitary sewer line to Inarajan Wastewater Treatment Plan, updating of design to reflect new Guam Drainage Manual Requirements, and design & construction of temporary access road on existing dirt road | Final version of the USEPA review comments for the Layon Landfill Pre-Final 100% design submittal were issued to TG Engineers (TGE) on August 04, 2006. The response from the TGE team was issued to DPW on September 11, 2006. The response was transmitted to US EPA and Guam EPA. | Spring 2007 | |
| B | | TGE submitted temporary access road construction plans and permits for processing at DPW, building permit section, however, because the current property owner refused to sign the permit, the permit processing has been on hold. | | The Government of Guam is currently working on land access/acquisition for the Layon landfill site so that building permit can be processed. |
| C | | Completed VE Study on August 18, 2006; Draft VE Report issued to DPW and Guam EPA on September 1, 2006 for review and comment; DPW review comments issued to TG Engineers on November 15, 2006 | | In late August 2006, work on Amendment No. 3 work for finalizing design PS&E was placed on temporary hold to allow DPW, GEPA, and CDCT to review and make decisions regarding which VE Study alternatives should be implemented. On October 17, 2006, DPW and Guam EPA's technical team had issued their recommended VE design alternatives and presented it to the CDCT for review and comment. On October 25, 2006, it was decided that those VE design alternatives common in both DPW and Guam EPA lists of recommendations, would be selected for further review, development and implementation. The list of selected VE design alternatives was provided to TG Engineers for review. On October 25, work on Amendment No. 3 commenced, and DPW and Guam EPA have meet with TG Engineers to discuss scope and fee for amendment no. 7, which is the work needed to revise the current design to incorporate approved VE design alternatives. |

| Project | Task Description | Accomplishments | Anticipated/Date of Accomplishments | Status |
|---|---|---|---|---|
| D | | Survey work completed includes the Severance Map processing and approval at Department of Land Management, surveys of the sanitary sewer pipeline alignment down Route 4 and the south site area topographic survey, locating of pump station and completion of initial review of the utility conflicts expected. Consultant also met with local property owners to discuss where we proposed location of the pump stations and the requirements. The design consultant also reviewed the Inarajan Treeatment Plant and met with operators there to determine the best way to route the pipe into the plant and construct the headworks and influent discharge. | | Because the one of the VE design alternatives selected from Guam EPA and DPW eliminates the need for a sanitary sewer pipeline to the neartest wastewater treatment plan, remaining work on the sanitary sewer pipeline design will cease, and the consultant will proceed with the VEdesign alternative to use pump trucks and recirculation to handle/dispose of leachate. |
| E | | TGE submitted Layon Landfill Access Road 100% Design Plan, Technical Specifications and Estimates, including access road bid documents, design calculations, and schedule for final review and comment by DPW, Guam Waterworks Authority (GWA), and Guam Power Authority(GPA). | 11/13/2006 (for Design Documents, Bid Drawings, Technical Specifications, & Basis of Design) & 11/20/06 ( Cost Estimate, Revised Bid Schedule, Construciton Schedule, Engineering Calculations and Response to comments) | DPW transmitted documents to DPW's Engineering section on December 5, 2006, and to GWA and GPA on December 7, 2006. DPW gave the agencies two weeks to provide comments. To date Solid Waste has not received comments from DPW's Engineering Section, GPA, GWA. Once final review comments are received, they will be incorporated into the design documents, and then a final PS&E will be submitted for invitation for bid advertisement. According to our Consultant's Construction Schedule, bid phase will begin in February 2007 and actual road construction is scheduled to begin in May 2007. |
| F | Amendment No. 4: Access Road & Right of Way Re-alignment and associated work, based on portion of the existing Access Road and Right of Way Alignment is located on and drains to the Ugum Watershed | Notice to Proceed Issued | 8/4/2006 | |
| G | | Right of Way and Access Road Realignment was incorporated into Layon Landfill Access Road 100% Design PS&E that was sent out to DPW, GWA and GPA for final review and comment. | | |
| H | | Access Road and Right-of-Way Realignment Consultant also submitted a Draft Environmental Assessment (i.e. supplement to SEIS) for the portion of the access road and right of way that has been realigned. The draft assessment was submitted to Guam EPA for review and comment. | Week of 11/20/06 | In review. |

| Project | Task Description | Accomplishments | Anticipated/Date of Accomplishments | Status |
|---|---|---|---|---|
| I | Amendment No. 5 , Additional Hydrogeologic Field Investigations and Reporting/Modeling | Notice to Proceed Issued | 9/27/2006 | In October 2006, work for Amendment No. 5 was on hold pending the CDCT decision on the VE design alternatives. On October 25, 2006, decision of which VE design alternatives was made, and TG Engineers has had several meeting with their subconsultant A-Mehr, Guam EPA, and DPW to discuss if the SOW for Amendment No. 5 should be revised as a result of the approved VE design alternatives. Based on the meetings, the SOW did not need to be revised, with the exception of some slight shifting some proposed boring locations. This shift will be presented to Guam EPA for approval. TG Engineers is scheduling a kickoff meeting in December. Field Investigation workplans are being developed for review, comment and approval by Guam EPA by January 2007. Field investigations will commence by February 2007, in the dry season. Commencement of fieldwork will be greatly dependent on right of entry/land acquisition. |
| J | Proposed Amendment No. 7: Incorporation of VE design alternatives selected by DPW and Guam EPA into the final design of the Layon Landfill | | | DPW and Guam EPA have been in negotiations with TG Engineers regarding Amendment No. 7 in late November 2006. TG Engineers has revised fee proposal to identify credits to Amendment No. 3 and 5, Part 1: Hydrogeological Field Investigations for work deleted from the scope as a result of incorporating the approved VE Design Alternatives selected by DPW & Guam EPA. DPW has sent TG Engineers questions/concerns regarding amendment no. 7 scope and fee in early December 2006. TG Engineers have stated that they will talk to their subconsultants and provide responses to DPW's questions/concerns. Once issues are clarified, Amendment no. 7 negotiations will be finalized. |

| Project | Task Description | Accomplishments | Anticipated/Date of Accomplishments | Status |
|---|---|---|---|---|
| **Supplemental Environmental Project** | | | | |
| A | Household Hazardous Waste Facility (HHWF) Design Contract with Jess T. Lizama & Associates, Inc. | | | DPW has selected a contractor and finalized fee negotiations. Contract Agreement was prepared in August 2006 for process, however there were the contract agreement was lost. A second contract agreement was made, however the Bureau of Budget Management and Research use a portion of the funding appropriated for the project for the Goverment House Project, which lead to a shortfall of the HHWF Design Contract. Funding has been identified and appropriated for the HHWF contract in early December 2006. The contract is scheduled to be processed for approval on 12/14/06. Anticipated issuance of NTP is on December 20, 2006 |
| B | Interim Household Hazardous Waste Collection Event | Guam EPA & DPW held a HHW collection event | 10/14/2006 | Conducted surveys at event that included questions on demographics. |
| **Hiring of Staff** | | | | |
| A | Chief Financial Officer | First Advertised Request for Proposals (RFP) | 8/10/2006, 8/11/2006, 8/14/2006 | One proposal was submitted to the CFO, and proposer failed to meet RFPs qualification requirement, so bid was cancelled and a second requests for proposals was advertised. |
| A-1 | | Second Advertised RFP | 9/28/2006, 9/29/2006, 10/2/2006 | One proposal was submitted by the same proposer of the first RFP, however the consultant again failed to meet the RFP qualifications, the project was cancelled. |
| B | Manager of Landfill Operations | First Advertised Request for Proposals (RFP) | 8/10/2006, 8/11/2006, 8/14/2006 | One proposal was submitted, and evaluated. Notice of intent to award was issued. However, the consultant consistenly failed to revise their fee proposal and SOW, twice with the deadlines specified, the project was cancelled. |
| C | Solid Waste Techncial Advisor | First Advertised Request for Proposals (RFP) | 8/10/2006, 8/11/2006, 8/14/2006 | Due to an insufficient amount of offerors for the SWT proposals, a second requests for proposals was advertised |
| C-1 | | Second Advertised RFP | 9/28/2006, 9/29/2006, 10/2/2006 | Four proposals were submitted. Proposal Evaluations were finalized December 12, 2006, and a notice of intent to award was issued to the selected consultant. The Consultant was instructed to prepare a SOW and fee proposal by 3:00 p.m. December 13, 2006. However, a letter was issued by the Consultant stating that the 24 hour deadline to provide a fee proposal, SOW, and initiate negotiations was not feasible. Consultant offered to provide a fee proposal and detailed SOW by January 11, 2007. DPW is considering alternative of possibly moving on to the next qualified proposer. DPW will seek consultation from CDCT attorneys on this issue. |

| Project | Task Description | Accomplishments | Anticipated/Date of Accomplishments | Status |
|---------|-----------------|-----------------|-------------------------------------|--------|
| **Procurement Advisor**<br>**A** | Procurement Packages for outsourcing solid waste residential collections | Draft Final Bid Packages were prepared. Residential Collection Route Maps and District allocations were prepared. Decal/bag system and Mayor's services have been identified. | Final Bid Package to be released 1/2007 | Draft Final Bid Packages are currently being reviewed by DPW for final approval by the Public Utilities Commission (PUC). Rate increase proceedings is anticipated for April 2007. |
| **B** | Procurement Packages for Operations and Closure Construction of Ordot Dump | | | Advisor is currently working on preparing the bid packages for the design and construction of the leachate management and removal system for the Ordot Dump prior to closure construction, and will include the procurement, purchase, and installation of truck weight scale at the Ordot Dump during operations. DPW has conducted research on truck weight scales for solid waste applications and has prepared a government cost estimate based on vendor price quotations. The advisor is also waiting for documents on the leachate management system for the closure design from DPW. DPW is currently working on obtaining workable, non-pdf electronic files of the Draft (40%) and Pre-Final (100%) closure design documents from their design consultant. |
| **C** | Procurement Packages for construction/operation of new landfill | | | Advisor is currently waiting for bid documents, and technical specifications from Landfill design consultant for review and finalization. Once bid package has been finalized by the Advisor, invitation for bids to construct and operate the new landfill will be released to the public. Our design consultant has issued a 100% design plans, specifications, and estimates for the new landfill access road, which is currently under final government review. Once these documents have been finalized by the design consultant they will be submitted to the Advisor. |
| **Land Acquisition of Layon Landfill Site**<br>**A** | Appraisals | Updated appraisals reports have been issued | 8/1/2006 | The Government of Guam have been in negotiations with land owners regarding land acquisition. Initiation of condemnation proceedings is under consideration. |
| **New Transfer Station**<br>**A** | Invitation for Bid for Design/Build/Operation of new transfer stations | | | DPW is working on preparations of bid packages, to include performance management contracts for solid waste employees. |

# ATTACHMENT 2

## LANDFILL COST SUMMARY

| | | | |
|---|---|---|---|
| 1.0 | Mobilization | $ | 2,704,000 |
| 2.0 | Building Permits | $ | 373,152 |
| 3.0 | Construction Survey & Staking | $ | 101,400 |
| 4.0 | Landfill Facilities ( Cell 1A ) | $ | 15,649,230 |
| 5.0 | Landfill Facilities ( Cell 1B ) | $ | 7,072,258 |
| 6.0 | Landfill Facilities ( Cell 2 ) | $ | 14,502,936 |
| 7.0 | Green Waste Process Area | $ | 32,955 |
| 8.0 | Fuel Storage Tank | $ | 155,102 |
| 9.0 | Water Steel Storage Tank | $ | 499,854 |
| 10.0 | Weigh Scales | $ | 300,473 |
| 11.0 | Site Parking and Utilities | $ | 1,153,303 |
| 12.0 | Administration Building | $ | 467,054 |
| 13.0 | Maintenance Building | $ | 1,054,983 |
| 14.0 | Generator Building | $ | 693,890 |
| | **TOTAL LANDFILL COST** | $ | 44,760,590 |

### Access Road Cost Summary

| | | | |
|---|---|---|---|
| | New Access Road | $ | 8,323,621 |
| | Dandan Road Improvement | $ | 6,479,133 |
| | | $ | 14,802,755 |

| Pay Items | Description | Qty. | Unit | Unit Cost | Cost | Remarks |
|---|---|---|---|---|---|---|
| 61904-0000 | Pipe Bollards | 48 | EA | $ 150 | $ 7,200 | Unit Rate Based on Previous Projects |
| | | | | Total Electrical Direct Cost | $ 2,106,423 | $ 2,106,423 |
| | | | | Contingency | 2% | $ 42,128 |
| | | | | Escalation | 3% | $ 63,193 |
| | | | | Overhead | 15% | $ 315,963 |
| | | | | Profit | 10% | $ 210,642 |
| | | | | Sub-Total | | $ 2,738,350 |
| | | | | GRT | 4.00% | $ 109,534 |
| | | | | Total Electrical Cost | | $ 2,847,884 |
| | | | | **COST SUMMARY** | | |
| | | | | CIVIL COST | | $ 13,161,078 |
| | | | | ELECTRICAL COST | | $ 2,847,884 |
| | | | | TOTAL PROJECT COST | | $ 16,008,962 |

2 of 2

Book 2
100% Submittal-Layon Landfill Road, Layon, Inarajan, Guam
November 20, 2006
p.6

Construction Cost Estimates

Book II - Page 6

ATTACHMENT 2

2 of 2

# ATTACHMENT 3

# Potential Cost Savings/Summary of Approved Layon Landfill Value Engineering Design Alternatives

Value Engineering Design Alternatives viable alternatives to enhance the project's value and functionality that were further developed by the VE team to include summary of original concept, a description of suggested change, cost comparison, listing of advantages and disadvantagesm and a brief narrative comparing the original design with the alternative.

| Creative Idea No. | Design Alternatives | Change in Performance | Selected Set's Potential Savings/(Costs) Initial | Selected Set's Potential Savings/(Costs) Life Cycle |
|---|---|---|---|---|
| MF-1 | Reintroduce/Recirculate Leachate into Landfill | +8% | $ - | 1,570,000.00 |
| MF-11 | Build leachate storage tank and truck to Treatment Plant during first few years of operation until leachate recirculation in lieu of pipeline | +6% | $ 2,562,000.00 | $ (351,000.00) |
| MF-19 | Recycle Gas Condensate into Landfill | +6% | $ - | (96,000.00) |
| FB-2 | Eliminate Bentonite Amended Soil on Sidesslopes and Bottom and Replace with Double Geomembrane Liner | +19% | $ 3,782,000.00 | $ - |
| FB-13 | Eliminate subtrain system is hydrogeologic Investigation Permits | +19% | $ 1,917,000.00 | $ 1,090,000.00 |
| CV-2/M-5 | Lower Base Grades, Lower Base Grades and Monitor Subdrain System in lieu of Groundwater Monitoring Network | -5% | $ 1,790,000.00 | $ - |
| AS-7 | Use Rigid Pavement System in lieu of Flexible Asphalt at Enrgance to Landfill | +4% | $ (314,000.00) | $ 296,000.00 |
| MS-1 | Build Soil Stockpile Area Outside of Landfill Cell Footprint | -6% | $ (146,000.00) | $ 2,053,000.00 |
| MS-16 | Begin Construction at South End of Site Rather than at North End of Site | +8% | $ 3,695,000.00 | $ - |
| M-3 | Delete Green Waste Area | +4% | $ 406,000.00 | $ 3,483,000.00 |
| | **TOTAL SAVINGS/(COSTS)** | | $ 13,692,000.00 | $ 8,045,000.00 |

Design Alternatives and their respective cost estimates and change in performance were obtained from the Draft Value Engineering Report for the Layon Municipal Sanitary Landfill, Inarajan, Guam, September 1, 2006.

ATTACHMENT 3

# ATTACHMENT 4

05/09/2005

**Ordot Dump Closure**
**Pre-Final Cost Estimate**

| Item | Description | Unit | Unit Rate | Quantity | Cost | Source/Justification |
|---|---|---|---|---|---|---|
| | **Mobilization and Miscellaneous Allowances** | | | | | |
| 1 | Mobilization | LS | 2,000,000.00 | 1 | $ 2,000,000 | Approximately 10% of total construction cost. |
| 2 | Temporary Erosion and Sediment Control Plan | LS | 7,500.00 | 1 | $ 7,500 | Based on engineer's estimate. |
| 3 | Traffic Control Plan | LS | 3,000.00 | 1 | $ 3,000 | Based on engineer's estimate. |
| 4 | Safety Program | LS | 5,000.00 | 1 | $ 5,000 | Based on engineer's estimate. |
| 5 | Road Sweeping | LS | 50,000.00 | 1 | $ 50,000 | Based on engineer's estimate. |
| 6 | Groundwater Monitoring Wells | EA | 12,000.00 | 4 | $ 48,000 | Based on previous comparable project. |
| 7 | Design of Fugitive Emissions Control Plan | LS | 3,000.00 | 1 | $ 3,000 | Based on engineer's estimate. |
| 8 | NPDES Permit During Construction | LS | 10,000.00 | 1 | $ 10,000 | Based on engineer's estimate. |
| | **Mobilization and Miscellaneous Allowance Subtotal** | | | | $ 2,126,500 | |
| | **EARTHWORK** | | | | | |
| 9 | Stripping | AC | 3,000.00 | 60.0 | $ 180,000 | Unit rate based on previous comparable project winning bid. Quantity based on entire closure area + area of detention pond. |
| 10 | Prepared Subgrade | AC | 3,000.00 | 55.0 | $ 165,000 | Unit rate based on previous comparable project winning bid. Quantity based on entire closure area. |
| 11 | Over-excavation | CY | 20.00 | 200 | $ 4,000 | Unit rate based on RS Means. Assumed excavation in common earth using hydraulic excavator. |
| 12 | Paved roadways | LF | 62.50 | 7,900 | $ 493,750 | Unit rate based on vendor quotes, including shipping and installation. Unit rate includes 3" A.C., 16" of base course, 4" depth geocell, and compaction. |
| 13 | Quarry Spalls | TN | 30.00 | 108 | $ 3,240 | Unit rate based on vendor quote including delivery. Quantity based on estimated Hawaiian Rock for material cost including delivery. |
| 14 | Provide for Trench Excavation Safety Systems | LF | 2.00 | 5,600 | $ 11,200 | Unit rate based on previous comparable project winning bid. Quantity based on length of leachate collector trench Type 1 & Type 2. |
| | **Earthwork Subtotal** | | | | $ 857,190 | |
| | **Landfill Gas System** | | | | | |
| 15 | LFG Monitoring Probes | EA | 12,000.00 | 5 | $ 60,000 | Based on engineer's estimate. Includes drill, dispose spoils, plow/fittings, bentonite seal |
| 16 | LFG Interceptor | LF | 20.00 | 6,405 | $ 128,100 | Unit rate based on previous comparable project winning bid. Includes trench, haul/dispose of spoils, geotextile, perforated CPE pipe/fittings, restore surfaces. |
| 17 | LFG Valve Station | EA | 2,500.00 | 35 | $ 87,500 | Based on engineer's estimate. Includes trench, haul/dispose spoils geotextile, HDPE pipe & fittings, valves, backfill, bentonite, boots |
| 18 | LFG Extraction Wells | EA | 9,200.00 | 9 | $ 82,800 | Based on engineer's estimate. Includes drill, dispose spoils pipe/fittings for casing, gravel, bentonite seal, boot, wellhead valve station |
| 19 | LFG Headers | LF | 32.00 | 7,630 | $ 244,160 | Based on engineer's estimate. Includes 4", 6", 10" HDPE pipe & fittings, trenching, haul/dispose spoils |
| 20 | LFG Flare Station | LS | 250,000.00 | 1 | $ 250,000 | Based on engineer's estimate. Includes flare skid, blower skid, connect to site electrical & piping; concrete slabs; gravel surfacing; security fence |
| | **Landfill Gas System Subtotal** | | | | $ 866,710 | |
| | **Leachate System** | | | | | |
| 21 | Leachate Collector Trench - Type 1 | LF | 64.00 | 4,400 | $ 281,600 | Unit rate based on RS Means and vendor quote. Includes drain gravel, HDPE geomembrane, geotextile, 12" CPE pipe, 4" HDPE pipe, and 12" HDPE pipe. |
| 22 | Leachate Collector Trench - Type 2 | LF | 80.00 | 1,200 | $ 96,000 | Unit rate based on RS Means and vendor quotes. Includes trench, haul/dispose of spoils, geotextile, drain rock, geotextile, and 12" HDPE pipe. |
| 23 | Leachate Collection Trench | LF | 3.50 | 26,300 | $ 92,050 | Unit rate based on RS Means and vendor quotes. Includes excavation and vendor quotes. Includes geotextile, geocomposite, and drain gravel. |
| 24 | Leachate Collector Cleanout | EA | 2,000.00 | 9 | $ 18,000 | Unit rate based on previous comparable project winning bid. Based on engineer's estimate. |
| 25 | Leachate Conveyance Pipe | LF | 10.00 | 1,200 | $ 12,000 | Unit rate based on vendor's quote. Includes 4" HDPE pipe, installation, and delivery. Excavation and backfill is addressed in the "Leachate Trench" costs. |
| 26 | Leachate Storage Single-Wall Tank | EA | 87,000.00 | 1 | $ 87,000 | Unit rate based on vendor's quote. Includes steel tank, delivery, fittings, and installation. |
| 27 | Leachate Containment Structure | EA | 26,400.00 | 1 | $ 26,400 | Unit rate based on vendor's quote. Includes tank foundation and containment wall. All concrete assumed to be reinforced. |
| 28 | Leachate Conveyance Pipe to Tank Connection | LS | 500.00 | 1 | $ 500 | Based on engineer's estimate. |
| 29 | Outlet Pipe | LS | 6,000.00 | 1 | $ 6,000 | Unit rate based on vendor's quote. |
| 30 | Flowmeter | LS | 4,000.00 | 1 | $ 4,000 | Unit rate based on previous comparable project. |
| 31 | Leachate Pump Station | LS | 136,000.00 | 1 | $ 136,000 | Unit rate based on vendor quote (Pump Tech Inc). |
| 32 | Temporary Leachate Diversion | LS | 20,000.00 | 1 | $ 20,000 | Based on engineer's estimate. |
| | **Leachate System Subtotal** | | | | $ 779,550 | |
| | **Capping System** | | | | | |
| 33 | Geocomposite | SY | 6.50 | 354,130 | $ 2,301,845 | Unit rate based on quote from GSE including shipping and installation. Quantity based on entire side + 2nd layer on benches & deck + 2nd layer on areas with 2.8:1 or shallower slopes. |
| 34 | HDPE Geomembrane - 80 mil textured | SY | 7.50 | 265,250 | $ 1,989,375 | Unit rate based on quote from GSE for double sided textured HDPE. Quote includes delivery and installation. |
| 35 | Capping Layer 1 | CY | 5.50 | 301,125 | $ 1,656,188 | Unit rate based on RS Means and vendor quote. Quantity is the entire site minus rips deck and lower areas with 2.8:1 or shallower slopes. |
| 36 | Native Fill | CY | 15.00 | 98,218 | $ 1,473,150 | Unit rate based on RS Means, assuming 8" High 9 gauge wire, aluminized steel, and two double gates. |
| 37 | Chain Link Fence | LS | 30,000.00 | 1 | $ 30,000 | Unit rate based on RS Means, assuming 8" High, 9 gauge wire, aluminized steel, and two double gates. |
| 38 | Infiltration Collector | LF | 21.70 | 26,300 | $ 570,710 | Unit rate based on vendor quote and RS Means. Includes drain gravel, geotextile, and 4" CPE pipe. Quantity based on fence surrounding Dump on north side. |
| 39 | Rip Rap Ditch | LS | 50,000.00 | 1 | $ 50,000 | Lump sum based on previous comparable project. |
| 40 | Anchor Trench | LF | 6.00 | 22,000 | $ 132,000 | Unit rate based on RS Means for excavation and relocation of soil to surrounding berms. Quantity based on perimeter and downslope anchor trenches. |
| | **Capping System Subtotal** | | | | $ 7,848,105 | |
| | **Surface Water Systems** | | | | | |
| 41 | ABM Perimeter Ditch | LF | 135.00 | 4,000 | $ 540,000 | Unit rate based on RS Means and vendor quote. Includes ABM and excavation. |
| 42 | TBM Perimeter Ditch | LF | 33.00 | 2,900 | $ 95,700 | Unit rate based on vendor quote and RS Means. Includes turf reinforcement matting and excavation. Quantity based on north perimeter ditch and ditch on north side of Deer Drive. |
| 43 | Perimeter Ditches | LF | 44.00 | 26,300 | $ 1,157,200 | Unit rate based on vendor quote and RS Means. Includes ABM and excavation. |
| 44 | Chutes (Slope and Bench) | LF | 153.00 | 3,630 | $ 555,390 | Unit rate based on vendor quote and RS Means. Includes ABM, native fill, and ECM. |
| 45 | Berms | LF | 340.00 | 4,630 | $ 1,574,200 | Unit rate based on RS Means and vendor quote. Includes ABM native fill, and ECM. |
| 46 | Detention Pond Earthwork | LS | 33,000.00 | 1 | $ 33,000 | Unit rate based on RS Means for excavation and relocation of soil to surrounding berms. |
| 47 | Detention Pond Structures | LS | 96,000.00 | 1 | $ 96,000 | Based on engineer's estimate. Including spillway, inlet, outlet, manhole, riprap, erosion control blanket-type 1, and update weirs. |
| 48 | Detention Pond | SY | 9.30 | 5,100 | $ 47,430 | Unit rate based on vendor quote including HDPE geomembrane and geotextile. |
| | **Surface Water Systems Subtotal** | | | | $ 4,939,920 | |

ATTACHMENT 4

Construction Cost Estimate

ATTACHMENT 4

1 of 4

Ordot Dump Closure Design Report 100% Submittal, July 2005

tmyen1635\Ordot Dump Closure\Calculations\Cost Estimate\Final\Final Cost Estimate_rev01

Ordot Dump Closure
Pre-Final Cost Estimate

| Item | Description | Unit | Unit Rate | Quantity | Cost | Source/Justification |
|---|---|---|---|---|---|---|
| | **Mechanically Stabilized Earth (MSE) Wall System** | | | | | |
| 49 | Utility/Pavement Relocation | CY | 10.00 | 135,450 | 1,354,500 | Unit rate based on RS Means assuming backhoe with 3 CY bucket, loading onto dump truck, and transporting waste to top of landfill. |
| 50 | Waste Excavation & Replacement | CY | 20.00 | 50,300 | 1,006,000 | Unit rate based on RS Means assuming 12 CY dump truck, transportation to and from temporary stockpile, placement, and compaction. |
| 51 | Reinforced Backfill | CY | 15.00 | 32,000 | 480,000 | Unit rate based on RS Means assuming soil from Guam International Airport. |
| 52 | Welded Wire Fabric | SY | 54.00 | 2,415 | 130,410 | Unit rate based on vendor quote for face area of wall. |
| 53 | Geogrid - Type 2 | SY | 6.00 | 36,120 | 216,720 | Unit rate based on vendor quote from Tensar for material, shipping, and installation. Quantity includes 2.5% material waste factor. |
| 54 | Geogrid - Type 3 | SY | 5.50 | 15,680 | 86,240 | Unit rate based on vendor quote from Tensar for material, shipping, and installation. Includes 2.5% waste material. |
| 55 | Erosion Control Blanket - Type 1 | SY | 1.80 | 6,600 | 11,880 | Unit rate based on vendor quote (ACF Wall). |
| 56 | Seeding | SY | 1.00 | 2,415 | 2,415 | Unit rate based on RS Means. Assumes slope mix, hydro or air seeded with mulch & fertilizer. |
| 57 | Topsoil | CY | 22.00 | 700 | 15,400 | Unit rate based on quote from Hawaiian Rock for material cost including delivery. Based on RS Means for installation. |
| | MSE Wall System Subtotal | | | | 3,303,565 | Reduction due to shortening wall length and decrease in wall height. |
| | **Erosion and Sedimentation Control** | | | | | |
| 58 | Silt Fence | LF | 2.00 | 18,000 | 36,000 | Unit rate based on RS Means assuming polypropylene, 3' high, adverse condition. Quantity based on silt fence surrounding Dump. Estimated 12' wide Dero Drive ditch and cut-off drains. Fence placed every 100 ft for ditch and west stream. Placed at 2 locations each for both streams on both sides. |
| 59 | Planting | AC | 3,000.00 | 30 | 90,000 | Unit rate based on RS Means assuming hydro-seeding, with mulch and fertilizer. Quantity based on all bench areas and deck. |
| 60 | Geogrid Planting | AC | 1,850.00 | 30 | 55,500 | Unit rate based on RS Means. Quantity based on sloped areas. |
| 61 | Temporary Soil Stabilization | LS | 6,000.00 | 1 | 6,000 | Based on engineer's estimate, including sand bags, sand bag berms, plastic sheeting, bonded fiber matrix, straw matting, etc. |
| 62 | Temporary Silt Fence Check Dam | EA | 40.00 | 22 | 880 | Unit rate based on vendor's quote. |
| | Erosion and Sedimentation Control Subtotal | | | | 188,380 | |
| | **Electrical System** | | | | | |
| 63 | Selective Demolition, Operations Building | EA | 8,375.00 | 1 | 8,375 | Based on engineer's estimate including core drilling, removal of existing electrical conduits, and patchwork. |
| 64 | Utility Service Charge / pad-mounted transformer | EA | 5,500.00 | 1 | 5,500 | Based on engineer's estimate. |
| 65 | Transformer Pad, RC 6'x6'x6" | CY | 431.00 | 1 | 431 | Unit rate based on 2005 Means Electrical Cost Data. Assumes: Foundation Mat under 10CY. Includes: forms, reinforcing steel, & finishing |
| 66 | Generator Pad, RC 10'x10'x9" | CY | 431.00 | 2 | 862 | Unit rate based on 2005 Means Electrical Cost Data. Assumes: Foundation Mat under 10CY. Includes: forms, reinforcing steel, & finishing |
| 67 | Pull Box, 24"x16"x15" HDPE | EA | 1,038.00 | 10 | 10,380 | Unit rate based on 2005 Means Electrical Cost Data. Assumes fiberglass, wall mount, and quick release door |
| 68 | Saw-cut Existing Pavement | SY | 9.00 | 14 | 126 | Unit rate based on 2005 Means Electrical Cost Data. |
| 69 | Trenching, Excavation, & Backfill | SY | 5.00 | 100 | 500 | Unit rate based on 2003 Means Electrical Cost Data. Assumes: 3/8 CY Backhoe, 2' wide, 3' deep, backfill and load from stockpile, compaction, and removal of excess spoil |
| 70 | Chain Link Fence | LF | 47.00 | 52 | 2,444 | Unit rate based on 2004 Means Heavy Construction Cost Data. Assumes: 6 gauge wire, 2.5" line posts, galvanized, set in concrete, 3-strands barb wire, & 8' high. |
| 71 | Chain Link Gate | EA | 230.00 | 2 | 460 | Unit rate based on 2004 Means Heavy Construction Cost Data. Assumes: 8' high. |
| 72 | Pavement Restoration | SY | 66.00 | 34 | 2,244 | Unit rate based on 2004 Means Heavy Construction Cost Data. Assumes: 8" thick asphalt-concrete |
| 73 | Grounding, Transformer | EA | 1,000.00 | 1 | 1,000 | Unit rate based on 2005 Means Electrical Cost Data. Includes ground rods, connections, copper wire, and over-excavation |
| 74 | Grounding, Generator | EA | 1,200.00 | 1 | 1,200 | Unit rate based on 2005 Means Electrical Cost Data. Includes ground rods, connections, copper wire, and over-excavation |
| 75 | Grounding, Service | EA | 900.00 | 1 | 900 | Based on engineer's estimate. Includes ground rods, connections, copper wire, and over-excavation |
| 76 | Conduit, 6" PVC | LF | 25.00 | 100 | 2,500 | Unit rate based on 2005 Means Electrical Cost Data. Does not include trench excavation or backfill. Excavation and backfill will be addressed separately. |
| 77 | Conduit, 4" RGS | LF | 7.50 | 200 | 1,500 | Unit rate based on 2005 Means Electrical Cost Data. Does not include trench excavation or backfill. Excavation and backfill will be addressed separately. |
| 78 | Conduit, 2" PVC | LF | 11.00 | 2800 | 30,800 | Unit rate based on 2005 Means Electrical Cost Data. Does not include trench excavation or backfill. Excavation and backfill will be addressed separately. |
| 79 | Conduit, 2" RGS | LF | 27.00 | 50 | 1,350 | Unit rate based on 2005 Means Electrical Cost Data. Does not include trench excavation or backfill. Excavation and backfill will be addressed separately. |
| 80 | Conduit, 1" PVC | LF | 10.00 | 40 | 400 | Unit rate based on 2005 Means Electrical Cost Data. Does not include trench excavation or backfill. Excavation and backfill will be addressed separately. |
| 81 | Conduit, 1" RGS | LF | 16.00 | 30 | 480 | Unit rate based on 2005 Means Electrical Cost Data. |
| 82 | Conduit, 3/4" RGS | LF | 13.00 | 100 | 1,300 | Unit rate based on 2005 Means Electrical Cost Data. |
| 83 | Wire, 2/0 copper | CLF | 464.00 | 116 | 53,824 | Unit rate based on 2005 Means Electrical Cost Data. Material assumed to be 600 volt type, THW, stranded, #14 |
| 84 | Wire, 1/0 copper | CLF | 309.00 | 7 | 2,163 | Unit rate based on 2005 Means Electrical Cost Data. Material assumed to be 600 volt type, THW, stranded, #14 |
| 85 | Wire, 4 awg copper | CLF | 178.00 | 28 | 4,984 | Unit rate based on 2005 Means Electrical Cost Data. Material assumed to be 600 volt type, THW, stranded, #14 |
| 86 | Wire, 6 awg copper | CLF | 136.00 | 4 | 544 | Unit rate based on 2005 Means Electrical Cost Data. Material assumed to be 600 volt type, THW, stranded, #14 |
| 87 | Wire, 12 awg copper | CLF | 68.00 | 4 | 272 | Unit rate based on 2005 Means Electrical Cost Data. Material assumed to be 600 volt type, THW, stranded, #14 |
| 88 | Main circuit breaker, 200A, NEMA 1 enclosure | EA | 842.00 | 1 | 842 | Unit rate based on 2005 Means Electrical Cost Data. Assume double position, 4 terminal, & 200A |
| 89 | Panelboard, 480V with 3 feeder CBs, 200A | EA | 2,056.00 | 1 | 2,056 | Unit rate based on 2005 Means Electrical Cost Data. Assume double position, 4 terminal, & 200A |
| 90 | ATS, 200A | EA | 6,101.00 | 1 | 6,101 | Unit rate based on 2005 Means Electrical Cost Data. Assume estimated 480V, 3 pole, 225A |
| 91 | Panelboard, 480V with 3 feeder CBs, 200A | EA | 10,545.00 | 1 | 10,545 | Unit rate based on 2005 Means Electrical Cost Data. Assume: 400A Main, 42 circuits, with three 3-pole CB's. |
| 92 | Mercvpower zone, 25 kVA | EA | 6,530.00 | 1 | 6,530 | Based on engineer's estimate. |
| 93 | Diesel engine generator set, 100kW | EA | 46,719.00 | 1 | 46,719 | Unit rate based on 2005 Means Electrical Cost Data. Estimate includes battery, charger, muffler, automatic transfer switch & day tank |
| 94 | Sub-base fuel tank, 330 gallons | EA | 1,870.00 | 1 | 1,870 | Based on engineer's estimate. 350 gallon tank cost $1,100 (generator set), assumed above-ground, single wall, horizontal cylindrical shape. Multiplied by 1.7 to account for shipping and installation labor. |
| | Electrical System Subtotal | | | | 210,008 | |
| | **Subtotal** | | | | 20,318,228 | |
| | Gross Receipt Tax @ 4% | | | | 812,733 | |
| | Total with Tax | | | | 21,131,061 | |
| | Total with Territorial Taxes | | | | 21,131,064 | |
| | Cost Escalation Due to Inflation Over 2 Years @ 6% | | | | 1,267,864 | |
| | **Total Estimated Project Cost** | | | | 22,398,925 | This value is 4~10% at Bid time. |

Ordot Dump Closure Design Report 100% Submittal, July 2005

H:\common\163\Ordot Dump Closure\Calculations\Cost Estimate\Final\Final Cost Estimate_rev01 Dump

**Potential Cost Savings/Summary of Recommended Ordot Dump Value Engineering Design Alternatives:** Set No.: 1

Value Engineering Design Alternatives viable alternatives to enhance the project's value and functionality that were further developed by the VE team to include summary of original concept, a description of suggested change, cost comparison, listing of advantages and disadvantagesm and a brief narrative comparing the original design with the alternative.

| Creative Idea No. | Design Alternatives | Change in Performance | VE Set No. 1 Potential Savings/(Costs) | |
|---|---|---|---|---|
| | | | Initial | Life Cycle |
| MF-5 | In lieu of Large Detention Pond, Use Smaller Independent Desiltation System in Various Areas (e.g. Distributive Flow) | +21.7% | $ 23,000.00 | |
| MF-6 | Put gas collection headers and piping above barrier layer but below grade | 0% | $ 26,000.00 | - |
| MF-12 | Utilize Pipeline to Convey Leachate to Sanitary Sewer System | +7.5% | $ 90,000.00 | $ 7,214,000.00 |
| MF-14 | Eliminate Leachate Drainage Layer (Geocomposite) on Top Deck | 0% | $ 29,000.00 | $ - |
| MF-15 | Replace Articulated Block Mat With Asphalt | +8.5% | $ 1,183,000.00 | $ - |
| MF-27 | Reevaluate Input Parameters to HELP Model for Site Specific Reasonableness to Ordot | +15.1 | N/A | N/A |
| MF-28 | Hyrdoseed Slopes and Benches (with Tackling Compound) Early in the Construction Process to Eliminate Detention Pond | +6.6% | $ 2,163,000.00 | $ - |
| ED-2 | Change Site Geometry with Benches at 45- to 50- Foot Height (or Less as Appropriate) as in California | +18.9% | $ 1,722,000.00 | $ - |
| ED-4 | Replace MSE Wall at Toe of West Edge with Shorter Soldier Beam and Concrete Lagging Wall | +8.5% | $ 4,149,000.00 | $ - |
| ED-9 | Replace HDPE with Geosynthetic Clay Liner on Top Deck | 0% | $ 105,000.00 | |
| ED-13 | Use Other Flexible material Liners in lieu of HDPE | 0% | $ 1,782,000.00 | |
| GI-9 | Replace Candlestick Flare with Enclosed Flare | +7.5% | $ (161,000.00) | |
| | TOTAL SAVINGS/(COSTS) | | $ 11,111,000.00 | $ 7,214,000.00 |

*Design Alternatives and their respective cost estimates and change in performance were obtained from the Value Engineering Report for the Ordot Dump Closure, Guam, December 2005.*

**Potential Cost Savings/Summary of Recommended Ordot Dump Value Engineering Design Alternatives:** Set No. 2

Value Engineering Design Alternatives viable alternatives to enhance the project's value and functionality that were further developed by the VE team to include summary of original concept, a description of suggested change, cost comparison, listing of advantages and disadvantagesm and a brief narrative comparing the original design with the alternative.

| Creative Idea No. | Design Alternatives | Change in Performance | VE Set No. 2 Potential Savings/(Costs) | |
|---|---|---|---|---|
| | | | Initial | Life Cycle |
| MF-5 | In lieu of Large Detention Pond, Use Smaller Independent Desiltation System in Various Areas (e.g. Distributive Flow) | +21.7% | $ 23,000.00 | $ - |
| MF-7 | Utilize Passive Gas Collection System | +8.5% | $ 994,000.00 | $ - |
| MF-12 | Utilize Pipeline to Convey Leachate to Sanitary Sewer System | +7.5% | $ 90,000.00 | $ 7,214,000.00 |
| MF-14 | Eliminate Leachate Drainage Layer (Geocomposite) on Top Deck | 0% | $ 29,000.00 | $ - |
| MF-15 | Replace Articulated Block Mat With Asphalt | +8.5% | $ 1,183,000.00 | $ - |
| MF-27 | Reevaluate Input Parameters to HELP Model for Site Specific Reasonableness to Ordot | +15.1 | N/A | N/A |
| MF-28 | Hydroseed Slopes and Benches (with Tackling Compound) Early in the Construction Process to Eliminate Detention Pond | +6.6% | $ 2,163,000.00 | $ - |
| ED-2 | Change Site Geometry with Benches at 45- to 50- Foot Height (or Less as Appropriate) as in California | +18.9% | $ 1,722,000.00 | $ - |
| ED-4 | Replace MSE Wall at Toe of West Edge with Shorter Soldier Beam and Concrete Lagging Wall | +8.5% | $ 4,149,000.00 | $ - |
| ED-9 | Replace HDPE with Geosynthetic Clay Liner on Top Deck | 0% | $ 105,000.00 | $ - |
| ED-13 | Use Other Flexible material Liners in lieu of HDPE | 0% | $ 1,782,000.00 | |
| | **TOTAL SAVINGS/(COSTS)** | | $ 12,240,000.00 | $ 7,214,000.00 |

*Design Alternatives and their respective cost estimates and change in performance were obtained from the Value Engineering Report for the Ordot Dump Closure, Guam, December 2005.*

# ATTACHMENT 5

# Ordot Dump Preliminary Cost Estimate: Design/Construction of Leachate Collection and Management System during Operations
## 11/13/2006

ATTACHMENT 5

| Item | Description | Unit | Unit Rate | Quantity | Cost | Source/Justification |
|---|---|---|---|---|---|---|
| | **DESIGN COSTS:** | | | | | |
| | Design of Leachate Collection & Management System Prior to Closure | | | | $ 127,917.92 | Engineer's Cost Estimate, 10% of Construction Costs |
| | | | | | | |
| | **CONSTRUCTION COSTS:** | | | | | |
| | **Leachate System** | | | | | |
| | Leachate Collector Trench - Type 1 | LF | $ 64.00 | 4400 | $ 281,600.00 | Ordot Dump Closure Pre-Final Cost Estimate, 5/6/05 |
| | Leachate Collector Trench - Type 2 | LF | $ 80.00 | 1200 | $ 96,000.00 | Ordot Dump Closure Pre-Final Cost Estimate, 5/6/05 |
| | Leachate Collector Cleanout | EA | $ 2,000.00 | 9 | $ 18,000.00 | Ordot Dump Closure Pre-Final Cost Estimate, 5/6/05 |
| | Leachate Storage Single-Wall Tank | EA | $ 87,000.00 | 1 | $ 87,000.00 | Ordot Dump Closure Pre-Final Cost Estimate, 5/6/05 |
| | Secondary Containment Structure | EA | $ 26,400.00 | 1 | $ 26,400.00 | Ordot Dump Closure Pre-Final Cost Estimate, 5/6/05 |
| | Leachate Conveyance Pipe to Tank Connection | LS | $ 500.00 | 1 | $ 500.00 | Ordot Dump Closure Pre-Final Cost Estimate, 5/6/05 |
| | Outlet Pipe | LS | $ 6,000.00 | 1 | $ 6,000.00 | Ordot Dump Closure Pre-Final Cost Estimate, 5/6/05 |
| 9 | Flowmeter | LS | $ 4,000.00 | 1 | $ 4,000.00 | Ordot Dump Closure Pre-Final Cost Estimate, 5/6/05 |
| | Leachate Pump Station | EA | $ 136,000.00 | 1 | $ 136,000.00 | Ordot Dump Closure Pre-Final Cost Estimate, 5/6/05 |
| | **Leachate System Subtotal** | | | | $ 655,500.00 | |
| | **Additional Costs** | | | | | |
| | Contingency | | | 20% | $ 131,100.00 | |
| | Inflation | | | 3% | $ 19,665.00 | |
| | Overhead | | | 15% | $ 98,325.00 | |
| | Profit | | | 10% | $ 65,550.00 | |
| | **Subtotal of Additional Costs and Leachate System Subtotal** | | | | $ 970,140.00 | |
| | GRT @ 4% | | | 4% | $ 38,805.60 | |
| | **Total for Leachate System** | | | | $ 1,008,945.60 | |
| | | | | | | |
| | **Leachate Conveyance to Sanitary Sewer System** | | | | | |
| | Installation of gravity flow pipeline | LF | $ 56.00 | 3200 | $ 179,200.00 | Engineers Estimate for a installation of 12" PVC sewer pipeline; 3200' to closest sewer connection from the site |
| | Subtotal of Leachate Conveyance to Sanitary Sewer System | | | | $ 179,200.00 | |
| | **Additional Costs** | | | | | |
| | Contingency | | | 20% | $ 35,840.00 | |
| | Overhead | | | 15% | $ 26,880.00 | |
| | Profit | | | 10% | $ 17,920.00 | |
| | **Subtotal of Additional Costs and Leachate Conveyance to Sanitary Sewer System** | | | | $ 259,840.00 | |
| | GRT @ 4% | | | 4% | $ 10,393.60 | |
| | **Total for Leachate Conveyance to Sanitary Sewer System** | | | | $ 270,233.60 | |
| | | | | | | |
| | **Total Design Costs** | | | | $ 127,917.92 | |
| | **Total Construction Costs** | | | | $ 1,279,179.20 | |
| | **GRAND TOTAL** | | | | $ 1,407,097.12 | |
| | **SAY** | | | | $ 1,500,000.00 | |

# ATTACHMENT 6

Department of Public Works
Consent Decree Meeting Agenda
Friday 27, 2005
8:30 a.m.

1.   Call In:

     a.    Attendance / Introductions

           DPW Representatives
           GEPA Representatives
           Assistant AG
           U.S. EPA Representatives
           Others

2.   Ordot Closure and Cessation of Pollutant Discharge into Waters of U.S.
     All documents below were submitted to U.S. EPA, Region IX and were received on 5/11/05,
     postmark date is on 5/6/05. Distributed 4 sets of each to GEPA for concurrent review. 30-day
     review period is on-going. Comments are being prepared and are expected to be delivered to
     consultant by 6/6/05 or earlier. ( 6/15/05 )

     a.    CD paragraph 8b(i) - Draft (90%) Closure Plan

           • DPW is working on implementing measures to cease the leachate contamination of
             the Lonfit River, prior to the closure construction phase. These measures would
             contain the leachate on-site by constructing a cut-off wall and trench system. Bio-
             reactive processes (ex. Recirculation of leachate and spraying) are also being
             explored.
           • On board review of the design is scheduled for 6/ 21/05 and 6/22/05. Solution to
             leachate disposal system will be presented and determined then. During this on board
             review, DPW will also discuss with the Consultant, Task IV of the Ordot Dump
             Closure Design.

     b.    CD paragraph 8b(ii) – Draft Final Plan and Post Closure Schedule

           • On board review of the Draft Final Post-Closure Plan and Schedule is also
             scheduled for 6/21/05 and 6/22/05.

     c.    CD paragraph 8b(iii) – Closure Supplement to Temporary Operations Permit

           • On board review of the Closure Supplements is also scheduled for 6/21/05
             and 6/22/05.

3.   Construction and Operation of New Municipal Solid Waste Landfill

     a.    CD paragraph 9a – Complete an EIS to compare at least 3 sites

           • In-house review of the Draft Supplemental EIS was completed and released
             to the public on May 18, 2005. DPW sent a hard copy of the Draft
             Supplemental EIS via air-courier to Ben Machol of U.S. EPA on May 26,
             2005 and is expected to arrive at the U.S. EPA office on May 30, 2005
             U.S.EPA time (May 31, 2005 Guam time). In addition, DPW sent an
             electronic copy to Ben Machol of U.S. EPA via e-mail on May 26, 2005.
           • Public meeting was held at the Inarajan Mayor's Office on May 24, 2005 to
             explain and receive comments on the SEIS.
           • Review comments will be accepted throughout the rest of May and through
             June 16. Final Supplemental EIS (SEIS) will be released on July 16, 2005.

142

          b.       CD paragraph 9b -- Draft (40%) MSWLF Plan

- Project progress is on schedule. Hydrogeologic/Geotechnical fieldwork is on-going and is expected to be completed by 7/15/05. Draft 40% Design is expected to be completed and submitted for approval by DPW on 8/1/05 and will be submitted to U.S. EPA on 8/4/05.

4.     Financing Closure of Ordot Dump and Construction and Operation of New MSWLF

          a.       CD paragraph 10a – Submit Financial Plan

- DPW has obtained preliminary information related to the private activity bond from GEDCA. Meeting with GEDCA to finalize data and financial component of FDBOT on Friday, 5/27/05 at 2:00 p.m.
- Solid Waste Division is implementing strategies for enforcement collection of tipping fees for commercial waste haulers to increase solid waste operation funds.
- 1st draft of legislation to revise defects in the current laws, addressing siting, and zoning issues with the Layon site and the implementation of an interim tipping fee legislation, will be ready by May 31st.

5.     Reporting Requirements

          a.       DPW Quarterly Report -- Report No. 5 is due July 21, 2005

6.     Supplemental Environmental Project -- (Roland Gutierrez of GEPA to provide status)

          a.       SEP (Quarterly) Report – Next Report to U.S. EPA is due July 21, 2005

7.     Other Related Items

          a.       Schedule Next Conference Call   6/24/05 -

                                                   6/20/ -

# ATTACHMENT 7



GOVERNOR
Felix P. Camacho
LT. GOVERNOR
Kaleo S. Moylan

**public works**
DIPATTAMENTON CHE'CHO' PUPBLEKO
ACTING DIRECTOR
Lawrence P. Perez
DEPUTY DIRECTOR
Michael C. James

SEP 1 2 2005

Mr. Ben Machol
Manager, Pacific Islands Office (CMD-6)
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Reference:    *Proposed Revised Ordot Consent Decree Schedule*

Dear Ben,

As discussed previously, the Department of Public Works (DPW) have been working diligently with our Solid Waste Technical Advisors, Timothy Raibley and Peter Deibler of Brown Vence & Associates (BVA), the Guam Environmental Protection Agency (EPA), the Office of the Attorney General, Guam Economic Development and Commerce Authority (GEDCA), and other consultants to develop a comprehensive revised Ordot Consent Decree Schedule based on a realistic and feasible approach to complete the tasks mandated by the Ordot Consent Decree (U.S. District Court, Territory of Guam, Civil Case No. 02-00022) and other components necessary to ensure a significant improvement in Guam's Solid Waste Operations. This proposed revised Ordot Consent Decree Schedule is attached and submitted to you for review, discussion and recommendation for a favorable approval.

Included also as an attachment, is a memorandum from our Solid Waste Technical Advisors to DPW for your reference. This memorandum describes in detail our approach and process for developing the proposed revised Ordot Consent Decree schedule.

As you will notice, the revised schedule includes several tasks that must be completed by GEDCA, specifically regarding financial issues. Accordingly, if all the required parties approve this schedule, in one form or the other, we request GEDCA be included as a party bounded to this modified Ordot Consent Decree.

542 North Marine Drive, Tamuning Guam 96913 ☻ Tel (671) 646-3131 / 3259 ☻ Fax (671) 649-6178

We greatly appreciate your patience with regards to the development of this schedule, and we look forward to your favorable consideration regarding our requests. We expect an in depth discussion with you of the schedule or memorandum. Please contact me at (671) 646-313 at your convenience.

Sincerely,

Lawrence P. Perez
**Acting Director**

ATTORNEY CONFIDENTIALITY
ATTORNEY-CLIENT PRIVALEGE

## Summary of Proposed Revisions to the Schedule

In summary, Guam proposes revisions to the Schedule as follows:

1. Insertion of a Value Engineering process in the Ordot closure design to evaluate the design with respect to environmental adequacy and economical appropriateness.

2. Insertion of a new Public Project Financing and Public Utility Rate Setting procedures to fund the acquisition of private lands and to provide financing of Ordot and Dan Dan construction costs.

3. Insertion of a process to acquire the private lands for public use related to the access and development of the Dan Dan site.

4. Insertion of contractor bid and procurement processes for the Ordot closure and Dan Dan construction, and a non-critical path schedule for securing an operator for Dan Dan.

5. Insertion of a new revision of the Guam Solid Waste Management Plan managed by Guam EPA.

6. Insertion of a Transfer Station Planning and Development process to provide planning, site selection, acquisition, design, and construction of the appropriate facilities to serve the reconfigured post-Ordot waste management system.

7. Insertion of a process to procure private services regarding waste collection and diversion activities.

8. Insertion of a process to evaluate, and likely to procure private Ordot Post Closure Maintenance and Monitoring services.

9. Coordination of the Ordot closure to correlate with the development of the new landfill to assure adequate time to complete the closure after wastes have been directed to the new landfill.

BROWN, VENCE & ASSOCIATES | 7

# ATTACHMENT 8



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**REGION 9**
75 Hawthorne Street (CED-6)
San Francisco, CA 94105

October 26, 2005

<u>**Via Email and Facsimile**</u>

1 27

Janet

Larry Perez, Acting Director
Department of Public Works
542 North Marine Drive
Tamuning, GU 96911

**Re: EPA Comments on the Ordot Final Closure Plan and Post-Closure Plan**

Dear Mr. Perez:

The Environmental Protection Agency, Region 9 (EPA) at this time is providing comments to the Department of Public Works (DPW) regarding the Ordot Final Closure Plan and Post Closure Plan prepared under paragraph 8 of the Civil Case No. 02-00022 Consent Decree (Consent Decree). The comments are detailed in the two enclosed memorandums from CH2M Hill to Lance Richman, dated October 4, 2005 and October 18, 2005.

These memorandums raise two issues that are of particular concern to EPA:

1) Steep slopes: DPW must demonstrate that slopes of 1.5:1 will remain stable and that the liner system can be preserved. Cover material will be needed to protect the liner, yet it is unclear that a foundation can be sustained on these steep slopes.

2) Leachate collection system: The 20,000 gallon Leachate Storage Tank appears inadequate. The tank would not be large enough to contain a day of peak flows. It is also unrealistic to expect a system of trucking leachate to adequately handle flows during peak events. If DPW plans to demonstrate that all leachate will be contained by the deadline in the Consent Decree, October 23, 2007, DPW will need to develop a more reliable method of managing leachate flows.

It would also be prudent for DPW to assess different geomembrane thicknesses. With further analysis, DPW can determine if other thicknesses would be adequate.

Pursuant to paragraph 7 of the Consent Decree, DPW has 30 days from receipt of this letter to respond and incorporate the above comments as well as those presented in the enclosures. Please call me at (415) 972-3770 if you would like to discuss this matter further.

Sincerely,

Ben Machol
Guam Program Manager, P.E.

Enclosures

cc:    Douglas Moylan, Attorney General of Guam
       Randel Sablan, Guam EPA
       Mikel Schwab, Assistant U.S. Attorney

# ATTACHMENT  9

effective
date

# RULES AND REGULATIONS FOR THE GUAM ENVIRONMENTAL PROTECTION AGENCY (GEPA) SOLID WASTE DISPOSAL

## Title 22

## Division 4

## Chapter 23

## Article 1

### General regulations

§23101.       Purpose, scope, and applicability.

§23102.       Definitions.

§23103.       Consideration of other federal laws.

§23104.       Solid waste management permit system.

## Article 2

### Location restrictions

§23201.       Airport safety.

§23202.       Flood plains

§23203.       Wetlands.

§23204.       Fault areas.

§23205.       Seismic impact zones.

§23206.       Unstable areas.

§23207.       Closure of existing municipal solid waste landfill units.

1 of 7

ATTACHMENT  9

# Article 3

## Operating criteria

§23301.        Solid wastes accepted.

§23302.        Solid wastes excluded.

§23303.        Procedures for excluding receipt of hazardous waste.

§23304.        Cover material requirements.

§23305.        Disease vector control.

§23306.        Explosive gases control.

§23307.        Air criteria.

§23308.        Access requirements.

§23309.        Run-on/run-off control systems.

§233010.        Surface water requirements.

§233011.        Liquid restrictions.

§233012.        Recordkeeping requirements.

§233013.        Safety.

# Article 4

## Design criteria

§23401.        Design criteria for municipal solid waste landfill.

§23402.        Design criteria for solid waste disposal facilities other than MSWLFs.

§23403.        Table of maximum contaminant levels (MCL) for constituents at the relevant point of compliance.

ii

# Article 5

## Ground-water monitoring and corrective action

§23501.    Applicability.

§23502.    Ground-water monitoring systems.

§23503.    (Reserved).

§23504.    Ground-water sampling and analysis requirements.

§23505.    Detection monitoring program.

§23506.    Assessment monitoring program.

§23507.    Assessment of corrective measures.

§23508.    Selection of remedy.

§23509.    Implementation of the corrective action program.

# Article 6

## Closure and post-closure care

§23601.    Closure criteria.

§23602.    Post-closure care requirements.

# Article 7

## Financial assurance criteria

§23701.    Applicability and effective date.

§23702.    Financial assurance for closure.

§23703.    Financial assurance for post-closure care.

§23704.    Financial assurance for corrective action.

§23705.    Allowable mechanisms.

iii

## Addendum A

Schedule of permit fees for all other solid waste management facilities.

## Addendum B

Duration of permit fees for all other solid waste management facilities.

## Addendum C

Administrative penalties.

## Appendix I

Constituents for detection monitoring.

## Appendix II

List for hazardous and organic constituents.



iv

detecting and preventing the disposal of regulated hazardous wastes as defined in Guam's Hazardous Waste Management Regulations and polychlorinated biphenyl (PCB) wastes as defined in 40 CFR Part 761. This program must include, at a minimum:

    (1)    random inspections of incoming loads;

    (2)    records of any inspections;

    (3)    training of facility personnel to recognize regulated hazardous waste and PCB wastes; and

    (4)    notification of Administrator if a regulated hazardous waste or PCB waste is discovered at the facility.

    (b)    For purposes of this section, 'regulated hazardous waste' means a solid waste that is a hazardous waste or was not generated by a conditionally exempt small quantity generator as defined in Guam's Hazardous Waste Management Regulations.

    §23304.    Cover material requirements.    (a) Except as provided in Subsection (b) of this §23304, the owners or operators of all MSWLF units must cover disposed solid waste with Six (6) inches of earthen material at the end of each operating day, or at more frequent intervals if necessary, to control disease vectors, fires, odors, blowing litter, and scavenging.

    (b)    Alternative materials of an alternative thickness (other than at least Six (6) inches of earthen material) may be approved by the Administrator if the owner or operator demonstrates that the alternative material and thickness control disease vectors, fires, odors, blowing litter, and scavenging without presenting a threat to human health and the environment.

    (c)    In order to conserve land disposal site capacity, thereby preserving land resources, and to minimize moisture infiltration and settlement, solid waste and cover material shall be

42

compacted to the smallest practicable volume. Solid wastes may be reduced in volume by using balers, shredders, or other reducing devices before placement in cells.

(d)    The Administrator may grant a temporary waiver from the requirement of Subsections (a) and (b) of this §23304, if the owner or operator demonstrates that there are extreme short term climatic conditions that make meeting such requirements impractical.

§23305.    **Disease vector control.**    (a) Owners or operators of all MSWLF units must prevent or control on-site populations of disease vectors using techniques appropriate for the protection of human health and the environment.

(b)    For purposes of this Section, 'disease vectors' means any rodents, flies, mosquitoes, or other animals, including insects, capable of transmitting disease to humans.

§23306.    **Explosive gases control.**    (a) Owners or operators of all MSWLF units must ensure that:

(1)    the concentration of methane gas generated by the facility does not exceed Twenty-five Percent (25%) of the lower explosive limit for methane in facility structures (excluding gas control or recovery system components); and

(2)    the concentration of methane gas does not exceed the lower explosive limit for methane at the facility property boundary.

(b)    Owners or operators of all MSWLF units must implement a routine methane monitoring program to ensure that the standards of Subsection (a) of this §23306 are met.

(1)    The type and frequency of monitoring must be determined based on the following factors:

(A)    soil conditions;

43

# Article 6

## Closure and post-closure care

§23601.    **Closure criteria.** (a) Owners or operators of all MSWLF units must install a final cover system that is designed to minimize infiltration and erosion. The final cover system must be comprised of an erosion layer underlain by an infiltration layer as follows:

(1)    the infiltration layer must be comprised of a minimum of Eighteen (18) inches of earthen material that has a permeability less than or equal to the permeability of any bottom liner system or natural subsoils present, or a permeability no greater than $1 \times 10^{-5}$ cm/sec, whichever is less, and

(2)    the erosion layer must consist of a minimum Six (6) inches of earthen material that is capable of sustaining native plant growth.

(b)    The Administrator may approve an alternative final cover design that includes:

(1)    an infiltration layer that achieves an equivalent reduction in infiltration as the infiltration layer specified in Item (1) of Subsection (a) of this §23601; and

(2)    an erosion layer that provides equivalent protection from wind and water erosion as the erosion layer specified in Item (2) of Subsection (a) of this §23601.

(c)    The owner or operator must prepare a written closure plan that describes the steps necessary to close all MSWLF units at any point during its active life in accordance with the cover design requirements in Subsections (a) or (b) of this §23601, as applicable. This plan must be approved by Guam EPA prior to the initiation of closure activities. The closure plan, at a minimum, must include the following information:

(1)    a description of the final cover, designed in accordance with Subsections

84

# ATTACHMENT  10



**public works**
DIPATTAMENTON CHE'CHO' PUPBLEKO
DIVISION OF ENGINEERING

# Letter of Transmittal

| | |
|---|---|
| **Date:** July 20, 2005 | |

**To:**   Senator Lou Leon Guerrero's Office

**Attn.:  Senator Lou Leon Guerrero**

**From: Cynthia Jackson, Consent Decree Project Manager**

**Re: Financial Plan Copy**

**Via:** Hand-Delivery

We are sending herewith the following:

☐ Drawing Originals    ☐ Copies of Drawings    ☐ Specifications    ☐ Electronic File on Diskette(s)

☐ Shop Drawings    ☐ Letter    ■ Other:

IF YOU DID NOT RECEIVE THE COMPLETE PACKAGE LISTED BELOW OR IF ENCLOSURES ARE NOT AS INDICATED, PLEASE CONTACT OUR OFFICE IMMEDIATELY AT (671) 646-3126

**This package includes the following:**

| Qty | Unit | Description |
|---|---|---|
| 1 | Cd | Financial Plan |
| | | |
| | | |
| | | |
| | | |

These are transmitted as indicated below:

■ For your use    ☐ As Requested    ☐ For Approval    ☐ For Review and Comment    ☐ Others
☐ Submittal Package ( )    ☐ Return after loan to us (thanks)    ☐ Return after Shop Drawing Review

**Remarks:**

Cynthia U. Jackson
**Consent Decree, Project Manager**

~~Rop Pagelu~~ 7-20-05

Received By:              Date:                                              Sender

542 North Marine Corps Drive, Tamuning, Guam 96911 / Chief of Engineering – Tel: 646-3126 Fax: (671) 649-7867 / Admin. Support – Tel: (671) 646-3137 / Contracts – (671) 646-3223 Fax: (671) 646-3179 / CQC – (671) 646-3106 Fax: (671) 649-6884 / Design – (671) 646-3189 / Highway Planning – (671) 646-3228 / One Stop Center – (671) 646-3104 / Rights-of-Way – (671) 646-3239 / Traffic Engineering – (671) 646-3210 / TMC – (671) 646-3157 Fax: (671) 647-6076

*ATTACHMENT* 10

# ATTACHMENT 11

**BEFORE THE GUAM PUBLIC UTILITIES COMMISSION**

FOCUSED MANAGEMENT AUDIT
OF DEPARTMENT OF PUBLIC
WORKS' SOLID WASTE MANAGEMENT          DOCKET 06-2
DIVISION BILLING AND COLLECTION
SYSTEM

## ORDER

In response to its administrative law judge's [ALJ] April 20, 2006 memorandum
*[Attachment A]*, the Guam Public Utilities Commission [PUC] at its April 20, 2006
meeting directed ALJ to oversee a focused management audit by Georgetown
Consulting Group [GCG] of the Department of Public Works' [DPW] solid waste
management's [SWM] billing and collection practices and the Department of
Administration's restricted account management. On August 18, 2006, GCG
filed its audit report *[Attachment B]* with PUC. On September 21, 2006 GCG
presented its report to PUC at a workshop.

After careful review of the GCG audit report and the record herein, including
comments from DPW, for good cause shown and on motion duly made,
seconded and carried by the undersigned commissioners, the Guam Public
Utilities Commission **HEREBY FINDS AND ORDERS THAT:**

1. The audit report presents compelling and convincing evidence that DPW
   is not prepared to assume the financial responsibilities, which would be
   imposed upon it by the proposed $90 million dollar revenue bonds
   financing, which is necessary to fund the Government of Guam's
   compliance with the Federal Consent Decree[1].

2. DPW does not have adequate resources *[management, staff, financial, legal,
   engineering and systems]* to implement the audit recommendations in a
   timely manner.

3. Accordingly, it is critical that the legislation recommended in the audit
   report be implemented *concurrently* with any legislative authorization for
   the Government to proceed with the revenue bond financing - *paramount
   of which is the recommendation that SWM be reconstituted as a public
   corporation under the governance of the Consolidated Commission on Utilities.*
   PUC respectfully cautions the Government of Guam, in furtherance of its
   May 2, 2006 letter to Vice Speaker Brown *[Attachment C]* that without

---

[1] Consent Decree dated February 11, 2004 in *USA v. Government of Guam,* District Court Civil Case
02-22.

1

these legislative reforms, PUC has material concern over DPW's ability to collect, deposit, account for and properly expend the *just and reasonable* rate revenues awarded by PUC in a manner which will enable DPW and the Government of Guam to comply with its proposed bond covenants.

4. PUC stands ready, upon request, to propose specific legislation to implement the audit recommendations.

5. In the interim, PUC is committed to do its part in implementing those audit recommendations, which are within its power to address. Accordingly, the following regulatory activities shall be commenced under ALJ's oversight:

   a. In anticipation of the revenue requirements, which would be imposed on DPW by the revenue bond financing, DPW has requested GCG's assistance in preparing a petition for FY07 rate relief for PUC consideration during the January 2007 regulatory session. ALJ is authorized and directed to oversee the preparation of this petition by GCG in collaboration with DPW. As part of this rate proceeding, GCG shall: i] propose a residential lifeline rate, a variable residential rate and a prepaid decal system for residential service; ii] propose necessary amendments to SWM's service rules; and iii] examine and make recommendations regarding SWM's $10 million dollar accounts receivable.

   b. PUC is encouraged by DPW's acceleration of the timeline for outsourcing the collection of residential waste for the entire island not later than July 2007. On or before October 15, 2006, DPW shall inform PUC of the additional resources, which it will require to successfully meet this deadline. DPW's progress under the timeline will be examined during the January 2007 rate proceeding.

6. PUC stands ready to issue necessary regulatory orders, which will be required to secure revenue bond financing; subject to its strong reservation that without the concurrent legislation recommended above, it is questionable whether DPW and the Government of Guam will be able to meet the requirements of the bond covenants.

7. Except as provided herein, the deadlines for action recommended in the audit report will be suspended pending further consideration during the January 2007 regulatory session.

2

8. A copy of this Order shall be transmitted to the Speaker of the 28th Guam Legislature, to the Governor of Guam, to the Department of Public Works and to the Consolidated Commission on Utilities.

Dated this 28th day of September 2006.

_____
Terrence M. Brooks

_____
Edward C. Crisostomo

_____
Rowena E. Perez

_____
Joseph M. McDonald

_____
Filomena M. Cantoria

_____
Jeffrey C. Johnson

3

**Summary – Audit Recommendations**

| Recommendation | Action Date |
|---|---|
| **Legislation:** | |
| Establish SWM as public corporation under CCU governance. | ASAP |
| Consolidate administration of SWM finances. | ASAP |
| Privatize third residential collection district. | ASAP |
| Convert commercial tipping fee to hauler business expense or bring haulers under PUC regulation and Public Auditor audit authority. | ASAP |
| **Procurements:** [Action date is for PUC approval of procurement documents.] | |
| Outsource SWM billing and collection system with conversion to prepaid decal system | 1/07 |
| Privatize two of three residential collection districts. [Privatize 3 rd district if authorized.] | 1/07 |
| Retain accounting consultant to address accounts receivable, establish accounting system and issuance of reliable financial reports | 11/06 |
| **Regulatory Action:** [Preparation of documents for regulatory consideration would be collaborative effort between GCG and Compliance Team]. | |
| Approve recommended procurement documentation. | 1/07 |
| FY07 rate proceeding, including establishment of residential rate and variable residential rate | 1/07 |
| Review and approve revised residential service rules. | 1/07 |
| Establish customer hauler service rules [in event haulers are placed under PUC regulatory authority]. | 1/07 |
| Public Auditor financial audit of commercial haulers. | 4/07 |
| Phase II GCG audit of SWM $10 million accounts receivable | 1/07 |
| **Operational Action:** | |
| Repair landfill scales. | 11/06 |
| Institute rules for transfer site revenues. | 11/06 |
| Establish three residential collection districts. | 11/06 |
| Enforcement of revised residential service rules. | 2/07 |
| GEPA enforcement of illegal dumping laws. | ASAP |

# PUBLIC UTILITIES COMMISSION
## OF GUAM

Terrence M. Brooks

Joseph M. McDonald
Edward C. Crisostomo
Rowena E. Perez

Suite 207, GCIC Building
Post Office Box 862
Hagatna, Guam 96932

Telephone: (671) 472-1907
Fax: (671) 472-1917
Email: info@guampuc.com

Harry M. Boertzel
Administrative Law Judge

Lourdes R. Palomo
Administrator

May 2, 2006

**VIA HAND DELIVERY**
The Honorable Joann Brown
Vice Speaker, 28th Guam Legislature
Chairman, Committee on Utilities and Land
155 Hesler Street
Hagåtña, Guam 96910

Dear Vice Speaker Brown:

During its recently concluded regulatory session, the Guam Public Utilities Commission [PUC] reviewed and approved the five recommendations contained in the enclosed April 20, 2006 report from Administrative Law Judge Boertzel. The report summarizes the challenges, which must be resolved in order to secure the financing necessary to enable the Government of Guam to comply with the Federal Consent Decree.

The purpose of this letter is to share with you PUC's serious concern whether Department of Public Works [DPW], a line agency, has adequate authority and resources to comply with the covenants and requirements, which will be imposed by the bond documents. It should be recalled that it took Guam Waterworks Authority, under the Consolidated Commission on Utilities' [CCU] governance and with a capable management team *[experienced general manager, engineer, chief financial officer and legal counsel]* almost three years to prepare itself for its first bond financing. DPW is being expected, without comparable resources or lead time, to assume the same responsibilities. These realities persuade PUC that the recommendation made in Guam Environmental Protection Agency's 2005 *Guam Integrated Solid Waste Management Plan*, that solid waste management be transferred to a public corporation under CCU's oversight, should be given serious consideration.

PUC stands ready to work with the Guam Legislature as it considers the legislation, which will be necessary to authorize the important revenue bond financing discussed in this letter.

Respectfully,

Terrence Brooks
Chairman

# PUBLIC UTILITIES COMMISSION
## OF GUAM

Terrence M. Brooks

Edward C. Crisosotomo
Filomena M. Cantoria
Joseph M. McDonald
Rowena E. Perez
Jeffrey C. Johnson

Suite 207, GCIC Building
Post Office Box 862
Hagatna, Guam 96932

Telephone: (671) 472-1907
Fax: (671) 472-1917
Email: info@guampuc.com

Harry M. Boertzel
Administrative Law Judge


Lourdes R. Palomo
Administrator

December 14, 2006

**VIA ELECTRONIC TRANSMISSION**
Lawrence P. Perez, General Manager
Department of Public Works
542 North Marine Drive
Tamuning, Guam 96913

RE:    Docket 07-1 [SWM FY07 Rate Proceeding]

Dear Mr. Perez:

In response to your December 5, 2006 letter:

1.  I am canceling the DPW rate hearing previously scheduled for January 24,
    2007. Enclosed is Georgetown's December 12, 2006 letter, which supports
    your request, with observations and reservations. The issue of when and
    under what circumstances the rate proceeding should be rescheduled will
    be reviewed by PUC during the January 2007 regulatory session. The
    Georgetown rate report, previously deadlined for December 27, 2007, will
    now focus instead on Mr. Margerison's findings during his recent Guam
    visit. Georgetown principal, Jim Madan, will present this report to PUC at
    a multi-purpose regulatory workshop, which will be held at 6:00 p.m. on
    January 23, 2007.

2.  Your request that PUC approve the omnibus RFP *concept* mentioned in
    your letter is premature. DPW is required under PUC's October 27, 2005
    Docket 05-9 Order *[contract review protocol]* to file with PUC the detailed
    information described in section 4[b] of the Order, including the full text
    of the proposed RFP, in support of a petition for PUC review of a
    proposed procurement.  The Order emphasizes that DPW must obtain
    PUC's approval *before the procurement process begins.* PUC awaits this long
    overdue filing from DPW so that Georgetown can be authorized to begin
    its review of the omnibus RFP.

1

3. A SWM regulatory conference has been scheduled for 2:00 p.m. January 18, 2006 at Suite 207 GCIC Building to review the status of DPW's efforts to prepare and submit for regulatory review: a] a petition for approval of financing for Consent Decree projects; and b] a petition for approval of the omnibus RFP discussed in paragraph 2 above.

4. In its September 28, 2006 Order [Docket 06-2] PUC emphasized the importance of privatizing residential collection for the entire island by July 2007. The Order required DPW to inform PUC not later than October 15, 2006 of the additional resources it would require to successfully meet this deadline. PUC has not received any filing from DPW in response to this order.

I look forward to meeting with you on January 18, 2007 to discuss the above matters. Please let me know if there is any regulatory assistance which PUC can provide in the interim.

With best wishes for a merry Christmas and successful New Year,

Harry M. Boertzel

cc:   Jim Madan, Georgetown
      Terrence Brooks, Esq.

Encl: Georgetown 12/12/06 letter

2

# ATTACHMENT 12

# GUAM EPA
# SOLID WASTE DISPOSAL FACILITY
# PERMIT NO. 05-060LFL

**SPECIFICATIONS:**

PERMITTED OPERATIONS:

Solid Waste Management Disposal Facility Authorization for Continued Operations towards Closure, Closure, and Post Closure Maintenance and Monitoring of the Ordot Dump

**KEY DESIGN PARAMETERS:**

Permitted Area (in acres):

47.1 acres (currently at 45.1 acres) additional filling to the east of the dump between 2005 – 2007

Design Capacity:
Current Capacity (late 2004):
Available Capacity to Closure:

4,400,000 yards$^3$ (estimated)
3,202,593 yards$^3$ (estimated)
1,170,000 yards$^3$ (estimated)

Maximum Elevation: (Ft.MSL):
Maximum Depth: (Ft. MSL):

360 Feet above MSL
175 Feet MSL

**SCHEDULE OF ACTIVITIES:**

Last day to receive waste:

The earlier of September 23, 2007 or the opening of a permitted municipal solid waste landfill.

Closure Date and Year:

October 23, 2007

Implementation of Post – Closure
Plans and Post Closure Conditions:

October 23, 2007

Liability through:

Later of October 23, 2037 or 30 years after the expiration of the permit or any subsequently issued permit, or permit extension

2

1 of 5

12/2/05

operation of back-up or auxiliary facilities or similar systems only when necessary to achieve compliance with the conditions of this Permit.

## I.A.12.  *Duty to Provide Information*

    a.  The Permittee shall furnish to the Administrator, within a reasonable time, any relevant information which the Administrator may request
        i.  to determine whether cause exists for modifying, revoking and reissuing, or terminating this Permit, or
        ii.  to determine compliance with this Permit or any applicable environmental requirements.
    b.  The Permittee shall also furnish to the Administrator, upon request, copies of records required to be kept by this Permit.

## I.A.13.  *Inspection and Entry*

Pursuant to the SWMLC §51106 and Section VIII of the Consent Decree, the Permittee shall allow the Administrator or his designee and USEPA (including their contractors and consultants), upon the presentation of credentials to:

    a.  Enter at reasonable times upon the Permittee's premises where a regulated facility or activity is located or conducted, or where records must be kept under the conditions of this Permit or regulations;
    b.  Have access to and copy, at reasonable times, any records that must be kept under the conditions of this Permit or regulations;
    c.  Inspect at reasonable times any facilities, equipment (including monitoring and control equipment), practices, or operations regulated or required under this Permit or regulations; and
    d.  Sample or monitor, at reasonable times, for the purposes of assuring Permit compliance or as otherwise authorized by the SWMLC, any substances or parameters at any location.

## I.A.14.  *Monitoring and Records*

    a.  Samples and measurements taken for the purpose of monitoring shall be representative of the monitored activity. The methods used to obtain a representative samples of all monitoring requirements must be approved by the Administrator prior to use.
    b.  Record Retention.

        i.  Unless other conditions apply, the Permittee shall retain records of all monitoring information, including all calibration and maintenance records and

11

all original strip chart recordings for continuous monitoring instrumentation, copies of all reports and records required by this Permit, and as specified in the permit application documentations and records of all data used to complete the application for this Permit for a period of at least five (5) years from the date of the sample, measurement, report, record, certification, or application.

    ii.  These retention periods may be extended by the Administrator at any time and are automatically extended during the course of any unresolved enforcement action regarding this facility.

    iii.  The Permittee shall maintain records from all ground-water monitoring wells and associated ground-water surface elevations for the active life of the facility, and for disposal facilities throughout the post-closure care period, as required by GSWDRR §23312(a)(5).

c.  Records of all monitoring information shall specify:
    i.  The dates, exact place, and times of sampling or measurements;
    ii.  The individuals who performed the sampling or measurements;
    iii.  The dates the analyses were performed;
    iv.  The individuals and laboratory who performed the analyses;
    v.  The analytical techniques or methods used; and
    vi.  The results of such analyses.

c.  Any contract between the Permittee and a consultant to collect or maintain data and records shall require that all information, including any data in computer database and files, are property of the Government of Guam.

## I.A.15. Reporting Planned Changes

The Permittee shall give notice to the Administrator, as soon as possible, of any planned physical alterations or additions to the Permitted facility.

## I.A.16. Reporting Anticipated Noncompliance

The Permittee shall give advance notice to the Administrator of any planned changes in the permitted facility or activity which may result in noncompliance with permit requirements. In addition, the Permittee shall comply with Section IX, paragraphs 31-37 of the Consent Decree for any claim of *force majeure*.

## I.A.17. Certification of Final Operation to Close

The Permittee shall not commence closure construction until the Permittee has submitted to the Administrator, by certified mail or hand delivery, a letter signed by the Permittee and a registered professional engineer stating that the facility has been operating and the Permittee has placed

12

12/2/05

# PART II – OPERATIONS TOWARDS CLOSURE

## II.A.  OPERATING CONDITIONS

### II.A.1.  Design and Operation Facility

a.  The Permittee shall construct, maintain and operate the facility to minimize the possibility of a fire, explosion, or any unplanned, sudden or nonsudden release of solid waste constituents, including constituents dissolved or suspended in water, air, soil, surface water, or ground water which could threaten human health or the environment, including endangered or threatened species of plant, fish or wildlife, and as required by GSWDRR §23301 and §23401.

b.  No later than April 21, 2006, the Permittee shall retain the services of a contractor that includes a certified Manager of Landfill Operations (MOLO), or its equivalency, with at least five (5) years experience in landfill operations. The MOLO personnel shall be stationed at the facility to oversee and be responsible for the implementation of all operating requirements, closure design and construction.

c.  Within two (2) calendar days upon compliance with subsection (b) of this section, the Permittee shall notify Guam EPA in writing of the contractor, the MOLO certified personnel, and a copy of the MOLO personnel's certification.

### II.A.2.  Solid Waste Accepted

a.  The Permittee shall accept only those waste listed for disposal at the Ordot Dump per GSWDRR §23301. The Permittee shall implement the *Operations Plan*, Appendix A, Section 3.4-Select Waste Criteria, as amended by Guam EPA. In addition, the Permittee shall comply with the following conditions:

    i.  Within sixty (60) calendar days of the issued date, submit a detailed, comprehensive Solid Waste Diversion Program Plan and implementation schedule for recyclable or reusable materials to Guam EPA. At a minimum, the Plan shall include the following:

        1.  after July 1, 2006, yard waste that has not been processed through a chipper is excluded; and

        2.  after July 1, 2007, no yard waste.

    ii.  Within two (2) calendar days of the issued date, post a sign at the entrance of the facility that includes the waste accepted as stated in this section.

12/2/05

iii. The Summary of Ordot Dump's Solid Waste Acceptance Policy, as amended by Guam EPA (Appendix A, Permit Attachment II-2) is subject to change only upon approved by and notice from Guam EPA (i.e., yard waste and recyclable materials).

b. The Permittee shall request approval from Guam EPA in writing for any addendum or modification relating to *Summary of Ordot Dump's Solid Waste Acceptance Policy*, as amended by Guam EPA (Appendix A, Permit Attachment II-2).

## II.A.3.     Solid Waste Excluded

The Permittee shall implement the *Operations Plan*, Appendix A, Section 3.4-Select Waste Criteria and §23302 of GSWDRR for those solid wastes excluded for disposal.

## II.A.4.     Scale Requirements

Upon the issued date, the Permittee shall implement the *Operations Plan*, Appendix A, Section 3.1.2-Scale, as amended by Guam EPA. In addition, the Permittee shall comply with the following conditions:

a. Within one-hundred twenty (120) calendar days of the issued date, and thereafter, operate and maintain a scale to measure weight of all incoming waste.

b. Within fifteen (15) calendar days of the issued date, submit a schedule (not to exceed one-hundred twenty (120) calendar days) for the repair of the existing scale to industry standards or for the installation of a new scale to measure all incoming waste;

c. If a new scale is to be purchased, the Permittee shall have two (2) calendar days of the issued date to submit information and documentation to Guam EPA on proof of purchase, specifications, expected installation date and expected operation date of the scale;

d. For each vehicle entering the facility with waste, record the waste volume and waste weight per vehicle;

e. Within thirty (30)calendar days of the issued date, submit to Guam EPA for review and approval Incoming Waste Tonnage reporting forms for recordkeeping; and

f. Record and report weight and volume data according to the requirements as stated in GSWDRR §23312 and in this Permit.

20

12/2/05

# ATTACHMENT 13



GOVERNMENT OF GUAM
OFFICE OF THE GOVERNOR



EXECUTIVE ORDER NO. 2004- 02

RELATIVE TO ESTABLISHING PRIORITY PROCUREMENT, PERSONNEL RECRUITMENT AND INTRA-AGENCY COOPERATION FOR THE ORDOT CONSENT DECREE.

**WHEREAS**, the Government of Guam, the United States Environmental Protection Agency, and United States Department of Justice entered into a Consent Decree (U.S. District Court Territory of Guam Civil Case No. 02-00022) that requires the identification, construction and operation of a new municipal solid waste landfill; and

**WHEREAS**, the Government of Guam, the United States Environmental Protection Agency, and United States Department of Justice entered into a Consent Decree for the closure and post-closure of the Ordot Dump; and

**WHEREAS**, the Government of Guam, the United States Environmental Protection Agency, and United States Department of Justice entered into a Consent Decree that requires the implementation of a Supplemental Environmental Project (SEP), specifically the diversion of household hazardous wastes from the Ordot Dump.

**NOW, THEREFORE, I, FELIX P. CAMACHO**, *I Maga'låhen Guåhan*, Governor of Guam, by virtue of the authority vested in me by the Organic Act of Guam, as amended, and the laws of Guam, do order:

1.  **Priority Management.** The Government of Guam must proceed to implement the Ordot Consent Decree under conditions which warrant prioritization of key management actions in order to meet critical milestones. This priority management emphasis must be part of a concerted team effort to construct and operate a new municipal solid waste landfill, properly close the Ordot Dump, and implement a Supplemental Environmental Project for the protection of the environment and health of the people of Guam.

2.  **Immediate Procurement.** The Bureau of Budget Management and Research (BBMR) and Department of Administration (DOA) shall prioritize and immediately expedite applications and approvals of procurement of any goods and services within 5 (five) working days upon receipt of Request for Action (RFA) from the Guam Environmental Protection Agency (Guam EPA) and the Department of Public Works (DPW).

3.  **Immediate Personnel Recruitment.** The Bureau of Budget Management and Research (BBMR) and Department of Administration (DOA) shall prioritize and immediately expedite the applications and approvals of recruitment of personnel within 5 (five) working days upon receipt of Request for Action (RFA) from the Guam Environmental Protection Agency (Guam EPA) and the Department of Public Works (DPW).

1 of 6

ATTACHMENT
13



4. **SEP Core Management Group**. The Guam Environmental Protection Agency (Guam EPA), Department of Public Works (DPW), Chamorro Land Trust Commission (CLTC), and Department of Land Management (DLM) shall designate and commit a representative and his or her alternate to be part of the SEP Core Management Group for a period of 4 years. The SEP Core Management Group will review all final reports and guidance associated with the Project, and provide recommendations, if necessary, to further enhance the success of the Project.

5. **Government of Guam Cooperative.** All Government of Guam departments and agencies shall facilitate meeting the requirements of the Ordot Consent Decree to the extent that review, feedback, support services, permitting, and all other manner of assistance and involvement is afforded top priority.

SIGNED AND PROMULGATED at Hagåtña, Guam, this <u>21st</u> day of February 2004.

FELIX P. CAMACHO
*I Maga'låhen Guåhan*
Governor of Guam

COUNTERSIGNED:

KALEO S. MOYLAN
*I Segundo Maga'låhen Guåhan*
Lieutenant Governor of Guam



EXECUTIVE ORDER NO. 2006- 12

RELATIVE TO ESTABLISHING THE ORDOT CONSENT DECREE COMPLIANCE TEAM WITHIN THE OFFICE OF THE GOVERNOR AND TO ESTABLISH PRIORITY PROCUREMENT AND INTRA-AGENCY COOPERATION FOR THE ORDOT CONSENT DECREE

**WHEREAS,** the Organic Act of Guam provides that *I Maga'lähen Guåhan,* Governor of Guam, is tasked with the responsibility of overseeing the health and safety of the people of Guam; and

**WHEREAS,** the old Ordot dump poses a continuing threat to public and environmental health, and must be closed pursuant to a Consent Decree entered into by the Government of Guam, the United States Environmental Protection Agency, and the United States Department of Justice (U.S. District Court Territory of Guam Civil Case No. 02-00022); and

**WHEREAS,** this order reaffirms Executive Order 2004-02 and the Government of Guam's commitment to the Consent Decree, which requires the closure and post-closure of the Ordot Dump as well as the construction and operation of a new, sanitary municipal solid waste landfill; and

**WHEREAS,** the process of closing the old dump and opening a new landfill requires resources beyond the immediate capabilities of the Department of Public Works, and will require substantial and continuing involvement by a number of other Government of Guam agencies; and

**WHEREAS,** further delays in the closure of the Ordot dump and the opening of a new landfill will violate Consent Decree timelines, and may result in substantial penalties imposed on the Government of Guam.

**NOW, THEREFORE, I, FELIX P. CAMACHO,** *I Maga' Låhen Guåhan* , Governor of Guam, by virtue of the authority vested in me by the Organic Act of Guam, as amended, do order:

1. **Ordot Consent Decree Compliance Team.** The Ordot Consent Decree Compliance Team is hereby established and shall consist of at least one representative from the following agencies, to be designated by the Governor:

   a. Department of Public Works
   b. Guam Environmental Protection Agency
   c. Bureau of Budget and Management Research
   d. Department of Administration

   The Governor also shall request representatives from the Guam Economic Development and Commerce Authority and the Office of the Attorney General.

   The compliance team shall be chaired by the Governor's designee and the representative from the Office of the Attorney General.



The Governor may appoint additional representatives to the compliance team at his discretion. The purpose of the team shall be to:

1. Create a plan to meet the remaining timelines and requirements established by the Consent Decree.
2. Identify actions that will require legislative changes or approval and prepare legislative proposals for the Governor's consideration.
3. Implement the plan.

The Governor or his designee shall appoint members of the compliance team within one day of this signing of this order.

2. **Authority.** All government departments, agencies, instrumentalities and other public entities shall coordinate with the Compliance Team to comply with the mandates of the Consent Decree. All Government of Guam departments and agencies shall provide the necessary support and assistance to the compliance team for the purposes of complying with the mandates of the Consent Decree.

All existing contracts and accounts associated with the Consent Decree shall be supervised by the Compliance Team. Procurement, contractual and certifying authority shall be delegated by the Department of Public Works director to a member of the Compliance Team.

3. **Disputes.** Any disputes arising from this Executive Order shall be resolved by the Governor or his designee. The Governor or designee's determination of the dispute shall be final. The Governor's designee shall have authority to recommend appropriate disciplinary action against anyone who fails to make best efforts to comply with this Executive Order.

**SIGNED AND PROMULGATED** at Hagåtña, Guam this ___ day of May, 2006.

**FELIX P. CAMACHO**
*I Maga' låhen Guåhan*
Governor of Guam



RECEIVED

MAY 17 2006

Guam Environmental
Protection Agency

EXECUTIVE ORDER NO. 2006- 13

RELATIVE TO DECLARING A STATE OF EMERGENCY TO COMPLY
WITH THE CONSENT DECREE ISSUED IN DISTRICT COURT OF
GUAM CIVIL CASE NO. 02-00022, *UNITED STATES OF AMERICA V.
GOVERNMENT OF GUAM*

WHEREAS, the Organic Act of Guam provides that *I Maga'låhen Guåhan,* Governor of
Guam, is tasked with the responsibility of overseeing the health and safety of the people of
Guam; and

WHEREAS, the Ordot dump poses a continuing threat to public and environmental
health, and must be closed pursuant to a Consent Decree entered into by the Government of
Guam, the United States Environmental Protection Agency, and the United States Department of
Justice (U.S. District Court Territory of Guam Civil Case No. 02-00022); and

WHEREAS, the Government of Guam remains committed to the requirements of the
Consent Decree, which requires the design, construction, and operation of a new, sanitary
municipal solid waste landfill at Layon, Inarajan, as well as the Government's best efforts to
finance the closure and post-closure care of the Ordot Dump; and

WHEREAS, the Administration is committed to providing the resources available and
necessary to ensure that the Government of Guam completes the mandates of: *Closure of Ordot
Dump and Cessation of Discharge of Pollutants from Ordot Dump into Waters of the United
States; Construction and Operation of New Municipal Solid Waste Landfill ("MSWLF");
Financing Closure of Ordot Dump and Construction and Operation of New Municipal Solid
Waste Landfill; and the Supplemental Environment Project,* imposed by the Consent Decree in
*United States v. Government of Guam* and prevent a threat to public health, the environment and
the potential of significant penalty fines imposed on the Government of Guam; and

NOW, THEREFORE, I, FELIX P. CAMACHO, *I Maga' Låhen Guåhan ,* Governor
of Guam, by virtue of the authority vested in me by the Organic Act of Guam, as amended, do
order:

1.      **Declaration of State of Emergency.** A state of emergency is hereby declared in
order to assist the Government of Guam to comply with the mandates of the Consent Decree
issued in the *United States of America v. Government of Guam,* and prevent a threat to public
health, the environment and the continued imposition of significant penalty fines.

2.      **Emergency Procurement and Emergency Expenses.** Pursuant to 5
G.C.A.§5215, authorizing emergency procurement upon executive order, and pursuant to 5
G.C.A. §22402, authorizing the Governor to utilize no more than Two Hundred Fifty
Thousand Dollars ($250,000.00) from the General Fund appropriations for the Executive
Branch for expenses resulting from civil defense, public safety or health care emergencies,
the Director of Bureau of Budget and Management Research is authorized to transfer to the
Department of Public Works, Consent Decree Account an amount not to exceed Two
Hundred Fifty Dollars ($250,000.00) from outstanding appropriations within the General
Fund for immediate use by the Ordot Consent Decree Compliance Team for costs to comply
with the mandates of the Consent Decree issued in the *United States v. Government of Guam.*



Priority projects under this declaration include, but are not limited to:

    a.    Ordot Wetland Mitigation Plan, which shall undergo an expedited government review;

    b.    Compliance requirements for the Ordot Dump Continual Use Permit;

    c.    Updates of the Layon appraisals for land acquisition; and

    d.    Technical advisor for Consent Decree implementation.

    **3.**    **Overtime.** The applicability of ineligibility for the accrual of overtime by exempt employees is hereby waived for government of Guam employees working on Consent Decree matters for the duration of this 30-day emergency, provided that the co-chairs of the Ordot Consent Decree Compliance Team pre-approve such overtime prior to actual accrual. Overtime expenses shall be paid by the Consent Decree accounts with appropriate documentation and approval by the co-chairs.

    **4.**    **Documentation of Expenses.** The Ordot Consent Decree Compliance Team is hereby instructed to keep appropriate documentation on all emergency expenses for inspection by the Executive and Legislative Branches and by the Public Auditor of Guam.

    **5.**    **Purpose of Emergency Procurement and Expenditure of Funds.** Emergency procurement may be used for procurement of any services relative to complying with the mandates of the Consent Decree issued in the United States of America v. Government of Guam and continuing for Thirty Days(30) days after the date of this Executive Order as provided in § 5215 of Title 5, Guam Code Annotated.

    **SIGNED AND PROMULGATED** at Hagåtña, Guam this _17_ day of **May, 2006.**

**FELIX P. CAMACHO**
*I Maga' Låhen Guåhan*
Governor of Guam