

Office of the Attorney General
Alicia G. Limtiaco
Attorney General of Guam
Civil Division
287 West O'Brien Dr.
Hagåtña, Guam 96910 • USA
(671) 475-3324 • (671) 472-2493 (Fax)
www.guamattorneygeneral.com

**Attorneys for the Government of Guam**

FILED
DISTRICT COURT OF GUAM

FEB 1 4 2007

MARY L.M. MORAN
CLERK OF COURT

# IN THE DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> GOVERNMENT OF GUAM, ) <br> ) <br> Defendant. ) <br> ) | CIVIL CASE NO. 02-00022 <br><br> **GOVERNEMNT OF GUAM'S REPSONSE TO U.S.'S MOTION TO ENFORCE CONSENT DECREE** |

The government of Guam ("Government") respectfully opposes the United States' Motion to Enforce Consent Decree in its entirety. The United States recognizes that the Consent Decree deadlines are not workable. Its motion should be denied because the ten proposed interim deadlines infringe unreasonably upon the jurisdiction of the Governor and the Guam Legislature. However, in the event the Court grant's the United States' Motion, then the proposed interim deadlines should be modified to be realistic and not burdensome on the Government.
Page 1
Government of Guam's Response to U.S's Motion to Enforce Consent Decree
US District of Guam - Civil Case No. CV02-00022

## I. THE CONSENT DECREE DEADLINES ARE NO LONGER WORKABLE

Significant changes in circumstances make the Consent Decree deadlines unworkable. As discussed more thoroughly in the Government's Motion to Modify the Consent Decree, the significant changes in circumstances include (1) regulation of the Department of Public Works' ("DPW") solid waste operations by the Guam Public Utilities Commission ("PUC"), (2) Inexperience in solid waste engineering by the DPW Chief Engineer in combination with DPW's inability to attract and keep experienced engineers, (3) the results of the value engineering analysis and the need for additional hydrogeological information at Layon, (4) actions and inactions of others, including the United States, over which the Government has no control, (5) changes in law regarding priority use of general fund monies and money judgments against the Government, (6) new needs of the U. S. Department of Defense for solid waste disposal, and (7) political opposition to locating the landfill at Layon. Hence, the Government's completion of the tasks by the original deadlines should be excused and the deadlines should be revised so as to incorporate the significant changes in circumstances.

Moreover, the United States' motion does not provide appropriate solutions suitably tailored to address the changed circumstances. Instead, as identified below, the United States seeks to impose additional requirements upon the Government which are either overly burdensome or overly intrusive into the domain of Guam's executive or legislative branches, or both. In institutional reform litigation, the courts give discretion to the local government officials when establishing priorities and deadlines. *Grier v. Goetz, 402 F. Supp. 2d 876 (M.D. TN 2005)( citing Rufo, 502 U.S. at 392-93, 112 S.Ct. 748, and Frew ex. rel. Frew v. Hawkins, 540 U.S. 431, 442, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004).*

In addition, because consent decrees reach beyond the parties and impact the public's right to sound and efficient operations of its institutions, the Court should apply reasonably

Page 2
Government of Guam's Response to U.S's Motion to Enforce Consent Decree
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022 Document 91 Filed 02/14/2007 Page 2 of 11

flexible deadlines. *C.f. Rufo, 502 U.S. at 381, 112 S.Ct. 748 (citing Heath v. De Courcy, 888 F.2d 1105, 1109 (6th Cir.1989)).* Under the Organic Act, the Governor has control over all Executive Branch entities, and the Guam Legislature, through appropriations and other legislation, sets the priorities for the expenditure of funds and the Government's indebtedness. *See 48 U.S.C. §§1422 and 1423a.* The Court's intrusion into these functions should be disfavored, and if exercised, it should be very limited.

## II. ANY COURT ORDERED DEADLINES SHOULD BE REALISTIC AND NOT OVERLY BURDENSOME.

In the event the Court grant's the United State's Motion, it should significantly modify the proposed interim deadlines so that they (1) respect the local laws and orders, (2) are realistic, and (3) are not burdensome upon DPW and other government agencies. For example, DPW is bound by both the requirements of the Guam procurement code, *5 GCA Chapter 5*, by the PUC's orders, and by the PUC's review and approval process of DPW's solid waste procurements. The effects of these and other requirements on the proposed deadlines are discussed briefly below.

1. <u>Operations Report and Repair/Replacement Schedule by April 2, 2007.</u>

The Government objects to this requirement for at least four reasons. First, it is overly burdensome to require DPW's limited solid waste staff to prepare this report when the staff is busy working on the Consent Decree projects, the PUC's orders and daily operations of the or dot Dump and collecting trash. Second, the Government objects to the terms "properly operate." The terms are vague, and in any event infringe upon the authorities of the Executive Branch and the Legislature. While the Director of Public Works administers the solid waste operations, his authority is limited by the funds appropriated by the Legislature and allocated to DPW by the Governor. *See, e. g. 5 GCS §§ 1302-03 (allotments); Public Law 28- 150, Part IV, Section 1(FY07 Budget law);* The Ordot Dump's daily cover requirements are regulated by

Page 3
Government of Guam's Response to U.S's Motion to Enforce Consent Decree
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022    Document 91    Filed 02/14/2007    Page 3 of 11

the Guam Environmental Protection Agency ("EPA"), under both local law, *10 GCA § 5101 et seq.*, and regulations, and its federally delegated authority of the Resource Recovery and Conservation Act, *42 U.S.C. § 6901 et. seq.* The PUC dictates the quality of service needed to justify rate increases. *E.g.,12 GCA § 12004.* As shown below, the Court should not get involved in such operations.

Third, the DPW has represented to the PUC that, absent extenuating circumstances, the Government will not replace expensive equipment at the Dump or the packer trucks because the Layon Landfill and solid waste collection services are going to be operated by private entities that will use their own equipment. *Second Declaration of Lawrence Perez at ¶ 2.* Hence, a schedule for replacing equipment would serve no purpose.

Fourth, as a practical matter, there is a good chance that a number of the supplies cannot be procured in the sixty days which the United States proposes. Under Guam law, if the supplies are not available from the Department of Administration ("DOA") General Services Administration, then they must be procured by bid, and if the cost is more than $15,000, then the bid process often takes months to complete. For DPW's solid waste supplies, it often takes ninety days or more. *Second Declaration of Cynthia U. Jackson at ¶ 2.* Hence, 120 days is a reasonable timeframe for the DPW to procure supplies.

2. <u>Contract out the Billing, Collection and Accounting Services by July 2, 2007</u>.

The Government objects to this requirement for a number of reasons. First, under Guam law, accounting services for line agencies is centralized at DOA. DOA has no express authority to contract out its accounting responsibilities. *5 GCA § 2201-2205.* Therefore, the Government cannot agree to this requirement without a change in the local law.

Second, DPW already has a contract with Data Management Resources, LLC, for preparing the residential bills, so it is unclear what additional tasks the United States believes should be contracted out: DPW's step by step process of billing is attached as Exhibit 1 to

Page 4
Government of Guam's Response to U.S's Motion to Enforce Consent Decree
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022   Document 91   Filed 02/14/2007   Page 4 of 11

*Jackson's Second Declaration.* *See also, id. at ¶ 3* . Also, on January 21, 2007, DPW petitioned the PUC to allow it to implement a program of pre payment for residential solid waste collection services, which would replace residential billing and eliminate delinquent accounts. *Id. at ¶ 4.* The prepay program, also know as a "pay as you throw" or PAYT program, is in effect in numerous stateside communities, and is similar to those systems where one uses prepaid cellular telephone service cards. *Id.* Customers would simply register with DPW, and then pay in advance for the collection and disposal services, and such payment could be made at DPW, at DOA, by mail, and eventually by internet at guampay.com, and at local stores. *Id.* If the PUC approves the process by March 15, 2007, then it could be in place by around October of 2007. *Id.* As to contracting out the commercial billing, currently, the Guam Public Auditor is reviewing these accounts, and so decisions on outsourcing the billing and collection should be made after the Auditor's report is completed and reviewed. *Perez's Second Declaration at ¶3.*

Finally, even if the Government were to contract for billing and collection services for both residential and commercial fees, the time frames proposed by the United States are not workable. Given DPW's limited staff, its procurement advisor's schedule, the procurement code's and PUC's regulatory requirements, DPW and DOA could submit the request for proposals ("RFP") to the PUC by May 1, 2007. *Id.; Exhibit 2 to Declaration of Larry Perez (October 27, 2005 stipulated order requiring PUC approval for procurements exceeding $50,000).* Realistically, the notice to proceed could be issued 210 days thereafter, or by December 10, 2007. *Perez's Second Declaration at ¶ 3.* The PUC's regulatory review time is 120 days; 90 days for RFPs and 30 days for contracts. *Id.* Also, experience has shown that DPW needs 90 days to advertise for and negotiate service contracts, and under *Executive Order 2004-02,* expedited contract review by the Bureau of Budget, Management and Research

Page 5
Government of Guam's Response to U.S's Motion to Enforce Consent Decree
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022 Document 91 Filed 02/14/2007 Page 5 of 11

generally takes six to eight business days, review by the Attorney General's office two to four days, and the Governor's signature a final one to two days. *Id.*

3. <u>Collect 50% of receivables by April 2, 2007 and 75% by May 2, 2007.</u>

Because the proposed requirements appear to require the Government to collect on all delinquent accounts, the Government objects to both time lines. The accounts receivable issues are more complex than the United States presumes. If one considers the billings for 2006 and thus far in 2007, the collection rate from the large commercial haulers generally exceeds 90%. *Kakigi Declaration at* ¶ 5. Hence, if the Court considers these separate from the arrearages, then no court deadline is needed for commercial fees.

However, each of the five large commercial haulers is in arrears for billings that are more than 120 days old; these arrearages have a cumulative sum of $857,631.00 *Id. at* ¶ 4. Some of these amounts may be disputed because under current law if the business does not pay the commercial hauler the tipping fee, then the commercial hauler is not liable to the Government. See *Public law 25-93, Exhibit 2 to Perez's Second Declaration.* Also, currently, the Guam Public Auditor is reviewing these accounts to assist the Government in decisions regarding the amounts that are collectable. *Perez's Second Declaration at* ¶ 3. Until the Auditor's report is completed and reviewed, and final amounts owing are determined, neither the Government nor the Court can determine if 50 % or 75 % of these arrearages have been collected. *Id.*

Collection of residential fee contains an entirely different set of issues. For most of 2006, DPW's collection rate from its registered customers generally has been greater than 50%. *Jackson's Second Declaration at* ¶¶ *5, 7 and Exhibit 2*. During 2006, DPW made great strides in purging its data base, which originated from Guam Waterworks Authority's ("GWA") late nineties customer list, of customers who are no long in Guam, have moved, or

Page 6
Government of Guam's Response to U.S's Motion to Enforce Consent Decree
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022 Document 91 Filed 02/14/2007 Page 6 of 11

passed away. *Id. at ¶¶3-5.* The purging of the data base is ongoing, as is the increased enforcement of DPW's service regulations. *Perez's Second Declaration at ¶ 4.*

However, DPW is not comfortable that the residential fees collection rate can increase to 75% by May 31, 2007 for a number of reasons. First, DPW has limited staff to work on correcting the data base and enforcing against the delinquent accounts and further, the billing process is fragmented between two Divisions. *Jackson's Second Declaration at ¶ 3-5.* In addition, DPW and the PUC continue to struggle with the freeloaders, or those who do not pay by for Solid Waste collection or disposal because (1) they register but refuse to pay, or (2) they use the disposal containers of neighbors, businesses, mayors, parks, or other government facilities, or (3) they illegally burn their garbage, or dump it on the ground. *Id. at ¶ 6.* Moreover, with guidance from the PUC, the underwriters and legislative leaders, DPW is dedicating its limited resources to establishing the pre paid system. *Perez's Second Declaration at ¶3.* Hence, for all the above reasons, October 1, 2007 is a more reasonable date by which DPW can be collecting at least 75% of residential fees from those customers in its data base.

4. <u>Contracting out solid waste collection services by July 2, 2007.</u>

The April 2, 2007 deadline for the RFP for solid waste collection services and the July 2, 2007 deadline for awarding the contract are unworkable. First, the Government must complete the maps using digitized geographic data, and the only employees at DPW who are capable of doing this work are working overtime for federal highway funding. *Id.* Consequently, DPW has requested assistance from the Bureau of Statistics and Plans to finish this task. *Id.* Given the work loads, it is realistic that the final draft RFP can be ready for submittal to the PUC by May 1, 2007. *Id.*

Second, even though DPW has given the PUC its latest draft of the RFP for solid waste collections services, just as discussed above regarding contracting out the billing and fee

Page 7
Government of Guam's Response to U.S's Motion to Enforce Consent Decree
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022   Document 91   Filed 02/14/2007   Page 7 of 11

collection responsibilities, realistically, the notice to proceed could be issued 210 days after the final RFP is submitted to the PUC, which would be by December 10, 2007. *Id.*

5. File Condemnation Complaint or Obtain Access Rights by April 2, 2007.

At the moment, no deadline for filing a complaint in condemnation is needed because on January 26, 2007, the Government entered into a license which gives it access to the property and the ability to move forward with hydrogeological studies, design modifications, and zone changes. *Exhibit 7 to Jackson Declaration.* In addition, the United States misunderstands Guam law regarding condemnation when it seeks to have this Court order the Attorney General to file the condemnation action. Under Guam law, the Governor exercises the power of eminent domain, *21 GCA § 15105*. Once the Governor has issued a declaration of taking and the Attorney General has filed the law suit, then title "shall vest in the Government of Guam," but, only after the Governor has identified the funds, or if he needs to, seeks legislative appropriations, and the DOA has "deposited the amount of estimated compensation" with the Superior Court; and further, the Superior Court will set the date by which the owners must surrender possession to the Government. *21 GCA § 15108*. Hence, if at any time the Court finds it necessary to order condemnation, then such order should be directed at the appropriate governmental entities.

6. Submit Financial Plan by April 2, 2007.

The Government believes that another financial plan is not necessary. Financial Plans by their very nature need to be flexible, and currently the Camacho Administration is pursuing both private financing and revenue bond financing, and the final decision for each large project will be decided at the completion of the bid evaluations. *Perez's Second Declaration at ¶ 7.*

Page 8
Government of Guam's Response to U.S's Motion to Enforce Consent Decree
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022   Document 91   Filed 02/14/2007   Page 8 of 11

7. <u>If Bond Financing, then PUC Application by April 30, 2007, and Legislation by May 15, 2007.</u>

In anticipation that private financing may not be desired or financially beneficial, the Camacho Administration will be preparing the necessary documents to move forward with a revenue bond in an expedited time frame by preparing the documents needed and obtaining prior approval from required bodies. *Id. at ¶ 6.* The bond legislation has been drafted, and the underwriters have a draft engineer's report. *Declaration of Christina Garcia at ¶ 2.* The underwriters have estimated that the solid waste operations need an additional $9.1 million in annual revenues in order to service the debt on a $100 million bond, as well as increased revenues for Landfill operations. *Id.* Hence, it would be advisable able to keep both options, bonding and private financing, available until the time a contract is entered into, thereby allowing flexibility and preventing further delays. *Perez's Second Declaration at ¶ 6.*

8. <u>If Private Financing, then PUC approval by April 30, 2007 and contract by July 2, 2007.</u>

Some believe that private financing, a form of a public private venture will allow the projects to be implemented in the most expeditious time frame. *Perez's Second Declaration at ¶ 6.* Although the Camacho Administration has been looking at private financing, it was looking into private financing by the entity that would be awarded the bid for the both Ordot closure and landfill construction, and not by a financing agreement with a separate entity. *Id.* It is anticipated that some entities would prefer contracts that will be paid over time, which are to be secured by the applicable tipping fees. *Id.* However, private financing is not the only option that the Administration would like to rely on; hence it will continue to pursue a revenue bond, given that the financial advisors of the Guam Economic Development and Commerce Authority have stated that the bond should be the most cost effective financing method. *Id.*

9. <u>Formation of Public Corporation by April 30, 2007.</u>

As the United States is aware, the Government is in the process of contracting out the construction of Ordot Closure, the construction and operation of Layon, as well as residential

Page 9
Government of Guam's Response to U.S's Motion to Enforce Consent Decree
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022   Document 91   Filed 02/14/2007   Page 9 of 11

trash collections. Therefore, the creation of a public corporation will be essentially unnecessary because by 2011 most of the solid waste operations activities will be conducted by private entities, with Government oversight through contract management. *Perez's Second Declaration at ¶7.* Although the PUC's approach to forming a public corporation differs from that of the Camacho Administration, under the Organic Act, *48 U.S.C. § 1422*, the Governor is the head of the Executive Branch and must decide the most prudent path for each agency given the circumstance of the entire branch and the public interest. In addition, formation of a public corporation would divest the Executive Branch of all control over solid waste operations, and that (1) would result in further delays while the new personnel come up to speed, and (2) would terminate the Administration's ability to ensure compliance with the Consent Decree. *Id.*

10. File Monthly Compliance Report on Daily Cover, Delays, and Income.

The Government objects to this requirement: it infringes on the jurisdiction of the Guam Environmental Protection Agency ("EPA") and the PUC. Further, as proposed, it is unduly burdensome. The DPW can submit monthly reports on the daily cover, as it is required to do so under its solid waste disposal facility permit from Guam EPA. Copies of the most recent reports are attached as Exhibit 4 to Jackson's Second Declaration. Likewise, the DPW can submit a monthly report explaining any delays in meeting timelines, as it has provided verbal reports, generally monthly, to USEPA since 2004.

However, the PUC requires quarterly financial reports from DPW, and so it would be unduly burdensome to require these to be submitted to the Court monthly. *Id.at ¶ 7.* In addition, the proposal that the Attorney General be responsible for the report is untenable. The Attorney General is the chief legal officer of Guam, not the accounting officer, not the Governor, not the Director of Public Works. The Attorney General has no authority to make such determinations. The Governor's office and the agencies have the authority and

Page 10
Government of Guam's Response to U.S's Motion to Enforce Consent Decree
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022 Document 91 Filed 02/14/2007 Page 10 of 11

responsibility for such management and information. Hence, the reports should come from DPW or the Governor's office.

### III. CONCLUSION

The Government has proposed a detailed schedule for achieving the overarching goal of a landfill at Layon, closure of the Ordot Dump and a household hazardous waste facility. In contrast the United States has proposed interim deadlines that are overly intrusive in the Government's affairs, and overly burdensome on DPW. The Government's plan has more detail and more forethought. The Court should give grater consideration to the Government's proposal. The Untied States' motion should be denied.

Submitted this 14th day of February, 2007.

**Office of the Attorney General**
Alicia G. Limtiaco, Attorney General

*[signature]*

**Helen M. Kennedy**
Assistant Attorney General
Counsel for Defendant, Government of Guam

**Of Counsel:**

Ray C. Haddock
Governor's Assistant Legal Counsel

Page 11
Government of Guam's Response to U.S's Motion to Enforce Consent Decree
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022   Document 91   Filed 02/14/2007   Page 11 of 11