

**Office of the Attorney General**
**Alicia G. Limtiaco**
Attorney General of Guam
**Civil Division**
287 West O'Brien Dr.
Hagåtña, Guam 96910 • USA
(671) 475-3324 • (671) 472-2493 (Fax)
www.guamattorneygeneral.com
**Attorneys for the Government of Guam**



FILED
DISTRICT COURT OF GUAM
FEB 14 2007
MARY L.M. MORAN
CLERK OF COURT

# IN THE DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL CASE NO. 02-00022 |
| Plaintiff, | |
| vs. | |
| GOVERNMENT OF GUAM, | SECOND DECLARATION OF LAWRENCE P. PEREZ |
| Defendant. | |

I, Lawrence P. Perez say and declare of my own personal knowledge:

1.  A copy of the February 1, 2007 order by the Public Utilities Commission is attached as Exhibit 1. A copy of Public Law 25-93 is attached as Exhibit 2. Section 8 of this law amended the solid waste service regulations so that commercial haulers are not responsible to pay the government tipping fees if their customers do not pay the haulers the fees.

2.  After learning of the United States' objections to the installation of an interceptor trench to control leachate at Ordot, and due to limited funding, by majority vote the Consent Decree

Page 1
Corrected Declaration of Lawrence P. Perez
US District of Guam - Civil Case No. CV02-00022

Case 1:02-cv-00022   Document 94   Filed 02/14/2007   Page 1 of 17

Compliance team decided not to pursue the interceptor trench. Instead, the funds will be used for the Ordot design modifications and related work, and the Layon design modifications.

3. Currently, the Guam Public Auditor is conducting an audit of the billing and collection of user and tipping fees. Until that report is completed and reviewed, the Government should not move to contract out the billing and collection of tipping fees from the commercial haulers because the report will assist in determining the final dollar amounts for delinquent accounts for each commercial hauler, and until we have that number, neither the Government nor the Court can determine if 50 % or 75 % of these arrearages have been collected. Given the limited staff, the procurement advisor's schedule, and the procurement code and PUC regulatory requirements, DPW and DOA could submit the request for proposals for contracting out the billing and collection and the solid waste collection to the PUC by May 1, 2007. Realistically, the notice to proceed could be issued 210 days thereafter, or by December 10, 2007. The PUC's regulatory review time is 120 days; 90 days for RFPs and 30 days for contracts. Id. Also, experience has shown that DPW needs 90 days to advertise for and negotiate service contracts, and under Executive Order 2004-02, expedited contract review by the Bureau of Management and Budget generally takes six to eight days, review by the Attorney General's office two to four days, and the Governor's signature a final one to two days. In order to receive competitive proposals, the RFP should be advertised for 40 to 50 days, and the fee negotiations take up 30 to 40 days, hence 90 days are needed. As to the RFP for the solid waste collection, before advertising, the Government must complete the maps using digitized geographic data, and DPW the only staff at DPW who are capable of doing this work are working overtime for federal highway funding. Consequently, I have requested assistance from the Bureau of Statistics and Plans to finish this task.

4. The purging of the DPW-SWM's database and the increased enforcement of its service regulations began in May of 2006, and is still ongoing. Upon review of the residential collection rates since last August, it is my understanding that the lower rates are a result of decreased customer participation in the SWM program, and re-prioritizations of Customer spendings. Consequently, I have directed the Public Works staff to more aggressively enforce its service regulations.

5. Financial Plans by their very nature need to be flexible, and currently the Administration is considering both private financing or revenue bond financing, and the final decision for each large project will be decided at the completion of the bid evaluation.

6. In anticipation that private financing might may not be desired or financially beneficial, the Administration will be preparing the necessary documents to move forward with a revenue bond in an expedited time frame by preparing the documents needed and obtaining prior approval from required bodies. Some believe that private financing, a form of a public private venture will allow the projects to be implemented in the most expeditious time frame. Although the Administration has been looking at private financing, it was looking into the private financing of the landfill though the entity who is awarded the bid for the both Ordot closure and construction of the landfill, and not as a separate financing agreement. *Id.* It is anticipated that some entities would prefer contracts that will be paid over time, which are to be secured by the applicable tipping fees. However, this is not the only option that the Administration would like to rely on and so it will continue to pursue to government bond, keeping in mind that the financial advisors to the Guam Economic Development Authority have suggested that the bond may be the most cost effective method of financing. Keeping available both the private financing and the revenue bond financing options is advisable in order to allow for flexibility and prevent further delays.

7. I have discussed the possibility of creating a public corporation with the Governor and his advisors. At the conclusions of the discussion, it was decided that the best course for the Government and the people of Guam is to continue with the solid waste operations within the Department of Public Works. A public corporation will be essentially unnecessary because by 2011 the majority of the solid waste operation will be conducted by private entities with the government oversight and management of the contracts. In addition, its formation would divest the Executive Branch of all control over the solid waste operations, resulting in further delays while the new personnel come up to speed, and also terminating the Administration's ability to ensure compliance with the Consent Decree.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge this 14th day of February, 2007.



Lawrence P. Perez

# EXHIBIT 1

BEFORE THE GUAM PUBLIC UTLITIES COMMISSION

FOCUSED MANAGEMENT AUDIT
OF DEPARTMENT OF PUBLIC   DOCKET 06-2
WORKS' SOLID WASTE MANAGEMENT
DIVISION



### Order

The purpose of this Order is to respond to the Attorney General of Guam's January 24, 2007 request[1] for the Guam Public Utilities Commission's *[PUC]* position on issues regarding the Government of Guam's *[Government]* compliance with its obligations as defendant under the *Consent Decree* in District Court of Guam *[District Court]* Civil Case 02-22 *[USA v. Government of Guam]*. The Attorney General serves as counsel for the Government in this proceeding. It is PUC's understanding that this Order may serve some purpose in pending enforcement proceedings now before the District Court regarding the *Consent Decree*.

PUC finds itself in the anomalous situation of attempting to regulate the rates of a line department of the Government, which is the defendant in Federal enforcement proceedings. At PUC's direction, its regulatory consultant has conducted two recent audit reviews[2] of: a] the events and circumstances, which have caused the Government to default in its obligations under the *Consent Decree*; and b] the remedial action, which is necessary to empower the Government to meet its obligations under the Consent Decree in a timely manner.

### *Findings and Recommendations*

After careful review of the GCG reports and the record in this docket, including PUC's September 28, 2006 Order and in response to the Attorney General's request, PUC makes the following findings and recommendations, which are

---

[1] On January 24, 2007 the Attorney General's office *[Helen Kennedy, Esq.]* requested PUC's position on the following: "a] *A list of time frames PUC needs to review and approve any financing as well as contracts relating to the Landfill, Ordot Closure and the Household Hazardous Waste Facility;* b] *A list of prerequisites [for] accomplishment by DPW before PUC will approve rate increases to cover the construction costs [e.g. changes in legislation]; and* c] *PUC's position, from the exercise of its powers and duties, as to significant changes in factual or legal circumstance since February 11, 2004, the date the Court entered the Consent Decree.*"

[2] Georgetown Consulting Group [GCG] Audit Report dated September 2006 and GCG Update Report dated January 5, 2007. The Update Report is enclosed as *Attachment A.*

1

relevant, both to PUC's ability to discharge its ratemaking responsibilities and to the Government's ability to discharge its responsibilities under the Consent Decree.

### 1. *Public Corporation.*

*Finding.* The Solid Waste Division of the Department of Public Works *[SWM]* is incapable, due to handicaps incident to its status as a line agency[3], of billing and collecting the revenue necessary to meet the financial obligation required to fund procurements mandated by the Consent Decree. SWM is also incapable, due to these handicaps, of complying with the Consent Decree operational mandates.

*Recommendation:* The District Court should order and direct the Government, within 60 days to enact legislation to reconstitute SWM as a public corporation *[Corporation]* under the oversight of the Consolidated Commission on Utilities [CCU][4]. This legislation should include the Corporation within the definition of "*public utility*" in PUC's enabling legislation [12 GCA 12000(a)]. This recommendation reflects the Government's public policy.[5] GWA's progress under the District Court's October 19, 2006 *Amended Stipulated Order* in Civil Case

---

[3] These handicaps include: a] the fragmentation of operational and governing authority among the Management Team established by Executive Order 2006-12 *[Consent Decree administration]*; the Department of Public Works' director *[solid waste operations]*; the Department of Administration *[billing and financial management]*; the Attorney General's Office *[legal]*; the Governor's office *[policy, revenue transfer authority and contract authority]*; and the Legislature *[policy and appropriation power]*; b] lack of adequate personnel, systems and resources to manage and operate waste collection and landfill duties; c] and rate revenues being subject to appropriation and Executive transfer for other purposes.

[4] Several benefits would immediately flow from this recommendation: a] governing authority and Decree compliance responsibility would be consolidated in a single commission; b] CCU has proven its ability to secure the revenue bond financing, which is necessary to comply a with the Consent Decree; c] CCU has in place a seasoned team of managers, who could be tasked with overseeing the performance of the tasks recommended in this Order; d] CCU could draw upon the legal, financial, managerial and operational resources of sister utilities *[Guam Power Authority [GPA] and Guam Waterworks Authority [GWA]]* and its team of outside consultants in empowering the Corporation to establish itself as a functioning utility - such collaborations are already occurring between GPA and GWA; and e]the Corporation's rate revenues would not be subject to appropriation or executive transfer for unrelated purposes. The key benefits discussed in subparagraphs (b), (c), and (d) above would not be available were the Government to reconstitute SWM as a public corporation with a separate governing board other than CCU.

[5] Pursuant to 10 GCA 51103(a), the Guam Environmental Protection Agency adopted a 2006 *Solid Waste Management Plan*, which recommends that SWM be re-established as a public corporation under CCU. The Plan was filed with the Legislature on October 2, 2006 pursuant to 10 GCA 51119(a)(1).

2

02-35 *[USA v. Guam Waterworks Authority]* confirms the wisdom of empowering a public corporation, under CCU's governance, with financing court mandated capital projects with revenue bonds. This successful model should be applied to SWM.

   *2. Revenue bonding.*

*Finding.* Over the past two years, the Government's financial advisors have consistently advised it that revenue bonds are the most economic and effective means of financing the Government's obligations under the Consent Decree[6]. The Government currently appears to be reconsidering this advice[7]. Financing must be in place before procurements can be finalized for the capital projects mandated by the Consent Decree.

*Recommendation.* The District Court should order and direct that the legislation, which establishes the Corporation also empower and authorize it to secure revenue bond financing for Consent Decree capital projects[8]. The Court should further direct that the Corporation should: a] within 70 days of its creation petition PUC for approval of the revenue bonds and for the use of bond proceeds[9] and PUC should act within 70 days on such filing; and b] upon the issuance of PUC's order and with the assistance of the Government's bond counsel, underwriters and financial consultants undertake all reasonable steps necessary to secure revenue bonding as the earliest possible date but in no event later than 120 days after PUC's order. PUC's order should contain customary assurances that the Corporation will be awarded rate relief, which is adequate to enable it to comply with its Indenture obligations.

---

[6] *See* DPW's October 2004 *Landfill Financial Plan*, referenced on page 4 of the GCG Update Report *[Attachment A]* and the uniform advice of the Government's financial advisors, as recounted in the Update Report at page 4.

[7] See, the Government of Guam's December 15, 2006 *Response to the United States' Concerns Raised in its Request for a Status Conference* in District Court Civil Case No. 02-22 at pages 8 and 9.

[8] Guam Public Law 28-71, which authorized GWA to secure revenue bond financing, is a model for this proposed legislation.

[9] This recommendation is consistent with the District Court's October 19, 2006 Amended Stipulated Order in *USA v. Guam Waterworks Authority [Civil Case 02-35] [section 30]*, which directs that PUC approve GWA's financial plan for complying with the Stipulated Order. In PUC's experience with revenue bond financing for GPA and GWA, bond counsel requests that PUC approve the bond documents, costs of issuance and commit to providing adequate rate revenues to enable the utility to meet Indenture obligations. In addition, PUC under its contract review authority, reviews and approves the proposed use of bond proceeds.

3

### 3. Residential and commercial collection service.

*Finding.* The Corporation, under CCU's oversight, must restructure its billing and collection system and stabilize its residential and commercial service. These immediate reforms are essential to normalize the Corporation's revenue stream, which must support its revenue bond obligations.

*Recommendation.* The District Court should order and direct that the Corporation's enabling legislation should empower it, subject to PUC review and approval: a] to restructure the Corporation's business relationship with the commercial haulers; b] to either privatize its billing and collection or establish a protocol under which GPA would undertake this responsibility; and c] privatize residential collection for the entire island. Within 90 days of its creation, the Corporation should be ordered to file with PUC a petition for approval of procurement documents and plans for implementing these recommendations. PUC should complete its review of this plan within 70 days of its filing.

### 4. Consent Decree Projects.

*Finding.* The procurement process for the capital projects mandated by the Consent Decree[10] would be substantially expedited by centralizing this responsibility in the Corporation.

*Recommendation.* The District Court should order that the Corporation's preparation of the Consent Decree procurement documents and regulatory review of the documents[11] will track the timeline for regulatory review of the revenue bond financing *[i.e., a petition for regulatory review should be filed within 70 days of corporate creation and PUC action on the petition within 70 days of filing.]*

---

[10] These procurements include: a] the closure of the Ordot landfill; b] the construction and operation of the Layon landfill; c] the household hazardous waste facility; and d] the collateral procurements to privatize residential collection and billing and collection.

[11] PUC by order dated 10/27/05 in Docket 05-9 *[copy enclosed as Attachment B]* has established a protocol for regulatory review and approval of SWM procurements and financial obligations in excess of $50,000.

4

### 5. SWM Rate Relief.

*Finding.* In its October 27, 2005 Rate Order in Docket 05-9, PUC expressed its intent to gradually increase SWM's rates in preparation for what the Government assured PUC was the imminent issuance of revenue bonds. The Government's effort to secure this financing has suffered one delay after another. As a result, Consent Decree related procurements have also stalled without a source of revenues to fund them. SWM's inability to collect more than 50% of its residential billings makes it manifestly unfair to raise the rates of the 50% of residential customers who pay for collection service. Moreover, the exposure of SWM rate revenues to Executive transfer for purposes unrelated to solid waste management also causes PUC serious concern[12]. PUC finds these events to be barriers to further ratemaking for SWM.

*Recommendation.* It is essential that the District Court remove these barriers through the recommendations contained herein in order for Consent Decree compliance to occur.

### 6. Layon Landfill Site.

*Finding.* PUC does not have in its possession adequate information in order to make specific findings with regard to the status of the Layon landfill site. PUC is informed that the Layon site is not owned by the Government. This presents a substantial barrier to Consent Decree compliance, which must be promptly resolved.

*Recommendation.* The Corporation should be empowered in its enabling legislation, in the same manner as GPA and GWA, with the power of eminent domain[13]. The District Court should establish a reasonable deadline by which the Corporation must either have negotiated the acquisition and use of the Layon site, subject to PUC review and approval under its contract review protocol, or have initiated eminent domain proceedings for the site under 21 GCA 15101 et. sec.

---

[12] *See* January 19, 2007 memorandum of law entitled *Effect of 2007 Budget Bill on Integrity of Solid Waste Operating Fund,* which is an appendix to Georgetown's Update Report – *Attachment A* to this Order. PUC anticipates that the barrier caused by Executive transfer authority would be resolved by legislation, which establishes the Corporation.

[13] GWA is given the power of eminent domain under 12 GCA 14104(b). GPA is given the power of eminent domain under 12 GCA 8104(2).

*Ordering Provisions*

After careful review, for good cause shown and on motion duly made, seconded and carried by the affirmative vote of the undersigned commissioners, the Guam Public Utilities Commission **HEREBY ORDERS THAT**:

1. The findings and recommendations, as set forth above, are adopted.

2. PUC is prepared, within the scope of its enabling legislation, to provide any assistance and to perform any task as may be assigned to it by the District Court under the Consent Decree.

3. A copy of this Order shall be transmitted to the Attorney General of Guam and to the United States Attorney.

Dated this 1st day of February 2007.

_____
Terrence M. Brooks

_____
Edward C. Crisostomo

_____
Rowena E. Perez

_____
Joseph M. McDonald

_____
Filomena M. Cantoria

_____
Jeffrey C. Johnson

6

# EXHIBIT 2

# Public Law 25-93

## MINA'BENTE SINGKO NA LIHESLATURAN GUÅHAN
## 1999 (FIRST) Regular Session

**Bill No. 289 (COR)**
As substituted by the Committee on
Power, Public Works, Tax and Regulatory
Reform, Municipal and Community Affairs
and as amended on the Floor.

Introduced by:
S. A. Sanchez, II
V. C. Pangelinan
K. S. Moylan
L. F. Kasperbauer
F. B. Aguon, Jr.
E. C. Bermudes
A. C. Blaz
J. M.S. Brown
E. B. Calvo
M. G. Camacho
Mark Forbes
A. C. Lamorena, V
C. A. Leon Guerrero
J. C. Salas
A. R. Unpingco

**AN ACT TO *AMEND* P.L. NOS. 24-272 AND 24-313, RELATIVE TO THE IMPLEMENTATION OF SOLID WASTE TIPPING FEES ON GUAM AND THE RULES AND REGULATIONS FOR SOLID WASTE COLLECTION BY THE DEPARTMENT OF PUBLIC WORKS.**

**BE IT ENACTED BY THE PEOPLE OF GUAM:**

**Section 1.** Section 51118(c) of Article 1, Chapter 51, Part 2, Division 2 of Title 10 of the Guam Code Annotated is hereby *amended* to read as follows:

"(c) **Business and Governmental Tipping Fees.**

A tipping fee of Four Dollars ($4.00) per cubic yard, uncompacted, is hereby established for business and government generators. For compacted trash, a tipping fee of Four Dollars ($4.00) per cubic yard multiplied by the compaction ratio of any vehicle or container with compaction equipment, is hereby established for business and government generators. Commercial and government collectors shall provide the Department of Public Works the compaction ratios of all equipment used to haul solid waste to the landfill to insure the accurate assessment of tipping fees for compacted trash. This fee does *not* include collection charges that are independently set by licensed commercial collectors."

**Section 2.** Section 51118(d) of Article 1, Chapter 51, Part 2, Division 2 of Title 10 of the Guam Code Annotated is hereby *amended* to read as follows:

"(d) **Residential Tipping Fees.** A residential tipping fee, which includes collection charges, is hereby established for residential generators in the amount of Eight Dollars ($8.00) per dwelling per month."

**Section 3.** Section 51118(h) is hereby *added* to Article 1, Chapter 51, Part 2, Division 2 of Title 10 of the Guam Code Annotated to read as follows:

*Exhibit 2*

"(h)    **DPW to Develop Variable Residential Tipping Fees.**

In recognition of the fact that the initial residential tipping fee established by Public Law Number 24-272 is a flat fee, which discourages trash reduction, penalizes smaller families and subsidizes large residential generators of waste, the Department of Public Works shall develop a plan to institute a sliding scale of residential tipping fees. The sliding scale shall, at a minimum, charge residential generators based on the amount of waste produced and picked up by the department. The plan shall also address the methodology for billing individual residential customers based on the revised variable tipping fee. The plan shall be submitted to *I Liheslaturan Guåhan* within four (4) months of enactment of this Act.

(h)(1)    **Lifeline Rates for Tipping Fees.**

Notwithstanding any other provision of law, the Department of Public Works shall, through the development of rules and regulations pursuant to the Administrative Adjudication Law, establish and modify from time to time, Targeted Lifeline Rates for Residential Tipping Fees covering pick-up and delivery of residential trash *only* that are consistent with and meeting the low income eligibility criteria, requirement, policies or procedures established by the Guam Housing and Urban Renewal Authority ('GHURA') applicable to their Low Income Public Housing Program."

**Section 4.    Self-Drop Fee Established.**    Section 51118(i) is hereby *added* to Article 1, Chapter 51, Part 2, Division 2 of Title 10 of the Guam Code Annotated to read as follows:

"(i)    **Self-Drop Fee Established.**    Any person or entity that is *not* a business or government generator shall be billed Two Dollars ($2.00) per vehicle load of solid waste delivered to a landfill operated by the Department or its contractor; provided, that the vehicle load capacity is one (1) ton or less. Vehicles in excess of said load capacity shall be billed a rate that is based on an established formula developed by the Department."

**Section 5.**    Section 51118(j) is hereby *added* to Article 1, Chapter 51, Part 2, Division 2 of Title 10 of the Guam Code Annotated to read as follows:

"(j)    **Temporary Exemption from Tipping Fees for Municipal Waste Collection.**    For a period of one (1) year commencing the date of the enactment of this Act, all waste collected by any Mayor or Vice-Mayor in the performance of their official duties, and transported to a landfill operated by the Department or its contractor, shall be exempt from all tipping fees. The Department of Public Works shall monitor and record the amount of solid waste delivered by Mayors and Vice-Mayors under this Section. This information shall be provided on a quarterly basis to the Mayors Council, *I Maga'lahen Guåhan*, and *I Liheslaturan Guahån* for the purpose of determining an appropriate budget for each municipality following the end of the exemption."

**Section 6.**    Section 51118(k) is hereby *added* to Article 1, Chapter 51, Part 2, Division 2 of Title 10 of the Guam Code Annotated to read as follows:

"(k)    **'Good Citizen' Exemption Established.**    Any individual, registered non-profit organization, or other person who intends to volunteer their resources for the purpose of cleaning up and collecting trash and litter from public places or facilities may be granted a temporary exemption from the fees established herein by securing a written exemption from the Department of Public Works in advance of their planned collection activities. The Department of Public Works shall determine the manner, time limit and procedure by which such an exemption may be granted and honored."

**Section 7.** Section 51118(l) is hereby *added* to Article 1, Chapter 51, Part 2, Division 2 of Title 10 of the Guam Code Annotated to read as follows:

"(l) **Temporary Exemption of Tipping Fees Following a Force Majeure.** Following a force majeure, *I Maga'lahen Guåhan* shall be authorized to suspend tipping fees for all solid waste collected and transported to a landfill that is operated by the Department or its contractor for a period *not to exceed* sixty (60) days."

**Section 8.** Notwithstanding any other provisions of law, Section 105(m) is hereby *added* to the Department of Public Works Division of Solid Waste Management Rules and Regulations approved by Public Law Number 24-313 to read as follows:

"(m) **Collection of Tipping Fees.**

(1) Residential tipping fees shall be billed and collected as provided under §105(j) and §117(3)(a) of the Department of Public Works Division of Solid Waste Management Rules and Regulations. Tipping fees for government departments or agencies that have their solid waste picked up by the Department also shall be billed and collected by the Department.

(2) Tipping fees for business or government generators that have their solid waste collected by commercial collectors shall be collected by commercial collectors, on behalf of the government of Guam. Commercial collectors shall remit the tipping fees paid by their customers in the prior month to the government by the twentieth (20th) day of the following month. The tipping fees collected by commercial collectors, upon remittance to the government of Guam, shall be considered as revenue for the government and *not* as income for commercial collectors. *If* a commercial collector does *not* remit the tipping fees actually collected from generators, as provided in this Section, then the commercial collectors shall be liable for full payment to the government of all tipping fees that are collected from generators, but *not* remitted to the government."

**Section 9.** Notwithstanding any other provisions of law, Section 105(n) is hereby *added* to the Department of Public Works Division of Solid Waste Management Rules and Regulations approved by Public Law Number 24-313 to read as follows:

"(n) **Termination of Collecting Services to Business, Government and Residential Generators for Non-Payment.** *If* a business, government or residential generator of solid waste fails to pay the tipping fees charged to them within sixty (60) days of the due date, the Department shall terminate, or cause to be terminated, the pick-up of solid waste from the non-paying generator, *subject* to the provisions provided herein.

(1) Commercial collectors shall provide thirty (30) days written notice of termination, and the effective date of service termination of collecting services, to their respective accounts that have *not* paid their tipping fees within sixty (60) days of billing. Commercial collectors shall provide the Department written notice of any commercial generator account that has *not* paid their tipping fee within the thirty (30) day notice of termination required by this Section.

(2) Commercial collectors shall *not* pick up any solid waste from terminated customers, or else shall be liable for the payment of tipping fees that are incurred from continued service. The Department shall notify in writing all commercial collectors of all business or government accounts that are restricted from collecting services for non-payment of tipping fees, as required by this Section.

(3) The Department shall collect all unpaid tipping fees that are past due from residential, business or government generators who have *not* paid their respective tipping fees, *subject* to the provisions in this Section. Commercial collectors shall *not* be liable for past due unpaid tipping fees of its customers, *except* as provided by this Act.

(4) The Department or commercial collectors may resume waste collection services upon full payment of all past due tipping fees owed by the generator. The Department shall notify commercial collectors in writing when a generator is eligible for resumption of waste collecting services, as provided by this Act."

**Section 10.** Section 105(a) of the Department of Public Works Division of Solid Waste Management Rules and Regulations approved by Public Law Number 24-313 is hereby *amended* to read as follows:

"(a) **Responsibility.** The government of Guam shall provide for the collection of solid waste from individual dwelling units, single family residences, duplexes, and government managed housing units or residences. The government of Guam also shall provide for the collection of solid waste from multiple dwelling units of four (4) or less units that are *not* part of an organized subdivision of similar complexes, upon written request by the legally *bona fide* owner of the multiple dwelling unit. The Department of Public Works may contract for collection services with a person, business or corporation, or a combination thereof, for such as deemed to be in the best interests of Guam."

**Section 11.** Section 26203(l) is hereby *added* to Article 2, Chapter 26, Division 2 of Title 11 of the Guam Code Annotated to read as follows:

"(l) The amounts collected on behalf of the government as tipping fees imposed under Chapter 51 of Title 10 of the Guam Code Annotated."

**Section 12.** Section 51102(52) is hereby *added* to Article 1, Chapter 51, Part 2, Division 2 of Title 10 of the Guam Code Annotated to read as follows:

"(52) '*Duplex*' means a residential building containing two (2) separate dwelling units either side by side or one above the other."

**Section 13.** Section 51102(53) is hereby *added* to Article 1, Chapter 51, Part 2, Division 2 of Title 10 of the Guam Code Annotated to read as follows:

"(53) '*Single Family Residence*' means a detached building designed for and/or occupied exclusively by one (1) family, or one (1) of two (2) dwelling units on a duplex."

**Section 14.** Section 103(k) of the Department of Public Works Division of Solid Waste Management Rules and Regulations, approved in §1 of Public Law Number 24-313, is hereby *amended* to read as follows:

"(k) '*Multiple Dwelling*' means a building, or portion thereof, used and/or designed as a residence for three (3) or more families living independently of each other in dwelling units and doing their own cooking in said building."

**Section 15.** Section 103(m) of the Department of Public Works Division of Solid Waste Management Rules and Regulations, approved in §1 of Public Law Number 24-313, is hereby *amended* to read as follows:

"(m) '*Single Family Residence*' means a detached building designed for and/or occupied exclusively by one (1) family, or one (1) of two (2) dwelling units on a duplex."

**Section 16.**  Section 103(q) of the Department of Public Works Division of Solid Waste Management Rules and Regulations, approved in §1 of Public Law Number 24-313, is hereby *added* to read as follows:

"(q)  '*Duplex*' means a residential building containing two (2) separate dwelling units either side by side, or one above the other."