# ORIGINAL

1  MATTHEW J. MCKEOWN
   Acting Assistant Attorney General
2  Environment & Natural Resources Division
   ROBERT D. MULLANEY
3  Environmental Enforcement Section
   United States Department of Justice
4  301 Howard Street, Suite 1050
   San Francisco, California 94105
5  Tel: (415) 744-6483
   Fax: (415) 744-6476
6
   LEONARDO M. RAPADAS
7  United States Attorney
   MIKEL W. SCHWAB
8  Assistant United States Attorney
   Suite 500, Sirena Plaza
9  108 Hernan Cortez
   Hagåtña, Guam 96910
10 Tel: (671) 472-7332
   Fax: (671) 472-7215
11
   Attorneys for United States of America
12

13
                IN THE UNITED STATES DISTRICT COURT
14
                  FOR THE TERRITORY OF GUAM
15

16
   UNITED STATES OF AMERICA,              )    CIVIL CASE NO. 02-00022
17                                        )
                        Plaintiff,        )
18                                        )    UNITED STATES' REPLY BRIEF
            v.                            )    IN SUPPORT OF MOTION TO
19                                        )    ENFORCE CONSENT DECREE
                                          )
20 GOVERNMENT OF GUAM,                    )    Date:  March 8, 2007
                                          )    Time:  9:00 a.m.
21                      Defendant.        )
   ───────────────────────────────────   )
22

23

24

25

26

27

28

**FILED**
DISTRICT COURT OF GUAM

FEB 21 2007

MARY L.M. MORAN
CLERK OF COURT

# TABLE OF CONTENTS

I.  INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    This Court Has the Authority to Fashion an Equitable Remedy to
           Address GovGuam's Violations of the Consent Decree. . . . . . . . . . . . . . . . . . . . . 1

    B.    The Court Should Consider the PUC's February 2007 Order when
           Fashioning an Appropriate Remedy for GovGuam's Violations of
           the Consent Decree.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.    The Court Should Require GovGuam to Meet a Series of Interim
           Milestones to Establish the Necessary Building Blocks to Enable
           GovGuam to Meet its Consent Decree Obligations.  . . . . . . . . . . . . . . . . . . . . . . 6

III. CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# I. INTRODUCTION

The U.S. Environmental Protection Agency ("EPA") first issued an Administrative Order to the Guam Department of Public Works ("DPW") in March 1986, directing DPW to cease its discharges of leachate from the Ordot Dump into the Lonfit River. After the Government of Guam ("GovGuam") failed to comply with the Clean Water Act ("CWA") despite more than 10 years of EPA's administrative actions, the United States filed a Complaint in August 2002, seeking to end these illegal discharges. The United States believed that the Court's entry of this Consent Decree would finally break the legislative logjam that had prevented GovGuam from addressing the serious public health and environmental hazards posed by the Ordot Dump.

GovGuam is currently in violation of the central requirements of the Consent Decree and has admitted that it does not have the funds to comply with the Decree's 2007 construction deadlines for opening the new landfill and closing the Ordot Dump. Seeking to avoid the impact of these undisputed facts, GovGuam now argues that the Decree's 2007 deadlines are "unworkable" and requests the Court, in effect, to turn back the clock to 2003 and to award GovGuam four more years to comply with the Decree's deadlines. At this point, GovGuam has had more than twenty years to bring the Ordot Dump into compliance with the CWA. This Court should not countenance any further excuses and delay. GovGuam's violations of the Decree's central requirements conclusively demonstrate that GovGuam will not comply with Decree without the Court's intervention. Accordingly, the United States requests the Court to exercise its authority to fashion an equitable remedy that will ensure GovGuam's expeditious compliance with the Decree.

# II. ARGUMENT

### A. This Court Has the Authority to Fashion an Equitable Remedy to Address GovGuam's Violations of the Consent Decree.

CWA Section 309(b) provides the district court with jurisdiction to restrain a violation and to require compliance. 33 U.S.C. § 1319(b). Pursuant to this broad grant of authority, this Court can fashion an appropriate remedy for a violation of the Act. See United States v. Alisal Water Corporation, 431 F.3d 643, 654 (9th Cir. 2005) ("court will not generally infer restrictions

on inherent judicial authority from congressional silence.")  This Court also has a broad range of equitable powers available to it "to enforce and effectuate its orders and judgments."  U.S. v. Alisal Water Corp., 326 F. Supp. 2d 1010, 1012 (N.D. Cal. 2002), quoting United States v. City of Detroit, 476 F. Supp. 512, 520 (E.D. Mich. 1979); see United Shoe Machinery Corp., 391 U.S. 244, 252 (1968) (at the request of the party who sought the injunctive relief, court has authority to tighten a consent decree in order to accomplish its intended result).  As the Supreme Court concluded: "Federal courts are not reduced to approving consent decrees and hoping for compliance.  Once entered, a consent decree may be enforced."  Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 440 (2004).  Therefore, a district judge, "sitting in equity, is vested with wide discretion in fashioning a remedy" for violations of a decree.  Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979); see also Delaware Valley Citizens' Council for Clean Air v. Pennsylvania, 533 F. Supp. 869, 880-82 (E.D. Pa. 1982), aff'd, 678 F.2d 470 (3d Cir. 1982).

The United States has requested this Court to enforce the Consent Decree, and, pursuant to its equitable authority, to establish interim compliance milestones in order to create the basic building blocks that will allow GovGuam to eventually meet its obligations under the Decree. GovGuam argues that the United States' motion does not provide solutions "suitably tailored" to address the changed circumstances.[1]/  GovGuam's Resp. at 2.  However, GovGuam's reliance on institutional reform cases, such as Grier v. Goetz, 402 F. Supp. 2d 876 (M.D. Tenn. 2005), is misplaced.  Unlike this case, Grier did not involve a defendant that currently violates core requirements of a federal consent decree and did not involve the plaintiff's motion to enforce the Decree's central requirements.  Moreover, the Grier defendant was requesting the court to modify or clarify certain aspects of a decree that applied prospectively.  402 F. Supp. at 882.  In contrast,

---

[1]/    In addressing a proposed modification to a consent decree under Rule 60(b)(5), the Supreme Court required that the modification be "tailored" to resolve the problems created by the change in circumstances. Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 391 (1992). The Supreme Court cautioned: "A court should do no more, for a consent decree is a final judgment that may be reopened only to the extent that equity requires." The Rufo standard does not restrict a court's broad authority to fashion a remedy for violation of a consent decree.

2

1 GovGuam's proposed modification seeks the Court to modify parts of the Consent Decree
2 retrospectively. Even though the Decree mandated that the design and contracting for Ordot
3 closure and construction of the new landfill should have already been performed, GovGuam
4 would like another bite at the apple. Rule 60(b)(5) should not be used to relieve GovGuam of
5 duties that should have already been carried out. See Schwartz v. U.S., 976 F.2d 213, 218 (4th
6 Cir. 1992).

7 GovGuam has also asserted that this Court should not intrude into a local government's
8 functions. GovGuam's Resp. at 2-3. This argument is fundamentally flawed. As the Supreme
9 Court reasoned in Frew, 540 U.S. 431, a government defendant that agrees to a remedy in a
10 consent decree to address a violation of federal law cannot subsequently argue that enforcement
11 of the decree undermines its sovereign interests. In Frew, state officials had entered into a
12 consent decree to settle claims that the State of Texas had failed to comply with requirements of
13 federal Medicaid law. When the plaintiffs moved to enforce the decree two years later, the state
14 officials argued that the Eleventh Amendment rendered the decree unenforceable even if they
15 were in noncompliance. The Supreme Court rejected this argument, noting that "[t]he decree is a
16 federal court order that springs from a federal dispute and furthers the objectives of federal law."
17 Id. at 438. As a result, "enforcing the decree vindicates an agreement that the state officials
18 reached to comply with federal law." Id. at 439.

19 Similarly, this Court should reject GovGuam's argument that the Court should defer to
20 GovGuam's officials in establishing priorities and deadlines. GovGuam's failure to provide
21 funds necessary to comply with the Decree's central requirements shows that GovGuam has not
22 regarded compliance with the Decree as a priority. According to the Guam Public Utilities
23 Commission ("PUC"), GovGuam needs to obtain approximately $90 million in bond financing to
24 comply with the Consent Decree's mandates. U.S. Submission of Authorities, Mtn to Enforce
25 Consent Decree (hereafter "Subm."), Att. 9 at 1. In order to produce the revenues necessary to
26 support a bond, Solid Waste Management's ("SWM") rates would need to be increased by up to
27 400 percent over the next three years. Subm., Att. 12, Executive Summary. The PUC's
28 consultant concluded, however, that Guam law could prevent the PUC from awarding rate

3

increases to SWM because of its "billing and collection mismanagement" and the poor quality of its service to its residential customers. Id. In order to comply with the Decree's 2007 deadlines, GovGuam would have needed to obtain the bond revenues in May 2006. Subm., Att. 16 at Report p.1. However, GovGuam has still not submitted a bond funding proposal to the Guam PUC for review and approval, and no legislation has been introduced to approve the measure. Subm., Att. 13 at 2.

PUC's audit found that SWM offered "poor and sporadic service" to residential customers, and had a "a non-functioning billing and collection system. " Subm., Att. 12 at 1; Att. 13 at 2. According to the audit, GovGuam, in trying to issue revenue bonds, demonstrated "a lack of urgency and leadership to address operational and organizational problems." Subm., Att. 13 at 2. These fundamental problems, which GovGuam has failed to address, have led to GovGuam's current violations of the CWA and its inability to comply with the Decree. Under similar circumstances, courts have imposed receiverships "to get the job done." Morgan v. McDonough, 540 F.2d 527, 533 (1st Cir. 1976). See also Puget Sound Gillnetters Ass'n v. U.S. Dist Ct., 573 F.2d 1123, 1129 (9th Cir. 1978) (affirming District Court's direct management of State's fishing industry to protect tribal fishing rights under treaty), vacated and remanded, 443 U.S. 658 (1979), aff'd on remand, 605 F.2d 492 (9th Cir. 1979). Particularly when public health issues are implicated, courts have appointed a receiver or used a similar type of equitable remedy to take over a state's or local government's operations when the court determines that it is necessary to ensure compliance. See Plata v. Schwarzenegger, 2005 WL 2932253 (N.D. Cal. 2005) (court appointed receiver to take control of delivery of medical services to all California state prisoners) (3rd Submission of Authorities, Att. 1); Town of Greenwich v. Dep't of Transportation, 10 ELR 20178, 20181 (D. Conn. Nov. 7, 1979 & Jan. 21,1980) (administrator appointed to run State's rail line to ensure compliance with decree under Clean Air Act) (Subm., Att. 1); and United States v. City of Detroit, 476 F. Supp. 512, 520 (E.D. Mich. 1979) (administrator appointed to run City's sewerage department to secure compliance with decree and CWA). Consequently, the less intrusive measures proposed by the United States to address GovGuam's violations are within the scope of remedies encompassed by this Court's authority to

4

1  enforce the Decree. Cf. Hutto v. Finney, 437 U.S. 678, 690-91 (1978) (in enforcing a court

2  order, "[t]he less intrusive power to impose a fine is properly treated as ancillary to the federal

3  court's power to impose injunctive relief.")

4          B.     The Court Should Consider the PUC's February 2007 Order when Fashioning an
5                 Appropriate Remedy for GovGuam's Violations of the Consent Decree.

6        On January 24, 2007, GovGuam asked the PUC to provide: (1) a list of time frames it

7  needed to review and approve financing and contracts relating to the closure of Ordot and

8  opening of the new landfill; and (2) a list of prerequisites for accomplishment by DPW before the

9  PUC could approve a rate increase. Perez Second Decl. (GovGuam's Response to Mtn to

10  Enforce), Exh. 1 at 1 n.1 (hereafter, "PUC Order"). In response, the PUC issued an Order on

11  February 1, 2007. GovGuam attached the PUC Order to the "Second Declaration of Lawrence P.

12  Perez" but has apparently decided to disregard the PUC's recommendations.

13        Significantly, the PUC's Order recommended that GovGuam implement many of the

14  tasks contained in the United States' list of interim compliance milestones. The PUC's Order is

15  reviewed in detail below.

16  (1) Public Corporation - The PUC reiterated that DPW, as a line agency of GovGuam, is

17  incapable of billing and collecting the revenue necessary to meet the financial obligations

18  required to fund projects under the Decree. The PUC recommended that the Court order

19  GovGuam to enact legislation within 60 days (i.e., by April 30, 2007) to reconstitute SWM as a

20  public corporation subject to oversight by the Consolidated Commission on Utilities ("CCU").

21  Compare PUC Order at 2-3 with U.S. task # 9, Mtn to Enforce at 18.

22  (2) Revenue Bonding - The PUC emphasized that financing needs to be in place before

23  procurements can occur for Decree projects, and that "revenue bonds are the most economic and

24  effective means of financing" GovGuam's obligations under the Decree. According to the PUC,

25  the Court should order that the legislation establishing the new public corporation authorize it to

26  secure revenue bond financing for Consent Decree projects. Compare PUC Order at 3 with U.S.

27  tasks # 6, 7, Mtn to Enforce at 18.

28  (3) Residential and Commercial Collection Service - The PUC concluded that the new public

corporation, under CCU's oversight, must restructure its billing and collection system. The PUC had specific recommendations for the enabling legislation for the new public corporation: (i) restructure business relationship with commercial haulers; (ii) either privatize billing and collection or assign the task to Guam Power Authority ("GPA"); and (iii) privatize residential trash collection. Compare PUC Order at 4 with U.S. tasks # 2, 3, and 4, Mtn to Enforce at 17-18.

(4) Procurement Process for Consent Decree Projects - The PUC recommended that procurement should be centralized in the new public corporation. PUC Order at 4.

(5) SWM Rate Relief - The PUC identified two barriers to GovGuam's ability to issue revenue bonds: (i) SWM's inability to collect more than 50 percent of its residential billings makes it unfair to raise the rates of the other 50 percent who currently pay for the service; and (ii) the Governor should no longer be able to transfer funds obtained from SWM rate revenues. PUC Order at 5.

(6) Layon Landfill Site - The PUC noted that the site for the new landfill does not belong to GovGuam and that this issue needs to be promptly resolved. The PUC recommended that the new public corporation, similar to Guam Waterworks Authority, should have the authority to exercise eminent domain, and the Court should set a deadline for the new corporation either to resolve the issue of site ownership by negotiation or to file an eminent domain proceedings. Compare PUC Order at 5 with U.S. task # 5, Mtn to Enforce at 18.

The United States recognizes the PUC's constructive role in accurately assessing the bureaucratic impediments that hinder GovGuam's compliance with the Consent Decree's requirements, and notes the PUC's statement that it "is prepared, within the scope of its enabling legislation, to provide any assistance and to perform any task as may be assigned to it by the District Court under the Consent Decree." PUC Order at 6. In light of the PUC's familiarity with SWM's myriad failings, the United States requests the Court to consider the PUC's Order when fashioning an appropriate remedy for GovGuam's violations.

C.    The Court Should Require GovGuam to Meet a Series of Interim Milestones to Establish the Necessary Building Blocks to Enable GovGuam to Meet its Consent Decree Obligations.

GovGuam's response to the United States' motion to enforce does not offer any useful

1  proposal to break the logjam that has blocked GovGuam from making any meaningful progress
2  toward compliance with the CWA and the Consent Decree. Instead, GovGuam repeatedly points
3  to reasons why it cannot comply. For example, GovGuam stated that a proposed deadline to
4  contract out solid waste collection is unworkable because the few DPW's employees who can
5  complete maps using digitized geographic data are busy on other projects. GovGuam's Resp. at
6  7. GovGuam also claimed that DPW is "not comfortable" with meeting a deadline for a 75%
7  collection rate for accounts receivable because it has "limited staff to work on correcting the data
8  base and enforcing against the delinquent accounts." Id. Similarly, GovGuam argues that
9  limited resources will prevent DPW from preparing an operations report. Id. at 3. These excuses
10  ignore a critical fact -- as this Court observed at the Status Conference, the Government of
11  Guam is the defendant in this case. Subm., Att. 15 at 20. Compliance with Consent Decree
12  obligations needs to become GovGuam's priority. It is not acceptable for GovGuam to try to
13  avoid responsibility based on a claim that DPW lacks resources.

14  Consequently, the United States requests the Court to issue an Order enforcing the Decree
15  and establishing a series of interim milestones for GovGuam to meet in order to achieve prompt
16  compliance with the Decree. The proposed milestones are intended to address SWM's
17  organizational deficits, to improve the quality of SWM's service for its residential customers,
18  and to establish a reliable billing and collection system for SWM, all of which are critical
19  prerequisites for obtaining the bond financing necessary to pay for the work required by the
20  Consent Decree. The United States, after reviewing the PUC's February 2007 Order and
21  GovGuam's Response, has revised its proposed set of interim milestones as set out below.
22  1. Operations Report - By April 2, 2007, GovGuam shall provide an Operations Report to the
23  Court and the United States identifying all equipment and supplies necessary to properly operate
24  residential waste collection service, the transfer stations, and the Ordot Dump, including, but not
25  limited to, packer trucks, scales to measure incoming waste at both the transfer stations and the
26  Ordot Dump, heavy equipment needed at the transfer stations and at Ordot Dump to perform
27  required tasks (such as providing daily cover at the Ordot Dump), and a source of material for the
28  daily cover. For all identified equipment and supplies that are currently either out of service or

7

unavailable, GovGuam's Operations Report shall provide a schedule for repairing or replacing the equipment and providing the supplies by May 31, 2007.

2. Public Corporation - By April 30, 2007, SWM shall be reconstituted as a public corporation under the governance of the CCU. By April 2, 2007, GovGuam shall submit a copy of the proposed enabling legislation for the new corporation to the United States and the PUC for review and approval. The proposed legislation authorizing this new corporation shall contain, at a minimum, the following elements: (i) the new corporation shall be included as a "public utility" in PUC's enabling legislation in 12 GCA § 12000(a); (ii) the new corporation shall be subject to the CCU's oversight; (iii) the new corporation shall be authorized to secure revenue bond financing for the capital projects mandated by the Decree; (iv) subject to PUC review and approval, the new corporation shall have the authority to: (a) restructure its business relationship with commercial haulers, (b) either privatize its billing and collection system or establish a protocol for GPA to undertake this responsibility, (c) privatize residential trash collection on Guam, and (d) retain private contractors to close the Ordot Dump, and to construct and operate the new landfill; (v) subject to PUC review and approval for projects over $15,000, the new corporation shall have the authority and responsibility for the procurement process for all capital projects required by the Decree; (vi) tipping fees shall be imposed directly on commercial haulers; (vii) rate revenues of the new corporation shall be protected from transfer by GovGuam for any purpose unrelated to solid waste management; (viii) the new corporation shall be authorized to prosecute and defend litigation with its own counsel; and (ix) the new corporation shall have the power of eminent domain. GovGuam shall request authorization of this action by the Legislature by April 10, 2007.

3. Accounts Receivable - By April 2, 2007, Guam's Public Auditor shall complete its report on SWM's accounts receivable and shall provide a copy to the PUC and the United States.

4. Residential Waste Collection, Billing and Collection, and Business Relationship with Commercial Haulers - By no later than July 30, 2007, the new corporation shall file with the PUC a petition for approval of procurement documents and a plan for implementing a proposal: (i) to procure the services of a company to collect residential waste for the Island of Guam; (ii) to

1  either privatize its billing and collection or establish a protocol under which GPA would
2  undertake this responsibility; and (iii) to restructure its business relationship with commercial
3  haulers. The PUC shall complete its review of this plan within 70 days of its filing.
4  5. Financial Plan and Revenue Bonds - By no later than May 30, 2007, the PUC, working in
5  conjunction with SWM's financial advisors, shall develop a Financial Plan concerning: (i) the
6  issuance of revenue bonds necessary to finance the Decree's capital projects; and (ii) the
7  collection of SWM's accounts receivable. Based on the Guam Public Auditor's report, the PUC
8  shall determine what amounts of SWM's accounts receivable are collectable and shall set goals
9  and deadlines for the new corporation to collect SWM's accounts receivable. Based on the
10 PUC's Financial Plan, the new corporation shall submit to the PUC a petition for approval of the
11 revenue bonds by no later than July 2, 2007. By no later than 60 days after such filing, the PUC
12 shall act upon such filing and award the new corporation adequate rate relief to allow it to
13 comply with its indenture obligations under the bonds. GovGuam shall request authorization of
14 this financing by the Legislature by no later than September 12, 2007. The new corporation shall
15 take all reasonable steps to secure revenue bonding as soon as practicable thereafter, but in no
16 event later than 120 days after the PUC's Order.
17 6. Layon Landfill Site - By no later than January 15, 2008, the new corporation shall have either:
18 (i) negotiated the acquisition and use of the Layon site for the new landfill, subject to PUC
19 review and approval under its contract review protocol, or (ii) have initiated an eminent domain
20 proceedings to acquire the site.
21 7. Compliance Reports - Beginning on April 15, 2007, and continuing on the 15th of each month
22 until February 15, 2008, GovGuam shall provide a monthly compliance report to the Court and
23 the United States. Each report shall: (i) document that GovGuam has provided a sufficient daily
24 cover over the trash at the Ordot Dump to comply with Guam law; (ii) identify and explain any
25 failures to comply with the compliance milestone established in Paragraphs 1 through 6; and
26 (iii) beginning on June 15, 2007, include, pursuant to paragraph 3, the amount of revenue
27 collected in the proceeding month, the amount of accounts receivable that has not been collected,
28 a recitation of the percentage of accounts receivable collected, and an explanation about why

9

1    GovGuam has not collected the unpaid accounts receivable. Each report shall be signed by a

2    senior GovGuam official.

3    8. <u>Monthly Status Conferences</u> - In order to monitor GovGuam's compliance with these interim

4    milestones, the United States requests the Court to schedule a monthly status conference. The

5    Court should require a senior GovGuam official to attend these monthly status conferences to

6    ensure that GovGuam regards compliance with the Court's Order as its top priority.[2]/

7    **III.    CONCLUSION**

8         Due to GovGuam's failure to provide the funds required for compliance with its Consent

9    Decree obligations, the opening of a new landfill and the closing of Ordot Dump will not occur

10   on schedule. Without this Court's intervention, it is uncertain when GovGuam would comply

11   with the Decree. By establishing the interim compliance deadlines proposed by the United

12   States, the Court will set GovGuam on the path to compliance. After GovGuam has the financial

13   mechanism in place to fund the Consent Decree's projects, the United States will request the

14   Court to issue an additional Order to establish new compliance dates for construction of the

15   Decree's projects.

16                               Respectfully submitted,

17                               LEONARDO M. RAPADAS
                                 United States Attorney
18                               Districts of Guam and NMI

19

20   Dated: ___2 · 21 - 07___

21                               MIKEL W. SCHWAB
                                 Assistant U.S. Attorney
22

     OF COUNSEL:
23

     JULIA JACKSON
24   Assistant Regional Counsel
     U.S. Environmental Protection Agency
25   75 Hawthorne Street
     San Francisco, California  94105
26

27   _____
     [2]/      The United States will submit a revised "[proposed] Order Setting Interim Compliance
28   Milestones" concurrently with this Reply Brief.

                                        10