

Office of the Attorney General
Alicia G. Limtiaco
Attorney General of Guam
Civil Division
287 West O'Brien Dr.
Hagåtña, Guam 96910 ● USA
(671) 475-3324 ● (671) 472-2493 (Fax)
www.guamattorneygeneral.com

**Attorneys for the Government of Guam**



FILED
DISTRICT COURT OF GUAM

FEB 21 2007 mba

MARY L.M. MORAN
CLERK OF COURT

# IN THE DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL CASE NO. 02-00022 |
| Plaintiff, | |
| vs. | SECOND |
| GOVERNMENT OF GUAM, | **DECLARATION OF HHELEN M. KENNEDY** |
| Defendant. | |

I, Helen M. Kennedy say and declare of my own personal knowledge:

1. I am the lead attorney for the government of Guam in this action.

2. Attached as Exhibit 1 are copies of relevant pages of the United States Environmental Protection Agency's Consent Order with the Commonwealth of the Northern Marianas.



Page 1
*Second Declaration of Helen M. Kennedy*
*US District of Guam - Civil Case No. CV02-00022*

1   3.    Attached as Exhibit 3 are copies of the relevant sections of the Guam EPA landfill

2   regulations.

3         I declare under penalty of perjury that the foregoing is true and correct to the best of my

4   knowledge this 21st day of February, 2007.

Helen M. Kennedy

|                                      |     |                                                       |
|--------------------------------------|-----|-------------------------------------------------------|
| IN THE MATTER OF:                    | )   | Docket Nos. CWA-309-9-06-002 and                      |
|                                      | )   | CWA-404-309(a)-06-003                                  |
| Governor Juan N. Babauta,            | )   |                                                       |
|                                      | )   | **ADMINISTRATIVE ORDER ON CONSENT**                   |
| Commonwealth of the Northern         | )   |                                                       |
| Mariana Islands,                     | )   | Proceeding Under Section 308(a) and 309(a) of the     |
|                                      | )   | Clean Water Act                                       |

## I. INTRODUCTION

1.  This Administrative Order on Consent ("Consent Order" or "Order") is entered into
    voluntarily by the United States Environmental Protection Agency, Region IX ("EPA")
    and the Commonwealth of the Northern Mariana Islands, (hereinafter "CNMI" or
    "Respondent"). Respondent, acting through its Department of Public Works, owns and
    operates the Puerto Rico Dump (the "Dump"), a former municipal waste disposal site on
    the Island of Saipan. EPA alleges, and Respondent denies, that Respondent has
    discharged pollutants into waters of the United States without authorization under
    Sections 402 and 404 of the Clean Water Act (the "Act" or "CWA"), 33 U.S.C. §§ 1342,
    1344, in violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a). This Consent Order
    directs the Respondent to undertake the measures specified in Attachment B ("Revised
    Schedule for the Cessation of Unpermitted Discharges to Tanapag Lagoon") to
    permanently cease these unauthorized discharges and minimize the adverse impacts of the
    discharges to Tanapag Lagoon.

## II. JURISDICTION

2.  EPA issues this Consent Order under the authority vested in the Administrator of the EPA
    by Section 308(a) and 309(a) of the Act, 33 U.S.C. § 1318(a) and 1319(a). This authority
    has been delegated to the EPA Region IX Administrator, and re-delegated by the
    Regional Administrator to the Director of the Water Division.

3.  Respondent agrees not to contest EPA's jurisdiction or authority to enter into or enforce
    this Consent Order. Respondent also agrees not to contest the validity of any terms and
    conditions of this Consent Order in any action to enforce, or in any action arising from,
    the Order.

4.  EPA's decisions or actions in entering into, and pursuant to this Consent Order are not
    subject to judicial review prior to EPA's initiation of judicial action to compel
    Respondent's compliance with this Consent Order.

**Exhibit 1**

36. By discharging pollutants into waters of the United States without an NPDES permit, Respondent has violated Section 301(a) of the CWA. 33 U.S.C. § 1311(a).

## VII. CESSATION OF UNAUTHORIZED DISCHARGES

37. Respondent shall not discharge pollutants into any waters of the United States on or around the Site except in compliance with the CWA.

## VIII. WORK TO BE PERFORMED AND QUALIFICATIONS

38. Under this Consent Agreement, Respondent has agreed to implement the Work set forth in Attachment B ("Schedule for the Cessation of Unpermitted Discharges to Tanapag Lagoon"), which is incorporated by reference.

39. Upon signature of this Consent Order, Respondent shall fully perform all aspects of the Work, by the dates or within the periods of time specified, as set forth in Attachment B.

40. Respondent shall employ a qualified Solid Waste Manager to develop and implement Respondent's solid waste management program. The Solid Waste Manager shall have the requisite expertise in and experience in managing and operating a properly designed landfill and integrated solid waste management program. Respondent has identified Steve Hiney as its current Solid Waste Manager. In the event of any change in this position, Respondent shall submit in writing to EPA the identification and qualifications of the proposed new Solid Waste Manager. EPA shall have 30 days from receipt of Respondent's submission to concur with or withhold assent of Respondent's proposed selection, or to request additional information.

41. Respondent shall provide EPA, within thirty (30) days of the effective date of this Consent Order, the identity of its contractor(s), and the names, titles and qualifications of the contractor(s)' designated project manager(s) for the Work. Respondent shall notify EPA in writing of any subsequent changes or additions. At a minimum, the person(s) responsible for conducting the Work must have prior experience with comparable work and be able to demonstrate the successful completion of such work.

42. All Work shall be done by and under the supervision of persons with sufficient education, experience and expertise for the Work.

43. Respondent shall budget and expend the funds necessary to complete the Work according to the schedule set forth in Attachment B and the EPA-approved financial assurance plan. In the Section 702 Agreement dated June 21, 2004, covering FY2005 to FY2010, between the United States of America and the CNMI, the Office of Insular Affairs ("OIA") has agreed, subject to Congressional appropriation, to provide the Respondent with a minimum of $54 million for capital improvement projects ("CIP") over the six-year period in which the Work is to be performed. Respondent considers the closure of

Page 7 of 13

## XVIII. SEVERABILITY

71.    The provisions of this Consent Order shall be severable. Should any provision be declared by a court of competent jurisdiction to be unenforceable, the remaining provisions shall remain in full force and effect.

## XIX. EFFECTIVE DATE

72.    This Consent Order shall take effect upon signature by all parties.

IT IS SO AGREED AND ORDERED:

> For Complainant, UNITED STATES
> ENVIRONMENTAL PROTECTION AGENCY
> REGION 9

Dated: *4 Nov. 2005*

_Alexis Strauss_

Alexis Strauss, Director
Water Division

> For Respondent,
> COMMONWEALTH OF THE NORTHERN MARIANA
> ISLANDS

Dated: *11/18/05*

Governor Juan N. Babauta
Commonwealth of the Northern Mariana Islands

Page 13 of 13

# Guam Solid Waste
# Disposal Rules and
# Regulations
## Chapter 23, 22GAR



RECEIVED
FEB 2 1 2007
ATTORNEY GENERAL'S OFFICE

Exhibit 2

2,4,5-Trichlorophenoxy acetic acid                                    0.01

Vinyl Chloride                                                        0.002

## Article 5

## Ground-water monitoring and corrective action

§23501.       **Applicability.**       (a) The requirements in this part apply to MSWLF units, except as provided in Subsection (b) of this §23501.

(b)     Ground-water monitoring requirements under §§23502 through 506 of this Chapter may be suspended by the Administrator for a MSWLF unit if the owner or operator can demonstrate that there is no potential for migration of hazardous constituents from that MSWLF unit to the uppermost aquifer (as defined in §23102 of this Chapter) during the active life of the unit and the post-closure care period. This demonstration must be certified by a qualified ground-water scientist and approved by the Administrator, and must be based upon:

(1)     site-specific field collected measurements, sampling, and analysis of physical, chemical, and biological processes affecting contaminant fate and transport; and

(2)     contaminant fate and transport predictions that maximize contaminant migration and consider impacts on human health and environment.

(c)     Owners and operators of MSWLF units must comply with the ground-water monitoring requirements of this Chapter according to the following schedule unless an alternative schedule is specified as discussed in Article 6 of this Chapter.

(1)     Existing MSWLF units and lateral expansions less than One (1) mile from a drinking water intake (surface or subsurface) must be in compliance with the ground-

water monitoring requirements specified in §§23502 through 23506 of this Chapter;

(2) Existing MSWLF units and lateral expansions greater than one mile but less than Two (2) miles from a drinking water intake (surface or subsurface) must be in compliance with the ground-water monitoring requirements specified in §§23502 through 23506 of this Chapter;

(3) Existing MSWLF units and lateral expansions greater than Two (2) miles from a drinking water intake (surface or subsurface) must be in compliance with the ground-water monitoring requirements specified in §§23502 through 23506 of this Chapter.

(4) New MSWLF units must be in compliance with the ground-water monitoring requirements specified in §§23502 through 23506 of this Chapter before waste can be placed in the unit.

(d) Once established at a MSWLF unit, ground-water monitoring shall be conducted throughout the active life and post-closure care period of that MSWLF unit as specified in §23602 of this Chapter.

(e) For the purposes of Article 5 of this Chapter, a 'qualified ground-water scientist' is a scientist or engineer who has received a baccalaureate or post-graduate degree in the natural sciences or engineering and has sufficient training and experience in ground-water hydrology and related fields as may be demonstrated by state or territorial registration, professional certifications, or completion of accredited university programs that enable that individual to make sound professional judgements regarding ground-water monitoring, contaminant fate and transport, and corrective-action.



(f)	The Administrator may establish alternative schedules for demonstrating compliance with Item (2) of Subsection (d), §23502, pertaining to notification of placement of certification in operating record; Item (1) of Subsection (c), §23505, pertaining to notification that statistically significant increase (SSI) notice is in operating record; Items (2) and (3) of Subsection (c), §23506, pertaining to an assessment monitoring program; Subsection (b) of §23506, pertaining to sampling and analyzing Appendix II constituents; Item (1) of Subsection (d), §23506, pertaining to placement of notice (Appendix II constituents detected) in record and notification of notice in record; Item (2) of Subsection (d) §23506, pertaining to sampling for Appendix I and II; Item (2) of Subsection (g) of §23506, pertaining to notification (and placement of notice in record) of SSI above ground-water protection standard; Item (4) of Subsection (g), §23506 and Subsection (a) of §23507 pertaining to assessment of corrective measures; Subsection (a) of §23508, pertaining to selection of remedy and notification of placement in record; Item (4) of Subsection (c), §23509, pertaining to notification of placement in record (alternative corrective action measures); and Subsection (f) of §23509, pertaining to notification of placement in record (certification of remedy completed), all of this Chapter.

§23502.	**Ground-water monitoring systems.** (a) A ground-water monitoring system must be installed that consists of a sufficient number of wells, installed at appropriate locations and depths, to yield ground-water samples from the uppermost aquifer (as defined in §23102 of this Chapter) that:

(1)	represent the quality of background ground-water that has not been affected by leakage from a unit. A determination of background quality may include sampling of wells that are not hydraulically upgradient of the waste management area

57

where:

    (A)    hydrogeologic conditions do not allow the owner or operator to determine what wells are hydraulically upgradient; or

    (B)    sampling at other wells will provide an indication of background ground-water quality that is as representative or more representative than that provided by the upgradient wells; and

    (2)    represent the quality of ground-water passing the relevant point of compliance specified by the Administrator under Subsection (d) of §23401 of this Chapter. The downgradient monitoring system must be installed at the relevant point of compliance specified by the Administrator under Subsection (d) of §23401 that ensures detection of ground-water contamination in the uppermost aquifer. When physical obstacles preclude installation of ground-water monitoring wells at the relevant point of compliance at existing units, the down-gradient monitoring system may be installed at the closest practicable distance hydraulically down-gradient from the relevant point of compliance specified by the Administrator under §23401 of this Chapter that ensure detection of groundwater contamination in the uppermost aquifer.

(b)    The Administrator may approve a multi-unit ground-water monitoring system instead of separate ground-water monitoring systems for each MSWLF unit when the facility has several units, provided the multi-unit ground-water monitoring system meets the requirement of Subsection (a) of §23502 of this Chapter and will be as protective of human health and the environment as individual monitoring systems for each MSWLF unit, based on the following factors:

58

(1)     number, spacing, and orientation of the MSWLF units;

(2)     hydrogeologic setting;

(3)     site history;

(4)     engineering design of the MSWLF units; and

(5)     type of waste accepted at the MSWLF units.

(c)     Monitoring wells must be cased in a manner that maintains the integrity of the monitoring well bore hole. This casing must be screened or perforated and packed with gravel or sand, where necessary, to enable collection of ground-water samples. The annular space (i.e., the space between the bore hole and well casing) above the sampling depth must be sealed to prevent contamination of samples and the ground-water.

(1)     The owner or operator must notify the Administrator that the design, installation, development, and decommission of any monitoring wells, piezometers and other measurement, sampling, and analytical devices documentation has been placed in the operating record; and

(2)     The monitoring wells, piezometers, and other measurement, sampling, and analytical devices must be operated and maintained so that they perform to design specifications throughout the life of the monitoring program.

(d)     The number, spacing, and depths of monitoring systems shall be:

(1)     determined based upon site-specific technical information that must include thorough characterization of:

(A)     aquifer thickness, ground-water flow rate, ground-water flow direction including seasonal and temporal fluctuations in ground-water flow; and

59

(B)     saturated and unsaturated geologic units and fill materials overlying the uppermost aquifer, materials comprising the uppermost aquifer, and materials comprising the confining unit defining the lower boundary of the uppermost aquifer; including, but not limited to thicknesses, stratigraphy, lithology, hydraulic conductivities, porosities, and effective porosities.

(2)     certified by a qualified ground-water scientist or approved by the Administrator. Within Fourteen (14) days of this certification, the owner or operator must notify the Administrator that the certification has been placed in the operating record.

§23503.     (Reserved)

§23504.     Ground-water sampling and analysis requirements. (a) The ground-water monitoring program must include consistent sampling and analysis procedures that are designed to ensure monitoring results that provide an accurate representation of ground-water quality at the background and downgradient wells installed in compliance with Subsection (a) of §23502 of this Chapter. The owner or operator must notify the Administrator that the sampling and analysis program documentation has been placed in the operating record and the program must include procedures and techniques for:

(1)     sample collection;

(2)     sample preservation and shipment;

(3)     analytical procedures;

(4)     chain of custody control; and

(5)     quality assurance and quality control.

60

(b)    The ground-water monitoring program must include sampling and analytical methods that are appropriate for ground-water sampling and that accurately measure hazardous constituents and other monitoring parameters in ground-water samples.  Ground-water samples shall not be field-filtered prior to laboratory analysis.

(c)    The sampling procedures and frequency must be protective of human health and the environment.

(d)    Ground-water elevations must be measured in each well immediately prior to purging, each time ground-water is sampled.  The owner or operator must determine the rate and direction of ground-water flow each time ground-water is sampled.  Ground-water elevations in wells which monitor the same waste management area must be measured within a period of time short enough to avoid temporal variations in ground-water flow which could preclude accurate determination of ground-water flow rate and direction.

(e)    The owner or operator must establish background ground-water quality in a hydraulically upgradient or background wells for each of the monitoring parameters or constituents required in the particular ground-water monitoring program that applies to the MSWLF unit, as determined under Subsection (a) of §23505 or Subsection (a) of §23506 of this Chapter.  Background ground-water quality may be established at wells that are not located hydraulically upgradient from the MSWLF unit if it meets the requirements of Item (1) of Subsection (a), §23502 of this Chapter.

(f)    The number of samples collected to establish groundwater quality data must be consistent with the appropriate statistical procedures determined pursuant to Subsection (g) of this §23504. The sampling procedures shall be those specified under Subsection (b) of §23505

61

for detection monitoring, Subsections (b) and (d) of §23506 for assessment monitoring, and Subsection (b) of §23507 for corrective action, all of this Chapter.

(g) The owner or operator must specify in the operating record one of the following statistical methods to be used in evaluating ground-water monitoring data for each hazardous constituent. The statistical test chosen shall be conducted separately for each hazardous constituent in each well.

(1) A parametric analysis of variance (ANOVA) followed by multiple comparisons procedures to identify statistically significant evidence of contamination. The method must include estimation and testing of the contrasts between each compliance well's mean and the background mean levels for each constituent.

(2) An analysis of variance (ANOVA) based on ranks followed by multiple comparisons procedures to identify statistically significant evidence of contamination. The method must include estimation and testing of the contrasts between each compliance well's median and the background median levels for each constituent.

(3) A tolerance or prediction interval procedure in which an interval for each constituent is established from the distribution of the background data, and the level of each constituent in each compliance well is compared to the upper tolerance or prediction limit.

(4) A control chart approach that gives control limits for each constituent.

(5) Another statistical test method that meets the performance standards of Subsection (h) of this §23504. The owner or operator must place a justification for this alternative in the operating record and notify the Administrator of the use of this

62

alternative test. The justification must demonstrate that the alternative method meets the performance standards of Subsection (h) of this §23504. Components of such demonstrations are identified in Chapter 5, Subpart E, of the EPA Solid Waste Disposal Facility Criteria, Technical Manual, published in November 1993 or as updated.

(h)     Any statistical method chosen under Subsection (g) of this §23504 shall comply with the following performance standards, as appropriate.

(1)     The statistical method used to evaluate ground-water monitoring data shall be appropriate for the distribution of chemical parameters or hazardous constituents. If the distribution of the chemical parameters or hazardous constituents is shown by the owner or operator to be inappropriate for a normal theory test, then the data should be transformed or a distribution-free theory test should be used. If the distributions for the constituents differ, more than one statistical method may be needed.

(2)     If an individual well comparison procedure is used to compare an individual compliance well constituent concentration with background constituent concentrations or a ground-water protection standard, the test shall be done at a Type I error level no less than 0.01 for each testing period. If a multiple comparisons procedure is used, the Type I experiment wise error rate for each testing period shall be no less than 0.05; however, the Type I error of no less than 0.01 for individual well comparisons must be maintained. This performance standard does not apply to tolerance intervals, prediction intervals, or control charts.

(3)     If a control chart approach is used to evaluate ground-water monitoring data, the specific type of control chart and its associated parameter values shall be

63

protective of human health and the environment. The parameters shall be determined after considering the number of samples in the background data base, the data distribution, and the range of the concentration values for each constituent of concern.

(4)     If a tolerance interval or a predictional interval is used to evaluate ground-water monitoring data, the levels of confidence and, for tolerance intervals, the percentage of the population that the interval must contain, shall be protective of human health and the environment. These parameters shall be determined after considering the number of samples in the background data base, the data distribution, and the range of the concentration values for each constituent of concern.

(5)     The statistical method shall account for data below the limit of detection with One (1) or more statistical procedures that are protective of human health and the environment. Any practical quantitative limit (pql) that is used in the statistical method shall be the lowest concentration level that can be reliably achieved within specified limits of precision and accuracy during routine laboratory operating conditions that are available to the facility.



(6)     If necessary, the statistical method shall include procedures to control or correct for seasonal and spatial variability as well as temporal correlation in the data.

(i)     The owner or operator must determine whether or not there is a statistically significant increase over background values for each parameter or constituent required in the particular ground-water monitoring program that applies to the MSWLF unit, as determined under Subsection (a) of §23505 or Subsection (a) of §23506, all of this Chapter.

(1)     In determining whether a statistically significant increase has occurred,

64

the owner or operator must compare the ground-water quality of each parameter or constituent at each monitoring well designated pursuant to Item (2) of Subsection (a) of §23502 of this Chapter, to the background value of that constituent, according to the statistical procedures and performance standards specified under Subsections (g) and (h) of this §23504.

(2)    Within a reasonable period of time after completing sampling and analysis, the owner or operator must determine whether there has been a statistically significant increase over background at each monitoring well.

§23505.    Detection monitoring program. (a) Detection monitoring is required at MSWLF units at all ground-water monitoring wells defined under Items (1) and (2) of Subsection (a), §23502 of this Chapter. At a minimum, a detection monitoring program must include the monitoring for the constituents listed in Appendix I of this Chapter.

(1)    The Administrator may delete any of the Appendix I monitoring parameters for a MSWLF unit if it can be shown that the removed constituents are not reasonably expected to be contained in or derived from the waste contained in the unit.

(2)    The Administrator may establish an alternative list of inorganic indicator parameters for a MSWLF unit, in lieu of some or all of the heavy metals (constituents 1-15 in Appendix I of this Chapter), if the alternative parameters provide a reliable indication of inorganic releases from the MSWLF unit to the ground-water.    In determining alternative parameters, the Administrator shall consider the following factors:

(A)    the types, quantities, and concentrations of constituents in waste

65

managed at the MSWLF unit;

     (B)    the mobility, stability, and persistence of waste constituents or their reaction products in the unsaturated zone beneath the MSWLF unit;

     (C)    the detectability of indicator parameters, waste constituents, and reaction products in the ground-water; and

     (D)    the concentration or values and coefficients of variation of monitoring parameters or constituents in the ground-water background.

     (b)    The monitoring frequency for all constituents listed in Appendix I of this Chapter, or in the alternative list approved in accordance with Item (2) of Subsection (a) of this §23505, shall be at least semi-annual during the active life of the facility (including closure) and the post-closure period. A minimum of Four (4) independent samples from each well (background and downgradient) must be collected and analyzed for the Appendix I constituents, or the alternative list approved in accordance with Item (2) of Subsection (a) of this §23505, during the first semiannual sampling event. At least One (1) sample from each well (background and downgradient) must be collected and analyzed during subsequent semiannual sampling events. The Administrator may specify an appropriate alternative frequency for repeated sampling and analysis for Appendix I constituents, or the alternative list approved in accordance with Item (2) of Subsection (a) of this §23505, during the active life (including closure) and the post-closure care period. The alternative frequency during the active life (including closure) shall be no less than annual. The alternative frequency shall be based on consideration of the following factors:

     (1)    lithology of the aquifer and unsaturated zone;

66

(2)    hydraulic conductivity of the aquifer and unsaturated zone;

(3)    ground-water flow rates;

(4)    minimum distance between upgradient edge of the MSWLF unit and downgradient monitoring well screen (minimum distance of travel); and

(5)    resource value of the aquifer.

(c)    If the owner or operator determines, pursuant to Subsection (g) of §23504, that there is a statistically significant increase over background for One (1) or more of the constituents listed in Appendix I of this Chapter, or in the alternative, list approved in accordance with Item (2) of Subsection (a) of this §23505, at any monitoring well at the boundary specified under Item (2) of Subsection (a) of §23502, the owner or operator:

(1)    must, within Fourteen (14) days of this finding, place a notice in the operating record, indicating which constituents have shown statistically significant changes from background levels, and notify the Administrator that this notice was placed in the operating record; and

(2)    must establish an assessment monitoring program meeting the requirements of §23506 within Ninety (90) days except as provided for in Item (3) of Subsection (c) of this §23505.

(3)    may demonstrate that a source other than a MSWLF unit caused the contamination or that the statistically significant increase resulted from error in sampling, analysis, statistical evaluation, or natural variation in ground-water quality. Components of such demonstrations are identified in Chapter 5, Subpart E, of the EPA Solid Waste Disposal Facility Criteria, Technical Manual, published in November 1993

67

or as updated. A report documenting this demonstration must be certified by a qualified ground-water scientist or approved by the Administrator and be placed in the operating record. If a successful demonstration is made and documented, the owner or operator may continue detection monitoring as specified in this section. If, after Ninety (90) days, a successful demonstration is not made, the owner or operator must initiate an assessment monitoring program as required in §23506 of this Chapter.

§23506.    Assessment monitoring program:  (a) Assessment monitoring is required whenever a statistically significant increase over background has been detected for one or more of the constituents listed in Appendix I or in the alternative list approved in accordance with Item (2) of Subsection (a) of §23505.

(b)    Within Ninety (90) days of triggering an assessment monitoring program, and annually thereafter, the owner or operator must sample and analyze the ground-water for all constituents identified in Appendix II of this Chapter. A minimum of One (1) sample from each downgradient well must be collected and analyzed during each sampling event. For any constituent detected in the downgradient wells as the result of the complete Appendix II analysis, a minimum of Four (4) independent samples from each well (background and downgradient) must be collected and analyzed to establish background for the new constituents.

The Administrator may specify an appropriate subset of wells to be sampled and analyzed for Appendix II constituents during assessment monitoring. The Administrator may delete any of the Appendix II monitoring parameters for a MSWLF unit if it can be shown that the removed constituents are not reasonably expected to be in or derived from the waste contained in the unit.

68

(c)     The Administrator may specify an appropriate alternate frequency for repeated sampling and analysis for the full set of Appendix II constituents required by Subsection (b) of §23506, during the active life (including closure) and post-closure care of the unit considering the following factors:

(1)     lithology of the aquifer and unsaturated zone;

(2)     hydraulic conductivity of the aquifer and unsaturated zone;

(3)     ground-water flow rates;

(4)     minimum distance between upgradient edge of the MSWLF unit and downgradient monitoring well screen (minimum distance of travel);

(5)     resource value of the aquifer; and

(6)     nature (fate and transport) of any constituents detected in response to this §23506;

(d)     After obtaining the results from the initial or subsequent sampling events required in Subsection (b) of this §23506, the owner or operator must:

(1)     within Twenty-four (24) hours, place a notice in the operating record identifying the Appendix II constituents that have been detected and notify the Administrator that this notice has been placed in the operating record;

(2)     within Ninety (90) days, and on at least a semi-annual basis thereafter, resample all wells specified by Subsection (a) of §23502, conduct analyses for all constituents in Appendix I of this Chapter or in the alternative list approved in accordance with Item (2) of Subsection (a) of §23505, and for those constituents in Appendix II of these regulations that are detected in response to Subsection (b) of this

69

§23506, and record their concentrations in the facility operating record. At least One (1) sample from each well (background and downgradient) must be collected and analyzed during these sampling events.

The Administrator may specify an alternative monitoring frequency during the active life (including closure) and the post closure period for the constituents referred to in this paragraph. The alternative frequency for Appendix I constituents, or the alternative list approved in accordance with Item (2) of Subsection (a) of §23505, during the active life (including closure) shall be no less than annual. The alternative frequency shall be based on consideration of the factors specified in Subsection (e) of this §23506;

(3) establish background concentrations for any constituents detected pursuant to Subsection (b) or Item (2) of Subsection (d), all of this §23506; and

(4) establish ground-water protection standards for all constituents detected pursuant to Subsections (b) and (d) of this §23506. The ground-water protection standards shall be established in accordance with Subsections (h) or (i) of this §23506.

(e) If the concentrations of all Appendix II constituents are shown to be at or below background values, using the statistical procedures in Subsection (g) of §23504, for Two (2) consecutive sampling events, the owner or operator must notify the Administrator of this finding and may return to detection monitoring.

(f) If the concentrations of any Appendix II constituents are above background values, but all concentrations are below the ground-water protection standard established under Subsections (h) or (i) of this §23506, using the statistical procedures in Subsections (g) of §23504, the owner or operator must continue assessment monitoring in accordance with this

§23506.

(g)     If One (1) or more Appendix II constituents are detected at statistically significant levels above the ground-water protection standard established under Subsections (h) or (i) of this §23506, in any sampling event, the owner or operator must, within Fourteen (14) days of this finding, place a notice in the operating record identifying the Appendix II constituents that have exceeded the ground-water protection standard and notify the Administrator and all appropriate local government officials that the notice has been placed in the operating record. The owner or operator also:

(1)     must characterize the nature and extent of the release by installing additional monitoring wells as necessary;

(2)     must install at least One (1) additional monitoring well at the facility boundary in the direction of contaminant migration and sample this well in accordance with Item (2) of Subsection (d) of this §23506;

(3)     must notify all persons who own the land or reside on the land that directly overlies any part of the plume of contamination if contaminants have migrated off-site if indicated by sampling of wells in accordance with Item (1) of Subsection (g) of this §23506; and

(4)     must initiate an assessment of corrective measures as required by §23507 of this Chapter within Ninety (90) days; or

(5)     may demonstrate that a source other than a MSWLF unit caused the contamination, or that the SSI resulted from error in sampling, analysis, statistical evaluation, or natural variation in ground-water quality. Components of such

71

demonstrations are identified in Chapter 5, Subpart E, of the EPA Solid Waste Disposal Facility Criteria, Technical Manual, published in November 1993 or as updated. A report documenting this demonstration must be certified by a qualified ground-water scientist or approved by the Administrator and placed in the operating record. If a successful demonstration is made, the owner or operator must continue monitoring in accordance with the assessment monitoring program pursuant to this §23506, and may return to detection monitoring if the Appendix II constituents are at or below background as specified in Subsection (e) of this §23506. Until a successful demonstration is made, the owner or operator must comply with Subsection (g) of this §23506, including initiating an assessment of corrective measures.

(h) The owner or operator must establish a ground-water protection standard for each Appendix II constituent detected in the ground-water. The ground-water protection standard shall be:

(1) for constituents for which a maximum contaminant level (MCL) has been promulgated under Section 1412 of the Safe Drinking Water Act (42 U.S.C. §300g) and under 40 CFR Part 141, the MCL for that constituent;

(2) for constituents for which MCLs have not been promulgated, the background concentration for the constituent established from wells in accordance with Item (1) of Subsection (a) of §23502; or

(3) For constituents for which the background level is higher than the MCL identified under Item (1) of Subsection (h) of this §23506 or health based levels identified under Item (1) of Subsection (i) of this §23506, the background concentration.

72

(i) The Administrator may establish an alternative ground-water protection standard for constituents for which MCLs have not been established. These ground-water protection standards shall be appropriate health based levels that satisfy the following criteria:

(1) the level is derived in a manner consistent with USEPA guidelines for assessing the health risks of environmental pollutants (51 FR 33992, 34006, 34014, 34028, September 24, 1986);

(2) the level is based on scientifically valid studies conducted in accordance with the Toxic Substances Control Act Good Laboratory Practice Standards (40 CFR Part 792) or equivalent;

(3) for carcinogens, the level represents a concentration associated with an excess lifetime cancer risk level (due to continuous lifetime exposure) with the $1 \times 10^{-4}$ to $1 \times 10^{-6}$ range; and

(4) for systemic toxicant, the level represents a concentration to which the human population (including sensitive subgroups) could be exposed to on a daily basis that is likely to be without appreciable risk of deleterious effects during a lifetime. For purposes of this Subsection (i) of this §23506, systemic toxicant includes toxic chemicals that cause effects other than cancer or mutation.

(j) In establishing ground-water protection standards under Subsection (i) of this §23506, the Administrator may consider the following:

(1) multiple contaminants in the ground-water;

(2) exposure threats to sensitive environmental receptors; and

(3) other site-specific exposure or potential exposure to ground-water.

73

§23507.     Assessment of corrective measures. (a) Within Ninety (90) days of finding that any of the constituents listed in Appendix II have been detected at a statistically significant level exceeding the ground-water protection standards defined under Subsections (h) or (i) of §23506 of this Chapter, the owner or operator must initiate an assessment of corrective measures. Such an assessment must be completed within a reasonable period of time.

(b)     The owner or operator must continue to monitor in accordance with the assessment monitoring program as specified in §23506 of this Chapter.

(c)     The assessment shall include an analysis of the effectiveness of potential corrective measures in meeting all of the requirements and objectives of the remedy as described under §23508 of this Chapter, addressing at least the following:

(1)     the performance, reliability, ease of implementation, and potential impacts of appropriate potential remedies, including safety impacts, cross-media impacts, and control of exposure to any residual contamination;

(2)     the time required to begin and complete the remedy;

(3)     the costs of remedy implementation; and

(4)     The institutional requirements such as territorial or local permit requirements or other environmental or public health requirements that may substantially affect implementation of the remedy.

(d)     The owner or operator must discuss the results of the corrective measures assessment, prior to the selection of remedy, in a public meeting with interested and affected parties.

§23508.     Selection of remedy.     (a)     Based on the results of the corrective

74