1
RONALD J. TENPAS
Acting Assistant Attorney General
2
Environment & Natural Resources Division
ROBERT D. MULLANEY
3
Environmental Enforcement Section
United States Department of Justice
4
301 Howard Street, Suite 1050
San Francisco, California 94105
5
Tel: (415) 744-6483
Fax: (415) 744-6476
6
LEONARDO M. RAPADAS
7
United States Attorney
MIKEL W. SCHWAB
8
Assistant United States Attorney
Suite 500, Sirena Plaza
9
108 Hernan Cortez
Hagåtña, Guam 96910
10
Tel: (671) 472-7332
Fax: (671) 472-7215
11
Attorneys for United States of America
12

13
14

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

15
16

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CIVIL CASE NO. 02-00022 |
| ) | |
| Plaintiff, ) | |
| ) | UNITED STATES' RESPONSE TO |
| v. ) | AND SUPPORT OF MAGISTRATE |
| ) | JUDGE'S REPORT AND |
| GOVERNMENT OF GUAM, ) | RECOMMENDATION |
| ) | |
| Defendant. ) | |
| ) | |

# I.    INTRODUCTION

On January 31, 2007, the United States filed a Motion to Enforce Consent Decree, requesting the Court to order the Government of Guam ("GovGuam") to meet a series of interim deadlines and to take steps necessary to implement a Consent Decree ("Consent Decree") for the closure of the Ordot Dump that is illegally discharging leachate into the Lonfit River, and the opening of a new landfill that can be operated in compliance with applicable environmental laws. That same day, GovGuam filed a Motion to Modify Consent Decree pursuant to Rule 60(b)(5) of the Federal Rules of Civil Procedure. After receiving testimony and oral argument, on July 6, 2007, United States Magistrate Judge Joaquin V.E. Manibusan, Jr. issued a Report and Recommendation ("Report") recommending that the United States' Motion to Enforce Consent Decree be granted in part, that GovGuam's Motion to Modify Consent Decree be denied, and that conditions and interim milestones described in the Report be imposed upon GovGuam. The United States supports the Report and its approval by the District Court. The United States also requests that the Court include other recommendations as part of a final Report, set forth below.

# II.   BACKGROUND

The United States filed a Complaint in this case on August 7, 2002, after more than a decade of the United States Environmental Protection Agency's ("EPA") administrative efforts to stop GovGuam's illegal discharges from the Ordot Dump. Pursuant to Section 309 of the Clean Water CWA ("CWA"), 33 U.S.C. § 1319, the United States alleged that GovGuam violated the CWA by: (1) discharging pollutants from the Ordot Dump into waters of the United States without a permit in violation of 33 U.S.C. § 1311; and (2) violating the terms of an EPA Administrative Order requiring GovGuam to eliminate the unpermitted discharges. The United States sought both injunctive relief and civil penalties to address the CWA violations.

After extensive Court supervised negotiations, the United States and GovGuam reached an agreement on the terms of the Consent Decree. The Court entered the Consent Decree on February 11, 2004. However, GovGuam has failed to comply with critical deadlines established by the Consent Decree, and it is clear that GovGuam will fail to timely close the Ordot Dump

1

1   and fail to timely open and operate a new landfill. In January of this year the United States and

2   GovGuam filed their respective motions to enforce or modify the Consent Decree, and on July 6,

3   2007, the Magistrate Judge issued the instant Report.

4

5   **III.    THE REPORT**

6          The Court found that the parties essentially agree that GovGuam will not meet the

7   deadlines required by the Consent Decree. The Court therefore focused its attention on imposing

8   measures that ensure compliance with the Consent Decree in the most swift and reasonable

9   manner. Given GovGuam's continuing failure to comply with the Consent Decree, the Court

10  recognized that an outright modification to the current deadlines without "continued" and

11  "intense supervision and monitoring by the Court" will not guarantee GovGuam's future

12  compliance with the Consent Decree. Report at 26, 29.

13         The Court recommended that an interim series of steps and other requirements be

14  imposed upon GovGuam to meet the goals of the Consent Decree. These injunctive relief

15  elements included, in part:

16      •       Reconstituting the Guam Department of Public Works Solid Waste

17              Management Division ("SWM") as a public corporation under the

18              oversight of the Consolidated Commission on Utilities ("CCU") in order

19              to address SWM's organizational deficits, to improve the quality of

20              service, and to establish a reliable billing and collection system. Report at

21              28.

22      •       Requiring the newly constituted public corporation to implement

23              operational changes, and to take steps for the approval of revenue bonds

24              and the use of bond proceeds. Report at 28 - 29.

25      •       Requiring the newly constituted public corporation to negotiate the

26              acquisition of the Layon site for the new landfill or to initiate an eminent

27              domain proceeding to acquire the site. Report at 29.

28

2

1   The Court also recommended an injunctive relief element not sought by the United

2   States. The Court recommended the creation of a Law Revision Committee ("LRC") to develop

3   GovGuam legislative policy for the closure of the Ordot Dump and to take steps necessary to

4   carry out the mandates of the Report. Report at 27 - 28.

5

6   **IV.     THE UNITED STATES REQUESTS THAT THE COURT ADOPT THE REPORT**

7   The United States requests that this Court adopt the Magistrate Judge's Report, many

8   elements of which had been proposed by the United States in its Motion to Enforce Consent

9   Decree. The United States also requests the Court to include other recommendations, as

10  described below, as part of the injunctive relief this Court imposes. The United States' position

11  on specific aspects of the Report is discussed below.

12          A.      FINANCIAL PLANNING

13  The Court recognized the fundamental financial weakness associated with current

14  GovGuam's landfill operations and its deleterious impact upon funding the Consent Decree

15  requirements and operations generally. Report at 2 - 5, 28. The Report described that the

16  recommended steps were necessary to address "organization deficits, to improve the quality of

17  SWM's service to residential customers, and to establish a reliable billing and collection system"

18  and that these steps are "critical prerequisites for obtaining the bond funding necessary to pay for

19  the Consent Decree projects". Report at 28.

20  The Court then recommended:

21  •       The newly created corporation be authorized to secure revenue bond

22          funding for the Consent Decree capital projects.

23  •       The newly created corporation petition for approval of revenue bonds and

24          for the use of the proceeds.

25  •       The newly created corporation either privatize its billing and collection or

26          establish a protocol under which GPA would undertake this responsibility.

27  •       The newly created corporation restructure its business relationship with

28          commercial haulers.

3

1    •    The Public Auditor complete the audit findings and provide copies of the
2         report to the United States and the PUC.

3    •    Monthly reports signed by the Governor and the DPW Director be
4         provided that describe, in part, the amount of revenue collected in the
5         preceding month, the amount of accounts receivable that have not been
6         collected, a recitation of the percentage of accounts receivable collected,
7         and an explanation of why GovGuam has not collected the unpaid
8         accounts receivable.

9  Report at 28 - 29. The United States requests that the Court adopt these recommendations by the
10 Magistrate Judge.

11        In addition to these above steps, the United States suggests that the newly established
12 corporation be required to develop a Financial Plan. The Financial Plan should identify the
13 method that GovGuam has chosen to finance the expeditious closure of the Ordot Dump and the
14 opening of a new landfill, and stating the amount of revenue required to comply with the Consent
15 Decree.[1]/

16        B.    PRIVATE CONTRACTORS

17        The Court recognized that GovGuam's landfill operations can be improved with the use
18 of private contractors. The Report recommended that the newly constituted corporation be
19 required to procure the services of a company to collect waste, and required GovGuam to either
20 privatize customer billing and collection or to reorganize billing and collection to ensure
21 improved collection of accounts receivable. Report at 28. The United States requests that these
22 recommendations by the Magistrate Judge be adopted by this Court.

23        In addition to these steps regarding private contractors, the United States suggests that the
24 Court apply this rationale to the landfill itself which is illegally discharging leachate into the
25 Lonfit River and require GovGuam to retain private contractors to close the Ordot Dump and to

26

27 _____

28 [1]/    See United States' Reply Brief in Support of Motion to Enforce Consent Decree at 8.

4

construct and operate the new landfill.[2]/ The use of experienced professionals will greatly assist in the timely and proper closure of the Ordot Dump, will help to ensure that future operations are conducted safely and properly, and will further the Court's goal of bringing "much needed relief to the people of Guam and especially the residents of the villages surrounding the Ordot Dump". Report at 31. It is consistent with the Court's finding that GovGuam officials knew or should have known that DPW's staff collectively did not have the experience to perform the tasks required under the Consent Decree. Report at 17. Further, it will not burden GovGuam as it concedes that its inability to perform Consent Decree tasks caused GovGuam to contract much of the work to outside engineering firms. Report at 17.

### C. THE LAW REVISION COMMITTEE

The Court recommended one element not requested by the United States, the formation of the LRC to consist of representatives of: 1) the Governor of Guam; 2) the Speaker of Guam Legislature; 3) the Attorney General of Guam; 4) the Director of the Department of Public Works; and 5) the Chairperson of the Public Utilities Commission. Report at 27. If this Court adopts this recommendation, the United States suggests that the LRC include a representative of the CCU as the CCU would be overseeing the SWM as a newly constituted public corporation.

### D. MISCELLANEOUS ISSUES

The timely implementation of the Report's recommendations will greatly assist in requiring GovGuam to complete the Consent Decree requirements. The Report included many specific deadlines, all of which the United States requests this Court adopt, and that can be met by GovGuam if GovGuam ceases its past practices and complies promptly with the Report's recommendations.[3]/ However, certain Report requirements were not tied to specific completion

---

[2]/     See United States' Reply Brief in Support of Motion to Enforce Consent Decree at 8.

[3]/     For example, GovGuam should have no difficulty: 1) within 60 days proposing legislation reconstituting SWM as a public corporation; 2) within 90 days filing a plan to procure the service of a company to collect residential waste, to privatize billing or create a new billing protocol, and to restructure its business relationship with commercial haulers; 3) within 120 days from its creation, the new corporation shall petition for the approval of revenue bonds and for the use of bond proceeds, with PUC taking action within 90 days of the petition; 4) within 120 days

5

1  deadlines. The United States also sought the imposition of other conditions, as described in the

2  United States' pleadings, including, for example, authorizing the newly constituted public

3  corporation to impose tipping fees directly on commercial haulers, and authorizing it to retain its

4  own counsel.[4]/

5      In light of the other requirements imposed in the Report and the ability to raise these

6  issues as part of the Court supervised monthly meetings and to seek additional terms within

7  GovGuam legislation, the United States is not requesting the Court to modify the Report solely

8  as to these additional terms and deadlines as described in this Subsection D. However, the

9  United States reserves the right to request the Court to impose these terms or specific deadlines if

10 necessary, or to request the Court to exercise its authority to fashion additional remedies if the

11 order issued by the Court upon the currently pending motions does not succeed in moving

12 GovGuam substantially in the direction of resolving its CWA violations. Frew ex rel. Frew v.

13 Hawkins, 540 U.S. 431, 440 (2004)("Federal courts are not reduced to approving consent decrees

14 and hoping for compliance. Once entered, a consent decree may be enforced."); ( U.S. v. Alisal

15 Water Corp., 326 F. Supp. 2d 1010, 1012 (N.D. Cal. 2002)(court also has a broad range of

16 equitable powers available to it "to enforce and effectuate its orders and judgments."), quoting

17 United States v. City of Detroit, 476 F. Supp. 512, 520 (E.D. Mich. 1979). See also Spallone v.

18 United States, 493 U.S. 265, 276 (1990).

19

20

21

22

23

24

_____

25 from its creation, the new corporation must negotiate the acquisition of the Layton site or have

26 initiated an eminent domain proceeding; 5) within 90 days having the Public Auditor complete
   the audit findings; and 6) providing status reports on the 15th of each month describing the

27 specified operations and revenue practices. Report at 28 - 29.

28 [4]/    See United States' Reply Brief in Support of Motion to Enforce Consent Decree at 8.

1 | **IV.    CONCLUSION**

2   The United States supports the Report and encourages its approval by the District Court.

3   The United States also requests the Court to include other recommendations as set forth above as

4   part of a final Report.

5

6                                      Respectfully submitted,

7                                      LEONARDO M. RAPADAS
                                       United States Attorney
8                                      Districts of Guam and NMI

9

10  Dated: _7 · 19 07_

                                       _____
11                                     MIKEL W. SCHWAB
                                       Assistant United States Attorney

12

13

OF COUNSEL:
14
    JULIA JACKSON
15  Assistant Regional Counsel
    U.S. Environmental Protection Agency
16  75 Hawthorne Street
    San Francisco, California  94105
17

18

19

20

21

22

23

24

25

26

27

28