Office of the Attorney General
Alicia G. Limtiaco
Attorney General of Guam
Civil Division
287 West O'Brien Drive
Hagåtña, Guam 96910 • USA
(671) 475-3324 • (671) 472-2493 (Fax)
www.guamattorneygeneral.com

Attorneys for the Government of Guam

FILED
DISTRICT COURT OF GUAM
JUL 23 2007
MARY L.M. MORAN
CLERK OF COURT

# IN THE DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> GOVERNMENT OF GUAM, <br><br> Defendant. | CIVIL CASE NO. 02-00022 <br><br> **GOVERNMENT OF GUAM'S OBJECTION TO REPORT AND RECOMMENDATION** |

Pursuant to 28 U.S.C. § 636(c), Defendant submits the following objections to the Report and Recommendation of the Magistrate Judge. The Third Affidavit of Cynthia Jackson (Jackson Affidavit) and its attachments has been filed in support of the Objections.

## BACKGROUND

The Plaintiff, United States of America (US), filed a Motion to Enforce Consent Decree and the Defendant, Government of Guam, filed a Motion to Modify Consent Decree. Both motions were heard on March 8, 2007. The Magistrate Judge issued his Report and Recommendation on July 6, 2007 (Report). The objections in this pleading are filed on behalf

Page 1
Government of Guam's Objection to Report and Recommendation
District Court of Guam Case No. CV02-00022
ORIGINAL
Case 1:02-cv-00022    Document 131    Filed 07/23/2007    Page 1 of 12

to the Governor of Guam and the Guam Department of Public (collectively referred to as GovGuam).[1]

As a point of explanation regarding hydrogeological data, the Magistrate Judge stated that GovGuam should have had hydrogeological data ready when it submitted its initial draft plan for the new landfill. Report at 19. Design plans for construction of the new landfill and hydrogeological data were submitted to the Guam Environmental Protection Agency (GEPA). Jackson Affidavit. However, GEPA needed additional verification of water flow. *Id.* As a result, the plans were not approved. *Id.* GEPA has required a nine month analysis of the hydrology in the area as a prerequisite to approval of the plans. *Id.* This study is currently underway. *Id.* It is scheduled to be completed in December 2007. *Id.*

The Magistrate Judge recommends that the US's motion to enforce the Consent Decree be granted in part and that GovGuam's motion be denied "at this time." Report at 30. The Magistrate Judge acknowledges that both parties have essentially conceded that current deadlines cannot be met and advises that "certain interim steps must be put into place and met before GovGuam can meet the Consent Decree's mandates." *Id.* at 26. The Magistrate Judge than lays out his recommendations and interim milestones. GovGuam understands that the Magistrate's recommendations and milestone timelines are intended to assist the parties in moving toward everyone's ultimate goal of opening a new landfill and closing the Ordot

---

[1] As used herein, "GovGuam" refers exclusively to the Governor of Guam and the Department of Public Works. Counsel herein has no authority to speak on behalf of the Legislative Branch of the government. Additionally, counsel cannot speak on behalf of the PUC or the Consolidated Commission on Utilities (CCU). The Governor and DPW do not oppose rate review by the PUC, but do oppose making DPW's solid waste management unit a public corporation under the oversight of the CCU. A document prepared for the PUC takes a

Dump. However, on certain points, GovGuam objects to the recommendations and suggests modifications.

## DISCUSSION

28 U.S.C. § 636(a)(1)(C) provides:

> [T]he Magistrate Judge shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.
> Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court.[2] A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions.

(footnote added).

### A. Formation of a public corporation.

It is a well established rule that that Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs. Rizzo v. Goode, 96 S.Ct. 598, 608 (1976) (District Court erred in injecting itself, by injunctive decree, into the internal

---

different position on CCU oversight. Consequently, counsel cannot represent the views of the PUC or the CCU.

[2] Regarding the ten day timeline, the government of Guam was served with the Report and Recommendation on July 6, 2007. As a result, the last day for filing objections would ordinarily fall on July 20, 2007, a Friday. Liberation Day, a government of Guam holiday, was observed on July 20. Hence, under Rule 6(a) of the Federal Rules of Civil Procedure, the filing deadline is extended to Monday, July 23.

disciplinary affairs of the state agency, i.e., the municipal police department). Federal courts should always seek to minimize interference with the legitimate state activities in tailoring remedies. Stone v. City and County of San Francisco, 968 F.2d 850, 861 (9th Cir. 1992).

The Magistrate Judge recommends that DPW's Solid Waste Management Division (SWM) be reconstituted as a public corporation "to improve the quality SWM's services to residential customs, and to establish a reliable billing and collection system . . . ." *Id.* at 28. The Magistrate Judge further recommends that the new public corporation be under the oversight of the Consolidated Commission on Utilities (CCU). *Id.* The Magistrate Judge sets a 60 day timeline for GovGuam to propose legislation reconstituting SWM as a public corporation under the CCU. Other timelines then flow from the date the public corporation is established – within 90 days submit a plan to the CCU; within 120 days submit a revenue bond petition to the CCU; within 120 days acquire the Layon site. Report at 28-9. GovGuam does not object to the basic principal expressed in the recommendation. GovGuam does believe there are some problems that need to be addressed and suggests an alternative for transitioning SWM to an independent entity under the CCU.

GovGuam believes that setting up a public corporation and placing it under the oversight of the CCU as recommended by the Magistrate Judge will delay, rather than expedite, accomplishing the ultimate goals of closing the Ordot Dump and opening a new landfill. Although it may be possible to draft legislation to establish a public corporation within 60 days, GovGuam submits that it will take an inordinate amount of time for the legislation to become law, if in fact it does become law, and for the new corporation to be up, function and ready to submit the recommendations required by the Magistrate Judge.

After a bill is submitted, the legislative process will take time. There are naturally differing political views on many issues related to the landfill that may be injected into the process.[3] It will, of course, be up to the Legislature to decide whether to pass the proposed legislation and what form it will take. Then it will be up to the Governor whether or not to sign the bill into law. There is also the question of funding. Any public corporation without an established and adequate funding source outside the general fund needs an appropriation from the Legislature. After what could very well be a long process, the ultimate fate of the proposed

---

[3] To date, two bills related to the landfill have been introduced in the 29th *I Liheslaturan Guahan*, one regarding the use of a different site for the land fill and one prohibiting the use of public funds at this time for design and construction of a new landfill and requiring preparation of a financing plan. The titles to the bills are as follows:

Bill 153: An Act To Prohibit The Government Of Guam From Using Public Funds In The Site-Specific Preparation, Design Work, Infrastructure Upgrade Or Installation, And Construction Of A New Landfill Until Title To The New Landfill Site Has Been Acquired By The Government Of Guam; And To Require The Department Of Public Works To Prepare A Financing Plan For The New Landfill, Including All Costs Associated With Property Acquisition, Mitigation, Infrastructure, Landfill Construction, And A Detailed Budget For Staffing;

Bill 35: An Act To Require That The Department Of Public Works And The Guam Environmental Protection Agency Follow Public Law 23-95 Regarding The Site For A New Landfill, And To Exclude The Previously Selected Area Of Dandan, As Well As Any Proximate Location Located Partially Or Completely Within The Inarajan River Watershed Aa (*sic*) A Site Upon Which A Landfill May Be Placed.

In the 28th *I Liheslaturan Guahan* three bills related to the landfill were introduced - Bill 115: An Act To Prohibit The Government Of Guam From Using Public Funds In The Site-Specific Design Of A New Landfill, Until The Government Of Guam Has Ownership Of A New Landfill Site; Bill 105: An Act To Affirm Public Responsibility For Real Property Valuation Lost As A Result Of Landfill Construction And Operation; Bill 104: An Act To Establish Strict Accountability For Adverse Effects On Personal Health And Environmental Quality As A Result Of New Landfill Facility Construction, Operation, Closing And Monitoring. None of these bills passed.

legislation cannot be predicted and cannot be controlled by the Court. A court cannot infringe upon the Organic Act authority of the Legislature to enact laws, including appropriations. See generally City of Sacramento v. California State Legislature, 231 Cal. Rprt. 686 (Cal. App. 1986). Therefore, after proposing legislation, the next step in the process recommended by the Magistrate Judge will be in the hands of the Guam Legislature.

After a law is passed, it would take additional time to transition DPW's SWM into a fully functional public corporation. When the Public Utilities Agency of Guam became the Guam Waterworks Authority (GWA), the law allowed a 180 day transition period. 12 GCA § 14110. Rules and regulations must be adopted before any hiring begins. The rules would define the hiring procedures and the qualifications required for management and technical personnel. People who meet the qualifications would then have to be recruited and hired. At the very least, a general manager and chief financial officer would be needed to manage the tasks repaired by the Magistrate Judge's Report. Although employees in the SWM could be transferred to the new corporation, other technical staff would have to be added. The new corporation would not have the resources available at DPW which SWM now uses for such things as procurement and human resources. There would naturally be other transition issues. One would be a change in location from the DPW complex to a building that could house a much larger staff. All these requirements will take time and money, thereby slowing the attainment of the ultimate goal of closing the Ordot Dump and opening a new landfill.

GovGuam does not oppose transitioning the status of DPW's SWM to an entity under a Solid Waster Management Board which is independent of DPW. However, GovGuam believes that in order to continue progressing toward the Consent Decree goals, SWM, in its present form, should continue the outsourcing and collection work it has already begun.

DPW has begun the process of procuring the service of a private company to do its residential trash collection services. Jackson Affidavit. DPW has prepared a draft invitation for bids (IFB) to outsource these services. *Id.* The draft IFB has been reviewed by other government agencies and its being finalized. *Id.* DPW has targeted July 30, 2007 as date to begin advertising the IFB. *Id.* DPW has already outsourced its residential billing process. *Id.*

Clearly, the key to accomplishing the ultimate goals of the Consent Decree is the collection of fees for the Solid Waste Management Fund. A sound process for collecting these fees must be in place before any revenue bond petition can be approved by the PUC. Any long delay while waiting for a new public corporation to be formed and to get up and running will delay accomplishing the goals of the Consent Decree. DPW has already taken action to improve its billing and collection practices. Currently, the Department of Administration (DOA) is handling DPW's billings to private trash haulers. DPW will take over this function effective October 1, 2007, with the intent to outsource the collections from private haulers. *Id.* This will help eliminate past problems resulting from having two separate government agencies involved in the billing process. Additionally, DPW is coordinating with the Office of the Attorney General to assist in the collection of receivables from commercial trash haulers. *Id.* As a result, a law suit was filed on July 16, 2007. *Id.*, Attachment II. DPW believes that this action will help send a message to haulers that DPW is serious about collecting delinquent accounts. *Id.*

Unlike GWA and Guam Power Authority (GPA), SWM cannot be completely independent of the general fund at this time. SWM must transition to a semi-autonomous agency, i.e., one partially reliant upon the general fund, rather than a completely autonomous agency. Since SWM, as an entity separate from DPW, will require appropriations from the

general fund, the Guam Visitor's Bureau (GVB) and the Guam Economic Development and Commerce Authority (GEDCA) are better models for an independent SWM than the GWA and GPA models. Under the GVB/GEDCA model, SWM would have the independence of an appointed board. But since SWM will require general fund appropriations, it would be under the Governor's budget process. GovGuam, therefore, submits that SWM should continue to privatize its key functions while preparing legislation which would make it independent of DPW and under its own board.

The Magistrate Judge recommends "that DPW's SWM be reconstituted as a public corporation in order to address its organization defects, to improve the quality of SWM's services to residential customers, and to establish a billing and collection system – all of which are critical prerequisites for obtaining the bond financing necessary to pay for the Consent Decree projects." Report at 28. The continued privatization of SWM's functions, while beginning the process of making SWM an independent agency with its own board, would solve the organizational and other problems mentioned by the Magistrate Judge. The only thing GovGuam disagrees with is placing SWM under the CCU, rather than under its own board. GovGuam submits that this change should be accommodated by the Court. Such an accommodation comports with the principal of comity and the principal that federal courts should always seek to minimize interference with the legitimate state activities in tailoring remedies, granting the widest latitude to a government in fashioning its own internal affairs.

**B.      Appointment of a Law Review Committee.**

The Magistrate Judge recommends appointment of a Law Review Committee (LRC) to seek introduction of all necessary legislation to carry out the mandates of the Consent Decree. The LRC shall include representatives from the Governor, the Speaker of the Legislature, the

Attorney General, the Department of Public Works Director and the Public Utilities Commission Chairperson. Hence, three of the five named persons are elected political figures. The other two are political appointments. The LRC is to meet monthly with the Plaintiff and the Court. *Id.* at 27.

Since legislation is such an integral link in the chain of events required to open a new landfill and close the Ordot Dump, GovGuam is hopeful that establishing an LRC will help resolve any present and future legislative impasses. Therefore, GovGuam has no objection to this recommendation with two important exceptions.

The Magistrate Judge recommends continued and intense Court supervision and monitoring. *Id.* at 29. GovGuam has no objections to Court supervision and monitoring. The Magistrate Judge goes on to say: "The Court therefore recommends scheduled monthly status conferences with the parties. These status conferences should be open to the public. These status conferences may be held simultaneously with the LRC meetings." *Id.* To actually accomplish its tasks, the LRC will need to have candid discussions focusing on the pros and cons of proposed legislation, rather than political commentary. Likewise, the parties themselves will want to have candid discussions. Therefore, GovGuam objects to having LRC meetings and meetings between the parties open to the public. GovGuam believes that much more will be accomplished in non-public meetings. That is not to say that GovGuam objects to meetings in open court. But LRC working meetings and meetings between the parties should not be open to the public.

In addition, GovGuam recommends that the LRC also include the Minority Leader of the Legislature and the Director of GEPA or their representatives. Having the Minority Leader

will help get bipartisan support for legislation. GEPA will be responsible for issuing certain permits. Consequently, the assistance of the Director will also be helpful.

### C. Reporting.

The Magistrate Judge recommends monthly reports on the trash cover at the Ordot Dump, on failure to comply with milestones and on revenue collections. DPW is presently complying with a GEPA permit requirement to provide monthly trash cover reports. Jackson Affidavit. Hence, this is not a problem. DPW currently sends quarterly financial reports to the PUC and the United States Environmental Protection Agency (USEPA). *Id.* These quarterly financial reports should be sufficient to give a good picture of revenue collections. GovGuam asks the Court to continue this requirement without increasing the number of reports. This will allow SWM to devote its limited resources to other landfill tasks.

## SUMMARY

In summary, GovGuam responds to the recommendation of the Magistrate Judge as follows:

1. <u>Appointment of an LRC</u>. Report at 27. GovGuam does not oppose this recommendation and has already prepared a draft Executive Order to establish an LRC. GovGuam does wish to add the Legislature's Minority Leader and the GEPA Director as LRC members.

2. <u>Reconstituting SWM as a public corporation under the CCU</u>. *Id.* at 27. GovGuam has no objection to making SWM a public corporation. GovGuam does object to placing SWM under the CCU as discussed above.

3. <u>Filing with the PUC, a plan to procure services of a company to collect residential trash.</u> *Id.* at 28. SWM has already prepared an IFB to accomplish this. GovGuam asks the Court to allow this procurement process to proceed.

4. <u>Filing with the PUC, a plan to either privatize billing and collection or establish a protocol under GPA to do same.</u> *Id.* SWM has already outsourced its residential billing process. SWM will be taking over commercial billing from DOA with the intent to outsource this function. GovGuam asks the court to allow SWM to outsource residential and commercial billing.

5. <u>Filing with the PUC, a plan to restructure its business relationship with commercial haulers.</u> *Id.* DPW agrees that there should be a restructuring. DPW has been working with the Office of the Attorney General and the Office of the Public Auditor to assist it in this task. SWM is preparing services agreements for commercial haulers.

6. <u>Within 120 days of the creation of a new corporation, submit to the PUC a petition for the approval of revenue bonds.</u> *Id.* at 28-9. GovGuam submits that the petition for the bonds be reviewed by the LRC to insure that legislative concerns are addressed. This should reduce the time required for final approval by the legislation, but will require some additional review time once the petition is drafted. GovGuam, therefore, asks for an additional 30 days for preparation and review of the petition.

7. <u>Within 120 days of the creation of a new corporation, negotiate the purchase of Layon or begin eminent domain proceedings.</u> *Id.* at 29. GovGuam agrees with this recommendation.

8. <u>Provide the Public Auditor's report to the PUC and the US.</u> *Id.* GovGuam agrees with this recommendation

9. <u>Submit monthly reports about daily trash cover at the Ordot Dump.</u> *Id.* SWM is already submitting the reports to GEPA and agrees to provide the reports to the Court.

10. <u>Submit Monthly reports Identifying and explaining any failures to comply with the milestones.</u> *Id.* SWM has no objections to submitting the reports.

11. <u>Submit monthly reports about revenues collections.</u> *Id.* GovGuam asks that these reports be quarterly, rather than monthly.

12. <u>Attend monthly status conferences with the Court.</u> *Id.* GovGuam agrees with this recommendation.

13. <u>Hold monthly LRC meetings open to the public.</u> *Id.* GovGuam agrees to have monthly LRC meetings, but objects to having public meeting for the reasons discussed above.

Respectively submitted this 23rd day of July, 2007.

OFFICE OF THE ATTORNEY GENERAL
ALICIA G. LIMTIACO,
Attorney General of Guam

By: _____
J. PATRICK MASON
Deputy Attorney General