# ORIGINAL

1  RONALD J. TENPAS
   Acting Assistant Attorney General
2  Environment & Natural Resources Division
   ROBERT D. MULLANEY
3  Environmental Enforcement Section
   United States Department of Justice
4  301 Howard Street, Suite 1050
   San Francisco, California 94105
5  Tel: (415) 744-6483
   Fax: (415) 744-6476
6
   LEONARDO M. RAPADAS
7  United States Attorney
   MIKEL SCHWAB
8  Assistant United States Attorney
   Suite 500, Sirena Plaza
9  108 Hernan Cortez
   Hagåtña, Guam 96910
10 Tel: (671) 472-7332
   Fax: (671) 472-7215
11
   Attorneys for United States of America
12

**FILED**
DISTRICT COURT OF GUAM

AUG 10 2007

JEANNE G. QUINATA
Clerk of Court

13
14                IN THE UNITED STATES DISTRICT COURT
15                  FOR THE TERRITORY OF GUAM
16
17

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL CASE NO. 02-00022 |
| Plaintiff, | UNITED STATES' SUPPLEMENTAL INFORMATION: GUAM OFFICE OF THE PUBLIC AUDITOR'S PERFORMANCE AUDIT |
| v. | |
| GOVERNMENT OF GUAM, | |
| Defendant. | |

On July 6, 2007, Magistrate Judge Manibusan issued a Report & Recommendation in this case. The Report recommended, among other things, that Guam's Office of the Public Auditor ("OPA") complete its audit findings and issue a report regarding the Department of Public Works Solid Waste Management's ("SWM") accounts receivable. Report & Recommendation at 29. OPA recently issued its Performance Audit entitled "Department of Public Works Commercial

Tipping Fees." OPA Report No. 07-08 (August 2007). In that audit report, OPA endorsed the

Guam Public Utility Commission's recommendation that SWM be reconstituted as a public

corporation under the governance of the Consolidated Commission on Utilities. Performance

Audit at 17. Accordingly, OPA's assessment supports the Magistrate Judge's Report &

Recommendation on this issue. See Report & Recommendation at 28. The United States has

attached a copy of OPA's Performance Audit for the Court's information.

Respectfully submitted this 10th day of August 2007.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

BY: _____
MIKEL W. SCHWAB
Assistant U.S. Attorney

**Department of Public Works**
**Commercial Tipping Fees**

**Performance Audit**

**October 1, 2003 through January 31, 2007**

**OPA Report No. 07-08**
**August 2007**



OFFICE OF THE PUBLIC AUDITOR

# Department of Public Works
# Commercial Tipping Fees

**Performance Audit**
**October 1, 2003 through January 31, 2007**

**OPA Report No. 07-08**
**August 2007**

Distribution:

Governor of Guam
Speaker, 29th Guam Legislature
Senators, 29th Guam Legislature
Director, Department of Public Works
Director, Department of Administration
Public Utilities Commission
U.S. Department of the Interior
  Office of Inspector General – Pacific Field Office
Guam Media via e-mail



## EXECUTIVE SUMMARY

### Department of Public Works Commercial Tipping Fees
### Report No. 07-08, August 2007

This report presents the results of our performance audit of the Department of Public Works (DPW) Commercial Tipping Fees. The audit was initiated at the request of the DPW Director, and in response to a recommendation made in the Public Utilities Commission (PUC) Solid Waste Management Focused Audit Report and Recommendations, issued in August 2006 by the Georgetown Consulting Group (GCG).

We found that commercial tipping fees were not properly applied, billed, and collected. DPW and the Department of Administration (DOA) did not issue timely billing notices and did not collect on past due accounts. Although DOA attempted to establish a memorandum of understanding outlining billing and collection fees responsibilities, the agreement was not finalized. DPW and DOA each assumed the other was collecting commercial tipping fees. As a result, the following deficiencies were identified:

➢ Inefficient billing and collection processes.
   o $3.6 million in commercial tipping fee receivables as of January 31, 2007, of which $2.4 million or 65% are over 120 days old. One commercial hauler, whose business was purchased by another commercial hauler in 2004, still owed $1.3 million, representing more than half of the receivables over 120 days.
   o $484,416 in receivable discrepancies occurred due to the lack of reconciliation by commercial haulers with DOA records.
   o $46,124 in receivables from other commercial haulers (OCH) were not being monitored as of January 31, 2007.
➢ Commercial haulers continue to utilize the Ordot Dump (Dump) due to DPW's inability to aggressively collect from delinquent commercial haulers.
➢ An estimated $4 million in revenues from October 2003 to January 2007 was lost due to DPW's inability to provide service to approximately 12,000 residential customers.
➢ Undetermined amount in government revenues since 1997 was lost due to an inoperable weigh scale.
➢ Undetermined amount in government revenues was lost due to the lack of procedures to develop a database to bill and collect from government agencies that utilize the Dump.
➢ The lack of service agreements or contracts for the collection and disposal of solid waste (i.e., contract provisions to include a service period, service rates, the right to audit, etc.) has left DPW without a means to enforce penalties such as denying access to the Dump to commercial haulers due to non-payment and noncompliance.
➢ Approximately $43,470 in tipping fee revenues from April 2006 to January 2007 was lost due to payment exemptions to all village Mayors.

**Inefficient Billing and Collecting Processes**

In our testing, we found that as much as 43 business days lapsed from the time DPW issued a commercial hauler a field invoice to the time DPW delivered the field invoice to DOA for data-entry into the AS400 system for billing. Another 11 to 28 business days are added to the billing process since DOA hand delivers official billing notices to commercial haulers due to staff shortages.

Because of billing and collection deficiencies at DPW and DOA, delinquent commercial haulers have continued to utilize the Dump to the detriment of the government of Guam's fiscal condition. The General Fund has subsidized DPW's SWM operations. In April 2007, DPW began coordinating with the Office of the Attorney General (OAG) in an effort to collect from delinquent commercial haulers.

**Inoperable Weigh Scale**

Since DPW's weigh scale became inoperable in December 1997, commercial haulers are charged tipping fees based on volume instead of weight. Despite being required by the Guam Environmental Protection Agency to obtain a weighing scale in 1999 and again in 2005, DPW continues to charge tipping fees in this inefficient manner. We were unable to determine the amount in government revenues lost since 1997 due to an inoperable weigh scale.

**Estimated 12,000 Unserviced Residential Customers**

Between October 2003 and January 2007, we estimated that $4 million in government revenues were lost due to approximately 12,000 residential customers who may not have been billed or not provided services.

**Residential Customer Serviced by Commercial Haulers**

Prior to May 2007, DPW and PUC were unclear whether commercial haulers were responsible for collecting and remitting the required monthly $10 tipping fees collected from residential customers serviced by commercial haulers. However, OAG's May 2007 memorandum stated, "The billing is to be done by the hauler and the collecting is to be done by the hauler... this means that the hauler is not entitled to retain the [$10] residential [tipping] fees, which they have collected beyond the 60 days."

**Lack of Service Agreements with Commercial Haulers**

DPW did not enter into contracts for the collection and disposal of solid waste. Contract provisions such as establishing a service period, service rates, billing disputes, payment applications, the right to audit, etc. would have provided DPW a means to enforce penalties (i.e., denying access to the Dump) on commercial haulers due to nonpayment and noncompliance.

**Other Deficiencies**

Other deficiencies include:

- ➢ No established payment terms and instructions (to include account numbers and billing notice numbers when making payments for proper credit) on monthly-generated official commercial billings.
- ➢ No developed waste collection district plan as mandated by P.L. 26-99 until May 2007. DPW completed the plan, but has yet to issue a solicitation of interest to obtain feedback for a refined district plan invitation for bid.

2

> Lax internal controls over cash collections from self-hauling customers at the Dump.

**SWM as a Public Corporation**
OPA concurs with PUC's rationale to convert the SWM division into a separate public corporation, under the auspices of the Consolidated Commission on Utilities. The proposed realignment will more accurately determine the total costs to operate a waste management system (i.e., collection and disposal of solid waste, closure of the dump, and development of a new sanitary landfill). However, legislation to affect the realignment has not been introduced to the Guam Legislature as of the date of this report.

**Recommendations**
Because of the existing General Fund cash deficiency, DPW should immediately take aggressive collection action by restricting access to the Dump for commercial haulers who are delinquent beyond 60 days.

To address the billing and collection problems, we recommend that DPW and DOA begin coordinating the transfer of the commercial billing and collection functions (i.e. data-entry, billing, and delivery). DPW should establish internal controls (checks and balances) and segregation of duties within the billing process to reduce the opportunities for one person to both perpetrate and conceal fraud. DOA should issue and record credit memos and conduct periodic reviews of billing transactions to ensure proper controls are in place. Both DPW and DOA concurred and supported the transfer of the billing function of commercial tipping fees from DOA to DPW.

Other recommendations include secure a weigh scale under a proper procurement process, work with the OAG in aggressively collecting past due commercial tipping fee accounts and finalize a proposed service contract agreement, and establish government tipping fee charge accounts to bill government entities.

**Management Response**
A draft report was transmitted to DPW, DOA, and the PUC. The DPW Director concurred with the audit recommendations and submitted its plan of action to address the audit recommendations. The DOA Director concurred with the recommendation to transfer the commercial billing and collection function to DPW.

The PUC Chairman submitted a response stating that the audit report adds convincing evidence that critical structural change is needed for the government of Guam to meet its responsibilities under the Consent Decree in District Court of Guam Civil Case 02-22. GCG also provided a response and addressed certain matters regarding DPW's escrow funds, the lack of legislative provisions for establishing late payment penalties, monitoring commercial haulers' customers, contract agreements, and mayors allowing residents to bring their solid waste to them for disposal. We have amended the report to address their concerns.

*Doris Flores Brooks*

Doris Flores Brooks, CPA, CGFM
Public Auditor



# Contents

Page

Introduction ............................................................................................................................1

Results of Audit ......................................................................................................................4
    Inefficient Billing and Collection System ..........................................................................6
    Residential Customers Serviced by Commercial Haulers ................................................12
    Unserviced Customers ......................................................................................................13
    Inoperable Weigh Scale ....................................................................................................15
    Lack of Commercial Service Agreements ........................................................................16
    SWM as a Public Corporation .........................................................................................17
    Other Matters ...................................................................................................................18

Conclusion ...........................................................................................................................20

Recommendations ................................................................................................................21

Management Response and OPA Reply ...............................................................................22

Appendices............................................................................................................................23
    1:Classification of Monetary Impact ...............................................................................23
    2: Audit Scope and Methodology .....................................................................................24
    3: Prior Audit Coverage....................................................................................................26
    4: Billing and Collection Best Practices ...........................................................................27
    5; Potential Revenue Loss from Unserviced Residential Customers ................................30
    6; PUC Letter on Nonservice to Residential Customers....................................................32
    7: OAG Letter on Nonservice Residential Customers.......................................................35
    8: DPW Management Response .......................................................................................37
    9: DOA Management Response ........................................................................................40
    10: PUC Management Response .......................................................................................41
    11: Status of Audit Recommendations .............................................................................57


# Introduction

This report presents the results of our performance audit of the Department of Public Works (DPW) Commercial Tipping Fees. The audit was initiated at the request of the DPW Director, and in response to a recommendation made in the Public Utilities Commission's Solid Waste Management Focused Audit Report and Recommendations, issued in August 2006 by the Georgetown Consulting Group (GCG).

The audit objective was to determine whether government of Guam commercial tipping fees were consistently and properly billed and collected. For the purpose of this report, commercial tipping fees (tipping fees) are the disposal fees billed to commercial solid waste generators for disposing waste at the Ordot Dump (Dump) charged by volume and compaction rates, compacted or un-compacted.

The audit scope, methodology, and prior audit coverage are detailed in Appendices 2 and 3.

## Background

**Legislation Governing Tipping Fees**
Public Law (P.L.) 24-272, passed in October 1998, created the Solid Waste Operations Fund (SWOF), a special revenue fund of the government of Guam. Tipping fees collected from residential, commercial, and government generators are deposited into the SWOF, a financing source for the operations of the Solid Waste Management (SWM) division of DPW. The Department of Administration (DOA) performs the accounting for the SWOF.

P.L. 25-93, passed in December 1999, mandated the following:

- Section 8(2), commercial haulers shall remit tipping fees paid by their customers from the prior month to the government by the 20th day of the following month.
- Section 9(1), commercial collectors shall provide 30 days written notice of termination and the effective date of service termination to accounts that have not paid their tipping fees within 60 days of billing. Commercial haulers shall provide DPW written notice of any commercial account that has not paid their tipping fees within the 30-day notice of termination.
- Section 9(2), commercial haulers shall not pick up any solid waste from terminated customers, or commercial haulers shall be liable for the payment of tipping fees incurred from continued service. DPW shall notify in writing all commercial haulers of all business or government accounts that are restricted from collecting services for non-payment.

1

- Section 9(3), DPW shall collect all past due unpaid tipping fees from residential, business or government generators who have not paid their tipping fees. Commercial haulers shall not be liable for past due unpaid tipping fees of its customers.

Additionally, there are rules and regulations for solid waste collection, disposal, and processing promulgated by DPW set forth in P.L. 24-313, which also govern the collection of various tipping fees.

## Department of Public Works (DPW) Involvement
DPW is a line agency under the Executive Branch, established by P.L. 1-88 and enacted in 1952. DPW is responsible for overseeing the construction, maintenance, rehabilitation, repair or demolition of public facilities of the government of Guam.

The Solid Waste Management (SWM) section within DPW's Operations Division is responsible for providing a safe and healthy environment through the collection and disposal of trash and other debris on island, and ensuring compliance with the Ordot Consent Decree requirements for the Dump's closure and new landfill operation. SWM is charged with the management of billing and collection of residential and commercial tipping fees.


Image 1: Department of Public Works Office in Tamuning, Guam.

Tipping fees are comprised of commercial, government, and residential tipping fees, including self-drop fees for the disposal of solid waste. In fiscal year (FY) 2007, SWM had a personnel budget of $3.1 million and is staffed by 89 employees. Of the 89 employees funded by the SWM division, nine are detailed to another division.

## Public Utilities Commission (PUC) Oversight
PUC regulates the rates impacting the Guam Power Authority (GPA), Guam Waterworks Authority (GWA), and DPW Division of SWM. PUC also has the authority to examine the financial condition of these entities. PUC is governed by seven commissioners who serve six-year terms by appointment of the Governor and confirmation by the Legislature.

P.L. 28-56, passed in June 2005, authorized PUC to establish commercial, government and residential tipping and user fees to fund the activities of SWM, the Ordot Consent Decree, and for the closure of the Dump. Effective November 1, 2005, the current interim tipping fee rates set by PUC are as follows:

2

| Tipping Fee Description | Rate |
|---|---|
| Residential | $10/month |
| Compacted | $20/cubic yard (cyd) |
| Uncompacted | $5/cyd |
| Self-Drop (over 3 cyd) | $5/cyd |
| Self-Drop (under 3 cyd) | $2.50/cyd |

According to GCG management response, the PUC ordered DPW to deposit portion of fees from the increases in tipping fees into an escrow account in October 2005. The escrow funds may only be released upon order of the PUC. However, P.L. 28-150 granted the Governor the power to borrow funds from the SWOF and other non-exempt special funds. These escrow funds might not be available even if expenditure from such funds is authorized by the PUC.

**Department of Administration (DOA) Performs Billing of Tipping Fees**
With the establishment of the SWOF, DOA has been responsible for the processing of commercial tipping fees billings, data-entry into the AS400 financial system, and delivery of monthly billings to commercial haulers since August 1999.

# Results of Audit

Commercial tipping fees were not properly applied, billed, and collected. DPW and DOA did not issue timely billing notices and did not collect on past due accounts. Although DOA attempted to establish a memorandum of understanding outlining billing and collection fees responsibilities, the agreement was not finalized. DPW and DOA each assumed the other was collecting commercial tipping fees. As a result, neither DPW nor DOA collected past due tipping fees. Because of DPW's inability to properly apply, bill, and collect commercial tipping fees, the General Fund (GF) continues to subsidize SWM operations to the detriment of the government's fiscal condition. The following deficiencies were identified:

**Inefficient Billing and Collection System**

- Of the $3.6 million in commercial tipping fee receivables as of January 31, 2007, $2.4 million or 65% were over 120 days old. One commercial hauler whose business was purchased by another commercial hauler in 2004 still owed $1.3 million, representing more than half of the receivables over 120 days.

- $484,416 in receivable discrepancies occurred due to the lack of reconciliation by commercial haulers with DOA records.

- $46,124 in receivables from other commercial haulers (OCH) were not being monitored as of January 31, 2007.

- Lack of payment terms and instructions (to include account numbers and billing notice numbers when making payments for proper credit) on monthly-generated official commercial billings.

**Inoperable Weigh Scale**

Since DPW's weigh scale became inoperable in December 1997, commercial haulers are charged tipping fees based on volume instead of weight. Despite being required by the Guam Environmental Protection Agency to obtain a weighing scale in 1999 and again in 2005, DPW continues to charge tipping fees in this inefficient manner. The amount in government revenues lost since 1997 due to an inoperable weigh scale is undetermined.

**Unserviced Customers**

- Between October 2003 and January 2007, we estimated that $4 million in government revenues were lost due to approximately 12,000 residential customers who may not have been billed or provided services.

- Approximately $43,470 in tipping fee revenues from April 2006 to January 2007 were lost due to exemptions to village Mayors.

- Undetermined amount in government revenues was lost due to the lack of procedures to develop a database to bill and collect from government agencies that utilize the Dump.

**Residential Customers Serviced by Commercial Haulers**

DPW and PUC were unclear whether commercial haulers were responsible for collecting and remitting the required monthly $10 tipping fees collected from residential customers serviced by commercial haulers. However, in May 2007 the OAG issued a memorandum stating that "The billing is to be done by the hauler and the collecting is to be done by the hauler... this means that the hauler is not entitled to retain [$10] residential tipping fees, which they have collected beyond the 60 days."

**Lack of Commercial Service Agreements**

The lack of service agreements or contracts for the collection and disposal of solid waste (i.e., contract provisions to include a service period, service rates, the right to audit, etc.) has left DPW without a means to enforce penalties such as denying access to the Dump to commercial haulers due to non-payment and noncompliance. According to GCG's management response, there is no authorization in law requiring commercial haulers to enter into such agreements. However, we disagree, as it appears inconsistent with P.L. 24-313.

**Other Matters**

- Not developing a waste collection district plan as mandated by P.L. 26-99 until May 2007. DPW completed the plan, but has yet to issue a solicitation of interest for the development of a residential collection district plan invitation for bid (IFB).
- Lax internal controls over cash collections from self-hauling customers at the Dump.

To correct these deficiencies, we made several recommendations to improve the overall commercial tipping fees process, including the recommended transfer of the commercial billing function from DOA to DPW. The transfer should mitigate delays in the production and delivery of billings, immediately address billing and collection discrepancies, and regularly follow-up on past due accounts. To maintain appropriate checks and balances, DOA Division of Accounts should be the responsible party to issue and record credit memos, and should conduct periodic reviews of the billing transactions. We suggest the full transition take effect by October 1, 2007. Other recommendations include securing a weigh scale through the proper procurement process.

## Inefficient Billing and Collection System

Pursuant to P.L. 25-93, Section 8, tipping fees for business or government generators that have their solid waste collected by commercial collectors shall be collected by commercial collectors and remitted to the government of Guam by the 20th day of the following month.

Best practices recommend that billing notices indicating payment terms be sent to customers at least monthly or in some cases, as often as weekly. The payment system should have the ability to automatically apply payments and credits/debits to a specific charge or multiple invoices. Further, procedures should exist to address the recording of receivables, collection, and follow-up on delinquent accounts in a timely manner.

We found that DPW and DOA did not issue timely billing notices and did not make efforts to collect on past due accounts. Although DOA attempted to establish a memorandum of understanding outlining responsibilities for the billing and collection of commercial tipping fees as mandated in P.L. 25-93, the agreement was not finalized. DPW and DOA each assumed the other was collecting commercial tipping fees.

### Deficient Billing Process

In our review of the billing cycle, we found several inconsistencies with how Solid Waste Tipping Fees field invoices (field invoices) are being processed. SWM technicians manually prepare and issue field invoices to commercial haulers upon entering the Ordot Dump (Dump). These field invoices consist of four copies. One copy is given to the



haulers. SWM technicians deliver the other three copies to the DPW Customer Service Office the following business day.

Upon receipt, a DPW Customer Service representative reviews the field invoices to ensure that they are sequentially numbered and calculated, then files one copy for DPW record. However, we found no evidence of a supervisory review over the field invoices as no supervisory signatures

Image 2: SWM satellite office at the Ordot Dump where DPW manual charge invoices are prepared.

indicated that field invoices were reviewed and examined.

Instead of making notation of missing field invoices during a numerical check for timely billing, DPW holds all field invoices until the batch is numerically complete before delivering them to DOA. This practice is inefficient because it causes billing delays. For instance, on November 1, 2005 DPW issued field invoice no. 103994 and delivered the field invoice to DOA on December 29, 2005. By then 43 business days had already lapsed from the time DPW issued the field invoice to the commercial hauler to the time the field invoice is delivered to DOA for data-entry into the AS400 system for billing. See Table 1 for more examples.

**Table 1: Commercial Field Invoices Cycle at DPW**

| Field Invoice Number | Date Field Invoice Issued by DPW SWM | Date Field Invoice Received by DOA | Business Days Lapsed from DPW Issuance to DOA Receipt of Invoices |
|---|---|---|---|
| 103994 | 1-Nov-05 | 29-Dec-05 | 43 |
| 105633 | 4-Nov-05 | 29-Dec-05 | 39 |
| 106085 | 16-Nov-05 | 29-Dec-05 | 31 |
| 103837 | 27-Oct-05 | 14-Nov-05 | 11 |

DPW did not prepare a breakdown of the field invoices issued to each commercial hauler. The detailed breakdown should aid in processing field invoices more timely and assist in the reconciliation of DPW and DOA billing records. DPW should reconsider to include a summary of the number of field invoices issued to each commercial haulers and a listing of missing field invoices as part of its transmittal to DOA.

DPW delivers the two remaining copies of the batched field invoices to DOA for data-entry into the AS400 system for official billings. Both copies remain at DOA. The AS400 system automatically calculates the amount based on predetermined rates of tipping fees built into the system. A tipping fee billing information form that summarizes transactions (i.e., date, manual tipping fee invoice numbers, plate numbers, volume, compaction ratio, and amount) within a billing period is attached to the official billing notices generated.

The billing notices are, then, hand delivered once a month by DOA to the commercial haulers. The process adds another 11 to 28 business days to the billing cycle since there are only two DOA staff members overseeing the process of commercial tipping fees.

The monthly-generated commercial billing notices neither indicates the payment terms nor instruct commercial haulers to include account number and billing notice numbers when making payments for proper credit. However, discrepancies with billing notices are the responsibility of the commercial haulers. Most billing notices allow a limited time to dispute discrepancies, otherwise the billing is deemed correct. Because commercial haulers do not inform DOA how payments are to be applied, the payments are on a first in first out basis, which is the normal payment process.

We noticed that DOA billings to commercial haulers, although received late, were billed as of the beginning of the month or of the following month. For instance, on November 16, 2005 DPW issued field invoice no. 106085, but did not deliver the field invoice to DOA until December 29, 2005. However, DOA dated the billing notice for December 1, 2005, 20 business days before DOA actually received the field invoice for data processing. The billing notice was, then, delivered to the commercial hauler on February 1, 2006. See Table 2 for illustration.

**Table 2: Commercial Tipping Fees Billing Cycle at DOA**

| Field Invoice Number | Tipping Fee Invoice Issued | Date Field Invoices Received by DOA | Official Billing Date | Delivery of Billings by DOA to the Commercial Haulers | Business Days Lapsed from DOA Receipt to Billing Delivery |
|---|---|---|---|---|---|
| 112368 | 19-Apr-06 | 2-May-06 | 1-May-06 | 9-Jun-06 | 28 |
| 106085 | 16-Nov-05 | 29-Dec-05 | 1-Dec-05 | 1-Feb-06 | 24 |
| 103837 | 27-Oct-05 | 14-Nov-05 | 1-Nov-05 | 29-Nov-05 | 11 |

To correct these deficiencies, we recommend that DPW and DOA establish procedures to indicate a billing and payment cycle for commercial haulers, such as twice a month. DPW and DOA should offset payments against older receivables if commercial haulers fail to indicate how the payments should be applied.

We have also outlined some best practices that would facilitate a more effective and efficient billing process. See Appendix 4. These best practices, if applied by DPW, should strengthen and improve the efficiency of the billing cycle for commercial tipping fees.

**Lack of Collection Follow-Up**

P.L. 25-93 mandated DPW to collect all unpaid tipping fees that are past due from residential, business, or government generators who have not paid their respective tipping fees. In addition, the law specified that commercial haulers shall not pick up any solid waste from terminated customers, or the commercial haulers shall be liable for tipping fees incurred from the continued service.

According to best practices, a collection process requires constant attention. A well-managed accounts receivable function continually seeks new ways for improvement, which can boost cash flow and expand working capital.[1] Procedures should exist to address the recording of receivables, collection, and follow-up on delinquent accounts in a timely manner.

No follow-up efforts were made by either DPW or DOA to ensure that commercial tipping fees were remitted timely. Because we were not allowed access to commercial tipping fee records maintained by commercial haulers, we were not able to verify whether all payments received from customers serviced by commercial haulers as prescribed by P.L. 25-93 were remitted to the government of Guam.

As of January 31, 2007, we determined that commercial tipping fees had receivables totaling $3.6 million, of which $2.4 million or 65% were over 120 days past due. See Table 3 for details.

---

[1] Best Practices for Accounts Receivables, Credit, and Collections Management by Global Best Practices of PricewaterhouseCoopers; Best Practices: Receivable, Credit, and Collection; and University of Mississippi Accounts Receivable Process.

## Table 3: AS400 System Recorded Commercial Gross Accounts Receivable Aging Report as of January 31, 2007

| Commercial Hauler | Current | 30 days | 60 days | 90 days | 120 days & over | Total per Hauler |
|---|---|---|---|---|---|---|
| 1 | $182,050 | $166,235 | $ 171,820 | $178,770 | $ 767,536 | $ 1,466,411 |
| 2 | $ 93,190 | $ 81,740 | $ 86,540 | $ 82,420 | $ 87,140 | $ 431,030 |
| 3 | $ 18,500 | $ 14,555 | $ 14,610 | $ 16,945 | $ 189,008 | $ 253,618 |
| 4 | $ 43,210 | $ 40,180 | $ 39,730 | $ 38,205 | $ 19,787 | $ 181,112 |
| 5 | $ 1,400 | $ 2,675 | $ 2,250 | $ 3,850 | $ 3,275 | $ 13,450 |
| 6 [2] | $ - | $ - | $ - | $ - | $ 1,286,732 | $ 1,286,732 |
| Total: | $338,350 | $305,385 | $ 314,950 | $320,190 | $ 2,353,478 | $ 3,632,353 |
| Percentage: | 9% | 8% | 9% | 9% | 65% | 100% |

### Disputed $1.3 Million Receivables

Of the $3.6 million in receivables, $1.3 million or 35% is owed by Commercial Hauler 6 (in Table 3) whose business assets were purchased by Commercial Hauler 2 in January 2004. Correspondences in 2005 between DPW and the Commercial Hauler 2's legal counsel revealed that Commercial Hauler 2 was not responsible for Commercial Hauler 6's debts.

In an attempt to clear this issue, the DPW Director requested assistance from the former Attorney General (AG) in October 2005 on how to handle the dispute and resolve this matter within the confines of the law; however, DPW did not receive a response from the former AG regarding this request. In April 2007, the DPW Director referred the matter to the new AG. Subsequently, a civil suit[3] was filed by OAG in the Superior Court of Guam in July 2007 against Commercial Hauler 6 for failure to pay past due tipping fees.

### Commercial Haulers Noncompliance with Law

P.L. 25-93 outlines commercial haulers' responsibilities and reporting requirements for commercial tipping fees. We found that commercial haulers did not comply with the mandates of the law (see Table 4). We recommend that DPW restrict access to the Dump for commercial haulers with receivables beyond 60 days and who failed to comply with the reporting requirements of P.L. 25-93.

### Table 4: Commercial Haulers' Responsibilities and Reporting Requirements

| Section | Provision | Requirement | DPW Response | DOA Response |
|---|---|---|---|---|
| 1(c) | Business and Governmental Tipping Fees | Commercial and government collectors shall provide the Department of Public Works the compaction ratios of all equipment used to haul solid waste to the landfill to insure the accurate assessment of tipping fees for compacted trash. | No [4] | No |

---

[2] Commercial Hauler 6 was not reviewed as it was bought by Commercial Hauler 2 in January 2004.

[3] Civil Case No. 833-07.

[4] The commercial haulers provided information, but were incomplete, i.e., roll-off containers and new vehicles they purchased.

9

| Section | Provision | Requirement | DPW Response | DOA Response |
|---------|-----------|-------------|--------------|--------------|
| 9(n)(1) | Termination of Collecting Services to Business, Government and Residential Generators for Non-Payment | Commercial collectors shall provide thirty (30) days written notice of termination, and the effective date of service termination of collecting services, to their respective accounts that have not paid their tipping fees within sixty (60) days of billing. | No | No |
| | | Commercial collectors shall provide DPW written notice of any commercial generator account that has not paid their tipping fee within the thirty (30) day notice of termination. | No | No |

**Lack of Accounts Receivable Reconciliation**

Accounts receivable reconciliation is fundamental to ensure that errors and inconsistencies requiring corrections are made timely to billed accounts. Reconciliation should be performed by an employee who is independent from and not directly responsible for calculating the billings or recording transactions.

According to DPW and DOA accounting staff, no reconciliation of commercial tipping fee receivables occurred between DOA commercial tipping fees records and commercial haulers' records. As such, we issued confirmation letters to the five largest commercial haulers to obtain information on their accounts payable to the government of Guam. Four of the five commercial haulers sent responses.[5] When compared to DOA commercial tipping fee receivables to the confirmations submitted by the commercial haulers, we noted discrepancies of $484,816 for all three commercial haulers. See Table 5 for details.

**Table 5: AS400 Recorded Receivables vs. Commercial Haulers' Confirmations**

| Commercial Hauler | DOA Recorded Gross Receivable as of 1/31/07[6] | Commercial Hauler Confirmations | Confirmation Difference |
|-------------------|-----------------------------------------------|--------------------------------|-------------------------|
| 1 | $ 1,466,411 | $ 1,339,618 | $ 126,793 |
| 2 | $ 253,618 | $ 0 | $ 253,618 |
| 3 | $ 181,112 | $ 76,707 | $ 104,405 |
| 4 | $ 431,030 | $ 431,030 | $ 0 |
| 5 | $ 13,450 | **Not Provided** | **Unable to Determine** |
| **Total:** | **$ 2,345,621** | **$ 1,847,355** | **$ 484,816** |

Commercial Hauler 2 disputed the $253,618 in receivables recorded by DOA. The company's General Manager stated that their customer base consisted of commercial clientele, i.e., small businesses and construction companies, who have their own charge accounts with DOA. The General Manager stated that they provide their customers a copy of DPW's field invoices so they can pay their tipping fees directly to DOA. Therefore, they have no recorded accounts payable owed to the government of Guam. The General Manager informed us that neither DPW nor DOA performs reconciliation of customer payments against receivables.

---

[5] Confirmation excluded the commercial hauler with $1.3 million receivable because it was no longer in business.

[6] OPA did not reconcile these recorded gross receivables to ascertain the accuracy of the recorded amounts.

We obtained the database of Commercial Hauler 2's customers to verify whether payments were misapplied. As of January 31, 2007, we identified that only five of its 20 customers or 25% had an aggregate negative balance of $31,538. DOA subsequently conducted its independent review and determined that Commercial Hauler 2's customers had payment credits of $30,601. Commercial Hauler 2's contention that its customers pay their tipping fees directly to DOA could not be substantiated. Therefore, we disagree with Commercial Hauler 2's contention that they did not owe tipping fees to the government of Guam. Applying the payment credits of about $30,000 against the $253,618 in receivables owed by Commercial Hauler 2, we estimated that Commercial Hauler 2 still owed approximately $220,000 to the government of Guam.

Again, it is the commercial hauler's responsibility to reconcile and inform DOA of any account discrepancies otherwise DOA records are deemed correct. The burden of proof lies with commercial haulers to dispute any errors and not the government.

Because of billing and collecting deficiencies at DPW and DOA, delinquent commercial haulers have continued to utilize the Dump to the detriment of the government of Guam's fiscal condition. The General Fund (GF) has subsidized DPW's SWM operations. DPW began coordinating with OAG in April 2007 in an effort to aggressively collect from delinquent commercial haulers.

### Other Commercial Haulers Accounts Not Monitored

We noted that numerous smaller commercial haulers known as "other commercial haulers" (OCH), characterized by DPW as small haulers (i.e. construction companies and businesses) haul their solid waste are issued SWM field invoices. To account for OCH, DPW required OCH to complete and file a Credit of Application. Once approved by a DPW supervisor, DOA created charge accounts for these OCH.

As of January 31, 2007, DOA had recorded 73 OCH accounts, of which 21 accounts had negative balances totaling $43,209 due to the lack of payment application, and 52 accounts with outstanding receivables totaling $89,333. OCH receivables pose an additional risk of not being collected because the receivables are not being monitored by DPW or DOA. DPW should restrict assess to the Dump for OCH that are delinquent beyond 60 days and aggressively pursue any legal recourse to collect from delinquent OCH for non-payment.

### Transfer SWM Billing from DOA to DPW

Because of inefficient billing and collection of outstanding commercial tipping fee receivables, the GF continues to subsidize SWM operations. We recommend DPW and DOA begin coordinating the transfer of the commercial billing function (i.e. data-entry, billing, and delivery) from DOA to DPW. DPW should establish internal controls (checks and balances) and ensure segregation of duties within the billing process by assigning employees different responsibilities for authorizing transactions, recording transactions, and maintaining custody of assets. SWM personnel issuing field invoices should not be the same personnel inputting field invoices into the AS400 system. The accounting division within DPW should independently perform this function. This segregation of duties

11

reduces the opportunity for one or two employees to perpetrate and conceal errors or fraud.

In May 2007, we transmitted a letter to DPW and DOA informing them of this recommendation and that they should begin coordinating the transfer of the billing function. We suggested that the full transition take effect by October 1, 2007, giving DPW ample time to train its staff. A trial run was conducted by DPW in January 2007 where SWM entered the commercial field invoices into the AS400 system. This process resulted in a significant decrease in the lapsed days from 43 business days to 3 business days. However, we noted DOA was still hand delivering billing notices to commercial haulers. This practice is inefficient and provides for delays.

Both DPW and DOA concurred and support the transfer of the billing function from DOA to DPW (See Appendices 9 and 10). The recommended transfer should mitigate delays in the production and delivery of billings, and immediately address any discrepancies. The transfer would require DPW to assume full responsibility of the billing cycle for the commercial haulers, to include delivery of billing notices and collection of receivables. However, we recommended that DOA be responsible for recording credit memos against accounts and conducting periodic reviews of billing transactions.

### Escrow Account

In October 2005, PUC issued PUC Docket 05-09 authorizing DPW to escrow the portion of the November 2005 tipping fee rate increases. Funds from the escrow account may be released upon order of the PUC to fund the SWM Management Audit and Consent Decree Tasks. As of June 30, 2007, DOA records showed a $1.1 million balance in the escrow account. The establishment of the escrow account ensures that the proper portion derived from the increase in commercial tipping fee rates is deposited into the account, and represents the beginning of the funding for SWM operations and the eventual closure of the Dump.

## Residential Customers Serviced by Commercial Haulers

Pursuant to P.L. 25-93, Section 9, DPW shall collect all unpaid tipping fees that are past due from residential, business or government generators who have not paid their respective tipping fees. Commercial collectors shall not be liable for past due unpaid tipping fees of its customers.

Current statutes, as well as DPW and PUC, were unclear on whether the monthly $10 fee assessed to residential customers serviced by commercial haulers should be remitted to the government of Guam. In response to DPW's inquiry on this issue, the Assistant AG issued a memorandum (Appendix 7) in May 2007 stating that all fees shall be paid within 60 days from the date of the billing. In addition, the memorandum stated that P.L. 24-313 Section 105(j) required "the billing to be done by the hauler and the collecting is to be done by the hauler... this means that the hauler is not entitled to retain [$10] residential [tipping] fees which they have collected beyond the 60 days... Haulers have a duty to collect and pay fees derived within sixty days."

12

In addition, the Assistant AG also stated that commercial collectors shall remit the tipping fees paid by their customers in the prior month to the government of Guam by the 20th day of the following month. Commercial haulers have a duty to collect and pay fees derived within 60 days, but in the case of government and commercial accounts, they are given an extension of 20 days for actual payment. From a cash flow perspective, the concept to allow commercial haulers up to 80 days to pay or remit commercial tipping fees when disposal services have already been rendered is not consistent with best practices in accounts receivable. Legislation should be reconsidered for requiring prompter payments by commercial haulers.

The DPW Director stated service routes have not been assigned to commercial haulers nor is DPW monitoring the commercial haulers' customer base, which may include residential customers. Both the DPW Director and SWM Program Manager stated they were aware of commercial haulers providing disposal services to single residential customers because of DPW's inability to provide adequate services. In discussions with SWM staff, commercial haulers have refused to provide information on their customer base.

Subsequently neither DPW nor DOA had any idea of the number of single residential customers currently being serviced by the five major commercial haulers. According to GCG, there is no specific provision in law to monitor the commercial haulers' customers. The development of such a customer database would ensure island residents are being provided proper adequate disposal services whether with DPW or a commercial hauler and all tipping fees are remitted to the government of Guam for the use of the Dump.

## Unserviced Customers

To estimate the number of single residential customers that may not have been serviced by SWM, we utilized GWA residential customers from October 2003 through January 2007. After subtracting multi-dwelling units from the list, we then compared the list against DPW's database of residential customers. We determined that approximately 12,000 single residential customers (plus or minus residents who either self-haul, illegal dump, use the mayors to dispose of their trash, or were serviced by commercial haulers) might not have been serviced or billed by SWM from October 2003 through January 2007, as illustrated in Appendix 6.

We estimated that the government of Guam lost about $4 million in potential revenues. Our projection was based on multiplying the number of unserviced residential customers by tipping fee rates of $8 and $10 (see Table 6 below for details).

We recommend DPW immediately develop a plan to identify residential customers who are not serviced by SWM in order to provide disposal services either by DPW or a commercial hauler and to ensure all tipping fees are remitted to the government of Guam for use of the Dump. The servicing of these residential customers would provide needed cash infusion to fund SWM operations.

**Table 6: Estimated Potential Residential Revenue Lost per Fiscal Year**

| Fiscal Year | Potential SWM Revenue Lost |
|---|---|
| 2004 | $ 1,132,560 |
| 2005 | $ 1,104,112 |
| 2006 | $ 1,299,446 |
| 2007[7] | $ 458,180 |
| **Total:** | **$ 3,994,298** |

## Unbilled Government Tipping Fees

Pursuant to P.L. 24-272, tipping fees are collected from residential, commercial, and government generators. As defined in 10 G.C.A. §51102, the "Government" is the *government of Guam, all of its agencies, whether line or autonomous, and all public corporations*. Therefore, government agencies are not exempted from paying tipping fees.

We found that several government agencies, i.e., Department of Corrections, Department of Agriculture, and Department of Parks and Recreation utilized the Dump to dispose their solid waste. Although these entities were issued field invoices upon entering the site, neither DPW nor DOA had procedures to bill and collect from government agencies. Field invoices issued to government entities are merely filed and maintained by DOA, and do not post into the AS400 system for proper billing and collection. As a result, government entities that routinely utilize the Dump are not billed. We found the only exception where a government entity, the Guam Public Library System, has had a charge account since February 2003 and has regularly paid its tipping fees.

As of May 2007, DPW and DOA had established charge accounts for 15 government agencies utilizing the Dump, and began posting field invoices into the AS400 system for proper billing and collection.

We were unable to determine the loss of potential government tipping revenues from unbilled government agencies because DPW had not developed a database documenting the volume of solid waste being disposed of by government agencies. We recommend that DPW, in conjunction with DOA, immediately establish government tipping fee charge accounts for proper billing and collection of tipping fees from government departments and enforce the collection of such billings. With the current FY 2008 budget hearings going on, such action is imperative, otherwise government entities may not have the appropriations to pay tipping fees.

## Mayors Exempted from Tipping Fees

All mayors who collect waste in the performance of their official duties shall be allowed to dispose at the Ordot Dump or any transfer station free of charge, pursuant to 10 G.C.A. § 51118(m).

During our site visit at the Dump, we noted that mayors utilized the Dump frequently. There is no limit on the solid waste volume that mayors can dispose at the Dump. Because

---

[7] For the four-month period between October 2006 and January 2007.

mayors are exempt from paying tipping fees, DPW has lost another opportunity to generate needed revenue. It was not until April 2006 when DPW began monitoring and compiling the mayor's solid waste database for internal tracking purposes and Consent Decree. These reports are available upon request by the Mayors, the Guam Environmental Protection Agency (GEPA), and the public.

Based on DPW's internal records, for the ten-month period beginning April 2006 and January 2007, the mayors of Guam disposed 8,694 cubic yards of solid waste at the Ordot and transfer stations, free of charge for an estimated revenue loss of $43,470[8] to the SWM.

The GCG commented that mayors have been allowing residences in their village to bring their solid waste to their offices for disposal under the exemption whenever DPW fails to service an area of the village. However, mayors make no effort to determine if those residents are current in the payment of their tipping fees.

According to the ALJ, the mayor's exemption is a matter of public policy, which is within the purview of the Executive and Legislative branches. Should the SWM become a public corporation the Board of Directors should determine whether or not to continue this policy as appropriate. For example, the GPA bond indentures prohibit the exemption of free services to all classes of customers, including government entities.

## Inoperable Weigh Scale

A weigh scale produces an accurate reading of the quantity of waste entering a disposal or transfer site. It is a tool that would reasonably determine solid waste fees, provide information on the amount of waste generated by the community, and other information that will assist in the overall forecast of the SWM's operations, i.e., planning of a new landfill's capacity. However, the weigh scale at the Dump has been inoperable since December 1997 when it was destroyed by Typhoon Paka. Under Guam Environmental Protection Agency's (GEPA) Integrated Solid Waste Management Plans for 1999 and again in 2005, DPW was required to obtain a weigh scale.

Because DPW has yet to acquire a new weigh scale, DPW estimates the tonnage of solid waste disposed of at the Dump through physical inspections of dump trucks. We observed that SWM Technicians did not conduct inspections of the trucks before allowing haulers entry into the Dump. However, this method is highly subjective and susceptible to possible fraud (i.e. compacted solid waste could easily be concealed under uncompacted solid waste).

Without an operating scale, tipping fees are assessed on the estimated volume of solid waste rather than by weight. The amount of revenues lost since 1997 due to an inoperable weigh scale is undetermined. In April 2007 the DPW Director stated that a brand new weigh scale would cost approximately $150,000. The cost of the equipment would have more than paid for itself by providing an accurate reading of the disposal of trash, and, in

---

[8] Based on uncompacted rate of $5/cyd multiplied by 8,694 cyd of solid waste.

all probability generated more revenue for the SWM had DPW procured a weigh scale years ago.

The OAG indicted[9] a commercial hauler in September 2006 on charges of conspiracy and bribery to dispose solid waste at the Dump for a reduced cost or at no cost. In March 2007, we transmitted a letter to the DPW Director recommending DPW secure a weigh scale using the proper procurement process and begin the development of the specifications. In April 2007, the DPW Director confirmed that the specifications for the weigh scale were completed and that they were currently in the process of preparing an invitation for bid (IFB) for the procurement of a weigh scale.



Image 3: Commercial hauler uncompacted solid waste dump trucks at Ordot Dump as SWM Technicians physically inspect the volume and compaction.

As of the issuance of this report, the IFB has not been issued. DPW should be directed immediately by the Governor to issue the IFB to procure the weigh scale. After 10 years of on inoperable weigh scale, any further delay in the procurement of a weigh scale borders on a dereliction of duty by past and current DPW Directors.

## Lack of Commercial Service Agreements

P.L. 24-313, Section 109 authorized the government of Guam to enter into contracts for the collection and disposal of solid waste. Such contracts shall be for a period not to exceed five years, and to be awarded in accordance with the Guam Procurement Law.

We found that DPW did not have contract agreements with commercial haulers and OCH. In lieu of such agreements, DPW uses a "Credit Application" form to allow the establishment of charge accounts. The application only indicates the company name, address, representative, bank reference, and three commercial references.

There are no provisions for such items as a service contract period, the right to audit, service rates, fees, collection, and penalties for nonpayment or noncompliance of tipping fee statues and regulations. We were also unable to determine whether such services were awarded in accordance with the Guam Procurement Law. Consequently commercial haulers have been operating freely with minimal restrictions by DPW.

Among items to consider in commercial service agreements are terms, conditions, service periods, denial of access to the Ordot Dump for non-payment and noncompliance.

---

[9] Criminal Case No. CF 0411-06.

In March 2007, we transmitted a letter to the DPW Director requesting that service agreement contracts for the collection and disposal of solid wastes include a right to audit clause, penalties for failure to comply with terms and conditions pursuant to law, and ordering denial of access to any transfer stations or the Ordot Dump. Other items should include application of unidentified payments, minimum timeframe to dispute billings, etc.

In response, the DPW Director confirmed in April 2007 that a draft of the proposed service contract agreement has been transmitted to the OAG for their review and approval. The draft contract is with the OAG for review as of the issuance of this report.

However, according to GCG, there is no authorization in law requiring commercial haulers to enter into such agreements. However, we disagree with GCG because the mere fact that commercial haulers use the Ordot Dump implies an agreement exists with DPW. This statement is also inconsistent with the discontinuation of service that can be sanctioned by both GPA and GWA for non payment by their customers.

In June 2007, the ALJ and the GCG's legal counsel opined that the issue with commercial haulers can not be resolved by entering into a service contract because it is not authorized by the relevant legislation. Any contracts would need to be between solid waste generators and the government of Guam. A commercial hauler who refuses to enter into a service management agreement with DPW would still have the legal right to access the Ordot Dump as long as the commercial hauler complies with the SWM Rules. An alternative solution would be for DPW to amend the SWM Rules through the Administrative Adjudication Act process, or to amend the rules via legislation.

We urge both DPW and OAG to resolve this matter as good business practices have shown that service agreements provide protection to both the government of Guam and the commercial haulers and detail the respective parties' responsibilities.

## SWM as a Public Corporation

In May 2007, we were provided a copy of PUC's proposed legislation to establish a Guam Solid Waste Management Authority under the governance of the Consolidated Commission on Utilities (CCU). The legislation included proposed amendments to statutes related to residential and commercial tipping fees such as periodic modification rates, terms and conditions, service rules for residential solid waste collection, solid waste disposal services, and the collection of fees from customers using such services.

OPA is in agreement with PUC's rationale to realign DPW's SWM division as a public corporation under the auspices of the CCU. The proposed realignment will more accurately determine the total costs to operate a waste management system (i.e., collection and disposal of solid waste, closure of the dump, and development of a new sanitary landfill). However, legislation to affect the realignment has not been introduced to the Guam Legislature as of the date of this report.

17

## Other Matters

Other operational matters came to our attention during our review of the DPW commercial tipping fees.

### Cash Collection for Self-Haul Customers

Internal control serves as the first line of defense in safeguarding assets and preventing and detecting errors and fraud. Internal control activities are the policies, procedures, techniques, and mechanisms to ensure that actions are taken to address risks. This includes ensuring that cash is secured and physically protected. Specifically, undeposited cash should be locked in a secure location.

Cash and check collections from self-drop customers and other commercial haulers at the Dump are taken home daily by DPW Solid Waste technicians at the end of the day.



Image 4: Ordot Dump sign by the gate entrance.

According to a SWM Technician, monies are taken home because they do not have a secured place to store the cash in the small building by the Dump's entrance. Staff stated that there is insufficient time to count, reconcile, and deliver the field invoices and money to the Treasurer of Guam (TOG) in Hagåtña, and the DPW Office in Tamuning because the Dump closes at 3:00 PM and staff are released at 4:00 PM. This practice heightens the risk of loss and mishandling of cash.

Cash collected is deposited the next business day with the TOG by a SWM technician. Afterwards, the TOG receipt, DOA Treasury Depositor's Report, and supporting field receipts are forwarded by the SWM technician to the DPW Customer Service Representative who then reviews and independently checks the field receipts to ensure that they are complete and the amount collected equaled to the amount deposited.

We recommend that DPW immediately cease the practice of allowing SWM personnel to take home cash and checks, and consider several options for the safeguarding of the cash collections: (1) make daily deposits; (2) lock undeposited cash in a secured location for timely depositing the next business day; (3) send a SWM staff daily to pick up the cash collections; or (4) secure armored car services.

As of April 2007, SWM began utilizing armored car services for the daily transport and deposit of its cash collections with the Treasurer of Guam for the Dump facility, and the Agat, Dededo, and Malojloj transfer stations.

### Development of Residential Collection District Plan

Pursuant to P.L. 26-99, Section 2, DPW shall develop a plan to divide Guam into three solid waste collection districts within 60 days after June 2002 for the purposes of contracting out residential solid waste collection and disposal services. Contracts for the

18

solid waste collections must be awarded in accordance with all applicable laws of Guam through competitive sealed bidding. DPW shall provide the Legislature a copy of the developed plan, upon completion and prior to issuance of the Invitation for Bids (IFB).

DPW did not develop a plan for the residential solid waste collection and disposal services until May 2007, almost five years after the enactment of the law. According to the SWM Program Manager, without prior records of any past effort, this appears to be the first time that DPW developed the three districts.

Although DPW has developed the plan, DPW has yet to issue a solicitation of interest to obtain feedback for a refined residential collection district plan IFB as of the issuance of this report. As required by P.L. 26-99, DPW should immediately issue a solicitation of interest for the development of a residential collection district plan IFB.

# Conclusion

Effective collection processes require constant attention. Procedures should be in place to address recording of receivables, collection, and follow-up on delinquent accounts in a timely manner. Additionally, a well-managed accounts receivable function continually seeks new ways for improvement. Internal controls must be in place to ensure the integrity of accounting records, safeguard assets, and maintain the public's confidence in the government's financial management.

Our review found that the internal control activities of the commercial tipping fees billing and collection functions were deficient because effective operating policies and procedures were not communicated and there was a lack of coordination between DPW and DOA. Monitoring of the commercial tipping fees through independent reconciliations and management review of financial reports, (i.e., aging reports) did not occur. Due to the lack of coordination between DPW and DOA, past due commercial tipping fees receivables amounted to $3.6 million as of January 31, 2007, of which $2.4 million or 65% were over 120 days past due. Billing notices were not timely issued to commercial haulers, and neither DPW nor DOA made efforts to collect past due accounts.

However, commercial haulers fail to reconcile their balances with either DOA or DPW. The responsibility to reconcile any discrepancies with DOA billings falls upon the commercial haulers, and not upon DPW. Most billings only allow for a limited time for the customer to dispute the billing, otherwise the billing is deemed to be correct. DPW needs to aggressively collect on these past due accounts.

Because DPW does not regularly collect outstanding receivables, the General Fund continues to subsidize SWM operations; further burdening the General Fund's cash crisis. The FY 2006 government of Guam audited financial statements reported the deficit at $524 million, up $176 million from the FY 2005 deficit of $348 million. In light of our government's mounting deficit and current financial difficulties, DPW should aggressively collect past due commercial tipping fees accounts. Again, it is the commercial hauler's responsibility to reconcile and inform DOA of any account discrepancies otherwise DOA records are deemed correct. The burden of proof lies with commercial haulers to dispute any errors.

With the enactment of P.L. 25-93, DPW is responsible for collecting all unpaid past due tipping fees from residential, business, or government generators. To address these deficiencies, we recommend that DPW and DOA begin coordinating the transfer of the commercial billing function from DOA to DPW. We suggest that the full transition take effective October 1, 2007. The transfer should mitigate delays in the production and delivery of billings, immediately address discrepancies, and follow-up of past due accounts.

20

# Recommendations

**Recommendation to the DPW Director and DOA Director:**

1. Coordinate the transfer of the commercial billing function from DOA Division of Accounts to DPW. We suggest that the full transition take effect by October 1, 2007.

2. Establish procedures to indicate a billing and payment cycle for commercial haulers, such as twice a month. See Appendix 4 for suggested Billing and Collection Best Practices.

**Recommendation to the DPW Director:**

1. Aggressively pursue collection from commercial haulers and OCH who are beyond the 60 day payment and restrict access to the Ordot Dump for those who have past due accounts beyond 60 days and/or for noncompliance with the law.

2. Work with the OAG in the finalization of service contract agreements with commercial haulers to include payment terms, application of unidentified payments, minimum timeframe to dispute billings, right to audit clause, penalties for failure to comply with terms and conditions pursuant to law, and denial of access to any transfer stations or the Ordot Dump for non-payment.

3. Secure a weigh scale using the proper procurement process.

4. Determine the number of unserviced residential customers and coordinate the servicing of these customers by either DPW or the commercial haulers.

5. Establish government tipping fee charge accounts for unbilled government entities.

6. Immediately cease the practice of allowing SWM personnel to take home cash and checks, and consider several options for the safeguarding of the cash collections: (1) make daily deposits; (2) lock undeposited cash in a secured location for timely depositing the next business day; (3) send a SWM staff daily to pick up the cash collections; or (4) secure armored car services.

7. Follow P.L. 26-99 and immediately issue a solicitation of interest to be issued for the development of a residential collection district plan IFB.

Case 1:02-cv-00022    Document 138    Filed 08/10/2007    Page 29 of 47

# Management Response and OPA Reply

A draft report was transmitted to the Department of Public Works, the Department of Administration, and the Public Utilities Commission in June 2007 for their official response. We met with the DPW Director and DOA officials to discuss the draft report.

On June 29, 2007, the DPW Director submitted a response indicating concurrence and a plan of action with the audit recommendations (Appendix 9).

On July 10, 2007, the DOA Director submitted a response (Appendix 10) indicating concurrence with the audit recommendations pertaining to DOA. In addition, the DOA Director stated that "payments from the commercial haulers are due on the 20th day of the following month after 60 days of the billing statement dates, and not 20 days of the following month of the prior month tipping fees billed." This would allow commercial haulers a total of 80 days to make payments. However, good business practice allows a shorter payment period for customers to make payments. Ultimately, our review found that neither DPW nor DOA made efforts to collect past due tipping fee accounts as 65% or $2.4 million of the $3.6 million recorded receivables were over 120 days.

On July 2, 2007, the PUC Chairman submitted a response (Appendix 11) indicating that the report adds to the growing body of convincing evidence that change is critically necessary to empower the government of Guam to meet its responsibilities under the Consent Decree in District Court of Guam Civil Case 02-22. Georgetown Consulting Group responded and clarified certain matters, such as the DPW escrow funds, no late payment penalties allowed by law, mayors allowing residences to bring their solid waste to them for their disposal, and lack of provision in law to monitor commercial haulers' customers and to enter into contract agreements. We have amended our report based on their comments.

The legislation creating the Office of the Public Auditor requires agencies to prepare a corrective action plan to implement audit recommendations, to document the progress in implementing the recommendations, and to endeavor to have implementation completed no later than the beginning of the next fiscal year. We will be contacting the Department of Public Works and Department of Administration to provide the target date and title of the official(s) responsible for implementing the recommendations.

We appreciate the cooperation shown by the staff of Department of Public Works, the Department of Administration, the Office of the Attorney General, and the Public Utilities Commission.

*Senseramente,*

Doris Flores Brooks, CPA, CGFM
Public Auditor

**Appendix 1:**
# Classification of Monetary Impact

| Finding Area | Unrealized Revenues[10] | Unreconciled Confirmations[11] |
|---|---|---|
| **1 Inefficient Billing and Collection System** | | |
| Deficient Billing Process | $ - | $ - |
| Lack of Collection Follow-Up Efforts | $2,353,478 | $ - |
| Lack of Accounts Receivable Reconciliation | $ - | $ 484,816 |
| Other Commercial Haulers Accounts Not Monitored | $ 89,333 | $ - |
| Transfer SWM Billing from DOA to DPW | $ - | $ - |
| Escrow Account | $ - | $ - |
| **2 Residential Customers Serviced by Commercial Haulers** | $ - | $ - |
| **3 Unserviced Customers [12]** | $3,994,298 | $ - |
| Unbilled Government Tipping Fees | $ - | $ - |
| Mayors Exempted from Tipping Fees [13] | $ 43,470 | $ - |
| **4 Inoperable Weigh Scale [14]** | $ - | $ - |
| **5 Lack of Commercial Service Agreements** | $ - | $ - |
| **6 SWM as a Public Corporation** | | |
| **7 Other Matters** | | |
| Cash Collection for Self-Haul Customers | $ - | $ - |
| Development of Residential Collection District Plan | $ - | $ - |
| **Total:** | **$6,480,579** | **$ 484,816** |

---

[10] Unrealized Revenues are funds that could have been collected by the agency as additional revenues if corrective actions had been taken, i.e., follow-up and collection on past due commercial tipping fee accounts

[11] Unreconciled Confirmations represent funds that could result in a reduction in the program's revenue.

[12] These unserviced residential customers may be due to residents who self-haul, illegal dumping, unserviced customers, inaccurate residential numbers, residents that received mayoral services for their solid waste, and residents serviced by commercial haulers.

[13] For the ten-month period of April 2006 and January 2007.

[14] We were unable to determine potential loss revenue due because the capacity for the uncompacted trucks varies. See Audit Scope and Methodology for details.

The audit included a review of the Solid Waste Management Division (SWM) of the Department of Public Works (DPW), related to the operations of commercial tipping fees, and applicable public laws, rules, and regulations. The audit scope included the examination of field invoices, manual logs, and other relevant documents for the period from October 1, 2003 through January 31, 2007.

We determined that the DPW has five major commercial haulers, which were billed $11,022,754 for 981,162 cyd of solid waste disposed at the Ordot Dump (Dump) between the 40-month period of October 2003 and January 2007. We also determined that DPW has 73 other commercial hauler accounts that were billed $253,763 for 58,475 cyd of solid waste for the same period.

The audit was conducted at the DPW office in Tamuning, Ordot Dump, and the Department of Administration (DOA) Division of Accounts in Hagåtña, Guam. We interviewed the DPW Director, DPW Controller, SWM Program Manager, SWM Superintendent, SWM Customer Service Supervisor, DOA Controller, DOA Accountant III, DOA Accounting Technician III, Treasurer of Guam (TOG) Cashier Supervisor, Public Utilities Commission Administrative Law Judge, and one commercial hauler.

Our methodology included gaining an understanding of the policies, procedures, applicable laws and regulations pertaining to the SWM tipping fees. We identified prior audits and OPA hotline tips relevant to this engagement, and included them in our assessments of the internal controls in the commercial billing and collection cycles of commercial tipping fees.

We performed analytical reviews of the commercial tipping fees and performed substantive testing consistent with the audit objectives, and examined applicable transaction records. We reviewed internal controls over processing of field invoices at the Ordot Dump and data-entry of the information in the AS400 system at DOA. We conducted an onsite observation at the Ordot Dump, DPW, SWM, DOA, and TOG, and requested confirmation of accounts receivable balances from the five commercial haulers.

## SCOPE LIMITATION

Our analytical review and substantive testing were limited because we were not allowed to review the records of the commercial haulers.

We were unable to verify all the commercial haulers' dump trucks' maximum volume capacity to compare them with the recorded volume capacity per the billings issued by DOA. Unlike compacted dump trucks, the uncompacted dump trucks' trailers are not permanently affixed to the cab; therefore, the capacity of uncompacted dump trucks varies. We relied instead on the total residential customer records of GWA and SWM to estimate revenue loss for the government of Guam.

Due to the lack of commercial service agreements, we were not able to verify the completeness and accuracy of the commercial tipping fee rates applied by commercial haulers to their customers, and tipping fees remitted to the government. In addition, we could not determine potential revenue loss from the unbilled government tipping fees as there was no database generated by DPW to summarize solid waste volume for each government entity.

We conducted this performance audit in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on our audit objectives.

## Appendix 3:
# Prior Audit Coverage

We reviewed the following prior audits related to the Department of Public Works commercial tipping fees.

### Office of the Public Auditor (OPA)

In June 2000, the former OPA initiated OPA Report No. OPA-05-99, a management audit of DPW and found that the SWM division did not foster a health and safety program, exempt employees received overtime, and SWM's budget was not verified by an independent individual. However, no findings related to commercial tipping fees and accounts receivables were noted in the audit report.

### Single Audit Reports

In the Single Audit Reports of the government of Guam from FY 2003 through 2006, the auditors identified that the Solid Waste Operations Fund had net receivables of $612 thousand in FY 2003 (gross $3.8 million less allowance for bad debt of $3.2 million), $1.6 million in FY 2004 (gross $5.8 million less allowance for bad debt of $4.2 million), $1.7 million in FY 2005 (gross $10.6 million less allowance for bad debt of $8.9 million), and $2.2 million in FY 2006 (gross $11.1 million less allowance for bad debt of $8.9 million).

### Georgetown Consulting Group (GCG) Focused Audit Report and Recommendations

In August 2006, GCG issued its report of the SWM function and identified discrepancies in the billing and collection process of commercial tipping fees including: (1) inoperable weigh scale at the Ordot Dump, making it difficult, if not impossible, for SWM to correctly determine tipping fees for each commercial hauler truck; (2) collections from commercial haulers lagging from over five months to 10.5 months; (3) lack of policy enforcing full and timely payments from commercial haulers; and (4) lack of review of internal financial reports.

### GCG Letter in Response to a December 2006 Findings Update by the PUC

In January 2007, the GCG informed the PUC of its recent findings surrounding the SWM commercial tipping fees. Among the problems identified were: (1) chronic problems that remain with the level of receivables; (2) $1.7 million of outstanding receivables that were in excess of 120 days; and (3) key employees of a commercial hauler that have been indicted for fraud and bribery related to dumping at the Ordot facility.

Case 1:02-cv-00022    Document 138    Filed 08/10/2007    Page 34 of 47

We reviewed various billing and collection best practices from PricewaterhouseCoopers, University of Mississippi, State of Vermont Department of Finance and Management Accounts Receivables, Connecticut Resource Recovery Authority Delinquent Tipping Fees Policy and Procedures, and the Government Accountability Office Standards for Internal Control in the Federal Government.

A properly managed accounts receivable system can expedite cash flow and support cash requirements. The three basic processes that make up the accounts receivable function are:

1. Remittance processing – including payment methods and automated processing.
2. Credit management – including communication of credit policies, credit checks and approvals, and credit maintenance.
3. Collections – including methods to monitor and motivate internal and external collection agents, collections techniques, and technology.

**Billings Function**

1. Procedures ensure that billing and collections are performed promptly. Policies should include procedures for all accounts receivables and collection activities.
2. Billings are generated and sent to customers at least monthly and billings should indicate payment terms and payment information (i.e., account numbers or billing invoice numbers) for proper credit.
3. Billings and statements are to be promptly sent to all customers on a regular basis.
4. Customer statements showing the status of account and activity, including outstanding unpaid invoices and recent payments should be issued periodically.

**Collections Function**

1. Billing and collections system should have the functionality to automatically apply payments and credits to a specific charge, multiple invoices, or based on past or current charges.
2. Payments of receivable balances are to be recorded by an employee not involved in the collection activity. Responsibilities for maintaining detail accounts receivable records are segregated from collections and general ledger posting.
3. Accounts receivables must be reviewed by authorized personnel on a monthly basis to ensure that receivables are being collected in a timely manner.
4. Accounts receivables are to be reviewed periodically for credit balances.
5. Active efforts must be made to collect on accounts that are past due. Actions to collect on delinquent accounts should be documented.

6. Accounts receivables are recorded in a manner to permit an analysis of the aging of such receivables (i.e., less than 30 days, 30-60 days, etc.).

7. Monthly reconcile the detail accounts receivable module to the accounts receivable control account in the general ledger.

**Suggested Best Practices for the Solid Waste Management (SWM)**

During our review of the commercial tipping fees, we found that the SWM tipping fees billing and collection process had many gaps. Procedures should be in place to ensure that billing and collections are appropriately performed, and address the proper recording of receivables and follow-up on delinquent accounts in a timely manner. If these suggested best practices are adopted by SWM, it would strengthen its billing and collection process.

**Suggested Billing Process:**

1. SWM Technicians promptly deliver prenumbered field invoices in numerical order to the DPW main office.

2. SWM should not hold field invoices in the event that the batch is incomplete. Record documenting missing invoices should be kept on file until such field invoices are recovered.

3. SWM personnel, independent from the issuance of the field invoices, reviews and verifies the information on the field invoices and creates a daily numerical field invoices record documenting that a numerical check was performed. The record should summarize the number of field invoices by commercial hauler, and any missing invoices, in order to process the remaining invoices timely. This will also assist in the reconciliation between DPW and DOA.

4. Field invoices should be immediately delivered to DOA for data entry. DPW's transmittal should be redesigned to identify field invoices issued to commercial haulers, in order for reconciliation between DPW and DOA to occur.

5. Billings are generated and sent to customers at least monthly and payment terms and payment information (i.e., account numbers or billing invoice numbers) should be required to be noted by commercial haulers when making payments for proper credit. Failure to indicate payments will result in DOA's first in first out payment application.

6. Flexibility in determining appropriate billing cycle, such as biweekly, should be granted to DPW.

28

**Suggested Collection Process:**

1. The collections system should have the functionality to automatically apply payments and credits to a specific charge, multiple invoices, or based on past or current charges.

2. An aging of accounts receivable must be reviewed by authorized personnel on a monthly basis for credit balances and to ensure that receivables are being collected in a timely manner.

3. Active efforts must be made to collect on accounts that are past due. Actions to collect on delinquent accounts should be documented.

4. Assign independent personnel to review, reconcile, and resolve any discrepancies of the commercial receivable reports. The review and reconciliation should not be performed by an employee who is directly responsible for calculating the billing or recording of tipping fee transactions.

5. Prompter payment period by commercial haulers.

6. Denial of access to any transfer stations or the Ordot Dump for delinquent tipping fee accounts and/or non-payment.

29

# Potential Revenue Loss from Unserviced Residential Customers

In an effort to estimate the number of possible single residential customers that may not be serviced by the SWM, we relied on the total residential customer listing of GWA from October 2003 through January 2007. We then subtracted the number of residential homes serviced by SWM to determine the number of single residential customers that may be not be serviced by SWM.

### Variance between Actual and Potential SWM Customers

| Months | GWA Residential Customers [15] | SWM Residential Customers | Residential Customer Variance | Residential Tipping Fees | Potential SWM Revenue Loss |
|---|---|---|---|---|---|
| 10/1/2003 | 34,511 | 22,223 | 12,288 | $ 8 | $98,304 |
| 11/1/2003 | 34,493 | 22,280 | 12,213 | $ 8 | $97,704 |
| 112/1/2003 | 34,438 | 22,288 | 12,150 | $ 8 | $97,200 |
| 1/1/2004 | 34,489 | 22,362 | 12,127 | $ 8 | $97,016 |
| 2/1/2004 | 34,539 | 22,357 | 12,182 | $ 8 | $97,456 |
| 3/1/2004 | 34,330 | 22,364 | 11,966 | $ 8 | $95,728 |
| 4/1/2004 | 34,386 | 22,391 | 11,995 | $ 8 | $95,960 |
| 5/1/2004 | 34,496 | 22,439 | 12,057 | $ 8 | $96,456 |
| 6/1/2004 | 34,511 | 22,442 | 12,069 | $ 8 | $96,552 |
| 7/1/2004 | 34,494 | 22,445 | 12,049 | $ 8 | $96,392 |
| 8/1/2004 | 32,232 | 22,399 | 9,833 | $ 8 | $78,664 |
| 9/1/2004 | 34,516 | 22,345 | 12,171 | $ 8 | $97,368 |
| 10/1/2004 | 34,396 | 22,459 | 11,937 | $ 8 | $95,496 |
| 11/1/2004 | 34,525 | 22,509 | 12,016 | $ 8 | $96,128 |
| 12/1/2004 | 34,283 | 22,532 | 11,751 | $ 8 | $94,008 |
| 1/1/2005 | 34,344 | 22,556 | 11,788 | $ 8 | $94,304 |
| 2/1/2005 | 34,010 | 22,585 | 11,425 | $ 8 | $91,400 |
| 3/1/2005 | 34,029 | 22,624 | 11,405 | $ 8 | $91,240 |
| 4/1/2005 | 34,589 | 22,628 | 11,961 | $ 8 | $95,688 |
| 5/1/2005 | 34,146 | 22,648 | 11,498 | $ 8 | $91,984 |
| 6/1/2005 | 34,358 | 22,682 | 11,676 | $ 8 | $93,408 |
| 7/1/2005 | 33,904 | 22,684 | 11,220 | $ 8 | $89,760 |
| 8/1/2005 | 33,995 | 22,654 | 11,341 | $ 8 | $90,728 |
| 9/1/2005 | 34,171 | 22,645 | 11,526 | $ 8 | $92,208 |
| 10/1/2005 | 34,088 | 22,651 | 11,437 | $ 8 | $91,496 |
| 11/1/2005 | 33,748 | 22,652 | 11,096 | $ 10 | $110,960 |
| 12/1/2005 | 33,710 | 22,689 | 11,021 | $ 10 | $110,210 |
| 1/1/2006 | 33,854 | 22,721 | 11,133 | $ 10 | $111,330 |
| 2/1/2006 | 33,970 | 22,764 | 11,206 | $ 10 | $112,060 |
| 3/1/2006 | 33,857 | 22,746 | 11,111 | $ 10 | $111,110 |

[15] Guam Waterworks Authority's residential customers were utilized because it is a more reasonable representation of residential single dwellings on Guam as people are more likely to apply for water as an important necessity.

# Potential Revenue Loss from Unserviced Residential Customers

| Months | GWA Residential Customers [16] | SWM Residential Customers | Residential Customer Variance | Residential Tipping Fees | Potential SWM Revenue Loss |
|---|---|---|---|---|---|
| 4/1/2006 | 33,702 | 22,802 | 10,900 | $ 10 | $109,000 |
| 5/1/2006 | 33,654 | 22,789 | 10,865 | $ 10 | $108,650 |
| 6/1/2006 | 33,985 | 22,832 | 11,153 | $ 10 | $111,530 |
| 7/1/2006 | 34,252 | 22,824 | 11,428 | $ 10 | $114,280 |
| 8/1/2006 | 33,865 | 22,955 | 10,910 | $ 10 | $109,100 |
| 9/1/2006 | 34,178 | 22,982 | 11,196 | $ 10 | $111,960 |
| 10/1/2006 | 34,536 | 22,992 | 11,544 | $ 10 | $115,440 |
| 11/1/2006 | 34,625 | 23,005 | 11,620 | $ 10 | $116,200 |
| 12/1/2006 | 34,497 | 23,007 | 11,490 | $ 10 | $114,900 |
| 1/1/2007 | 34,608 | 23,036 | 11,572 | $ 10 | $115,720 |
| Subtotal: | 1,367,314 | | | | $4,035,098 |
| Less 102 GWA Multi Dwelling Units: | 102 X 40 months | 4,080 | $10 | | ($ 40,800) |
| **TOTAL:** | | | | | **$3,994,298** |

[16] Guam Waterworks Authority's residential customers were utilized because it is a more reasonable representation of residential single dwellings on Guam as people are more likely to apply for water as an important necessity.

31

## PUBLIC UTILITIES COMMISSION
### OF GUAM

Terrence M. Brooks

Edward C. Crisostomo
Filomena M. Cantoria
Joseph M. McDonald
Rowena E. Perez
Jeffrey C. Johnson

Suite 207, GCIC Building
Post Office Box 862
Hagatna, Guam 96932

Telephone: (671) 472-1907
Fax: (671) 472-1917
Email: info@guampuc.com

Harry M. Boertzel
Administrative Law Judge

Lourdes R. Palomo
Administrator

May 22, 2007

<u>VIA ELECTRONIC TRANSMISSION</u>
**Doris Flores Brooks, Public Auditor**
Office of the Public Auditor
4th Floor, Pacific Daily News Bldg.
238 Archbishop Flores Street
Hagåtña, Guam 96910

RE:   Collectibility of Commercial Tipping Fees

Dear Public Auditor Brooks:

You have requested that the Guam Public Utilities Commission [PUC] comment on your office's draft findings on the above subject. Please consider the following comments as staff level observations.

In substantial measure, the draft findings are consistent with Georgetown Consulting Group's [GCG] findings and conclusions in its several recent reports[1]. The bottom line is that the solid waste management [SWM] billing and collection system, which involves DPW, DOA and the commercial haulers, is severely flawed. The draft findings make recommendations for fixing this flawed system within the paradigm of continued DPW responsibility for SWM operations. GCG has questioned in its reports whether DPW has the manpower, systems and skill sets to efficiently discharge this mission. PUC has strongly maintained that a different paradigm must be established [a separate public corporation under CCU governance] to enable the Government of Guam [GovGuam] to effectively operate SWM programs and services and to obtain the financing necessary to comply with the Consent Decree[2]. Accordingly, there is serious doubt, based upon PUC's study of DPW operations over the past 13 months, whether DPW has the resources, ability or time necessary to implement the recommendations made in the draft findings for reforming the SWM billing and collection system.

---

[1] See GCG August 18, 2006 Audit Report; its January 5, 2007 Update Report; and its March 16, 2007 and May 4, 2007 letters.

[2] See PUC Orders dated September 28, 2006 and February 1, 2007.

1

By its October 27, 2005 Rate Order, PUC directed that all revenues generated by the rate increase be restricted and not be spent without prior regulatory approval. This restricted reserve should be more than adequate to fund the repair or replacement of the landfill scale. However, given the Executive transfer authority over special funds, as established by P.L. 28-150, it is now unclear whether these reserved rate revenues are still available.

PUC has recommended that the statutory paradigm under which commercial haulers collect tipping fees be changed. PUC has recommended that commercial haulers be directly charged, as a cost of doing business, for tipping fees related to the solid waste they dump at the landfill[3].

You have asked for PUC's view on commercial haulers' responsibility to bill, collect and remit to GovGuam a monthly $10 collection fee for each residential customer, which they service. This issue raises a number of challenging questions, which would require careful review *[beyond the scope of this letter]* in order for a convincing answer to be reached. These issues include:

1. Are the commercial haulers precluded by law from collecting solid waste from single-family residences and multiple residential dwelling units of four or less units? *[See DPW Solid Waste Rules 105(a) and (b)].* Are commercial haulers currently providing service to this customer class? What is the consequence of this conduct?

2. Commercial haulers are permitted by law to service multiple residential units *[apartments, condominiums, homeowner associations, etc.].* Are the haulers required to bill, collect and remit the $10 collection fee for these customers?

3. Do Guam residents have the right to choose who provides them with solid waste collection service? Do residents have the right to decline DPW service and either self-haul the trash to the landfill, use free mayoral collection service or hire a commercial hauler to provide this service?

4. What is the purpose of the $10 residential collection fee? From PUC's perspective, it is intended to cover the cost of service associated with DPW collection and disposal of residential solid waste. Would it be *just and reasonable* for DPW to collect this fee from commercial haulers in instances where the commercial haulers provide the collection and tipping service?

---

[3]*See* section 3 of PUC's February 1, 2007 Order.

2

What is clear from your examination of the substantial variance between potential and actual SWM residential customers [12,000 +/- *residences*] is that the residential collection system is broken. It is unclear why this variance exists [*commercial service, free mayoral service, self-haul, faulty DPW numbers, illegal dumping, unserviced residences*] but it is likely due to a combination of these factors. This reality has persuaded PUC that institutional change is necessary to repair the SWM billing and collection system. A reliable revenue stream is critical if GovGuam intends to access the revenue bond market to finance Consent Decree compliance.

I hope that these comments are of some assistance.

Cordially,

Harry M. Boertzel

cc:    Terrence Brooks

3

Alicia G. Limtiaco
Attorney General of Guam



Post-It® Fax Note    7671

## OFFICE of the ATTORNEY GENERAL

May 11, 2007

**Memorandum**

3 -14-07

**To:**     Director, Department of Public Works

**From:**   Assistant Attorney General

**Re:**     Proper Billing and Collection of Residential and Commercial Tipping Fees

In response to your letter of April 17, 2007, I met with several members of your organization on May 1, 2007 to get a better understanding of your problems in relation to tipping fees. As I pointed out previously, the numbers need to be reconciled so that it is clear how much is owed and by whom.

In the meantime, the staff is concerned if they are properly billing commercial haulers for the correct amount of fees and if the haulers are following proper practices in remitting the fees to the Government of Guam. It was pointed out to me that these fees are supposed to be dedicated to assisting DPW in carrying out its solid waste responsibilities so any shortages and delays have an immediate effect on our ability to deal with the effects of the consent decree.

Guam law establishes three fees relating to solid waste and three methods of billing and collection.

The easiest to understand is the fee for government and business "generators". It is paid on volume and the calculation is set forth in 10 GCA §51118 (c). The rate is set for two kinds of trash, compacted and un-compacted. If the trash has not been compacted, the charge is simply $5.00 per cubic yard. If the trash has been compacted, then the charge is $5.00 per cubic yard multiplied by the compaction ratio of the equipment that was used to do the job.

The residential fee is a flat fee of $5.00 per cubic yard per dwelling per month. This fee is the responsibility of the commercial hauler to collect and remit to the Government so they are responsible to bill these customers.

The third fee is for "self-drop" loads delivered to the landfill by one which is not a government or business waste generator in loads of a ton or less and that fee is two dollars. Custom is that it is collected on the spot.

The Division of Solid Waste Management, Rules and Regulations provide that all tipping/user fees shall be billable every first (1st) of the month for the previous month service. All fees shall be paid within sixty (60) days from the date of billing. For example, the residential customer receives service for the month of May. On June 1, 2007 the hauler has the duty to bill him for the two dollars provided by law as the flat fee for monthly service. That bill must be paid within sixty (60) days. The billing is

287 West O'Brien Drive • Hagatna, Guam 96910 • USA •
(671) 475-3324 • (671) 472-2493 (Fax)

DFW – Tipping Fees
Page 2

to be done by the hauler and the collecting is to be done by the hauler. He can set any due date so long as it is sufficient so that the hauler can make this payment to the Government within the sixty days. This means that the hauler is not entitled to retain residential fees which they have collected beyond the sixty days. Should the residential customer be late with his payments, so that the sixty day limit is exceeded, but payment to the hauler is ultimately made, it is the hauler's responsibility to turn the payment over to the Government immediately.

For fees which have been collected or should have been collected from business and Government trash generators, the rules are set by P.L. No. 224-313:8. In pertinent part the section reads, "Tipping fees for business or government generators that have solid waste collected by commercial collectors shall be collected by commercial collectors, on behalf of the government of Guam. Commercial collectors shall remit the tipping fees paid by their customers in the prior month to the government by the twentieth (20th) day of the following month." This section of law did not amend the Division of Solid Waste Management Rules and Regulations which require that "All tipping/user fees to be charged...shall be billable every first (1st) of the month for the previous month service. All fees shall be paid within sixty (60) days from the date of billing.", but needs to be read together with it because Legislatures are presumed to know of the contents of Regulations applicable to the same topic and legislate in cognizance of them. The Regulation requires that all fees collected by haulers be paid to the Government sixty (60) days after billing. Haulers have a duty to collect and pay fees derived within sixty (60) days, but in the case of business or government accounts P.L. No. 224-313:8 gives them an extension of twenty (20) days for actual payment to the Government. Late payments should also be remitted to the Government by the twentieth (20th) day of the month following the month in which the payment is made by the customer to the commercial hauler. Note that the Public Law does not grant the twenty day (20) day extension to commercial haulers for amounts collected from residential accounts. Those sums are billed on the 1st day of the subsequent month and are payable to the Government within sixty (60) days of billing.

I hope this response is useful to you. If you have any further questions or comments, do not hesitate to call.

David Charles Sullivan

cc: Arlene Pierce

287 West O'Brien Drive • Hagatna, Guam 96910 • USA •
(671) 475-3324 • (671) 472-2493 (Fax)





**public works**
DIPATTAMENTON CHECHO PUPBLEKO
Lawrence P. Perez
Director
Andrew Leon Guerrero
Deputy Director

*The Honorable*
**Felix P. Camacho**
*Governor*

*The Honorable*
**Michael W. Cruz, M.D.**
*Lieutenant Governor*

June 29, 2007

**MEMORANDUM**

To:        Doris Flores Brooks, CPA, CGFM, Public Auditor
            Office of the Public Auditor

From:       Lawrence P. Perez, Director

**Subject:**      **Recommendation Report**

*Buenas yan Hafa Adai!* Thank you for the opportunity to comment on the recommendation report submitted for the Department of Public Works (DPW) Solid Waste Tipping Fee issues. As you well know, DPW-SWMD has been working on improving solid waste operations and tipping fee collections and hereby concurs with the recommendations stated on the report.

Submitted herewith is a matrix for DPW's corrective action plan and implementation dates for each recommendation. Also attached for your ready reference are supporting documents for the recommendations that has already been implemented.

Should you have any question please contact Ms. Cynthia U. Jackson at 646-3164 ext. 201.

*Si Yu'os Ma'ase.*

**RECEIVED**
OFFICE OF THE PUBLIC AUDITOR

DATE: 7/11/07

TIME: 4:58 PM

BY: Paz

542 North Marine Drive, Tamuning Guam 96913 ● Tel (671) 646-3131 / 3258 ● Fax (671) 649-6178

37

OPA Recommendation and DPW Corrective Action Plan
*based on OPA Draft Audit Report (June 20, 2006)*

| Item | Recommendation | DPW Corrective Action | Implementation Date Start Date | Implementation Date Completed Date |
|---|---|---|---|---|
| **For DPW and DOA** | | | | |
| 1 | Coordinate the transfer of the commercial billing function from DCA Division of Accounts to DPW. We suggest that the full transition take effect by October 1, 2007 | DPW agrees with this recommendation and will initiate transition coordination meetings w/DOA by July'07 to meet the October 1st deadline. | July, 2007 | 1-Oct-07 |
| 2 | Establish formal billing and payment cycle procedures for commercial haulers | DPW will establish these and implement these procedures after October 1, 2007. | July, 2007 | 1-Oct-07 |
| **For DPW** | | | | |
| 1 | Work with the OAG to aggressively enforce past due commercial tipping fee accounts and finalizing a proposed service contract agreement, including provisions on payment terms, payment application, include account number and billing invoice number], right to audit clause, penalties for non-compliance, and service fees collections for better oversight and efficient accounts monitoring. | -DPW to release an RFP for the Financial Collection Service. This RFP will address the collection of delinquent residential and commercial SW tipping fee accounts. April 9-11, 2007, DPW released a public notice through print media regarding delinquent accounts. Tipping Fee Customers (residential and commercial) were given a 90 day grace period from termination, to settle and update their account. Delinquent accounts which has not been settled with in the grace period will be terminated/account service published and forwarded to a collection service agency/law firm. | 30-Jun-07 / April 2007 | 2-Oct-07 / July 2007 |
| 2 | Work collectively with the PUC and OAG to develop proposed legislation clarifying the monthly $10 collection for each residential customer services by commercial haulers as to whether it is owed to the government of Guam, determining whether the commercial haulers shall not be liable for past due unpaid tipping fee of its customer, PL 25-39, Section 9, and rescinding the temporary exemption from paying tipping fees. | The OAG has issued an opinion on the validity of the commercial hauler's responsibility to pay the $10 tipping fee for each residential customer they service. DPW has identified a slate of current legislative issues, including this and the statewide recert plan, that requires recodification. DPW will continue to collaborate with their oversight Senator/ J. Eusebio, the PUC and the OAG to legislatively redress and clarify these issues. | July, 2007 | October 1, 2007 |
| 3 | Determine the number of unserviced residential customers and coordinate the servicing of these customers by either DPW or the commercial haulers | The new SW ZONE map that has been created as an appendix to the said documents, for the outsourcing of the residential SW collection, reflects the number of households that are not serviced by DPW. These unserviced households within each zone, represents the potential customer base that the assorted commercial hauler bidder, may solicit for their services under the new government contract. In 2006, the DPW representative of the Consent Decree Compliance Team, presented a plan to the government stakeholders for an island wide customer registration drive. Some government leaders approved DPW-SWM coordinating the drive, offering that private companies can do a better job of obtaining this information. | | July 2007 |
| 4 | Establish government tipping charge accounts for satisfied government entities. | As of May 15, 2007, DPW's Customer Service Supervisor has established billing accounts for all government entities self-hauling at the SW Facilities. | | May 15, 2007 |
| 5 | Secure a weigh scale using regular procurement process and begin the development of the specifications | DPW to initiate an Invitation for Bid for the Construction of a Truck Scale System at the Ordot Dump Facility. This bid will include purchasing of a new or used scale, or to refurbished the current scale at the Ordot Dump Facility. | July 30, 2007 | November 5, 2007 |

| | | | | |
|---|---|---|---|---|
| 6 | Immediately cease the practice of allowing SWM personnel to take home cash and checks, and consider several options for safeguarding of the cash collections: (1) make daily deposits, (2) lock undeposited cash in a secured location for timely depositing the next business day, (3) send a SWM staff to pick up cash collections, or (4) secure armored car services | March 9, 2007, DPW implemented it's contract for armored car services to deliver change fund and pick up all revenue collected from customers of the SWMD Facilities (Ordot Dump Facility, Transfer Stations, Dededo, Agat and Malojloj) on a daily basis. | January, 2007 | March 9, 2007 |
| 7 | Develop a residential collection district plan as required by P.L. 26-99 | The development of a residential collection district maps has been prepared. These maps are attachments to the SWMD - Residential Waste Collection IFB. DPW will be presenting the district map plan to the legislature in July, 2007. | | July 2007 |
| | | For continuous updating, billing and mapping accuracy, an online SW registry has also been established for residential customers. Residential customers may log on to www.dpw.guamgov and click on the SW link to update their accounts and verify their service portion address. A public announcement with regard to the aforementioned has been published. | May 2007 | on going |

# Appendix 9:
# DOA Management Response



**GOVERNMENT OF GUAM**
*(Gubetnomention Guahan)*
**DEPARTMENT OF ADMINISTRATION**
*(Dipattamenton Atmenastrasion)*
**DIRECTOR'S OFFICE**
*(Ufisinan Direktot)*
Post Office Box 884, Hagatna, Guam 96932
Tel: (671) 475-1101/1250 Fax: (671) 477-6788



**Felix P. Camacho**
Governor
**Michael W. Cruz, M.D.**
Lieutenant Governor

**Lourdes M. Perez**
Director
**Joseph C. Manibusan**
Deputy Director

July 10, 2007

Doris Flores Brooks, Public Auditor
Office of the Public Auditor
238 Archbishop Flores Street, Suite 401
Hagatna, GU 96910

Re:  Performance Audit: Commercial Tipping Fees

Dear Public Auditor Brooks:

I would like to thank you for the opportunity to respond to the above-noted draft audit. I also would like to commend your staff for its completion.

Based on our review, a comment we would like to make is that payments from the commercial haulers are due on the 20th day of the following month after 60 days of the billing statement dates, and not 20 days of the following month of the prior month tipping fees billed. This is pursuant to P.L. 25-313:105 (j) and P.L. 25-93:8 (m) (2). Thus, we disagree with the criteria as stated in Table 2, page 8, of the report.

Another comment we have is regarding the accounts receivable balances from commercial haulers. With respect to sections of P.L. 25-93:8 (m) (2) and § 9 (n) (1), the report lacks emphasis of the responsiblities of the commercial haulers toward the management of the accounts receivable and payment remittances. We are not aware of any overdue notices provided to us by the commercial haulers.

Essentially, my office concurs with the recommendations contained therein as pertaining to Department of Administration. My staff will collaborate with DPW to transfer the commercial billing function and to establish the billing and collection procedures for commercial haulers. In addition, my staff is currently assisting DPW in establishing accounts for government agencies to allow the capture of tipping fee charges and to bill accordingly.

Again, I thank your office for conducting the performance audit. If you should have any questions, please feel free to contact my office or Kathy Kakigi, Acting Controller, at 475-1101.

**RECEIVED**
OFFICE OF THE PUBLIC AUDITOR

DATE: 7/10/2007

TIME: 1:30 P.M.

BY: O. A. SANTOS

Sincerely yours,

LOURDES M. PEREZ
DOA Director

40

## PUBLIC UTILITIES COMMISSION
### OF GUAM

Terrence M. Brooks

Edward C. Crisostomo
Filomena M. Cantoria
Joseph M. McDonald
Rowena E. Perez
Jeffrey C. Johnson

Suite 207, GCIC Building
Post Office Box 862
Hagåtña, Guam 96932

Telephone: (671) 472-1907
Fax: (671) 472-1917
Email: info@guampuc.com

Harry M. Boertzel
Administrative Law Judge

Lourdes R. Palomo
Administrator

June 29, 2007

**VIA HAND DELIVERY**
Doris Flores Brooks, Public Auditor
Office of the Public Auditor
4th Floor, Pacific Daily News Bldg.
238 Archbishop Flores Street
Hagåtña, Guam 96910

RE:     Office of Public Auditor – Audit Report on Commercial Tipping Fees.

Dear Public Auditor Brooks:

The Guam Public Utilities Commission [PUC] has been invited to comment on your office's June 2007 draft audit report [Report].

PUC adopts its administrative law judge's [ALJ] May 22, 2007 letter to you, which comments on draft Report findings. In addition, PUC encloses Georgetown's June 29, 2007 comments on the issues raised on page 2 of ALJ's letter and its June 29, 2007 memorandum, which comments on the draft Report.

The Report adds to a growing body of convincing evidence that institutional change is critically necessary to empower the Government of Guam to meet its responsibilities under the Consent Decree in District Court of Guam Civil Case 02-22. PUC is convinced that the most efficient remedy for the commercial tipping fee problems discussed in the Report is to make the commercial haulers directly responsible for these fees as a cost of doing business.

PUC appreciates the significant effort, which is represented by the Report.

Cordially,

Terrence Brooks
Chairman

**RECEIVED**
OFFICE OF THE PUBLIC AUDITOR

DATE: _7-2-07_

TIME: _4:32 PM_

BY: _PG_

Encl:     Georgetown June 29, 2007 Memorandum *[ALJ collection issues]*
          Georgetown June 29, 2007 Memorandum *[Audit comments]*

41

## MEMORANDUM

**TO:**      PUBLIC UTILITIES COMMISSION

**FROM:**      GEORGETOWN CONSULTING GROUP

**SUBJECT:**      COMMENTS ON PUBLIC AUDITOR REPORT ON COMMERCIAL TIPPING FEES

**DATE:**      JUNE 29, 2007

### OVERVIEW OF REQUEST

The Office of the Public Auditor conducted a performance audit of the Department of Public Works ("DPW") Commercial Tipping Fees and provided the Public Utilities Commission ("PUC") with a copy of its June 20, 2007 draft audit report. By letter dated June 20, 2007, Public Auditor Brooks requested that the PUC's Administrative Law Judge provide her office with the PUC's comments on the draft audit report by June 29, 2007.

### COMMENTS ON DRAFT AUDIT REPORT

Set forth below are our comments on each section of the draft audit report:

Introduction (pg. 1)
The last sentence in the second paragraph of the Introduction improperly states that the five major commercial haulers "remit tipping fees when disposing solid waste to the Dump." Commercial haulers instead remit tipping fees after they have been collected from their customers.

DPW Involvement (pg. 2)
The draft audit report states that in FY 2007, SWM has a budget of $3.1M. PL28-150 specifies that SWM's appropriation for the period ending September 30, 2007 is equal to the Solid Waste Operations Fund projected revenue of $5,822,582. We are unable to determine what the difference represents. Salaries alone in FY 2006 were approximately $3.9 million and are budgeted at $4.1 million in FY 2007.

MEMORANDUM
TO:     PUBLIC UTILITIES COMMISSION
FROM:   GEORGETOWN CONSULTING GROUP
DATE:   JUNE 29, 2007
PAGE:   2

### Results of Audit (pg. 3)

In the second paragraph where it is noted that DPW has been unable to set aside funds necessary for the closure of the Dump and the development of a new sanitary landfill, an additional comment should be made that the PUC's Order of October 27, 2005 stated that a condition for approving increases in the tipping fees set by PL25-93, DPW was required to deposit the portion of fees attributable to such increases into an escrow account, and that funds may only be released upon order of the PUC. Because the Governor of Guam was granted the power in PL28-150 to borrow and replace funds from the SWOF and other non-exempt special funds at will, DPW has informed the PUC in its latest regulatory session that these escrowed funds might not be available even if an expenditure from such escrowed funds is authorized by PUC order.

In addition, it should also be understood that current operations can not be the source of funds required for the closure of the Dump and the development of the new sanitary landfill. In the first rate proceeding before the PUC DPW indicated that an initial bond offering of approximately $93 million was required for the initial phases of the project. Additional financing would be required after a few years. The Focused Management Audit contained as a major finding that the current organization and management practices of DPW would not permit the prerequisites to exist that would be necessary for a successful financing. The Management Audit supported the PUC's April 20, 2006 finding that DPW be transformed into a public corporation under the CCU's governance. We continue to believe that this is the threshold issue that must be resolved to solve many issues including the billing and collection issues dealt with in the OPA audit. While interim recommendations would provide some benefits we believe that fundamental changes are required for the successful compliance with Consent Decree requirements.

### Inefficient Billing and Collection Process (pg. 3)

The fourth bullet point states that "no late penalties were imposed." What this comment fails to note is that no late payment penalties are authorized by law. Instead, DPW's only remedy for non-payment is to terminate service.

43

MEMORANDUM
TO:      PUBLIC UTILITIES COMMISSION
FROM:    GEORGETOWN CONSULTING GROUP
DATE:    JUNE 29, 2007
PAGE:    3

Since billing in advance of services is not permitted by law, payment is not due until 30 days after billing, and service may only be terminated if a customer is at least 60 days delinquent, the end result is that DPW must provide three months of service without receiving payment before it can terminate a customer.

### Service and Non-service to Residential Customers
(pp. 3-4)

The draft audit reports states in the first bullet point in this section that OPA has found "no mechanism in law or regulation that provides guidance on how tipping fees for residential customers serviced by commercial haulers should be accounted for and remitted to the government of Guam." The reason is most likely because SWM Rule 105(b)[1] grants the government of Guam the exclusive right to collect and transport residential solid waste. Only those commercial haulers who are engaged directly by the government of Guam are permitted to transport residential solid waste.

The third bullet point in this section attempts to determine the tipping fees that may not have been collected from village mayors for the 10 month period from April 2006 to January 2007. This comment misses the larger legal issue — that the mayors have been allowing residences in their village to bring residential solid waste to their office for disposal under this exemption whenever DPW fails to service an area of the village in a particular week. The problem is that the mayors make no effort to determine if those village residents bringing their solid waste to the mayor's office are current in the payment of tipping/user fees. We provided comments to the PUC in our memo dated 6/27/07. In part the memo contained the following:  If Mayors are using the mayoral exemption from tipping fees to collect residential solid waste, then they are assisting these residential solid waste generators in evading the requirement to pay the residential tipping fee by removing the consequence of non-payment (i.e., suspension of service).  They are also violating 5 GCA §40113(d), which provides that Mayors are only allowed dump

---

[1] The SWM Rules were approved by the Guam Legislature in PL24-313

MEMORANDUM
TO:      PUBLIC UTILITIES COMMISSION
FROM:    GEORGETOWN CONSULTING GROUP
DATE:    JUNE 29, 2007
PAGE:    4

for free "village trash or debris" and which goes on to
provide that "this trash or debris shall come strictly from
their duties in maintaining Village Streets and public
buildings, parks or facilities in their Villages, including
the clean-up and removal of public nuisances and debris."

Mayors may claim that the failure of DPW to pick
up the trash creates a public nuisance and that they are
authorized to clean up and remove public nuisances and
debris.   DPW's response should be that residential
generators should instead be required to dispose of their
solid waste at the transfer stations, as this allows DPW to
exempt from payment of the self-haul fee only those
residences whose solid waste was not collected by DPW.

The fourth bullet point in this section states that
"DPW did not assign commercial haulers' service routes and
monitor commercial haulers' customer bases."  There is no
specific provision of law permitting DPW to monitor
commercial hauler's customer bases.  If DPW learns that a
commercial hauler is transporting residential solid waste,
such commercial hauler has violated SWM Rule 105(b) and
should be held liable for the criminal and civil penalties
provided in 10 GCA §51115.

Lack of Commercial Service Agreements (pg. 4)
OPA cites DOA and DPW's lack of contractual agreements
with the five largest commercial haulers and the other
commercial haulers as a problem.  The real problem is that
there is no authorization in law requiring commercial
haulers to enter into such agreements as a condition to
disposing of solid waste at Ordot Dump.

We agree with the opinion of the Office of the
Attorney General that the government of Guam is permitted
to bill and collect from residences in Guam the $10 per
month residential tipping/user fee even if a commercial
hauler is actually collecting solid waste from a particular
residence.   The reason is that a residential customer
cannot be excused from the payment of this fee by directly
contracting with a private hauler in direct violation of
the government of Guam's exclusive right to do so provided
in SWM Rule 105(b). We expand on this issue in our 6/27/07
memo to the PUC as follows:

MEMORANDUM
TO:       PUBLIC UTILITIES COMMISSION
FROM:   GEORGETOWN CONSULTING GROUP
DATE:    JUNE 29, 2007
PAGE:    4

for free "village trash or debris" and which goes on to provide that "this trash or debris shall come strictly from their duties in maintaining Village Streets and public buildings, parks or facilities in their Villages, including the clean-up and removal of public nuisances and debris."

Mayors may claim that the failure of DPW to pick up the trash creates a public nuisance and that they are authorized to clean up and remove public nuisances and debris. DPW's response should be that residential generators should instead be required to dispose of their solid waste at the transfer stations, as this allows DPW to exempt from payment of the self-haul fee only those residences whose solid waste was not collected by DPW.

The fourth bullet point in this section states that "DPW did not assign commercial haulers' service routes and monitor commercial haulers' customer bases." There is no specific provision of law permitting DPW to monitor commercial hauler's customer bases. If DPW learns that a commercial hauler is transporting residential solid waste, such commercial hauler has violated SWM Rule 105(b) and should be held liable for the criminal and civil penalties provided in 10 GCA §51115.

**Lack of Commercial Service Agreements** (pg. 4)
OPA cites DOA and DPW's lack of contractual agreements with the five largest commercial haulers and the other commercial haulers as a problem. The real problem is that there is no authorization in law requiring commercial haulers to enter into such agreements as a condition to disposing of solid waste at Ordot Dump.

We agree with the opinion of the Office of the Attorney General that the government of Guam is permitted to bill and collect from residences in Guam the $10 per month residential tipping/user fee even if a commercial hauler is actually collecting solid waste from a particular residence. The reason is that a residential customer cannot be excused from the payment of this fee by directly contracting with a private hauler in direct violation of the government of Guam's exclusive right to do so provided in SWM Rule 105(b). We expand on this issue in our 6/27/07 memo to the PUC as follows:

MEMORANDUM
TO:       PUBLIC UTILITIES COMMISSION
FROM:     GEORGETOWN CONSULTING GROUP
DATE:     JUNE 29, 2007
PAGE:     5

"The purpose of the $10 residential collection fee is to pay for the cost of services rendered by SWM to residential customers, including the cost of collecting residential solid waste, the cost of billing and collecting the residential collection fee, and an allocated cost for the proper operation of an EPA complaint landfill and the closure of the Ordot Dump.

There would be no need for the PUC to deal with the situation of commercial hauler collecting residential solid waste if DPW were to simply enforce its exclusive right to collect or contract out for the collection of residential solid waste granted in SWM Rule 2105(b). For example, DPW could seek an appropriate injunction against any commercial hauler found to be hauling residential solid waste in violation of this rule.

SWM Rule 109 (b) provides that the hauler(s) with whom DPW contracts for the collection of residential solid waste shall be granted the exclusive right to perform such services as is specified in the contract. DPW would presumably need to enforce its exclusive right to collection or contract out residential solid waste in order to be in a position to ensure that any contractor it contracts with to collect residential solid waste is in turn granted the exclusive right to perform such services.

DPW could instead chose not to enforce its exclusive right to collect residential solid waste and instead petition the PUC to bifurcate the residential collection fees into two parts – collection and disposal/billing. DPW could continue to collect residential solid waste under this amended rate structure without the need to contract out residential collection services.

Any resident who is dissatisfied with SWM's service would now have two options – self haul solid waste to a transfer station or contract with a commercial hauler to haul that residences solid waste to Ordot. Self-haul customers do not need to be billed any residential fees because these fees are paid at the transfer station each time the resident dumps a load.

47

MEMORANDUM

TO: PUBLIC UTILITIES COMMISSION
FROM: GEORGETOWN CONSULTING GROUP
DATE: JUNE 29, 2007
PAGE: 6

Residents who contract with a commercial hauler could request SWM cease collecting their solid waste and that the "collection" portion of the residential fee be deleted from their bill. In order to do so, the resident would need to present SWM with a contract with a commercial hauler. SWM would then know which commercial hauler to notify when the resident is delinquent in the payment of "disposal/billing" fees and service should be terminated. Under existing SWM Rules, the commercial hauler would thereafter be held liable for payment of the terminated resident's "disposal/billing" fee if the commercial hauler continues to collect trash from the terminated residence."

48

# MEMORANDUM

| | |
|---|---|
| **TO:** | **GEORGETOWN CONSULTING GROUP** |
| **FROM:** | **JAMES F. BALDWIN, ESQ.** |
| **SUBJECT:** | **COMMENTS ON ALJ BOERTZEL'S LETTER TO PUBLIC AUDITOR BROOKS** |
| **DATE:** | **JUNE 29, 2007** |

### OVERVIEW OF ASSIGNMENT

The Office of the Public Auditor ("OPA") conducted an audit of billing and collection practices of the Solid Waste Management Division ("SWM") of the Guam Department of Public Works ("DPW"). In response to an invitation from OPA for comments on its draft findings, Administrative Law Judge ("ALJ") Boertzel of the Guam Public Utilities Commission ("PUC") sent the attached letter to Public Auditor Brooks setting forth PUC's comments. You have requested that we in turn review ALJ Boertzel's letter and provide our comments.

### GENERAL COMMENTS

ALJ Boertzel's letter properly states the PUC's position on the actions that need to be taken to enable the government of Guam to obtain a revenue bond to fund the projects required by the Consent Decree in USA v. Government of Guam, U.S. District Court Case No. 02-00022. In addition, the letter stresses the PUC's concerns about DPW's ability to comply with the Consent Decree mandates.

The central problem with collection of tipping fees is that the current scheme has proven to be unworkable. The commercial haulers are not required to pay for the solid waste brought to Ordot Dump. Instead, they simple act as billing and collection agents for the government of Guam.

Under the current scheme, the government of Guam records the volume of solid waste brought to Ordot Dump each day by each commercial hauler. This figure should be

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205

**MEMORANDUM**
TO:      GEORGETOWN CONSULTING GROUP
FROM:    JAMES F. BALDWIN, ESQ.
DATE:    JUNE 29, 2007
PAGE:    2

segregated into compacted versus un-compacted loads. If these respective volumes are multiplied by the tipping fee ($20 per cubic year for compacted solid waste, $5 per cubic yard for un-compacted solid waste), DPW should be able to determine the total tipping fees that should have been billed by each commercial hauler to its customers.

Commercial haulers are required to remit tipping fees collected to the government of Guam. Commercial haulers are also required to report to the Department of Public Works ("DPW") any commercial generator account that has not paid its tipping fees within the 30 day notice of termination period. The unpaid accounts reported by the commercial hauler plus the collections remitted by the commercial hauler should equal the total billed by the commercial hauler, and the total billed should equal the total volume brought to Ordot Dump times the tipping fee.

In order to ensure that a commercial hauler has properly billed every one of the business and government generators it services, the government of Guam would need to regularly reconcile the volume of solid waste that the commercial hauler brings to Ordot Dump with the sum of the collections remitted plus unpaid accounts reported to DPW. This reconciliation is complicated by SWM Rule 105(n)(1), which only requires a commercial hauler to report to DPW those accounts that are 90 days delinquent. If regular reconciliations are not made, the result is business generators who pay their commercial hauler fees but not their tipping fees can continue to have their respective commercial haulers dispose of their solid waste at Ordot Dump for 90 days before service is terminated.

Reconciliation is further complicated when commercial haulers pick up residential waste. If a commercial hauler fills a packer truck with residential waste only and reports this fact when entering Ordot Dump, then it is still theoretically possible to reconcile the tipping fees that should have been billed by a commercial hauler because the residential solid waste is not commingled within a single packer truck with business and government solid waste. If the solid waste is commingled, then such a reconciliation would not be possible because it would not

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
Hagåtña, Guam 96910-5205

50

MEMORANDUM
TO:      GEORGETOWN CONSULTING GROUP
FROM:    JAMES F. BALDWIN, ESQ.
DATE:    JUNE 29, 2007
PAGE:    3

be possible to determine the respective percentages of residential versus business/government solid waste inside of each packer truck disposing of waste at Ordot Dump.

For these reasons, the PUC has endorsed the recommendation contained in the Georgetown Consulting Group ("GCG") Focused Management Audit that commercial haulers be made primarily responsible for the payment of tipping fees on all solid waste that each commercial hauler brings to Ordot Dump.   Making commercial haulers primarily responsible for business and government tipping fees would greatly reduce the accounting burden on the government of Guam.   This would in turn reduce the costs of performing the reconciliations that are necessary to ensure that commercial and government tipping fees are being billed and collected, as well as ensuring that service is being terminated promptly when payment is not being made.

Ensuring that commercial and government tipping fees are being billed and collected and that service is being terminated promptly when payment is not being made is a necessary pre-requisite to obtaining revenue bond financing if the sole source of revenues is to be the tipping fees. Under the way the present scheme is administered, no such assurance could be made.

### ISSUES RAISED IN LETTER

ALJ Boertzel raised four (4) challenging questions concerning commercial haulers' responsibility to bill, collect and remit to the government of Guam the monthly $10 collection fee for residential SWM customers.   These questions (set forth in *italics*), together with our initial responses, are as follows:

1.   *Are the commercial haulers precluded by law from collecting solid waste from single-family residential units and multiple dwelling units of four or less units?  Are commercial haulers currently providing service to this customer class?  What is the consequence of this conduct?*

BSJ RESPONSE:   SWM Rule 105(b) provides in relevant portion that "[t]he government, its employees and solid

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
Hagåtña, Guam 96910-5205

51

MEMORANDUM
TO:      GEORGETOWN CONSULTING GROUP
FROM:    JAMES F. BALDWIN, ESQ.
DATE:    JUNE 29, 2007
PAGE:    4

waste contractors shall have, the exclusive right to collect or transport solid wastes for individual dwelling units or single family residences not covered by agreements through homeowner associations or other group agents for the collection of waste be a licensed, waste hauler." SWM Rule 109(a) permits the government of Guam to enter into contracts for the disposal of residential solid waste, but only to meet the service requirements which cannot be met by DPW. This rule goes on to provide that full privatization of residential collection services can only occur after a privatization plan has been approved by the Guam Legislature.

GCG has received reports that commercial haulers are hauling solid waste from residences to Ordot Dump. GCG has not been able to determine whether these residences are being billed tipping fees by the commercial haulers.

The consequences for a commercial hauler's liability for collecting and disposing of residential solid waste in violation of the government of Guam's exclusive right to do so is set forth in SWM Rule 110(b). This section provides for a fine of between $10 and $50 for each offense. Presumably, a commercial hauler can thus be fined up to $50 for each residence from which the commercial hauler is collecting solid waste.

Another possible consequence is criminal liability for conspiracy to commit theft of government services under the theory that a commercial hauler who collected residential solid waste in violation of SWM Rule 105(5) is conspiring with residential generators to allow them to evade the residential collection fee. The commercial hauler's part in the conspiracy would based on its depriving DPW of the most effective means to collect residential collection fees to which it is entitled – terminating services to non-paying residences.

2.     *Commercial haulers are permitted by law to service multiple residential units.    Are the haulers required to bill, collect and remit the $10 collection fee for these customers?*

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
Hagåtña, Guam 96910-5205

MEMORANDUM
TO:        GEORGETOWN CONSULTING GROUP
FROM:      JAMES F. BALDWIN, ESQ.
DATE:      JUNE 29, 2807
PAGE:      5

BSJ RESPONSE: This is covered in SWM Rule 105(b),
which provides that collection of solid waste from multi-
family residential or multiple housing units, commercial,
industrial or agricultural activities shall be based on a
free enterprise or privatized system as regulated and
permitted by the Guam Environmental Protection Agency.
These multiple residential units are billed tipping fees in
the same way that a business generator is billed. Instead
of individual tenants or condominium owners being billed
tipping and user fees, the billings would instead be
directed to the landlord or the condominium association.
The individual "residences" within such multiple
residential units are not subject to the $10 residential
collection fee.

3. *Do Guam residents have the right to chose who
provides them with solid waste collection services. Do
residents have the right to decline DPW services and either
self-haul the trash to the landfill, use free mayoral
collection services or hire a commercial hauler to provide
this service?*

BSJ RESPONSE: SWM Rule 105(c) provides that "any
person may transport solid wastes generated on his own
premises to an authorized processing or disposal site,
provided the requirements of this Regulation are met." The
options in the SWM Rules are clear – either have DPW
collect residential solid waste or self-haul the solid
waste to an authorized processing or disposal site. Having
a commercial hauler provide such service violates the
exclusive right of the government of Guam to either provide
or contract out such services. Residents cannot hire a
commercial hauler to provide this service because only DPW
is authorized to contract with commercial haulers for the
collection or residential solid waste.

If Mayors are using the mayoral exemption from tipping
fees to collect residential solid waste, then they are
assisting these residential solid waste generators in
evading the requirement to pay the residential tipping fee
by removing the consequence of non-payment (i.e.,
suspension of service). They are also violating 5 GCA
§40113(d), which provides that Mayors are only allowed to dump

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
SUITE 1008 PAC FIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
Hagåtña, Guam 96910-5205

MEMORANDUM
TO:      GEORGETOWN CONSULTING GROUP
FROM:    JAMES F. BALDWIN, ESQ.
DATE:    JUNE 29, 2007
PAGE:    6

for free "village trash or debris" and which goes on to
provide that "this trash or debris shall come strictly from
their duties in maintaining Village Streets and public
buildings, parks or facilities in their Villages, including
the clean-up and removal of public nuisances and debris."

Mayors may claim that the failure of DPW to pick up
the trash creates a public nuisance and that they are
authorized to clean up and remove public nuisances and
debris.   DPW's response should be that residential
generators should instead be required to dispose of their
solid waste at the transfer stations, as this allows DPW to
exempt from payment of the self-haul fee only those
residences whose solid waste was not collected by DPW.   DPW
should also remind the Mayors that they are law enforcement
personnel and, as such, it is incumbent upon them to report
the existence of any public nuisances as well as the
violation of any of the provisions of Chapter 51-Title 10
to the proper authorities.

     4.   What is the purpose of the $10 residential
collection fee? From PUC's perspective, it is intended to
cover the cost of collection and disposal of residential
solid waste.   Would it be just and reasonable for DPW to
collect this fee from commercial haulers in instances where
the commercial haulers provide the collection and tipping
service?

     BSJ RESPONSE:   The purpose of the $10 residential
collection fee is to pay for the cost of services rendered
by SWM to residential customers, including the cost of
collecting residential solid waste, the cost of billing and
collecting the residential collection fee, and an allocated
cost for the proper operation of an EPA complaint landfill
and the closure of the Ordot Dump.

     There would be no need for the PUC to deal with the
situation of commercial hauler collecting residential solid
waste if DPW were to simply enforce its exclusive right to
collect or contract out for the collection of residential
solid waste granted in SWM Rule 2105(b).   For example, DPW
could seek an appropriate injunction against any commercial

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
Hagåtña, Guam 96910-5205

MEMORANDUM
TO:     GEORGETOWN CONSULTING GROUP
FROM:   JAMES F. BALDWIN, ESQ.
DATE:   JUNE 29, 2007
PAGE:   7

hauler found to be hauling residential solid waste in violation of this rule.

SWM Rule 109 (b) provides that the hauler(s) with whom DPW contracts for the collection of residential solid waste shall be granted the exclusive right to perform such services as are specified in the contract. DPW would presumably need to enforce its exclusive right to collection or contract out residential solid waste in order to be in a position to ensure that any contractor it contracts with to collect residential solid waste is in turn granted the exclusive right to perform such services.

DPW could instead chose not to enforce its exclusive right to collect residential solid waste and instead petition the PUC to bifurcate the residential collection fees into two parts – collection and disposal/billing. DPW could continue to collect residential solid waste under this amended rate structure without the need to contract out residential collection services.

Any resident who is dissatisfied with SWM's service would now have two options – self haul solid waste to a transfer station or contract with a commercial hauler to haul that residences solid waste to Ordot. Self-haul customers do not need to be billed any residential fees because these fees are paid at the transfer station each time the resident dumps a load.

Residents who contract with a commercial hauler could request SWM cease collecting their solid waste and that the "collection" portion of the residential fee be deleted from their bill. In order to do so, the resident would need to present SWM with a contract with a commercial hauler. SWM would then know which commercial hauler to notify when the resident is delinquent in the payment of "disposal/billing" fees and service should be terminated. Under existing SWM Rules, the commercial hauler would thereafter be held liable for payment of the terminated resident's "disposal/billing" fee if the commercial hauler continues to collect trash from the terminated residence.

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
Hagåtña, Guam 96910-5205

55

MEMORANDUM
TO:     GEORGETOWN CONSULTING GROUP
FROM:   JAMES F. BALDWIN, ESQ.
DATE:   JUNE 29, 2007
PAGE:   8

   Bi-furcating residential tipping fees into collection
versus billing/disposal components and provide an exemption
of the collection fee for those residents who opt to have
their solid waste is collected by commercial haulers would
ensure that all residents contribute to the costs of
disposing of solid waste. While this would make
residential tipping and user fees more "just and
reasonable," the effect on SWM operations would need to be
studied to determine if allowing residents to contract with
private haulers reduces operational efficiency and a
corresponding increase the costs of service. If this turns
out to be the case, then the collection portion of the fee
would not be "just and reasonable" because it could be
reduced by DPW enforcing its exclusive right to collection
residential solid waste.

                                    JFB

G:\WORDDOC\DRAFT\JFB\018-MEMO TO GCG RE COMMENTS ON ALJ BOERTZEL LTR TO PUB AUDITOR
(REVISED 18 JUN 07).doc

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
Hagåtña, Guam 96910-5205

# Appendix 11:
## Status of Audit Recommendations

| | Audit Finding | Status | Action Required |
|---|---|---|---|
| 1 | Transfer Solid Waste Management billing function from DOA to DPW | Management Concurs. Additional information needed. | DPW and DOA coordinate the transfer of the commercial billing function from DOA Division of Accounts to DPW. We suggest that the full transition take effect by October 1, 2007. |
| 2 | Deficient billing process. | Management Concurs. Additional information needed. | DPW and DOA establish formal billing and payment cycle for commercial haulers. |
| 3 | Lack of collection follow-up efforts. | Management Concurs. Additional information needed. | DPW aggressively pursue collection from commercial haulers and OCH who are beyond the 60 day payment and restrict access to the Ordot Dump for those who have past due accounts beyond 60 days and/or for noncompliance with the law. |
| 4 | Lack of service contract agreements. | Management Concurs. Additional information needed. | DPW work with the OAG in the finalization of service contract agreements with commercial haulers to include payment terms, application of unidentified payments, minimum timeframe to dispute billings, right to audit clause, penalties for failure to comply with terms and conditions pursuant to law, and denial of access to any transfer stations or the Ordot Dump for non-payment. |
| 5 | Inoperable weigh scale. | Management Concurs. Additional information needed. | DPW secure a weigh scale using the proper procurement process. |
| 6 | Unserviced residential customers. | Management Concurs. Additional information needed. | DPW determine the number of unserviced residential customers and coordinate the servicing of these customers by either DPW or the commercial haulers. |
| 7 | Unbilled government tipping fees. | Resolved. | No Action Required. |
| 8 | Cash collection for self-haul customers. | Resolved. | No Action Required. |
| 9 | Development of residential collection district plan. | Management Concurs. Additional information needed. | DPW follow P.L. 26-99 and immediately issue a solicitation of interest to be issued for the development of a residential collection district plan IFB. |

57

**Do you suspect fraud, waste, or abuse in a government agency or department?  Contact the Office of the Public Auditor:**



- ➢ **Call our HOTLINE at 47AUDIT (472-8348);**

- ➢ **Visit our website at www.guamopa.org;**

- ➢ **Call our office at 475-0390;**

- ➢ **Fax our office at 472-7951;**

- ➢ **Or visit us at the PNB Building, Suite 401 In Hagåtña**

**All information will be held in strict confidence.**