ORIGINAL

RONALD J. TENPAS
Acting Assistant Attorney General
Environment & Natural Resources Division
ROBERT D. MULLANEY
Environmental Enforcement Section
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California 94105
Tel: (415) 744-6483
Fax: (415) 744-6476

LEONARDO M. RAPADAS
United States Attorney
MIKEL SCHWAB
Assistant United States Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez
Hagåtña, Guam 96910
Tel: (671) 472-7332
Fax: (671) 472-7215

Attorneys for United States of America

FILED
DISTRICT COURT OF GUAM
OCT 29 2007
JEANNE G. QUINATA
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL CASE NO. 02-00022 |
| Plaintiff, | UNITED STATES' SUPPLEMENTAL BRIEF IN RESPONSE TO STATUS HEARING |
| v. | |
| GOVERNMENT OF GUAM, | Date: November 19, 2007<br>Time: 11:00 a.m. |
| Defendant. | Judge Tydingco-Gatewood |

## TABLE OF CONTENTS

I. Introduction .................................................................. 1

II. Background .................................................................. 1

III. The United States Requests the Court to Adopt the Magistrate Judge's Report with some Minor Modifications .................................................................. 4

IV. The Court's Authority to Appoint a Receiver. .................................................................. 6

V. The United States' Candidate Search. .................................................................. 10

VI. The United States Reserves the Right to Seek Additional Relief if GovGuam Fails to Meet the Interim Deadlines in the Court's Order. .................................................................. 10

# TABLE OF AUTHORITIES

FEDERAL CASES

Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,
    533 F. Supp. 869 (E.D. Pa. 1982), aff'd, 678 F.2d 470 (3d Cir. 1982) . . . . . . . . . . . . . . . 7

Frew ex rel. Frew v. Hawkins, 540 U.S. 431 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Gary W. v. Louisiana, 1990 WL 17537 (E.D. La. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Interfaith Community Org. v. Honeywell Internat'l, Inc.,
    263 F. Supp. 2d. 796 (D.N.J. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Local 28 Sheet Metal Workers' Internat. Assn. v. EEOC, 478 U.S. 421 (1986) . . . . . . . . . . . . . 8

Morgan v. McDonough, 540 F.2d 527 (1st Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Plata v. Schwarzenegger, 2005 WL 2932253 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . 10

Porter v. Wagner Holding Co., 328 U.S. 395 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Puget Sound Gillnetters Ass'n v. U.S. Dist. Ct., 573 F.2d 1123 (9th Cir. 1978), vacated and
    remanded, 443 U.S. 658, aff'd on remand, 605 F.2d 492 (9th Cir. 1979) . . . . . . . . . . . 7

SEC v. Hardy, 803 F.2d 1034 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Town of Greenwich v. Dep't of Transportation, No. B-76-193, 10 ELR 20178,
 (D. Conn. Nov. 7, 1979 & Jan. 21, 1980) .................................. 8, 9

U.S. v. Alcoa, Inc., 2007 WL 628710 (W.D. Tex. 2007) ........................ 11

U.S. v. City of Detroit, 476 F. Supp. 512 (E.D. Mich. 1979) .................. 7, 9

United States v. Acadia Woods Add. #2 Sewer Co.,
 41 F. Supp. 2d 632 (W.D. La. 1999) ........................................ 9

United States v. Alisal Water Corp., 326 F. Supp. 2d 1010 (N.D. Cal. 2002) ...... 8, 9, 11

United States v. Alisal Water Corporation, 431 F.3d 643 (9th Cir. 2005) ............ 7, 8

United States v. Alder Creek Water Co., No. 79-1090 (D. Or. Sept. 26, 1980),
 aff'd 823 F.2d 343 (9th Cir. 1987) ........................................ 9

United States v. Am. Tobacco Co., 221 U.S. 106 (1911) ........................ 7

United States v. City of Providence, 492 F. Supp. 602 (D.R.I. 1980) ............ 7, 11

United States v. Midway Heights County Water Dist.,
 695 F. Supp. 1072 (E.D. Cal. 1988) ........................................ 9

United States v. Suquamish Indian Tribe, 901 F.2d 772 (9th Cir. 1990) .......... 8

iii

Vuitton Fils S.A. v. Carousel Handbags, 592 F.2d 126 (2d Cir. 1979) . . . . . . . . . . . . . . . . 7

FEDERAL STATUTES

33 U.S.C. § 1311 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

33 U.S.C. § 1319(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

FEDERAL RULES

Fed. R. Civ. P. 53 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Fed. R. Civ. P. 70 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.  Introduction

At a status hearing on October 23, 2007, the Court directed the United States to file a supplemental brief on the following issues: (1) the extent of the Court's authority to appoint a receiver; (2) a recommended list of potential candidates for the Court to consider to appoint as a receiver; (3) the potential cost of a receiver; and (4) whether the United States supports the appointment of a receiver at this point or in the future.

As explained in Section III below, the United States proposes that the Court adopt the Magistrate Judge's Report & Recommendation ("Report") with some modifications as an Order of the Court. We continue to recommend that the Court adopt the Report with modifications because that option is a less restrictive remedy that will afford GovGuam one final opportunity to comply with the Consent Decree as expeditiously as possible. In Section IV, the United States addresses the Court's legal authority to appoint a receiver. In Section V, we refer to our efforts to compile a list of potential candidates for a receiver. If GovGuam does not comply with the Court's Order setting interim milestones, however, the United States reserves the right in Section VI to request the Court for additional relief to ensure GovGuam's compliance with the Consent Decree and the Clean Water Act.

II. Background

As we emphasized in our motion to enforce, serious public health issues are implicated in this case. The Complaint alleged that GovGuam had routinely violated the Act since 1988. Complaint, ¶ 21. The Consent Decree required GovGuam to stop those violations by October 23, 2007. Decree, ¶ 8.i. In its motion to modify the Decree, however, GovGuam sought an extension to allow the Ordot Dump to operate until July 30, 2010, when cell one of the new landfill would open; even if GovGuam managed to comply with its proposed schedule, the final closure of the Ordot Dump would not occur until December 2011. Perez Decl., Exh.7. Under GovGuam's proposed modification to the Decree, the Dump, without the impermeable cover required by the Decree's closure plan, would remain open to the elements and rain would

-1-

continue to percolate through it. Arora Decl., ¶ 2-3. This would generate more leachate, resulting in the continuation of GovGuam's illegal discharges of pollutants directly to the Lonfit River. Arora Decl., ¶ 3. GovGuam's proposed modification to the decree -- by allowing the Dump to remain in operation until July 30, 2010 -- would also mean that the vector issue (i.e., flies, rodents, and other pests), the odor problem, and the fire hazard posed by Ordot would continue unabated for several years. Id. As demonstrated once again by the Ordot Dump's November 2006 fire, the Dump's recurring fires not only cause increased air pollution levels, but also lead to the trauma of emergency evacuations for nearby residents. Wolfram Decl., ¶ 2.

In his Report, the Magistrate Judge stressed: "prudence must be exercised to put the contemplated mechanism for financing the projects herein in place and **effort** on that part must come from GovGuam. **Is closure of the Ordot Dump truly a priority of the Defendant, GovGuam?**" Report at 23 (emphasis in original). The Magistrate Judge's Report was filed on July 6, 2007. Almost four months later, GovGuam has failed to implement key aspects of the Report. The following three examples illustrate this point.

1. The Report recommended that GovGuam propose legislation to reconstitute the Solid Waste Management ("SWM") division as a public corporation subject to oversight by the Consolidated Commission on Utilities ("CCU"). Report at 28. Although almost four months have passed since the Magistrate filed his Report, GovGuam has failed to submit a proposed bill to the Guam Legislature. Instead of taking immediate action to propose legislation to address this problem, GovGuam objected to the CCU's oversight of SWM, an aspect of the Magistrate's Report that was completely consistent with a recommendation made more than two years ago by an Order of Guam's Public Utilities Commission ("PUC") on September 28, 2006. U.S. Submission of Authorities, Exh. 9 at 1.

2. Paragraph 9(i) of the Consent Decree required GovGuam to begin *operating* the new landfill on September 23, 2007. In his Report, the Magistrate Judge recommended that GovGuam proceed to negotiate the acquisition of the Layon site or initiate an eminent domain

-2-

proceeding to acquire the site for the new landfill. Report at 29. At the hearing on March 8, 2007, Ms. Kennedy represented to the Court that the Layon hydrogeological study could possibly affect the design of the new landfill but did not impact the site selection. Transcript at 75. Ms. Kennedy unequivocally stated to the Court that GovGuam had the money in March 2007 to acquire the property at Layon. Tr. at 79. Similarly, in its response to the Magistrate Judge's Report, GovGuam stated that it agreed with the Report's recommendation on the acquisition of Layon. GovGuam's objection at 11. At the status hearing on October 23, 2007, however, GovGuam took a completely new tack, asserting for the first time that any negotiations or condemnation action to acquire the Layon site could not proceed until after completion of the hydrogeological study, which is projected to occur in December 2007. In stark contrast to its prior representations to the Court, GovGuam now contends that a study, which may possibly affect the design of the landfill's bottom liner, should justify its further delays in acquiring the site for the new landfill.

3. The Report recommended that GovGuam begin the critically important process of applying for revenue bonds to finance the work required by the Decree. GovGuam asked for an additional 30 days to take this step in its opposition to the Report, but has not taken any concrete steps to bring this process to fruition in the nearly four months that have passed since the Report was filed.

In this case, GovGuam violated EPA's Administrative Orders for over ten years before the Complaint was filed. Moreover, in spite of EPA's imposition of $73,250 in stipulated penalties, GovGuam has failed to comply with the Consent Decree, which was entered as a final judgment and Order of this Court. GovGuam's recalcitrance has not been deterred despite the accrual (as of October 29, 2007) of an additional $2,241,500 in stipulated penalties for GovGuam's current violations of the Decree.[1] Nor has GovGuam ever proffered any plausible

---

[1] Although the United States is not currently demanding payment of these stipulated penalties, we reserve our right to demand them in the future.

-3-

plan to demonstrate that it will expeditiously comply with the Consent Decree's mandates. In sum, GovGuam has failed to take the necessary steps to comply with the Consent Decree at every turn: after the Decree's entry, after EPA's imposition of stipulated penalties, after the United States moved to enforce the Decree, and even after the Magistrate Judge issued his Report.

III. <u>The United States Requests the Court to Adopt the Magistrate Judge's Report with some Minor Modifications.</u>

On July 6, 2007, the Magistrate Judge filed his Report, recommending that an interim series of requirements be imposed on GovGuam to meet the Consent Decree's goals. The United States supported the Magistrate's Report in its filing on July 19, 2007, and recommended that the Court include some additional requirements in an Order adopting the Report. Although several months have passed since the Report was filed, the United States still believes that the Report, as modified below, sets out an effective remedy that will ensure that GovGuam can come into compliance with the Consent Decree's mandates in the most expeditious manner. The United States addresses the Report's recommendations below:

1.  Law Revision Commission ("LRC") (Report at 27-28) - The United States notes that GovGuam has convened an LRC and that GovGuam's representatives at the status hearing appeared to support the LRC. The United States did not propose the creation of the LRC but does not oppose GovGuam's efforts to address its problems through a joint effort of GovGuam's executive and legislative branches.

2.  SWM as a public corporation (Report at 28) - The United States supports this recommendation and requests that the Court include a provision that SWM be subject to the CCU's oversight. In a separate action under the CWA and Safe Drinking Water Act against Guam Waterworks Authority ("GWA"), the United States entered into a settlement known as the Stipulated Order for Preliminary Relief with GWA. In the GWA case, the CCU has played a constructive role in its oversight of GWA. Based on this experience, the United States believes that the CCU can offer similar assistance in this case. Moreover, the Guam PUC, in its Order

-4-

dated September 28, 2006, also recommended CCU oversight of SWM.

Because the Magistrate Judge's Report was issued in July 2007, GovGuam has known about the Court's recommendation regarding the public corporation for almost four months. In light of this fact, the United States requests that the Court require GovGuam to propose legislation within 30 days after this Court's Order is filed.

3. Operation of SWM - residential waste collection, billing, commercial haulers (Report at 28) - The United States supports this recommendation. Because this Report was filed in July 2007, GovGuam has known about the Court's concern for almost four months. To the extent that these problems can be addressed now by GovGuam, there is no need to wait until the formation of a new public corporation. If the problems remain unresolved, the Court should require GovGuam to address them within 60 days after the Court's Order is filed.

4. Revenue Bonds (Report at 28-29) - The United States supports this recommendation and urges that it be implemented as expeditiously as possible, but no later than 120 days after the reconstitution of SWM as a public corporation.

5. Acquisition of Layon (Report at 29) - The United States supports this recommendation. At this point, it is unclear why GovGuam has not already taken the necessary steps to acquire the Layon site. According to its counsel's representations to the Court in March 2007, GovGuam had reserved money for purchase of the land. The United States requests the Court to expedite the requirement to acquire the Layon site, and require GovGuam to act within 60 days after the Court's Order is filed. Because of GovGuam's delays in the reconstitution of SWM as a public corporation, the schedule may require GovGuam to obtain the land and to transfer it to SWM at a later time.

6. Monthly Compliance Reports (Report at 29) - The United States supports this requirement.

7. Monthly Status Conferences (Report at 29) - The United States supports this requirement and requests the Court to schedule the conferences at 9 a.m. on any day from Tuesday through

-5-

Friday to accommodate the 18-hour time difference between Guam and Pacific Standard Time in California.

The United States requests the Court to also impose the following requirements:

8. Financial Plan - Consistent with the proposal in our reply brief in support of the motion to enforce, the United States believes that the Court should require GovGuam to prepare a Financial Plan as follows: the PUC, working in conjunction with SWM's financial advisors, shall develop a Financial Plan concerning: (i) the issuance of revenue bonds necessary to finance the Decree's capital projects; and (ii) the collection of SWM's accounts receivable. Based on the Guam Public Auditor's report, the PUC shall determine what amounts of SWM's accounts receivable are collectable and shall set goals and deadlines for the new corporation to collect SWM's accounts receivable. Preparation of the financial plan can begin now and should be completed within 30 days after the Court's Order is filed.

9. Operation & Closure of Ordot Dump; Construction of New Landfill - For the reasons stated in our pleading supporting the Report (Court document 129 at 4-5), GovGuam should be required to retain a private contractor to operate the Ordot Dump, to complete the closure of the Dump, and to construct and operate the new landfill. Consistent with the timing for task 3 (operation of SWM) above, the Court should require GovGuam to retain this private contractor within 60 days after the Court's Order is filed.

IV. <u>The Court's Authority to Appoint a Receiver</u>

Section 301 of the Clean Water Act ("CWA" or "Act") prohibits the discharge of pollutants into waters of the United States except as authorized by law. 33 U.S.C. § 1311. Pursuant to CWA section 309(b), 33 U.S.C. § 1319(b), the U.S. Environmental Protection Agency ("EPA") is authorized to commence a civil action for appropriate relief, including a permanent or temporary injunction, for any violation of CWA section 301. The Complaint in this action is specifically based on that authority. Section 309(b) also provides the district court with jurisdiction to "restrain such violation and to require compliance." 33 U.S.C. § 1319(b).

-6-

Pursuant to Section 309(b)'s broad grant of authority, a district court can fashion an appropriate remedy for a violation of the Act. As the Ninth Circuit stated in United States v. Alisal Water Corporation, 431 F.3d 643, 654 (9th Cir. 2005), "the court will not generally infer restrictions on inherent judicial authority from congressional silence." In upholding the district court's divestiture order in Alisal under the Safe Drinking Water Act, the Ninth Circuit held: "There is no limiting language, so the statute incorporates the full panoply of the court's equitable powers." Id. Moreover, when the public interest is involved as in this case, the court's "'equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.'" Id., quoting Porter v. Wagner Holding Co., 328 U.S. 395, 398 (1946).

Similarly, a district judge, "sitting in equity, is vested with wide discretion in fashioning a remedy" for violations of a decree. Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979); see also Delaware Valley Citizens' Council for Clean Air v. Pennsylvania, 533 F. Supp. 869, 880-82 (E.D. Pa. 1982), aff'd, 678 F.2d 470 (3d Cir. 1982). The appointment of a receiver has historically been considered an inherent power of a federal court sitting in equity. See United States v. Am. Tobacco Co., 221 U.S. 106, 186-87 (1911) (appointment of a receiver is appropriate "for the purpose of preventing a continued violation of the law"); U.S. v. City of Detroit, 476 F. Supp. 512, 520 (E.D. Mich. 1979) (court's exercise of authority to appoint a receiver is founded in the broad range of equitable powers available to a court to enforce and effectuate its orders and judgments). "[W]hen the usual remedies are inadequate, a court of equity is justified, particularly in aid of an outstanding injunction, in turning to less common ones, such as a receivership, to get the job done." Morgan v. McDonough, 540 F.2d 527, 533 (1st Cir. 1976); see also Puget Sound Gillnetters Ass'n v. U.S. Dist. Ct., 573 F.2d 1123, 1129 (9th Cir. 1978) (affirming district court's direct management of State's fishing industry to protect tribal fishing rights under treaty), vacated and remanded, 443 U.S. 658, aff'd on remand, 605 F.2d 492 (9th Cir. 1979); United States v. City of Providence, 492 F. Supp. 602, 609-10 (D.R.I. 1980) (court held city in civil contempt for failing to comply with consent decree's requirement

-7-

to renovate its wastewater treatment plant to comply with its permit's effluent standards). Accordingly, the Ninth Circuit has recognized that "'a district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad.'" Alisal Water Corporation, 431 F.3d at 658, quoting SEC v. Hardy, 803 F.2d 1034, 1037 (9th Cir. 1986).

The Federal Rules provide specific authority for the appointment of a receiver. Rule 70 provides: "If a judgment directs a party . . . to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party." Fed. R. Civ. P. 70; see Town of Greenwich v. Dep't of Transportation, No. B-76-193, 10 ELR 20178, 20181 (D. Conn. Nov. 7, 1979 & Jan. 21, 1980) (court-appointed administrator vested with power and authority under Rule 70).[2]

The appointment of a receiver is warranted when a court determines that the defendant is either "unwilling or incapable of acting in good faith toward compliance with a judgment. . . . The receiver ensures certainty in the execution of a court's order." United States v. Alisal Water Corp., 326 F. Supp. 2d 1010, 1012 (N.D. Cal. 2002) (internal quote omitted). As the Alisal court concluded, "[a] receivership is particularly appropriate where public health issues are implicated." Id. Thus, due to public health issues, federal courts have imposed receiverships on environmental violators in several contexts. See, e.g., Interfaith Community Org. v. Honeywell

---

[2] In addition, Rule 53 specifically provides that a court may appoint a master to "address . . . post-trial matters that cannot be addressed effectively and timely by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). The Advisory Committee Notes for this 2003 amendment to Rule 53 explained that courts have come to rely on masters to assist in enforcing consent decrees. In particular, the Committee stated: "Reliance on a master is appropriate when a complex decree requires complex policing, particularly when a party has proved resistant or intransigent. This practice has been recognized by the Supreme Court, see *Local 28, Sheet Metal Workers' Internat. Assn. v. EEOC*, 478 U.S. 421, 481-82 (1986)." Fed. R. Civ. P. 53 advisory committee note; see also United States v. Suquamish Indian Tribe, 901 F.2d 772, 774 (9th Cir. 1990) (master may be appointed to aid district court in enforcement of its decree).

-8-

Internat'l, Inc., 263 F. Supp. 2d. 796, 834 (D.N.J. 2003) (after more than twenty years of delay by defendant, special master appointed pursuant to Fed. R. Civ. P. 53 to oversee remediation under RCRA of a contaminated site); United States v. Acadia Woods Add. #2 Sewer Co., 41 F. Supp. 2d 632, 633 (W.D. La. 1999) (administrator appointed to run defendants' wastewater treatment plants to achieve compliance with decree and CWA); United States v. Alder Creek Water Co., No. 79-1090 (D. Or. Sept. 26, 1980) (order placing defendant under equitable receivership in Safe Drinking Water Act case after defendant failed to comply with court order), aff'd 823 F.2d 343, 345 (9th Cir. 1987); Town of Greenwich, 10 ELR at 20181 (administrator appointed to run State's rail line to ensure compliance with decree under Clean Air Act); and City of Detroit, 476 F. Supp. at 520 (administrator appointed to run City's sewage department to secure compliance with decree and CWA).[3]

In determining whether to appoint a receiver, courts have particularly focused on two factors: (1) defendant's actual ability to manage its facilities in compliance with the law; and (2) defendant's financial ability to comply with the law. Alisal, 326 F. Supp. 2d at 1013. For example, the City of Detroit court, in appointing a receiver, stated that "[p]resent management is consumed by the demands of crisis operating conditions that command priority over personnel, planning, budgeting, process evaluation, and other administrative functions." City of Detroit, 476 F. Supp. at 517-18. Similarly, the Acadia Woods court found compelling that defendants failed to have "sufficient numbers of properly trained personnel to operate or to adequately maintain their sewage treatment plants" and did not have "the financial ability to conduct the current business . . . in an environmentally sound manner to protect the public health or to secure

---

[3] There is precedent for the appointment of a receiver even when the defendant has not violated a court order. The Alisal court imposed a receivership based on evidence that defendants had "demonstrated a chronic pattern of resistance to and non-compliance with governmental efforts to regulate their corporate behavior, although this Court itself has not issued an injunction." 326 F. Supp. 2d at 1012-13 n. 2; cf. United States v. Midway Heights County Water Dist., 695 F. Supp. 1072, 1076 (E.D. Cal. 1988) (injunction may issue even if customers have not actually fallen ill from drinking defendant's water).

-9-

Case 1:02-cv-00022  Document 147  Filed 10/29/2007  Page 14 of 16

the necessary capital from a lending institution to do so." Alisal, 326 F. Supp. 2d at 1013; see also Gary W. v. Louisiana, 1990 WL 17537 at *32 (E.D. La. 1990) (in justifying a receivership, courts have "found a lack of leadership . . . , systemic deficiencies in administrative, organizational, and fiscal structures, institutional inertia, and similar indicia of bureaucratic morass."); Plata v. Schwarzenegger, 2005 WL 2932253 at *26 (N.D. Cal. 2005) (in deciding to appoint a receiver, the court found that defendants were unwilling or incapable of breaking out of a deeply entrenched bureaucratic mind set, and refused or were unable to take the steps necessary to prevent further violations).

V.  The United States' Candidate Search

In response to the Court's request at the status hearing on October 23, EPA conducted an internal meeting among its technical staff on October 23 to discuss possible candidates for a receiver position. During the following three days (October 24 - 26), EPA staff attempted to contact those people to ascertain their interest in the position. Currently, EPA has several potential leads for candidates but was not able to compile a list by the end of the week on October 26. The United States will continue to diligently pursue its search.

VI. The United States Reserves the Right to Seek Additional Relief if GovGuam Fails to Meet the Interim Deadlines in the Court's Order.

The United States originally proposed an interim remedy in January and February 2007 that would provide GovGuam a path to achieve compliance with the Consent Decree. The Magistrate Judge adopted many of the United States' proposals in his July 2007 Report. Despite the passage of nearly four months since issuance of the Magistrate Judge's Report, however, GovGuam has not taken the initiative to independently address its looming trash crisis, allowing the Ordot Dump to remain a festering public health problem. Nevertheless, the United States believes that this Court should first adopt the Magistrate Judge's Report, as modified by our recommendations herein, as an Order of this Court. We continue to advocate this course as a remedial measure that will allow GovGuam one final opportunity to assume its responsibility to

-10-

manage Guam's solid waste disposal.

The United States believes that strict reporting requirements and close Court supervision are necessary to ensure GovGuam's compliance in this case. Assuredly, if GovGuam fails to meet the critical interim deadlines established by the Court's Order,[4] this Court is not "reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 440 (2004). This Court has a broad range of equitable powers available to it to enforce and effectuate its orders and judgements. See Alisal Water Corp., 326 F. Supp. 2d at 1028-32 (order of receivership); City of Providence, 492 F. Supp. at 610 (court warned city officials that it could hold them in civil contempt and fine them individually for the city's failure to comply with the consent decree); U.S. v. Alcoa, Inc., 2007 WL 628710 at *8 (W.D. Tex. 2007) (court, sua sponte, imposed fines on defendant for its ongoing and blatant disregard of its obligations under consent decree). If GovGuam proves to be either unwilling or unable to comply with the critical interim deadlines in the Court's Order in a timely manner, the United States reserves the right to seek further relief from this Court in order "to bring much needed relief to the people of Guam and especially the residents of the villages surrounding the Ordot Dump." Report at 31.

At this point, the United States believes that compliance with the interim milestones will enable GovGuam to handle its own trash problems. It is time for GovGuam to demonstrate that it is willing and able to accept that responsibility.

Respectfully submitted this 29th day of October 2007.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: _____
MIKEL W. SCHWAB
Assistant U.S. Attorney

---

[4] The United States regards tasks 2 through 5, 8, and 9 listed in Section III above as critical interim deadlines.

-11-