Office of the Attorney General
Alicia G. Limtiaco
Attorney General of Guam
Civil Division
287 West O'Brien Drive
Hagåtña, Guam 96910 • USA
(671) 475-3324 • (671) 472-2493 (Fax)
www.guamattorneygeneral.com

Attorneys for the Government of Guam

# IN THE DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. GOVERNMENT OF GUAM, Defendant. | CIVIL CASE NO. 02-00022<br><br>GOVERNMENT OF GUAM'S SUPPLEMENTAL BRIEF IN RESPONSE TO STATUS HEARING |

## I. INTRODUCTION

At the status hearing on October 23, 2007, the Court asked the parties to address issues concerning the appointment of a federal receiver to take over the Solid Waste Management Division ("SWM") of the Department of Public Works ("DPW") and to address other matters regarding the Magistrate Judge's Report and Recommendation (the "Magistrate's Report"). This brief is in response to the Court's request. The Declaration of Lawrence P. Perez with the following attachments is submitted in support of this Brief: Attachment I, Executive Order

2007-09 establishing a Solid Waste Review Commission (LRC); Attachment II, LRC's draft Solid Waste Management Legislation with a cover letter to the Governor; Attachment III, Bill 58 to replace Public Laws 24-272 and 24-139 regarding solid waste management (tipping/user fees).

## II. RECEIVERSHIP

### A. Imposition of a Receivership

The Government understands that a receiver would be a person appointed by the court to act as its representative and to hold and manage the assets of the DPW's Solid Waste Management Division. Regarding appointment of a receiver, the United States concludes its Supplemental Brief with the statement: "At this point, the United States believes that compliance with the interim milestones [of the Magistrate] will enable GovGuam to handle its own trash problems." U.S. Supp. Br. at 11. The Government of Guam (the "Government") agrees that setting realistic interim milestones will enable the Government to complete the task of closing Ordot Landfill and opening a new landfill. In his Report, the Magistrate Judge (the "Magistrate") states: "Moreover, if GovGuam does not meet these goals, it risks the eventual appointment of a receiver to oversee all waste management operations. This simply should not be an option for the people of Guam." Magistrate's Report at 30. The Government asks the Court for the opportunity to move forward with realistic milestones before exercising the option of appointing a receiver. Monthly status conferences, as recommended by the Magistrate, would allow the Court to monitor the Government's progress in meeting milestones.

Historically, receiverships began as a means of protecting estates and failed businesses. It is usually viewed as an extraordinary remedy, Haase v. Chapman, 308 F.Supp. 399, 406

(W.D. Mo. 1969). The Government concedes that in recent years the courts have imposed receiverships on private institutions such as nursing homes and public institutions such as prisons, mental health facilities, public housing, and schools. It is usually done when the institutions themselves fail to come into compliance with court orders. The underlying premise is that a receiver will not fail to comply with the court's orders. Only in recent years have the courts imposed receiverships on state or local agencies to enforce environmental laws.

### B. Authority of the Federal Court to Impose Receivership

The constitutional basis of the equity powers of the federal court is found in Article III, Section 2, of the U. S. Constitution, which vests the federal courts with jurisdiction over cases "at law and in equity." The District Court of Guam "shall have the jurisdiction of a district court of the United States, . . . ." 48 U.S.C. § 1424(b).

Another cited source of equitable power is the All Writs Act, 28 U.S.C. § 1651 which provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Paragraph 16 of the Consent Decree herein reserves the right of the Plaintiff to seek "any other relief it deems appropriate."

Rule 70 of the Federal Rules of Civil Procedure authorizes the federal court to impose receivership in appropriate cases. In relevant part it provides:

> If a judgment directs a party . . . to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party. . . . The court may also in proper cases adjudge the party in contempt. . . .

### C. Standards Governing Imposition of Receivership

A receivership is an anomaly under our system of government devoted to the principle of separation of powers. Although only of temporary duration and for a specific purpose, the judicial branch of government takes upon itself the executive function of administering an agency of the executive branch. There is always a potential for public controversy about the merits of such a drastic remedy.

Although courts have imposed remedial receiverships in environmental cases, to date, less than ten available reported cases have come to the Government's attention in its research of court cases: United States v. City of Detroit, 476 F. Supp. 512 (E.D. Mich. 1979) (municipal waste water treatment plant placed in receivership for continuing water pollution violations); Town of Greenwich v. Department of Transp.,10 E.L.R. 20178 (D. Conn. Nov. 7, 1979 & Jan. 21, 1980) (receiver appointed to shut down coal burning utility plant in continuing violation of the Clean Air Act); Ohio v. Chem-Dyne Corp., 16 Env't Rep. Cas. (BNA) 1854 (Ohio Ct. App. 1981) (receiver appointed to remove hazardous wastes from site); United States v. Alder Creek Water Co., No. 79-1090 (D. Or. Sept. 26, 1980), aff'd 823 F.2d 343 (9th Cir. 1987); O'Leary v. Moyer's Landfill, Inc., 677 F. Supp. 807 (E.D. Pa. 1988) (dissolution of receiver previously appointed through consent decree to close sanitary landfill); Department of Envtl. Protection v. Emerson, 563 A.2d 762 (Me. 1989) (receiver appointed to alleviate fire hazards at tire disposal facility and to bring facility into compliance with state solid waste management regulations); State ex rel. Celebrezze v. Gibbs, 573 N.E.2d 62 (Ohio 1991) (receiver appointed to correct sewage treatment deficiencies at industrial park); and United States v. Alisal Water Corp., 326 F. Supp. 2d 1010 (N. D. Cal. 2002) (receiver appointed for private companies which operated public water systems upon a court finding that violations of the Safe Drinking Water Act were serious and included falsification of records designed to

protect public health, the companies had a long history of such violations and others, had adopted an inordinately combative stance against legitimate regulatory oversight and had maintained that stance for more than a decade).

Appointment of a receiver is always a discretionary remedy. From a review of the cases, it is clear that there is no rule that the remedy of receivership must be imposed upon a party who has failed to comply with court orders.

> In exercising its discretion a court in appointing or refusing to appoint a receiver must take into account all the circumstances and facts of the case and such discretion must be exercised soundly with the aim of seeking justice for the rights of all the parties interested in the controversy and subject matter. This discretion is to be exercised with great caution and circumspection. The appointment of a receiver should be denied where it is likely to do irreparable injury to others, or where greater injury will probably result from the appointment than if none were made. Additionally, a court's exercise of its discretion will be reversed if it was abused or exercised in an arbitrary or unreasonable manner.

65 Am. Jur. 2d *Receivers* § 19 (2007) (footnotes omitted), *available on* Westlaw

The prime principle is that the party to be supplanted has persistently disobeyed or refused to comply with a court order. The official to be supplanted must have been shown to be either "unwilling or incapable of acting in good faith toward compliance with the judgment," Alisal Water Corp., 326 F. Supp. 2d at 1012.

Although no case has held that a finding of contempt is a prerequisite to receivership, receiverships are a remedy that can be imposed when an official refuses to comply with a court order. Some courts have made such findings an important consideration if not a prerequisite:

> When more traditional remedies such as further injunctive orders and contempt proceedings have not succeeded in obtaining compliance, "a court of equity is justified, particularly in aid of an outstanding injunction, in turning to less common ones, such as receivership, to get the job done." Morgan v. McDonough, 540 F.2d 527, 533 (1st Cir.1976). In this case, the Superior Court acted well within the scope of its discretion in appointing a

receiver after Emerson failed to comply with the preliminary injunction. Emerson, 563 A.2d at 767. Refusal to obey a court order was also a consideration in Gibbs, 573 N.E.2d at 67.

The court when exercising equitable powers must still "balance the equities." The harm to the public interest must be outweighed by the benefit of the remedy. Further, it must have been shown that the harm will recur unless equity intervenes.

### D. Merits and Desirability of Receivership in the Instant Case

The Magistrate's Report did not consider in detail the merits of receivership versus its recommended remedies. His conclusion was that receivership " simply should not be an option for the people of Guam." Magistrate's Report at 30. The Magistrate has concluded that the first order of business is enactment of legislation that would create the following conditions: (a) official statement of policy of the Guam Legislature with respect to closure of the Ordot Landfill and the establishment of a new landfill; (b) removal of legal doubts about the legal validity of the Solid Waste Operations Fund; c) re-constitution of the Solid Waste Management Division as a public corporation under the jurisdiction of the Consolidated Commission on Utilities.

It is submitted that the installation of a receiver at this time will not increase the certainty that the foregoing events will occur. There has been no evidence or allegation that the managers in place since the entry of the Consent Decree have sought or intended to impede such a legislative process.

In fact, since the Magistrate's Report was issued, the Governor has formed a Law Review Commission, a bill has been introduced into the Legislature to cure legal problems with the current Solid Waste Management Act, and the Law Review Commission has drafted a

law to form a public corporation for solid waste management (all discussed below). Hence, the Government has taken important steps in-line with the Magistrates' Report.

### E. Identification of a Receiver; Costs and Logistics of a Receivership

The Government as yet has not been able to identify potential preferred qualified candidates for the position of receiver if the Court were to impose a receivership. The Department of Public Works and Guam Environmental Protection Agency have been asked to consider the question and make inquiries with appropriate individuals and organizations. The Government will continue to respond to the matter.

The cost of receivership would be costs in addition to all other costs of compliance with the Consent Decree. At a minimum there would be the following additional costs: (a) the receiver's salary; (b) office space and equipment; (c) the salaries of staff and consultants that the receiver may require; and (d) the cost of contracts to private firms for conducting various operations required by the receiver.

## III. MAGISTRATE'S REPORT AND RECENT ACTION

### A. Legislation.

The Magistrate recommended formation of a Law Review Commission to draft legislation to replace Article 1 of the Solid Waste Management Act (P.L. 24-139 and P.L. 24-272) and to reconstitute SWM as a public corporation.

Within two weeks after the Magistrate's Report was issued, without waiting for a further court order, the Governor issued Executive Order 2007-09, which established a Law Review Commission (LRC) to draft legislative policy addressing the closing of the Ordot landfill, the creation of a new solid waste site and the waste to energy contract that is now before various Guam courts. Attachment I, Perez Declaration. Since its inception, the LRC

has been meeting at least once a week. Perez Declaration. On many occasions it has met twice a week and has even met three times in one week. *Id.*

The LRC has prepared draft legislation to establish a public corporation and autonomous instrumentality of the government of Guam called the "Guam Recycling and Solid Waste Authority" (RASA). *Id.*, Attachment II. RASA would have the powers and duties now exercised by SWM. RASA is under a seven member board to be appointed by the Governor with the advice and consent of the Legislature.

Senator Espaldon is the Chairperson for the LRC. Perez Declaration. At the first 2007 regular session of the Legislature, the Senator introduced Bill 58. *Id.*, Attachment III. The proposed law is titled, "The Solid Waste Management Act of 2007." The Bill will remedy the concerns raised by the Magistrate regarding the status of Public Laws 24-139 and 24-272 and subsequent amendments thereto. See Magistrate's Report at 14-17.

In his fiscal year 2008 budget bill (Bill 143), the Governor asked for a $4 million appropriation from the general fund "to the Department of Public Works for costs associated with the Consent Decree relative to closing the Ordot Dump." However, no money was appropriated for this purpose in the fiscal year 2008 budget law. Perez Declaration.

**B. Public Corporation**

The Magistrate recommended the formation of a public corporation under the Guam Consolidated Commission on Utilities (CCU) to replace SWM. Forming a new public corporation and autonomous agency of the government of Guam to take over the tasks now preformed by the SWM Division of DPW is a reorganization of the executive branch of the government. 5 GCA § 11103(b)(1) & (7). The Organic Act gives the power of reorganization to the Governor of Guam.

> The Governor shall, from time to time, examine the organization of the executive branch of the government of Guam, and shall determine and carry out such changes therein as are necessary to promote effective management and to execute faithfully the purposes of this chapter and the laws of Guam.

Organic Act of Guam § 1422c(c). Guam law provides that the Legislature must approve a government reorganization. 5 GCA § 11103(a).

As mentioned above, the LRC has already prepared draft legislation to establish RASA, a public corporation under a seven person board appointed by the Governor with the advice and consent of the Legislature. Under the draft legislation, Guam is divided into three districts – northern, central and southern. Each district would have one board member. The other four board members would be chosen from the general public without regard to location. Perez Declaration, Attachment II at 5. Having at least one board member from each of the three island districts will insure that all areas of Guam are represented on RASA's governing body, including the South which has a much smaller population than the other areas but is the area where Layon is located.

The CCU, which oversees the Guam Power Authority and the Guam Waterworks Authority, is comprised of five commissioners elected at-large in a general election. 12 GCA § 79101. An at-large election, of course, does not insure that all areas of the island would be represented on a governing board for solid waste. Indeed, the area most effected by a landfill in Layon, the South, with its much smaller population, may have no say whatsoever regarding the new landfill.

It is a well established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs. Rizzo v. Goode, 96 S.Ct. 598, 608 (1976) (District Court erred in injecting itself, by injunctive decree, into the internal

disciplinary affairs of a state agency, i.e., the municipal police department). Federal Courts should always seek to minimize interference with the legitimate state activities in tailoring remedies. *Stone v. City and County of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992). In employing their broad equitable powers, federal courts should exercise the least possible power adequate to the end proposed. *Id.* In this case, the LRC, which has members from the Legislative and Executive Branches of the Government, has made a policy decision regarding the make up and selection of the governing body of RASA. Although the Unites States may have a different view, this feature regarding the reorganization of SWM should be left to the Governor and the Legislature acting in accord with the Organic Act and the laws of Guam.

**C. Billing and Collection.**

The solid waste billing and collection systems for both residential and commercial customers have already been outsourced to a private company. Perez Declaration.

**D. Commercial Haulers.**

DPW has prepared an invitation for bids for solid waste collection which has been submitted to the General Services Agency of the Department of Administration for review. *Id.*

**E. Site Acquisition.**

As was stated at the October 23, 2007 status hearing, a hydro-geologic study at the Layon site is in progress and is scheduled for completion in December 2007. *Id.* The study covers a nine month period and is intended to insure that a new landfill will not contaminate water sources in the area. *Id.* Nine months is required in order to monitor and analyze water flow during different seasons. *Id.* The study will have an impact on the design and location, or footprint, of a new landfill at Layon. *Id.* Because the results of the study may affect the footprint of the landfill, acquisition of the property has been delayed. *Id.* Moving forward

with condemnation of property before the study is completed would be putting the cart before the horse and may cause future delay and expense in order to redo the appraisal and condemnation. *Id.* Once the precise location of the site is determined, the Government can move forward to condemn the property by first obtaining an appraisal of the property after entering into a contract with an appraiser through the procurement process and then beginning condemnation proceedings. *Id.* The Government understands that at monthly meetings, it will keep the Court appraised of the progress of the hydro-geologic study and the progress toward site acquisition. *Id.* The Government believes that this monitoring of the progress toward site acquisition by the Court is preferable to the unrealistic deadline of 60 days requested by the United States. The Magistrate recommended that within 120 days *after the creation of the new corporation*, the Government should have negotiated the acquisition of the Layon site or have initiated condemnation. In its response to the Magistrate's Report, the United States did not object to this timeline or recommend another timeline. However, the United States now wants to significantly shorten the timeline recommended by the Magistrate and proceed with condemnation of the site before there is a complete understanding of the hydrogeology in the area and the environmental requirements. The Government submits that it is best to allow completion of the hydrogeologic study, which is due next month, before proceeding with condemnation.

**F. Financial plan.**

The previous financial plan is now outdated. The Government agrees that a new financial plan should be prepared. The Government submits that once a new public corporation is formed, it should seek to obtain the funds necessary to procure the services of a financial planner to create a new financial plan.

## IV. CONCLUSION

Neither the Magistrate nor the United States requests installation of a receiver at this time. The Government respectfully requests that the Court not appoint a receiver, but instead monitor the Government's progress as the Magistrate has recommended and the Court has indicated it intends to do through monthly status hearings and field trips.

Respectfully submitted this 5th day of November, 2007.

OFFICE OF THE ATTORNEY GENERAL
**Alicia G. Limtiaco, Attorney General of Guam**

By: *[signature]*

**J. PATRICK MASON**
Deputy Attorney General