RONALD J. TENPAS
Acting Assistant Attorney General
Environment & Natural Resources Division
ROBERT D. MULLANEY
Environmental Enforcement Section
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California 94105
Tel: (415) 744-6483
Fax: (415) 744-6476

LEONARDO M. RAPADAS
United States Attorney
MIKEL SCHWAB
Assistant United States Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez
Hagåtña, Guam 96910
Tel: (671) 472-7332
Fax: (671) 472-7215

Attorneys for United States of America

**ORIGINAL**

**FILED**
DISTRICT COURT OF GUAM
NOV - 9 2007
JEANNE G. QUINATA
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> GOVERNMENT OF GUAM, <br><br> Defendant. | CIVIL CASE NO. 02-00022 <br><br> UNITED STATES' REPLY BRIEF IN RESPONSE TO STATUS HEARING <br><br> Date: November 20, 2007 <br> Time: 9:00 a.m. <br> Judge Tydingco-Gatewood |

## I. Introduction

As recent headlines emphasize, Guam's trash problems remain urgent and systemic: "Fire at Ordot dump raises big stink" and "Trash woes blamed on cash shortage." Pacific Daily News, Nov. 9, 2007. A prompt path to compliance with the Consent Decree must be found.

Accordingly, the United States submits this reply brief to highlight four issues raised by the Government of Guam's ("GovGuam") Supplemental Brief that this Court will need to resolve. First, GovGuam acknowledged that the Guam Legislature had appropriated no money from the general fund for the fiscal year 2008 to the Department of Public Works ("DPW") for the closure of the Ordot Dump. The Consent Decree required closure of the Ordot Dump by October 23, 2007. Without funds in fiscal year 2008, however, DPW cannot even begin any of the preparatory tasks that are necessary to close the Ordot Dump.

Second, in its fiscal year 2008 budget bill, the Guam Legislature forbade DPW to spend any money on site-specific preparation or design work relating to the new landfill site until GovGuam owns the property. Given the financial constraints placed on GovGuam's expenditures at Layon, it is difficult to understand how DPW can pay for the hydrogeological study that is scheduled to be completed in December 2007. It appears that any further preparatory or design work for the new landfill would necessarily be halted by the lack of funds. Therefore, the Guam Legislature has apparently created yet another impediment to hinder GovGuam's compliance with the Consent Decree.

Third, contrary to its representations to this Court at the March 2007 hearing, GovGuam now argues that a hydrogeological study at Layon is a necessary prerequisite to commencing a condemnation action. After review of the proposed study, the U.S. Environmental Protection Agency ("EPA") has concluded that the hydrogeological study may affect the design of the base liner of the new landfill, but will not impact the location of the landfill, which necessarily includes land to serve as a buffer zone for the landfill's footprint. The Court should not countenance any further delays in GovGuam's acquisition of the Layon site.

1

Finally, GovGuam continues to object to the Magistrate Judge's Report and Recommendations ("Report"), which directed that the new solid waste public corporation should be subject to oversight by the Consolidated Commission on Utilities ("CCU"). As explained below, the three Guam regulatory agencies most familiar with DPW's operations and solid waste management issues on Guam -- the Guam Public Utilities Commission ("PUC"), the Guam Environmental Protection Agency ("Guam EPA"), and the Guam Office of the Public Auditor -- all recommended CCU oversight of a new solid waste public corporation. Moreover, the CCU has a proven track record because it has served in this oversight role for both Guam Waterworks Authority ("GWA") and the Guam Power Authority ("GPA").

In light of GovGuam's failure to comply with the Consent Decree in this case, the Court has the authority to exercise its broad equitable remedial powers to ensure GovGuam's compliance with the Consent Decree. As shown below, the Court's intervention is necessary to compel progress in this case.

II. **GovGuam Failed to Appropriate any Funds for the Closure of the Ordot Dump for 2008 despite its Obligation under the Consent Decree to Close Ordot Dump.**

According to GovGuam, the Governor asked for a $4 million appropriation from the general fund to DPW for costs associated with the Consent Decree's obligation to close the Ordot Dump. Perez Decl., ¶ 6. The Consent Decree required Ordot's closure to take place on October 23, 2007. Decree, ¶8.h. However, the Guam Legislature did not appropriate any money for this purpose in Public Law 29-19, the fiscal year 2008 appropriations bill. Perez Decl., ¶ 6.

EPA believes that DPW's 100% design for the closure of the Ordot Dump, which was submitted in September 2005, is outdated and needs major revisions, both to reflect the current conditions at the Dump and to respond to extensive comments from both EPA and Guam EPA. Arora Decl., ¶12.[1] Moreover, DPW should undertake activities related to the preparatory work

---

[1] Although DPW has been working for more than a year on an amendment to its contract with its contractor in order to respond to EPA's and Guam EPA's comments, the amendment has not yet been exercised and the contractor's work is not yet under way. Arora Decl., ¶12.

2

needed to close the Ordot Dump such as slope stabilization, covering the slopes where waste is exposed, and developing access routes for heavy construction equipment. Id. at ¶13. Unfortunately, DPW apparently does not even have the money to repair its trash collection trucks. Without an appropriation from the Legislature, it does not seem likely that DPW will make any progress on closing the Ordot Dump in fiscal year 2008. This continuing delay demonstrates once again the pressing need for a drastic change in GovGuam's priorities.

In his Report filed on July 6, 2007, Magistrate Judge Manibusan posed the apt question: **"Is closure of the Ordot Dump truly a priority of the Defendant, GovGuam?"** Report at 23 (emphasis in original). The Guam Legislature seems to have answered that question two months later in Public Law 29-19, which became law on September 30, 2007. By appropriating nothing for the closure of the Ordot Dump for fiscal year 2008, GovGuam has demonstrated that it has not taken any meaningful steps to insure compliance with the Consent Decree, which is a final judgment and an Order of this Court. Decree at 26. This Court has "broad equitable remedial powers" to enforce the consent decree in this case. Stone v. City and County of San Francisco, 968 F.2d 850, 861 (9th Cir. 1992). The Court's intervention is necessary here.

III. **The Appropriations Bill for 2008 Does Not Permit GovGuam to Spend any Funds on Site-specific Preparation or Design Work for the New Landfill until GovGuam Has Acquired the Site.**

In contrast to its failure to appropriate funds for the closure of the Ordot Dump, the Guam Legislature did address funding for work for the new landfill site in Public Law 29-19, the appropriations bill for fiscal year 2008. Specifically, Section 98(b) of Public Law 29-19 included the requirement that GovGuam "shall not expend funds on site-specific preparation, design work, mitigation, infrastructure upgrade or installation, or construction of a new landfill, unless the Government of Guam has acquired and recorded fee simple ownership of the property in question." Arora Decl., Exh. 1 at 123. The Consent Decree required GovGuam to operate the new landfill by September 23, 2007. Decree, ¶9.i. Instead of seeking to expedite GovGuam's compliance, however, the Guam Legislature chose to place additional hurdles in DPW's path.

3

According to Larry Perez, DPW's Director, a hydrogeological study is being conducted at Layon, which is scheduled to be completed in December 2007. Perez Decl., ¶8. However, in its brief, GovGuam did not discuss the impact of the appropriations bill on this study. Conceivably, the money for the hydrogeological study was already approved and paid before the appropriations bill became law on September 30, 2007. By the breadth of the appropriation bill's prohibition, however, the Legislature apparently intended to stop the expenditure of any funds for preparatory or design work at the Layon site until GovGuam has acquired the site. As noted above, GovGuam seems to have set up large barriers to the construction of the new landfill. On the one hand, GovGuam claims that it cannot acquire the site for the new landfill until it conducts further hydrogeological studies, but on the other hand, the Guam Legislature appears to have prohibited the expenditure of funds on the site until GovGuam owns the property. If both of those positions were allowed to stand, then GovGuam would apparently be unable to acquire the site for the new landfill and to comply with this Court's Decree. Cf. Washington v. Washington State Commercial Passenger Fishing Vessel Assoc., 443 U.S. 658, 695 (1979) (court has authority to remedy violation of federal law even if state law prohibits compliance with federal court's decree).

IV. **GovGuam's Acquisition of the Layon Site Should Not be Delayed until Completion of the Hydrogeological Study.**

According to Mr. Perez, DPW's Director, the Layon hydrogeological study is intended to ensure that a new landfill will not contaminate water sources in the area. Perez Decl., ¶ 8. Mr. Perez opined that the study will have an impact on the design and location of the new landfill. Id. He claimed that moving forward with condemnation of the Layon property would be premature because the results of the study may affect the landfill's footprint. Id.

We believe that this explanation for GovGuam's delay is implausible. The design of the landfill at Layon, which is typical for this kind of landfill, includes a buffer zone of land around the landfill's actual footprint. Arora Decl., ¶ 11. The buffer zone would provide GovGuam the

4

1 flexibility to adjust the landfill's footprint if, although not currently foreseeable, slight
2 adjustments to the current footprint are warranted. Id. Therefore, GovGuam's acquisition of the
3 land for the Layon landfill could start immediately and should be regarded as an independent
4 activity that is not tied to the completion of the hydrogeological study. Id.

5     Furthermore, after review of the scope of the project for the hydrogeological study and
6 after discussions with DPW, Guam EPA, and the study's contractor, EPA concluded that the
7 study would aid in finalizing the design components, which are defined in the study's objectives
8 as the following tasks: (1) to establish design depths of the landfill; (2) to identify if a sub-drain
9 system is needed; and (3) to design the sub-drain system (if needed). Id. at ¶ 10. However, the
10 outcomes of the study have no foreseeable impact on the footprint of the new landfill. Id.
11 Accordingly, GovGuam has no reason to wait for conclusion of the study to commence the
12 condemnation action. The Court should not allow GovGuam to excuse its inactivity based on
13 this study.

14     GovGuam also argues that it should be given 120 days after the formation of the new
15 solid waste public corporation to initiate condemnation, as the Report originally recommended.
16 The United States proposed that this time period be shortened to 60 days after entry of the
17 Court's Order to take into account that the Magistrate's Report was filed 4 months ago.
18 Moreover, unless the Guam Legislature amends Public Law 29-19, GovGuam will need to obtain
19 the Layon site before it can expend any funds on site-specific preparation, design work, or
20 mitigation relating to the site. Therefore, the Court should require GovGuam, within 60 days
21 after entry of the Court's Order, to either negotiate the acquisition of the Layon site or to initiate
22 an eminent domain proceeding to acquire the site.

23 **V.**    **The Court Should Adopt the Report's Recommendation Requiring CCU's Oversight of the New Solid Waste Public Corporation.**

25     In concurrence with the Guam PUC and the United States, the Magistrate Judge
26 recommended that GovGuam propose legislation to reconstitute DPW's Solid Waste

5

Management division as a public corporation subject to the oversight of the CCU. Report at 28. GovGuam objects to oversight by the CCU and would prefer to have a modified version of the status quo: a solid waste public corporation subject to a new Board appointed by the Governor. GovGuam presents the issue of CCU oversight as if the concept were solely attributable to the United States, and argues, based on Stone, that the Court should defer to GovGuam's policy decision. However, GovGuam's reliance on Stone is misplaced. In that case, the Ninth Circuit specifically noted that "federalism concerns do not prevent a federal court from enforcing a consent decree to which state officials have consented." Stone, 968 F.2d at 862 n. 20. The United States supports the Magistrate Judge's recommendation of CCU oversight, which is solidly justified, based not only on the experiences, observations, and recommendations of Guam's regulatory agencies, but also on the track record of CCU.

More than a year ago, the Guam Public Utilities Board ("PUC") sought implementation of the following recommendation for DPW's Solid Waste Management ("SWM") division: "[I]t is critical that the legislation recommended in the audit report be implemented . . . *paramount of which is the recommendation that SWM be reconstituted as a public corporation under the governance of the Consolidated Commission on Utilities.*" PUC Order, Docket 06-2, September 28, 2006 (emphasis in original); see U.S. Subm. of Authorities (filed 1-31-07), Exh. 9 at 1. In addition, the Guam EPA, in its September 2006 Guam Integrated Solid Waste Management Plan, also recommended that solid waste management should be transferred to a public corporation under CCU's oversight. Arora Decl., Exh. 2 at 21-22. Finally, the Guam Office of the Public Auditor, in its August 2007 Performance Audit of DPW's Commercial Tipping Fees, stated its "agreement with PUC's rationale to realign DPW's SWM division as a public corporation under the auspices of the CCU." OPA Report No. 07-08 (August 2007) at 17 (see Court Document #138). Therefore, Guam's regulatory agencies, which are most familiar with DPW's operations and solid waste management issues on Guam, uniformly supported CCU's oversight of the new solid waste public corporation. The Magistrate's recommendation is derived from and consistent

6

with the well-founded views of Guam's own regulatory agencies.

In his Report, the Magistrate Judge stated that the reconstitution of SWM as a public corporation was intended to "address its organizational deficits, to improve the quality of SWM's services to its residential customers, and to establish a reliable billing and collection system -- all of which are critical prerequisites for obtaining the bond financing necessary to pay for the Consent Decree projects." Report at 28. All of the problems of SWM noted by the Magistrate Judge -- its organizational deficits, the poor quality of its service, and its inadequate billing and collection service -- occurred and continue to occur while SWM is in its present organizational form. The United States continues to support the Magistrate Judge's recommendation as an appropriate and necessary response to the current crisis in solid waste management on Guam.

In contrast to the new, untested board proposed by GovGuam, the CCU has a proven track record in its oversight of GWA and GPA, which are both Guam public corporations. The CCU's oversight experience would be directly relevant to its proposed role in this case. For example, while subject to CCU's oversight, GWA not only had to manage its compliance with this Court's Stipulated Order for Preliminary Relief in <u>United States v. Guam Waterworks Authority and Government of Guam</u>, Civ. No. 02-00035, it also had to raise funds for compliance through the issuance of bonds. As an autonomous elected body, the CCU would be in a better position to apply its independent judgment to issues affecting solid waste disposal operations on Guam, and to reach decisions about policies, rates, tipping fees, and personnel/contractor needs that are operationally driven rather than politically driven.

VI. **Conclusion**

For the reasons stated herein, the United States requests the Court to adopt the Magistrate Judge's Report and Recommendation, as modified in accordance with recommendations in our supplemental brief, as an Order of this Court. The people of Guam, especially the residents in the vicinity of the Ordot Dump, deserve to see their government take immediate and concrete

7

steps to resolve this issue at long last.

Respectfully submitted this 9th day of November 2007.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: *(signature)*
MIKEL W. SCHWAB
Assistant U.S. Attorney

8