1

2

3

4

5

6                                DISTRICT COURT OF GUAM

7                                 TERRITORY OF GUAM

8

9

10

11   UNITED STATES OF AMERICA

              Plaintiff,                          Civil Case No. 02-00022
12

             vs.
13
     GOVERNMENT OF GUAM,                           **NOTICE OF RECEIPT OF EX PARTE**
14                                                 **LETTER AND COMPACT DISC**

15            Defendant.

16

17
            In the interest of full and complete disclosure, the court hereby advises the parties that it
18
     received the letter and compact disc attached hereto from Jose S.N. Chargualaf,  who
19
     delivered them to the chambers of the Chief Judge.
20

21

22

23

24

25                                               **/s/ Frances M. Tydingco-Gatewood**
                                                    **Chief Judge**
26                                               **Dated: Dec 12, 2007**

27

28

JOSE S.N. & LOLITA B. CHARGUALAF
457 San Nicolas Rd., Malojloj
POB 170152, Inarajan, Guam 96915
Ph/Fax: (671) 828-1217
e-Mail: malojloj@msn.com

19 November 2007

Honorable Judge Tydingco-Gatewood
United States District Court of Guam
Agana, Guam

Your Honor:

It has come to a point and I find it very compelling to write you this letter regarding very crucial
concerns of the site selected for the island's landfill in Dandan

I have been following the landfill project from July 2004 and to this date have yet to see any
hydrological findings of the conditions and characteristics of the water features, where and how
the water table beneath the footprint of the landfill moves in any known direction.

I have a copy of the Brown & Caldwell Report dated June 14, 2005.  This particular report was
requested by Mr. David Craddick former Guam WaterWorks Authority General Manager relative
to the water resources in the Inarajan area and Ugum    This report specifically reviewed the Draft
Supplemental Environmental Impact Statement from Department of Public Works  and sited
major hydrological concerns not addressed on the EIS.   One major concern is the groundwater
beneath the footprint of the proposed landfill.

I am prepared to prov ide you a copy of the Brown & Caldwell Report and also electronic data
of the rivers and wetlands for your review.

Thank you very much as I am only concern in protecting the Inarajan and Ugum Watersheds.
These are the best possible sites for any present & future water development for the southern
community.

Page 1

RECEIVED
NOV 2 0 2007
DISTRICT COURT OF GUAM
HAGATNA, GUAM

In closing I respectfully ask that you give me this opportunity as time is running out due to the urgency of closing the Ordot Dump and opening a new landfill. Dangkulo Na Si Yuus Maase and thank you for receiving this letter of appeal.

Sincerely,

Jose S.N. Chargualaf,
Concern Resident of Malojloj, Inarajan

JSNC:lbc
11/07

Page 2



June 14, 2005


Mr. David Craddick, General Manager
Guam Waterworks Authority
P.O. Box 3010
Hagatna, Guam 96932                                                        127553.120

Subject:  Draft Supplemental Environmental Impact Statement (SEIS) for the Siting
of a Municipal Solid Waste Landfill Facility, Guam.

Dear Mr. Craddick

Brown and Caldwell, as per the amendment to the GWA Master Plan contract, has
reviewed the Draft SEIS for the Siting of a Municipal Solid Waste Landfill Facility in
the Layon area of Dandan, Inarajan, Guam and related pertinent documents. Brown
and Caldwell provides the following comments with respect to potential impacts to
groundwater and surface water resources:

2.2.1    Landfill Design and Operating Features

The SEIS essentially ignores the issue of the high water table and does not
provide an explanation or description of how the excavations will be
maintained dry during installation of the proposed liner system. According to
the discussion in 4.2.1.2 Hydrogeology and Groundwater (see below), the base
of some cells will be at or below the water table rather than above it as shown
in Figure 2-7. In addition, even if dewatering and/or diversion systems can be
devised for during construction of each cell, there should be a discussion on
how the liner system will behave when submitted to the groundwater pressures
after construction, not only at the base of the cells, but also along the side
slopes. In general, there is a lack of construction details in the SEIS. At a
minimum, the slope ratios for the excavation (typically 2:1) and final cover
system (3:1) should be provided.

The proposed minimum slope of the bottom of each cell (0.5%) may be too
flat to convey the leachate generated to the single collection sump for each cell
and prevent the ponding of leachate on the liner. Ponding would likely lead to
migration of leachate to groundwater.

Groundwater beneath new lined landfills becomes impacted mostly by
migration of VOCs within landfill gas (LFG). The vapor permeability of liner
systems is greater that the liquid permeability, especially when the landfill gas is

Mr. David Craddick
June 14, 2005
Page 2

not properly collected and a significant positive pressure (i.e. driving force) is produced within the landfill. Section 4.2.1.4 of the SEIS indicated that only 80% of the LFG generated would be collected by an active extraction system. Therefore, 20% of the LFG generated would be available for migration and release into the environment, including downward to groundwater.

3.2.1.2  Hydrogeology and Groundwater – Aquifers (in Chapter 3.0 Affected Environment)

The Draft SEIS characterizes the volcanic geological formation at Layon as not supporting aquifers from which groundwater can easily be extracted. However, this opinion appears to be based on a single U.S. Geological Survey well in 1971, the construction details of which are not provided. Furthermore, the SEIS acknowledges that faults and fissures may harbor a potentially exploitable aquifer (p. 3-7), and apparently no groundwater recovery tests were performed in the deep borings at Layon.

Without a thorough groundwater resource evaluation, it is not possible to rule out sufficient yields from deep wells for municipal supply or other development. In fact, wells have provided local water sources in the past in southern Guam (i.e. Malojloj), and others (Asalonso, GORCO and Talofofo) may have use in the future, according to the pre-draft Guam Water Budget Report (Mink and Yuen, Inc., April 2005) prepared for the GWA Water Resources Master Plan (Brown and Caldwell, in preparation). Although GWA's Fena surface water reservoir and Ugum diversion currently supply southern Guam, future needs may require groundwater development. Since groundwater beneath Layon falls within the G-1 Resource Zone category, it must be protected to drinking water quality standards.

Groundwater

Water table depths and elevations at Layon are provided in Table 3-1, but dates of the measurements are not provided in the SEIS or in the Final Site Selection Report (SSR)/EIS. Unless the dates of measurement are close to simultaneous or other data to document consistent water table elevations are available, the groundwater contours in Figure 3-2 are unreliable.

Without separate measurements of distinct seasonal groundwater elevations, seasonal flow northward beneath the drainage divide into the Ugum River drainage cannot be ruled out. Although the Final Site Selection Report/EIS (GDPW, 2005) states that "based on the groundwater levels recorded at the site, a groundwater hydraulic divide exists between the Ugum River and the landfill footprint that will isolate groundwater flows from the landfill to the

6/14/2005 P:\127000\127553  GWA\127553.12C- GWA LF SEIS Review.doc\wAbww

Mr. David Craddick
June 14, 2005
Page 3

Ugum River", no such hydraulic groundwater divide is shown or apparent
from the groundwater contours shown on Figure 3-2 of the SEIS. In fact, the
contours indicate that groundwater from beneath the North site would flow
northeast toward the Ugum River drainage.

Proximity to Drinking Water

The SEIS acknowledges that the Inarajan River has been identified as a
potential site for a surface water dam and/or reservoir. SEIS Figure 3-1 also
shows proposed reservoir and/or diversion sites on the Tinago River that have
been previously studied (Barrett, 1994) and are included in the pre-draft Guam
Water Budget Report (Mink and Yuen, Inc., 2005). Both of these proposed
sites would be downstream of the proposed landfill site. In spite of the SEIS
claim that "no plans are currently in place to develop groundwater or surface
water supplies in the Layon area" (p. 3-9), GWA considers both of the above
proposed reservoir and/or diversion sites as potentially viable and necessary
for the future water supply needs. In fact, the pre-draft Guam Water Budget
Report (Mink and Yuen, Inc., 2005) recommends that consideration be given
to investigating the feasibility of diversions at other rivers in addition to the
Ugum, and that opportunities to utilize the existing wells be reexamined (p.4).

The SEIS arguments against groundwater being a potential source of drinking
water are equally unconvincing. No citations or evidence is provided that the
limestone aquifer tapped by the Malojloj wells is either limited in extent or that
groundwater within it is not continuous with that in the volcanic formations in
the Layon area. In addition, until a groundwater exploration program
specifically designed to locate (using geologic mapping and geophysical tools)
and drill test faults and fractures in the Umatac Formation is conducted,
previous well yields do not rule out development of an economic groundwater
resource in either the limestone or volcanic aquifers of Southern Guam. The
GORCO well produced over 100 gallons per minute (gpm) (Mink and Yuen,
Inc., 2005), which is evidence that well yields comparable to northern Guam
are possible.

3.2.2.1 Hydrology

The SEIS discounts the development of surface water supplies on the Inarajan
and/or Tinago Rivers, and rules out groundwater flow from the proposed
landfill site to the Ugum River. As detailed above, these statements are not
defensible based on the data presented in the SEIS and SSR/EIS and above in
this letter.

Case 1:02-cv-00022     Document 176     Filed 12/12/2007     Page 6 of 8

Mr. David Craddick
June 14, 2005
Page 4


3.2.2.2 Water Quality

The SEIS correctly states that the Inarajan River could potentially be
developed as a water source (p. 3-17) (in contradiction of statements to the
contrary in previous SEIS sections).

4.2.1.2 Hydrogeology and Groundwater (in Chapter 4.0 Environmental Consequences)

The SEIS correctly notes that the Guam EPA's preferred hydrogeologic
conditions of a deep water table and thick, low permeability deposits with a
confining layer over any water bearing zone are not present at the site, and that
in fact groundwater at the Layon footprint is at ground surface in some
locations. Since the landfill base is to be located on average of 15 feet below
grade, it is unclear how the landfill base could be maintained above the water
table. Further, since seasonal fluctuations in groundwater levels have not been
established, the basis for designing landfill cells to maintain separation between
the base of the landfill and the water table at each cell is lacking. Since
groundwater could flow north to the Ugum River, this issue should be of
concern to the GWA.

4.2.2.2 Water Quality

The SEIS correctly acknowledges that minor long-term adverse impacts to
water quality would occur throughout the life of the project from both erosion
and leachate discharge. These impacts could affect GWA's ability to develop
either surface water or groundwater resources downgradient of the site.

To summarize, the SEIS generally provides an incomplete and inadequate
hydrogeological characterization of the proposed landfill site and its potential impacts
on both groundwater and surface water resources.

Thank you for the opportunity to review and comment on the Draft SEIS. Should
you have any questions, please contact me at 925-210-2408.

Very truly yours,

BROWN AND CALDWELL

Martin G. Steinpress, P.G., CHG.
Chief Hydrogeologist

cc:    Ray Matasci

