ORIGINAL

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division
ROBERT D. MULLANEY
Environmental Enforcement Section
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California 94105
Tel: (415) 744-6483
Fax: (415) 744-6476

LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant United States Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez
Hagåtña, Guam 96910
Tel: (671) 472-7332
Fax: (671) 472-7215

Attorneys for United States of America

FILED
DISTRICT COURT OF GUAM
JAN 0 8 2008
JEANNE G. QUINATA
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL CASE NO. 02-00022 |
| Plaintiff, | UNITED STATES' BRIEF REGARDING CIVIL CONTEMPT AUTHORITY |
| v. | |
| GOVERNMENT OF GUAM, | |
| Defendant. | |

On December 14, 2007, the Court issued an "Order re: Conditions to Enforce Consent Decree," directing the parties to file a brief concerning the extent of the Court's civil contempt powers. In particular, the parties were ordered to address: (1) the entity or person(s) who may be held in contempt, and (2) the appropriate sanctions that may be imposed. The United States submits this brief in response to the Court's Order.

## I. THE COURT'S CIVIL CONTEMPT AUTHORITY

A district court has the inherent power to enforce its order through civil contempt, Shillitani v. United States, 384 U.S. 364, 370 (1966), and "has wide latitude in determining whether there has been contemptuous defiance of its order." Gifford v. Heckler, 741 F.2d 263, 266 (9th Cir. 1984). In addition, pursuant to 18 U.S.C. § 401(3), a district court is authorized to "punish by fine or imprisonment, or both, at its discretion, such contempt of its authority" that involves "disobedience or resistance to its lawful . . . order, rule, decree, or command." "Section 401 applies to both criminal and civil contempt and contains no limitation on the power of the district court to impose fine *or* imprisonment for a violation." United States v. Powers, 629 F.2d 619, 624 (9th Cir. 1980) (emphasis in original). The district court's contempt finding and imposition of sanctions are reviewed for an abuse of discretion. Stone v. City and County of San Francisco, 968 F.2d 850, 856 (9th Cir. 1992).

As the Ninth Circuit has concluded, "[a]bsent a stay, 'all orders and judgments of courts must be complied with promptly.'" Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Cir. 1983) (citation omitted). "Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 440 (2004); see also Hutto v. Finney, 437 U.S. 678, 690 (1978). Accordingly, courts have relied on an inherent contempt authority as a power necessary to carry out the duties imposed on them by law and to exercise all other powers. International Union, UMWA v. Bagwell, 512 U.S. 821, 831 (1994); Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450 (1911); see Nehmer v. U.S. Dept. of Veteran Affairs, 494 F.3d 846, 860 (9th Cir. 2007) (district

1

court has inherent authority to enforce compliance with a consent decree and to hold parties in contempt for violating the terms therein).

"Civil contempt occurs when a party fails to comply with a court order." General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir. 1986).[1]/ Sanctions for indirect civil contempt (i.e., those occurring out of court) "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." Bagwell, 512 U.S. at 827 and n.2. In a civil contempt proceeding, the moving party has the burden of showing by clear and convincing evidence that the alleged contemnor violated a specific and definite order of the court. F.T.C. v. Affordable Media, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999). After the movant establishes a prima facie case, the burden then shifts to the contemnor to demonstrate "categorically and in detail" why it was unable to comply. N.L.R.B. v. Trans Ocean Export Packing, Inc., 473 F.2d 612, 616 (9th Cir. 1973). The contemnor must show that it has "performed 'all reasonable steps within [its] power to ensure compliance' with the court's orders." Stone, 968 F.2d at 856 (citation omitted). The failure to comply does not need to be intentional (id.), "and there is no good faith exception to the requirement of obedience to a court order." In re Dual-Deck Video Cassette Antitrust Litigation, 10 F.3d 693, 695 (9th Cir. 1993). In determining whether the contemnor has taken every reasonable step to comply, the court should consider both the contemnor's history of noncompliance and the contemnor's failure to comply despite the pendency of the contempt motion. Stone, 968 F.2d at 857; Balla, 869 F.2d at 472 (historic failure to comply is relevant in fashioning remedy).

A demonstration that compliance is impossible is a defense in a civil contempt proceeding. United States v. Rylander, 460 U.S. 752, 757 (1983). However, the impossibility defense does not apply when "the person charged is responsible for the inability to comply." United States v. Asay, 614 F.2d 655, 660 (9th Cir. 1980). Thus, in Hook v. Arizona Dept. of

---

[1]/ "[A] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." Balla v. Idaho St. Bd. of Corrections, 869 F.2d 461, 465 (9th Cir. 1989) (citation omitted).

2

Corrections, 107 F.3d 1397, 1403-04 (9th Cir. 1997), the court rejected a state director's claim that compliance was impossible because state law had prevented him from paying for special masters appointed pursuant to the court's order. See also Affordable Media, LLC, 179 F.3d at 1239, 1241 (rejecting impossibility defense because defendants' inability to comply with the court's order was the intended result of their own action); Delaware Valley Citizens' Council v. Com. of Pa., 678 F.2d 470, 475-76 (3d Cir. 1982) (court rejects state's argument that compliance was impossible because state legislature had prohibited expenditure of state funds); Halderman v. Pennhurst State School & Hospital, 673 F.2d 628, 638 (3d Cir. 1982) (impossibility defense limited to "literal physical impossibility of compliance" and not to a subsequent change in law that allegedly makes compliance impossible). Moreover, as the court observed in U.S. v. State of Tenn., 925 F. Supp. 1292, 1302 (W.D. Tenn. 1995), "[c]ourts have been particularly unsympathetic to purported excuses for less-than-substantial compliance where the contemnor has participated in drafting the order against which compliance is measured."

## II. THE PARTIES WHO MAY BE HELD IN CONTEMPT

In construing a consent decree, courts use contract principles. Thompson v. Enomoto, 915 F.2d 1383, 1388 (9th Cir. 1990). As the Supreme Court stated, "[c]onsent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms." United States v. Armour & Co., 402 U.S. 673, 681 (1971). Similar to a contract, therefore, "the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it . . . [T]he instrument must be construed as it is written." Id. at 682; see also Nehmer, 494 F.3d at 861.

In this case, the parties specifically provided that the "Consent Decree shall apply and be binding upon the Government of Guam and its boards, directors, agencies, authorities, departments (including and not limited to DPW and the Guam Environmental Protection Agency ("GEPA")), and their successors and assigns . . . ." Consent Decree ¶2. Accordingly, the Government of Guam ("GovGuam") itself is bound by the Consent Decree and may be held in

3

contempt. Because GovGuam is bound by the Consent Decree, it cannot rely on any Guam legislative action -- or inaction -- to excuse its violations of the Consent Decree. See, e.g., Hook v. Arizona Dept. of Corrections, 107 F.3d at 1403-04; Delaware Valley Citizens' Council, 678 F.2d at 475-76; Halderman, 673 F.2d at 638. Finally, the Department of Public Works director and the GEPA director, among others, are personally bound to comply with the Consent Decree.

A district court may also enforce a judgment against a non-party in limited circumstances. In order to be found in contempt, a non-party must either abet the defendant in violating the court's order or be legally identified with him, and have notice of the order. Peterson v. Highland Music, Inc., 140 F.3d 1313, 1323 (9th Cir. 1998). Moreover, "[t]he Supreme Court has repeatedly emphasized the broad equitable powers of the federal courts to shape equitable remedies to the necessities of particular cases, especially where a federal agency seeks enforcement in the public interest." S.E.C. v. Wencke, 622 F.2d 1363, 1371 (9th Cir. 1980); see also S.E.C. v. Hickey, 322 F.3d 1123, 1131 (9th Cir. 2003) (authorizing asset freeze of third party to effectuate relief); Federal Trade Com'n v. Productive Marketing, Inc., 136 F. Supp. 2d 1096, 1111-12 (C.D. Cal. 2001) (court held non-party in civil contempt for failure to turn over assets of defendant).

### III. AVAILABLE SANCTIONS FOR CIVIL CONTEMPT

"Sanctions for civil contempt may be imposed to coerce obedience to a court order . . . ." General Signal Corp., 787 F.2d at 1380. Civil contempt sanctions are conditional and must be lifted if the contemnor obeys the court's order. Powers, 629 F.2d at 627; see United States v. United Mine Workers of America, 330 U.S. 258, 331 (1947) ("Where the court exercises such coercive power . . . for the purpose of compelling future obedience, those imprisoned 'carry the keys of their prison in their own pockets'"). In determining how large a coercive sanction should be, the court should consider the "character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction." Id. at 304.

The Ninth Circuit has recognized that "[d]istrict courts have broad equitable power to

4

order appropriate relief in civil contempt proceedings." Hickey, 322 F.3d at 1128. Similarly, the Supreme Court has emphasized the power of a district court to grant the relief that is necessary to remedy civil contempt and to effectuate compliance with its decree: "The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. They may entail the doing of a variety of acts . . . ." McComb v. Jacksonville Paper Co., 336 U.S. 187, 193-94 (1949). Consequently, "[i]n exercising remedial powers in civil contempt proceedings, courts may require the contemnor to perform various affirmative acts, even though these actions were not mandated by the underlying decree." In re Arthur Treacher's Franchise Litigation, 689 F.2d 1150, 1159 (3d Cir. 1982).

As an initial sanction for civil contempt, courts typically impose coercive fines. See, e.g., Spallone v. U.S., 493 U.S. 265, 272 (1990) ($100 per day, to be doubled for each consecutive day of noncompliance); United Mine Workers, 330 U.S. at 305 ($2.8 million fine); and Hook, 107 F.3d at 1400 ($10,000 per day). Courts have sometimes directed that these fines be used to remedy the problem underlying the contempt finding. See, e.g., Local 28 of Sheet Metal Workers' Intern. Ass'n v. E.E.O.C., 478 U.S. 421, 435, 443-44 (1986) (fine placed in a fund to remedy discrimination at union); Stone, 968 F.2d at 854 (fines placed in fund to be used to reduce prison population levels); and Halderman v. Pennhurst State School and Hospital, 526 F. Supp. 423, 427 (E.D. Pa. 1981) (fines used to pay special master required by court order).

If the initial fines are not effective in effectuating compliance, courts have indicated that higher fines or imprisonment may be imposed. See Reynolds v. Alabama Dept. of Transportation, 10 F. Supp.2d 1263, 1282 (M.D. Ala. 1998). As the court emphasized in U.S. v. State of Tenn., 925 F. Supp. at 1303, the range of civil contempt sanctions available to courts is broad, and includes "fine, imprisonment, receivership, and a broader category of creative, non-traditional sanctions." For example, in dealing with the State of Pennsylvania's failure to comply with a consent judgment requiring the implementation of an inspection and maintenance program for auto emission systems, the court in Delaware Valley Citizens' Council found the state in civil

5

contempt and ordered the U.S. Secretary of Transportation to refrain from awarding any federal highway funds to the state. 678 F.2d at 474. In other cases, courts have also imposed civil contempt sanctions broader than the traditional coercive fine. See, e.g., F.T.C. v. Gill, 183 F. Supp.2d 1171, 1186 (C.D. Cal. 2001) (in addition to coercive fines, court ordered rescission of all contracts and appointed a permanent receiver); Glover v. Johnson, 934 F.2d 703, 715 (6th Cir. 1991) (appointment of special administrator); and U.S. v. City of Detroit, 476 F. Supp. 512, 516, 520 (E.D. Mich. 1979) (court appointed administrator to secure compliance with the court's judgment).

## IV. CIVIL CONTEMPT SANCTIONS AGAINST A GOVERNMENT DEFENDANT

In fashioning an appropriate remedy against a government entity, a district court must "take into account the interests of state and local authorities in managing their own affairs, consistent with the Constitution." Milliken v. Bradley, 433 U.S. 267, 280-81 (1977). In addition, "the use of the contempt power places an additional limitation on a district court's discretion" because "in selecting contempt sanctions, a court is obliged to use the 'least possible power adequate to the end proposed.'" Spallone, 493 U.S. at 276.

In Spallone, the district court had found both the city and individual city council members in contempt for violation of its order, imposing monetary sanctions against the city and the individuals. The Supreme Court denied the city's request to stay the sanctions but reversed the sanctions against the individuals, concluding that the district court "should have proceeded with such contempt sanctions first against the city alone in order to secure compliance with the remedial order. Only if that approach failed to produce compliance within a reasonable time should the question of imposing contempt sanctions against [the council members] even have been considered." Id. at 280.

The Ninth Circuit also addressed the issue of the appropriate civil contempt sanction to impose on a government entity in Stone, 968 F.2d 850. In that case, the City and County of San Francisco had entered a consent decree governing population levels permitted in the city's

6

prisons. After the city had repeatedly violated the decree, the district court found the city in contempt because it had not taken all reasonable steps to comply with the population limits. The court imposed two separate sanctions: (1) a daily fine for each day that the city violated the prison population limits, which would be placed in a fund to be administered by the city and used to reduce the prison population levels; and (2) an expansion of the sheriff's power to allow him to override state law to release prisoners to reduce the prison population. Id. at 853 n. 3, 854.

The Ninth Circuit affirmed the finding of contempt, did not disturb the daily fine, and discussed at length the propriety of the district court's early release order. The court noted that "federal courts should always seek to minimize interference with legitimate state activities in tailoring remedies." Id. at 861. After recognizing the federalism concerns involved in institutional reform litigation, the court stated these concerns "do not automatically trump the powers of the federal courts to enforce the Constitution or a consent decree." Id. "Moreover, several courts have held that federalism concerns do not prevent a federal court from enforcing a consent decree to which state officials have consented." Id. at 862 n.20. After weighing the competing interests, the Ninth Circuit concluded that the district court "should have waited until the threat of sanctions failed to induce compliance before authorizing the state-law-override provisions." Id. at 864. Furthermore, the district court should have first made a finding that other alternatives were inadequate before authorizing the sheriff to override state law. Id. Notably, the Ninth Circuit did not rule out the possibility that a state law override might be necessary in the future to assure compliance if other alternatives proved to be inadequate. Id.; see also Washington v. Washington State Commercial Passenger, 443 U.S. 658, 695 (1979) ("State-law prohibition against compliance with the District Court's decree cannot survive the command of the Supremacy Clause of the United States Constitution"); Labor/Comm. Strategy v. L.A. County Metro. Transp., 263 F.3d 1041, 1050-51 (9th Cir. 2001) (affirming district court remedy requiring county to purchase buses to comply with consent decree and concluding that federalism concerns do not prevent court from enforcing a consent decree).

7

In light of <u>Spallone</u> and <u>Stone</u>, the Court should carefully weigh the appropriate sanction in any future civil contempt proceeding in this case, and select the least possible power adequate to the end proposed. If the Court determines that civil contempt sanctions are warranted, the Court should first impose civil contempt sanctions against GovGuam before sanctioning individual directors. See <u>Spallone</u>, 493 U.S. at 280; cf. <u>U.S. v. Voss</u>, 82 F.3d 1521, 1528 (10th Cir. 1996) (court first imposed civil contempt sanctions against defendant corporations before the United States initiated criminal contempt proceedings against individual defendants who were corporate directors). If those sanctions against GovGuam failed to induce compliance, the Court should make a finding that the initial sanctions were inadequate before authorizing additional measures against GovGuam or individuals. <u>Stone</u>, 968 F.2d at 864. The Court's imposition of contempt sanctions is reviewed on an abuse of discretion standard. <u>Id.</u> at 856.

## V. CONCLUSION

The United States is not presently moving the Court to hold GovGuam in contempt. Given EPA's long-standing enforcement efforts and GovGuam's compliance history, however, the United States will closely monitor GovGuam's compliance with this Court's December 14, 2007 Order to assess whether a motion is warranted.

Respectfully submitted this 8th day of January 2008,

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: _____
MIKEL W. SCHWAB
Assistant U.S. Attorney