

Office of the Attorney General
Alicia G. Limtiaco
Attorney General of Guam
Civil Division
287 West O'Brien Drive
Hagåtña, Guam 96910 • USA
(671) 475-3324 • (671) 472-2493 (Fax)
www.guamattorneygeneral.com

Attorneys for the Government of Guam

FILED
DISTRICT COURT OF GUAM
JAN 15 2008
JEANNE G. QUINATA
Clerk of Court

IN THE DISTRICT COURT OF GUAM
TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>GOVERNMENT OF GUAM, )<br>)<br>Defendant. )<br>_____ ) | CIVIL CASE NO. 02-00022<br><br>**GOVERNMENT OF GUAM**<br>**BRIEF RE: CIVIL CONTEMPT** |

In its December 14, 2007 "Order Re: Conditions to Enforce Consent Decree," the Court ordered the parties to file briefs regarding the Court's civil contempt[1] powers. The Government of Guam submits this brief in response to the Court's order.[2]

---

[1] Government of Guam understands civil contempt to mean a sanction that operates coercively because it applies continuously until the defendant performs the affirmative act required by the court; as opposed to a criminal contempt sanction which punishes the contemptor's past disobedience. International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 844-5 (1994), (Ginsburg, J. concurring in part and concurring in judgment).

## I. Consent Decree Provisions

A sanction of civil contempt for a violation of the Consent Decree would be based on the language of the Decree. Consequently, a brief look at some of the relevant provisions of the Decree would be appropriate. The Consent Decree is an agreement entered into by the United States and the "Government of Guam." On behalf of the Government of Guam, it was signed by a prior Attorney General, a prior Interim Director of the Department of Public Works, a prior Administrator of the Guam Environmental Protection Agency and the current Governor.

Regarding the inclusiveness of the Consent Decree, the document provides:

> This Consent Decree contains the entire agreement between the parties and no statement, promise, or inducement made by any of the parties or agent of the parties that is not contained in this written Consent Decree shall be valid or binding, and this Consent Decree may not be enlarged, modified, or altered except by using procedures described in this Consent Decree.

Consent Decree ("CD") ¶ 50 at 24. The parties have not agreed to expand or alter the terms of the Consent Decree.

Under the "Parties Bound" section, the Consent Decree provides:

> This Consent Decree shall apply and be binding upon the Government of Guam and its boards, directors, agencies, authorities, departments (including and not limited to DPW and the Guam Environmental Protection Agency ("GEPA")), and their successors and assigns, and on the United States on the behalf of U.S. EPA.

CD ¶ 2 at 3. Hence, the Government and individual agencies of the Government, rather than specific individuals, are required to perform the various tasks stated in the Consent Decree.

---

[2] This brief was filed and served on January 14, 2008, but it was inadvertently attached to another pleading titled "Guam Environmental Protection Agency Comments Re Ordot Dump Closure Report." Therefore, it is refiled now as a separate document.

The Consent Decree refers to a funding source for implementation of its provisions:

> **WHEREAS**, Guam law, at 10 G.C.A. § 51118, provides for a financing source from tipping and user fees for the Government of Guam costs and expenses directly related to the closure of Ordot Dump and the development, design, construction, and operation of a new sanitary landfill;

CD at 2-3.

The Consent Decree has built-in penalties for failure to meet specified deadlines. *See* CD ¶ 12-15 at 12-14. The Consent Decree also has a provision for additional remedies:

> Stipulated penalties are not the Plaintiff's exclusive remedy for violations of this Consent Decree. The United States expressly reserves the right to seek any other relief it deems appropriate, including, but not limited to, action for statutory penalties, contempt, or injunctive relief *against the defendant*.

(italics added). CD ¶ 16 at 14. Thus, the "other relief," including contempt, authorized by the Consent Decree would be against the defendant Government of Guam.

## II. The Court's Civil Contempt Authority

"The facts essential to jurisdiction for a contempt proceeding are (1) the making of the order; (2) knowledge of the order; (3) ability of the respondent to render compliance; (4) willful disobedience of the order." (citations and internal quotes omitted). <u>Anderson v. Superior Court</u>, 80 Cal.Rptr.2d 891, 894 (Ct. App. 1998).

The case now before this Court, of course, involves the additional aspect of an exercise of federal judicial power over a government with inherent sovereignty, similar to the sovereignty of a State. *See* <u>Marx v. Government of Guam</u>, 866 F.2d 294 (9th Cir. 1989). When exercising its power to enforce a remedial order, a federal court "must exercise '[t]he least possible power adequate to the end proposed." <u>Spallone v. United States</u>, 493 U.S. 265, 280 (1990); *see also* <u>Stone v. City and County of San Francisco</u>, 968 F.2d 850, 861 (9th Cir. 1992).

In exercising its least intrusive option, a federal court should at least make a finding that other alternatives were inadequate. *Id.* at 864.

"It is well established that before one may be punished for contempt for violation a court order, the terms of such order should be clear and specific, and leave no doubt or uncertainty in the minds of those to whom it is addressed. (citations)." <u>United States v. Joyce</u>, 498 F.2d 592, 596 (7th Cir. 1974). Civil contempt is appropriate only when a party fails to comply with a court order that is both specific and definite. <u>Gates v. Shinn</u>, 98 F.3d 463, 472 (9th Cir. 1996) (holding that consent decree standard of "appropriate level of psychiatric evaluation and treatment" for prisoners was insufficiently specific to uphold a contempt order). In considering a civil contempt order based upon a consent decree, the Court must look to the language of the consent decree. Courts must find the meaning of a consent decree "within its four corners," and not by reference to the court's purposes or the purpose of the party seeking to hold the other in contempt. *Id.* 468.

Due process requires rigorous procedural safeguards before a party is found in contempt. In <u>International Union, United Mine Workers of America v. Bagwell</u>, 512 U.S. 821(1994) (holding that serious contempt fines of $52 million for violations of labor injunction were criminal and could only be imposed through a jury trial), the Supreme Court addressed the procedures required for adjudication of indirect contempts, i.e., those occurring out of court. *Id.* at 827 n. 6. "Contempts involving out-of-court disobedience to complex injunctions often require elaborate and reliable factfinding." *Id.* at 833-34. In <u>Bagwell</u>, the substantial fine imposed by the court was considered a criminal sanction requiring a jury trial. In his concurring opinion, Justice Scalia makes the following comment on out-of-court contempt allegations involving complex injunctions:

> When an order governs many aspects of a litigant's activities, rather than just a discrete act, determining compliance becomes much more difficult. Credibility issues arise, for which the factfinding protections of the criminal law (including jury trial) become much more important. And when continuing prohibitions or obligations are imposed, the order cannot be complied with (and the contempt "purged") in a single act; it continues to govern the party's behavior, and pain of punishment-not unlike the criminal law.

Id. at 843 (Scalia, J., concurring in part and concurring in judgment).

Hence, under Bagwell, when acts allegedly constituting contempt do not occur in the presence of the court, do not obstruct the court's immediate ability to adjudicate pending proceedings, and require elaborate and reliable factfinding, then due process requires criminal-like procedural protections.

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." F.T.C. v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999) (citing Stone v. City and County of San Francisco, 968 F2d 850, 856 n.9 (9th Cir. 1992).

In a civil contempt proceeding, a defendant may assert a present inability to comply with the order in question. U.S. v. Rylander, 460 U.S. 752, 757 (1983). "The power to impose coercive sanctions to compel obedience to an order in a civil contempt is limited by the individual's ability to comply with the court's order. (citations)." Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 781 (9th Cir. 1983). Prior to issuing a coercive civil contempt order, the court should weigh all the evidence properly before it and determine whether or not there is actually a present ability to obey and whether failure to do so constitutes deliberate defiance or willful disobedience which a coercive sanction will break. Id. n. 6.

In <u>Hook v. Arizona Dept. of Corrections</u>, 107 F.3d 1397 (9th Cir. 1997), cited by the United States, the court drew a distinction between physical impossibility of compliance with a court order and a subsequent change in the law that allegedly makes compliance illegal. In <u>Hook</u>, a statute enacted subsequent to a consent decree and court injunctions, prohibited payment of fees incurred by special masters appointed by a federal court without a State legislative appropriation. Although ordered to do so, a state official did not pay the fees of the court appointed special master.

The official argued that he was unable to get an appropriation to pay the fees. The court found that compliance was not physically impossible since funds were available and the bills were eventually paid. The court noted that the official did not assert that the State had insufficient funds and was financially incapable of making the payments. Hence, inability to comply with the order had not been shown. Of note is the fact that <u>Hook</u> only involved the payment of the special master's fees, not the payment of millions of dollars which is needed to close the Ordot Dump and open a new landfill.

Although financial constraints may not be used to justify the creation or perpetuation of constitutional violations, they are a legitimate concern of government defendants in institutional reform litigation and therefore are appropriately considered in tailoring a consent decree modification. <u>Rufo v. Inmates of Suffolk County Jail</u>, 502 U.S. 367, 392-3 (1992). This principal can also be applied to civil contempt sanctions for violation of a court order. In fashioning its orders for enforcement the Consent Decree, the Court should take into consideration the Government of Guam's financial constraints.

In assessing the Government of Guam's ability to comply with the Consent Decree, the Court can also consider substantial compliance. Substantial compliance with a consent decree

judgment is an acceptable defense to a motion for civil contempt. Hallett v. Morgan, 296 F.3d 732, 750 (9th Cir. 2002).

The United States cites In re Arthur Treacher's Franchise Litigation ("Arthur Treacher's"), 689 F.2d 1150, 1159 (3rd Cir. 1982) for the proposition that in exercising remedial powers in civil contempt proceedings, courts may require the contemnor to perform affirmative acts, even though the acts were not mandated by the underlying decree. U.S. Br. Re Contempt Auth. at 5. Arthur Treacher's involved a temporary restraining order which was continued indefinitely by the consent of the parties. The court applied a clear and convincing standard of proof in determining whether a violation of both the letter and spirit of the judge's order had occurred. *Id.* at 1156-7. The court found that even though neither the restraining order nor the underlying franchise agreement required continuation of the franchisee's approved supplier, the district court did not exceed its powers when it required the franchisor to reinstate the supplier. The court pointed out that its order merely maintained the status quo of the parties. Hence, the court ordered an affirmative act (reinstatement of the franchise supplier), even though the act was not mandated by the underlying decree. The court did not order anything beyond the original status quo of the parties. Additionally, the affirmative act did not involve the expenditure of large sums of money to employ private companies in order to carry out the un-mandated requirement of the court.

### III. Who May be Held in Contempt

The Consent Decree provides for its own built-in penalties for failure to meet specified deadlines. CD ¶ 12 at 12-13. Although the United States reserves the option of asking for contempt against the Government of Guam, fines are the primary remedy for failure to meet requirements mandated by the Consent Decree. Financing has been a major problem

in complying with the Consent Decree. Therefore, it is doubtful that additional fines against the Government for contempt will assist in accomplishing the Consent Decree goals. Also, the United States has not, at this time, asked the Court for a finding of contempt against the Government of Guam.

Since the Consent Decree provides for penalties solely against the defendant Government of Guam, the Government of Guam does not concede that it would ever be proper or appropriate to hold an individual government official or employee in contempt based on the provisions of the Consent Decree. Additionally, as is pointed out by the United States, Spallone instructs that the Court must look to the Government of Guam to secure compliance before even considering a sanction against an individual. *Id.* 493 U.S. at 280.

Respectfully submitted this 14th day of January, 2008.

OFFICE OF THE ATTORNEY GENERAL
**Alicia G. Limtiaco, Attorney General of Guam**

By: _____
**J. PATRICK MASON**
Deputy Attorney General