RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division
ROBERT D. MULLANEY
Environmental Enforcement Section
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California 94105
Tel: (415) 744-6483
Fax: (415) 744-6476

LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant United States Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez
Hagåtña, Guam 96910
Tel: (671) 472-7332
Fax: (671) 472-7215

Attorneys for United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> GOVERNMENT OF GUAM, <br><br> Defendant. | CIVIL CASE NO. 02-00022 <br><br> UNITED STATES' REPLY BRIEF REGARDING CIVIL CONTEMPT AUTHORITY |

The United States submits this reply brief in response to the Court's "Order re: Conditions to Enforce Consent Decree," issued on December 14, 2007. In this brief, the United States addresses the following points: (1) the status of the Government of Guam's ("GovGuam") compliance efforts with the Court's Order; (2) the entity or person(s) who may be held in contempt of the Court's Order; and (3) the procedural standards for a civil contempt proceeding.

## I. GOVGUAM'S COMPLIANCE EFFORTS

In determining whether a contemnor has taken every reasonable step to comply with a court order, a court should consider both the contemnor's history of noncompliance and the contemnor's failure to comply despite the pendency of the contempt motion. Stone v. City and County of San Francisco, 968 F.2d 850, 857 (9th Cir. 1992); Balla v. Idaho St. Bd. of Corrections, 869 F.2d 461, 472 (9th Cir. 1989) (historic failure to comply is relevant in fashioning an effective remedy). Accordingly, GovGuam's compliance with the Court's Order is briefly reviewed herein.

### A. The Hydrogeological Report and Final Design for the Dandan Site

In its Order, the Court noted that work on the hydrogeological study and the final design of the Layon site had been halted due to lack of payment by GovGuam. The Court required GovGuam to submit a written progress report by January 8, 2008, regarding the status of payment to its contractor, the hydrogeological study, and the final design. The Court expressed its deep concern about "legislation enacted that seemingly prohibits the opening of the new landfill." Order at 3 n.2. Regarding the lack of payment to the Guam Department of Public Works' ("DPW") contractor, the Court specifically stated that "resolution of this issue should be undertaken by both the executive and legislative branches of the Government of Guam." Order at 3.

In its report filed on January 8, 2008, GovGuam stated that DPW issued a stop work order to its contractor in November 2007 as a result of Section 98, Chapter VI of Public Law 29-19 ("Section 98"). GovGuam Progress Report at 3. GovGuam noted that Section 98 did not

1

permit any funds to be spent on site-specific preparation or design for the new landfill. Consequently, due to the passage of Section 98, DPW's contractor "is not doing any work to complete the hydrogeological study and report or to complete the final design for a landfill at Dandan (Layon)." Id. at 4.

More than a month has now passed since the Court issued its Order stating that resolution of the contractor payment issue should be undertaken by both the executive and legislative branches of GovGuam. Despite the Court's Order, GovGuam has apparently not taken any steps to address Section 98, which has acted as an impediment to any progress in constructing and operating the new landfill since November 2007.

B. The Ordot Dump Closure Report

The Court required GovGuam to file an Ordot Dump Closure Report by January 8, 2008, containing a "list of required actions that are needed to prepare the Ordot Dump site for closure and a schedule that corresponds to the implementation and completion of each action." Order at 5. On January 14, 2008, the United States provided the U.S. Environmental Protection Agency's ("EPA") comments on the Closure Report, noting its deficiencies. The United States believes that the Closure Report does not comply with the Court's Order and must be revised to provide a detailed action plan and an associated implementation schedule to prepare the Ordot Dump site for closure. Guam EPA provided additional comments on the Closure Report. GovGuam should take EPA's and Guam EPA's comments into account and revise its Closure Plan accordingly.

II. THE PARTIES WHO MAY BE HELD IN CONTEMPT

In construing a consent decree, courts use contract principles. Thompson v. Enomoto, 915 F.2d 1383, 1388 (9th Cir. 1990). As GovGuam stated, the Consent Decree in this case was signed by GovGuam's Attorney General, its Governor, an interim Director of DPW, and Guam EPA's Administrator. In addition, the Consent Decree specifically addresses the "Parties Bound" as follows:

2

> This Consent Decree shall apply and be binding upon the Government of Guam and its boards, <u>directors</u>, agencies, authorities, departments (including and not limited to DPW and the Guam Environmental Protection Agency ("GEPA")), and their successors and assigns . . . .

Consent Decree at ¶2 (emphasis added). This Court retained jurisdiction to handle any disputes that arise under the Decree, Consent Decree at ¶59, and has the inherent power to enforce its order through civil contempt. Shillitani v. United States, 384 U.S. 364, 370 (1966). Under the terms of the Decree, which is an Order of this Court, GovGuam and individual directors are specifically bound by the Decree's terms and are subject to the Court's inherent power to enforce its orders.[1]

As we stated in our opening brief, however, the Court should carefully weigh the appropriate sanction in any future civil contempt proceeding in this case, and select the least possible power adequate to the end proposed. Spallone v. U.S., 493 U.S. 265, 276 (1990). If the Court determines that civil contempt sanctions are warranted, the Court should first impose civil contempt sanctions against GovGuam before sanctioning individual directors. Id. at 280. If those sanctions against GovGuam failed to induce compliance within a reasonable time, the Court should make a finding that the initial sanctions were inadequate before authorizing additional measures against GovGuam or individuals. Stone, 968 F.2d at 864.

### III.  PROCEDURAL STANDARDS FOR CIVIL CONTEMPT

GovGuam mistakenly relies on a California state court decision, Anderson v. Superior Court, 80 Cal. Rptr. 2d 891, 894 (Cal. Ct. App. 1998), for the proposition that a demonstration of "willful disobedience" is required in a civil contempt proceeding. However, a failure to comply with a court order need not be intentional for a finding of civil contempt. General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir. 1986). Not only is intent irrelevant, good faith

---

[1] A court may also enforce a judgment against a non-party in some limited circumstances. See Peterson v. Highland Music, Inc., 140 F.3d 1313, 1323 (9th Cir. 1998) (non-party must have notice of the order and either abet the defendant in violating the order or be legally identified with him).

3

efforts to comply do not constitute a defense to excuse noncompliance. Stone, 968 F.2d at 856.

GovGuam also argues that due process requires rigorous procedural safeguards before a party is found in contempt. In this regard, GovGuam has apparently conflated the standards for criminal and civil contempt. Rigorous procedural safeguards are applicable for serious criminal contempt proceedings involving imprisonment of more than six months; these safeguards include Constitutional protections such as the right to a jury trial. International Union, UMWA v. Bagwell, 512 U.S. 821, 826-27 (1994). As the U.S. Supreme Court explained in Bagwell, a civil contempt proceeding is subject to different standards:

> In contrast, civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required.

Id. at 827.

According to Ninth Circuit precedent, the moving party has the burden in a civil contempt proceeding of showing by clear and convincing evidence that the alleged contemnor violated a specific and definite order of the court. F.T.C. v. Affordable Media, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999). After the movant establishes a prima facie case, the burden then shifts to the contemnor to demonstrate "categorically and in detail" why it was unable to comply. N.L.R.B. v. Trans Ocean Export Packing, Inc., 473 F.2d 612, 616 (9th Cir. 1973). The contemnor must show that it has "performed 'all reasonable steps within [its] power to ensure compliance' with the court's orders." Stone, 968 F.2d at 856 (citation omitted). A district court's imposition of contempt sanctions is reviewed on an abuse of discretion standard. Id.

## IV. CONCLUSION

As we stated in our opening brief, the United States is not presently moving the Court to hold GovGuam in contempt. However, GovGuam's continued noncompliance with this Court's December 14, 2007 Order will weigh heavily in the United States' assessment whether a motion

4

is warranted.

Respectfully submitted this 17th day of January 2008,

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: _____
MIKEL W. SCHWAB
Assistant U.S. Attorney

5