IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL CASE NO. 02-00022 |
| Plaintiff, | ) | |
| v. | ) | **ORDER RE: PUBLIC LAW 29-19** |
| GOVERNMENT OF GUAM, | ) | |
| Defendant. | ) | |

On January 24, 2008, the parties came before the court for a status hearing. At that time the Government of Guam informed the court that there has been no further progress on the completion of the hydrogeological study of the proposed landfill site at Dandan. The Government of Guam blamed the restrictions contained in Section 98 of Public Law 29-19 for the lack of progress. As set forth herein the court declares Section 98 of Public Law 29-19 unconstitutional and void under the Supremacy Clause.

## BACKGROUND[1]

The Ordot Landfill (Ordot Dump) is owned and operated by the Government of Guam and was opened in the early 1950s. Although it reached capacity in 1986, it continues to receive virtually all of the industrial and municipal waste from the civilian population of Guam. What was once a valley is now at least a 280-foot mountain of trash.

---

[1] Much of the background section is adopted from the Report and Recommendation filed by U.S. Magistrate Judge Joaquin V.E. Manibusan, Jr. and is incorporated herein. *See* Docket No. 125. The court notes that although the parties raised objections to the recommendations there were no objections to Judge Manibusan's factual findings.

When the dump was opened, there were no environmental safeguards implemented to ensure against possible contamination. It is unlined at its bottom and uncapped at its top. As a result of this, the dump acts like a sponge, absorbing rain water and releasing it after it has percolated through the landfill and picked up contaminants.

The Ordot Dump has a long history of operational and environmental problems. The site was eventually declared a Superfund site by the U.S. EPA. (Docket No. 49) at 3. In 1986, the U.S. Environmental Protection Agency ("U.S. EPA") issued an administrative order under the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1387, directing the Guam Department of Public to cease discharges of leachate from the Ordot Dump by May 1, 1987, but DPW failed to comply with this order. *See* Consent Decree (Docket No. 55) at ¶4.

The U.S. EPA issued another administrative order on July 19, 1990, requiring, among other things, that DPW submit plans and a compliance schedule for a cover system for the Ordot Dump and complete construction of the cover system to eliminate discharges of untreated leachate by June 30, 1992. *See* Complaint (Docket No. 1) at ¶29; Answer (Docket No. 7) at ¶10; and Consent Decree (Docket No. 55) at 2. The U.S. EPA approved an extension of this deadline to August 15, 1992. *See* Lee Decl. (Docket No. 75) at ¶5. The extended deadline was missed and the capping of the Ordot Dump never occurred. *Id.*

In April 1997, the U.S. EPA amended the 1990 administrative order to require the submission of a schedule by July 9, 1997, for the design and construction of a cover system to eliminate the untreated leachate discharges from the Ordot Dump. *See* Complaint (Docket No. 1) at ¶31; Lee Decl. (Docket No. 75) at ¶6. Although DPW submitted a proposed schedule, the U.S. EPA rejected the schedule in September 1997 because it lacked funding commitments to make the plan credible. *Id.*

After years of inaction and noncompliance with its administrative orders, the United States initiated the present action by filing a complaint on August 7, 2002,[2] asserting claims under the

---

[2] Prior to filing the complaint herein, the United States and the Government of Guam officials engaged in intense negotiations for two years. At the conclusion of the negotiations, the United

CWA. In filing the complaint, the United States intended to force the closure of the Ordot Dump and guide the opening of a new municipal solid waste landfill ("MSWLF") that complied with federal environmental laws and regulations to avoid further environmental degradation of Guam. The suit sought to force such closure by requesting a court order requiring the Government of Guam to take any measures needed to eliminate the un-permitted discharges. The complaint sought both injunctive relief and civil penalties well above $50 million.

Beginning in November 2002, the parties participated in settlement conferences facilitated by Chief Judge Unpingco. The negotiations spanned approximately one year and involved a concerted effort by various agencies of the Government of Guam. The end product of these negotiations was a Consent Decree.

In December 2003, the Consent Decree was lodged with the court. The final Consent Decree was the product of arm's length negotiations after close and careful scrutiny, with both parties represented by counsel and engineers. Following publication on the Federal Register and a period of public comment, on February 11, 2004, the court approved and entered the Consent Decree (Docket No. 55).

Among other things, the Consent Decree established a schedule for the closure of the Ordot Dump and the construction and operation of a new conforming MSWLF. According to this schedule, DPW was required to submit by December 2004, a draft closure plan that included a site investigation, an environmental baseline survey, and the design of a landfill cover system and operational plans to implement measures to stop discharge of pollutants. *See* Consent Decree (Docket No. 55) at ¶8(a)(i). Once the closure plan was approved, DPW was required to award a construction contract for the closure of the Ordot Dump by April 2006. *Id.* at ¶8(g).

Additionally, by March 2004, DPW was to submit a list of three potential landfill sites to the U.S. EPA and GEPA. *Id*. at ¶9(a). After an environmental impact study ("EIS") was completed,

---

States submitted a proposed consent decree to the Government of Guam for its approval and signature. The proposed Consent Decree was not signed until January 2003, just prior to former Governor Carl T.C. Gutierrez leaving office. The parties agreed to undergo further settlement negotiations with then Chief Judge John S. Unpingco in light of the change in administration.

DPW was required to advise the U.S. EPA of the preferred site. *Id.* at ¶9(b).[3]/ No later than August 2005, DPW was to submit to the U.S. EPA a draft plan for the design, construction, and operation of the new MSWLF, which included a site investigation and survey and a hydrogeologic/subsurface investigation. *Id.* at ¶9(c). By October 2006, DPW was required to award a construction contract for the new MSWLF. *Id.* at ¶9(h). The Consent Decree required operations at a new sanitary landfill to begin by September 23, 2007, with operations at the Ordot Dump to cease by October 23, 2007. *Id.* at ¶¶8(i) and 9(i).

The Government of Guam has now missed many of the deadlines under the Consent Decree, most notably the October 2007 deadline for the closure of the Ordot Dump. As a result on December 14, 2007 this court imposed stipulated penalties of over $2.8 million against the Government of Guam for its failures to comply with the mandates of the Consent Decree. (Docket No. 177.)

In the court's order of December 14, 2007, the court urged cooperation between the Legislative and Executive[4]/ branches to work together to close the Ordot Dump and open the landfill at Dandan. There has been no evidence of cooperation in this regard.

In fact, the current Legislature has made it impossible to open Dandan with its enactment of Section 98 of Guam Public Law 29-19 ("Public Law 29-19"), which essentially prohibits the expenditures of funds for any landfill site that the Government of Guam does not yet own. In other words, no expenditures can be made toward the opening of Dandan because the Government of Guam does not yet own the property.[5]/

---

[3]/After completing the studies, the Government of Guam selected the site of Dandan and the U.S. EPA agreed to the selection. The court notes that the site selection process was performed by scientific professionals based upon objective criteria.

[4]/The court commends the Governor of Guam for the commitment he has shown to the closing of the Ordot Dump and the opening of the Dandan site.

[5]/In September, 2007 Public Law 29-19 was enacted, Section 98 of that law provides:

> **(b) Prohibition of Expending Public Funds.** All government of Guam agencies, departments, bureaus, boards, commissions, public corporations, autonomous and semi-autonomous agencies, including . . ., and all other government instrumentalities,

It is undisputed that over the course of the last few years the Government of Guam has spent approximately $10 million in site preparation of Dandan. One of the costs concerned the drafting of a Hydrogeological Report on the Dandan site by Mr. Tor Gudmundsen. The completion and submission of such Report, however, was thwarted by the Guam Legislature's enactment of Section 98 of Public Law 29-19 on September 29, 2007.

With respect to the contract with Mr. Gudmundsen, the Government of Guam has relied upon Section 98 of Public Law 29-19 to justify both the nonpayment to Mr. Tor Gudmundsen for the completion of the Hydrogeological Report and the decision to cease all work related to the Dandan site.

## DISCUSSION

It is clear, as the parties have conceded, that Section 98 of Public Law 29-19 has paralyzed the Government of Guam's ability to comply with the mandates of the Consent Decree. Thus, the issue which must be determined is whether this court has the authority to order the Government of Guam officials to expend funds related to the Dandan site despite the contravening local law found in Public Law 29-19.

Courts have a duty to enforce consent decrees as required by circumstances. *Waste Management of Ohio, Inc. v. City of Dayton*, 132 F.3d 1142, 1146 (6th Cir. 1997). It is well-settled that a state statute (and in this case, a local law) that has the effect of thwarting a federal court order enforcing federal rights "cannot survive the command of the Supremacy Clause of the United States Constitution." *Wash. v. Wash. State Comm'l Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 695 (1979) (citations omitted). In *Washington State Comm'l Passenger,* the Court held that under the

///

---

*shall* not expend funds on site-specific preparation, design work, mitigation, infrastructure upgrade *or* installation, *or* construction of a new landfill, *unless* the government of Guam has acquired and recorded fee simple ownership of the property in question.

5

Supremacy Clause[6]/ of the United States Constitution, a court, in enforcing federal law, may order state officials to act despite contravening state laws. *Id.* Courts may consider *sua sponte* issues touching on federalism and comity. *Stone v. City & County of San Francisco*, 968 F.2d 850, 855 (9th Cir. 1992) (federalism concerns in institutional reform litigation involving correctional facilities do not automatically trump powers of federal court to enforce Constitution or consent decree).

In *Spain v. Mountanos,* 690 F.2d 742 (9th Cir 1982), the Ninth Circuit affirmed the district court's order compelling the State Treasurer to pay attorney's fees to the prevailing party after the State Legislature refused to appropriate the money for such an award. The Ninth Circuit relied upon *Washington State Comm'l Passenger* and further stated that a "state cannot frustrate the intent of section 1988 by setting up state law barriers to block enforcement of an attorney's fees award." *Id.*

A similar case is *Hook v. State of Arizona*, 907 F. Supp. 1326 (D. Ariz. 1995)[7]/, involving a prisoner civil rights case in which a special master was appointed.[8]/ *Id.* at 1331-1321. There, the district court ordered the defendants to pay the special master. However, the Arizona legislature enacted a statute, which prohibited the payment of special master's fees without first obtaining a legislative appropriation for such payment. *Id.* at 1334. In light of the statute, the defendants refused to pay the special master.

---

[6]/Article VI, clause 2 of the United States Constitution provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

[7]/This court notes that both parties cited to *Hook* in their briefs concerning civil contempt and should not be surprised with this court's holding herein.

[8]/The district court appointed the special master pursuant to Fed.R.Civ.P. 53 to monitor and enforce Defendants' compliance with court-ordered remedial measures addressing constitutional violations of prison inmates. The special master was appointed after court monitoring alone had been demonstrated to be inadequate.

The district court found the Director of Arizona Department of Corrections in contempt for refusing to pay the special master's fees. The Director argued that he did not want to violate the state statute, but the court did not accept the "legal impossibility" defense. *Id.* at 1341. The court found that a motion to alter or amend the Stipulated Consent Decree should have been made instead of resorting to "self-help" by stopping the payment of fees to the special master. *Id.*

In addition, the district court found that the Arizona statue was unconstitutional and void because it frustrated the orders of the court requiring the payment of the special master's fees. *Id.* at 1338. The Ninth Circuit affirmed the district court holding that the Supremacy Clause precluded the application of the state statute. *See Hook v. Ariz. Dep't Corrections*, 107 F.3d 1397 (9th Cir. 1997).

Similar to the Arizona legislature in *Hook*, the Guam Legislature has attempted to limit the jurisdiction of this federal court by enacting Section 98 of Public Law 29-19. Specifically, the law divests the Government of Guam's obligation under court order to close the Ordot Dump and open a MSWLF at Dandan as agreed upon by the parties. Insofar as Section 98 of Public Law 29-19 defies the lawful orders of the District Court of Guam requiring compliance with the Consent Decree, it is declared unconstitutional and void. "State legislation must yield under the supremacy clause of the Constitution in the interest of the federal government when the legislation as applied interferes with the federal purpose or operates to impede or condition the implementation of federal policies or programs." *Rust v. Johnson*, 597 F.2d 174, 179 (9th Cir. 1979).

The island community will not sit by and watch the next generation suffer another 25 years by the inaction of the past and present leaders in resolving the issue.[9] Failure to take immediate action puts the public health and welfare at greater risk. Notwithstanding this court's strong respect for the sovereignty of our local government, the court finds it has no alternative but to invoke the Supremacy Clause.

---

[9] The court is concerned that certain members of the Legislature seemingly disregard the mandates of the Consent Decree and the hard work performed by the professionals associated with it. This court respects the process in which Dandan was selected as the new landfill site and will continue to enforce the Government of Guam's selection in this regard.

7

The need for the invocation of the Supremacy Clause is underscored by the conclusions found in the Action Report filed by the Government of Guam on January 22, 2008. The Duenas Bordallo Camacho & Associates Project Team stated that it is imperative that Section 98 of Public Law 29-19 be nullified.

> If the Operation Actions and Pre-Closure Actions recommended are carried out, it is possible to extend the remaining operational life of the Dump beyond the 24 months stated herein. [I]t is important to realize that if such can be accomplished, the technical requirements of design and construction of the new landfill (initial cells) at the Dandan site can likely be accomplished within this period, *provided that such activities be allowed to commence now. This will require the removal of the existing prohibition against expenditure of any funds for the Dandan landfill project that is currently in effect.*

*See* Docket No. 207 at 40.

This court strongly urged the members of the Executive and Legislative branches to cooperate and present a unified solution to the problem. Despite such encouragement, there has been no progress. From the first visit to Ordot Dump on October 23, 2007, to the third site visit on January 23, 2008, the dump has grown significantly.

It is the court's duty under the Supremacy Clause of the United States Constitution to ensure that federal interests and rights are vindicated. The Consent Decree entered into by both the local and federal government is in the public interest and upholds the objectives of the Clean Water Act, that is, "to restore and maintain the chemical, physical, and biological integrity of our waters." 33 U.S.C. § 1251(a).

The Legislature's enactment of Section 98 of Public Law 29-19 cannot be upheld. To do so would risk impairing the Government of Guam's ability to comply with the provisions of the Consent Decree and defeat the purpose of the Clean Water Act.

## CONCLUSION

For the reasons stated above, it is with the utmost resignation that the court finds Section 98 of Public Law 29-19 unconstitutional and void. Accordingly, the Government of Guam is ordered to proceed immediately with the condemnation and purchase of Dandan and to expend the funds necessary for site preparation.

**SO ORDERED.**

/s/ Frances M. Tydingco-Gatewood
Chief Judge
Dated: Jan 24, 2008

8

GUD NT ENT (12/06)

# DISTRICT COURT OF GUAM

**4th Floor, U.S. Courthouse**
**520 West Soledad Avenue**
**Hagåtña, Guam 96910**
**671-473-9100**

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>Government of Guam,<br><br>　　　　　Defendant. | Case No. 1-02-cv-00022 |

# NOTICE OF ENTRY OF ORDER

**NOTICE IS HEREBY GIVEN** that on the date indicated below this court entered on the docket of the above-entitled case the following order:

**Order Re: Public Law 29-19 filed January 24, 2008**
**Date of Entry: January 24, 2008**

The original order is on file at the Clerk's Office of this court. The document may be viewed at the Clerk's Office and is available for viewing on the Internet by using PACER for a fee. Information on the PACER system can be found on the court's web page: **www.gud.uscourts.gov**

**Date:** January 24, 2008　　　　　　　　　　　　　　　　Clerk of Court
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**/s/ Jeanne G. Quinata**