# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL CASE NO. 02-00022 |
| Plaintiff, | |
| vs. | ORDER |
| GOVERNMENT OF GUAM, | re Second Request for Disqualification |
| Defendant. | |

On March 13, 2008, the court received a second letter from Senator Benjamin J.F. Cruz (hereinafter, the "Second Letter") which again questioned my impartiality and requested that I recuse myself from this action as a result of my law clerk's participation in this case.[1]

The District Court of Guam employs several law clerks. Kim Walmsley serves as my career law clerk.[2] Because of the complexity of this case, several law clerks have assisted the court at different stages with the various aspects of the case. Thus, Ms. Walmsley (hereinafter,

---

[1] The Second Letter is attached hereto.

[2] Prior to her employment as a member of my staff, she also worked as a law clerk for the Honorable Michael J. Bordallo at the Superior Court of Guam, a research attorney at the Supreme Court of Guam, and as a law clerk to former Chief Judge John S. Unpingco. During the time frame this court was without a sitting district judge, Ms. Walmsley served as the law clerk to a variety of visiting federal judges – both district judges and circuit judges – for a two-and-one-half-year period. Before receipt of the letters at issue here, Ms. Walmsley's integrity and impartiality with regard to her employment has never been questioned during her more than seven years of service to this court.

"my law clerk") is just one of several law clerks working on this case. She, however, was not and is not the primary law clerk assigned to this case, and thus was not primarily responsible for the research regarding the impact, if any, that Legislative Resolution 103 would have on this action.

The Second Letter raises the same issues that Senator Cruz raised in a letter submitted to the court on February 15, 2008 (hereinafter, the "First Letter"). On February 19, 2008, the court issued an Order which addressed the concerns raised in the First Letter and stated that it would not disqualify itself from further proceeding in this action. *See* Docket No. 228. Because the respect for the judiciary depends upon public confidence in the integrity and independence of judges, I render this decision, addressing the issues brought forth by Senator Cruz, and again denying the request for disqualification.[3]

**A. Arguments**

Senator Cruz asserts that there exists an "inter-relatedness between the Dandan decision and [my law clerk's] vested interest in opposing the construction of a landfill in Guatali." He notes that my law clerk is a resident of Santa Rita village, and that her home is located "in close proximity" to the Guatali landfill site. Senator Cruz also brought to the court's attention that a member of my law clerk's household appeared at a public meeting held by the Mayor of Santa Rita village, and signed a petition opposing the construction of a landfill or incinerator in the village of Santa Rita.

Senator Cruz makes the broad and general assertion that I should be disqualified from this case because of a "conflict of interest" which arises from my law clerk's "vested interest in

---

[3] I hereby incorporate my order issued on February 19, 2008, wherein I denied the first request to disqualify myself from this case; I note too that all parties to this case have received copies of both the First and Second Letters by Senator Cruz. Upon receipt of the First Letter, and having an opportunity to review its contents, each party represented to the court that it had no objections to the court continuing to sit on this case. There are no new facts raised by the Second Letter with regard to my law clerk. *See First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 989 n.8 (9th Cir. 2000) (Recognizing that "[s]ection 455(a) disqualification is one that might be waived under § 455(e) if preceded by full disclosure on the record of the basis for disqualification.")

opposing" the Guatali landfill.

It is well-known that this case stemmed from the Government of Guam's violation of the Clean Water Act, and after many years of litigation, the result was the Consent Decree entered into by the parties in this case, which mandates the closure of the Ordot Dump and the opening of a new landfill. Pursuant to procedures as set forth in the Consent Decree, it is important to keep in mind that the new landfill site in Dandan was selected by the parties to this case. The issue of *where* to place the new landfill has never been, and is not, an issue before this court.

Senator Cruz claims: "[T]he opening of the Guatali landfill would effectively halt the opening of the [Dandan] landfill, would cease all dumping at the Ordot [D]ump, and would end these proceedings." In other words, the Senator appears to argue that the Ordot Dump closure is contingent on the opening of a new landfill, and because my law clerk lives in a community which may one day house a privately-owned landfill (Guatali), and because the potential privately-owned landfill may be built prior to the agreed-upon and proposed Dandan landfill, the issue of the closure of Ordot Dump may turn on whether the potential landfill site in Guatali will be in operation prior to the Dandan landfill site.

As will be discussed, the confusion apparent in the mere reiteration of the Senator's logic as to why my law clerk's disqualification is required underscores that my law clerk's interest in this case, if there exists any at all, is speculative, remote, contingent, and shared by many in the community, and therefore, is not a disqualifying interest.

**B. Discussion**

    **1. Disqualification Law and Standard**

"Judicial impartiality is presumed." *First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 987 (9th Cir. 2000).

Title 28, United States Code, Section 455 enumerates the criteria for mandatory disqualification of all federal judges. Section 455(a) contains a general disqualification provision and mandates disqualification whenever a judge's "impartiality might reasonably be questioned." Next, subsection (b) delineates specific examples of situations where recusal is

- 3 -

required.[4] Section 455(a), in addition to the Code of Judicial Conduct, and the Code of Conduct for Law Clerks, "all place the burden of maintaining impartiality and the appearance of impartiality on the judge and the law clerk." *First Interstate Bank*, 210 F.3d at 987.

The mandate found in Section 455(a) is identical to the one found in Canon 3(E)(1) of the Code of Judicial Conduct. Section 455(a) states: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might

---

[4] Section 455(b) of Title 28, United States Code, states:

[A judge] shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

    (i) Is a party to the proceeding, or an officer, director, or trustee of a party;
    (ii) Is acting as a lawyer in the proceeding;
    (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
    (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

reasonably be questioned." *Cf.* Canon 3(E)(1) ("A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . .").

Similarly, the Code of Conduct for Law Clerks requires a law clerk to avoid impropriety and the appearance of impropriety. Thus, Canon 2 of this Code directs that "[a] law clerk should not engage in any activities that would put into question the propriety of the law clerk's conduct in carrying out the duties of the office. A law clerk should not allow family, social, or other relationships to influence official conduct or judgment. A law clerk should not lend the prestige of the office to advance the private interests of others . . . ."

The court recognizes that "the test for recusal is 'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 714 (9th Cir. 1990) (quoting *Herrington v. Sonoma Cty.,* 834 F.2d 1488, 1503 (9th Cir. 1987)).

A judge's law clerk is forbidden to do all that is prohibited of the judge. *See Price Brothers Co. v. Philadelphia Gear Corp.,* 629 F.2d 444, 447 (6th Cir. 1980), *cert. denied,* 454 U.S. 1099 (1981). Thus, if a law clerk has a conflict of interest, "it is the clerk, not the judge, who must be disqualified . . . ." *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1416 (9th Cir. 1995). Nonetheless, if a conflicted clerk continues to participate in a case, it has been recognized that "[e]ven if the judge has no reason to recuse herself based upon her own circumstances, a law clerk's relationships might cause the impartiality of decisions from that judge's chambers in which the clerk participates reasonably to be questioned." *Id.* This is because law clerks "are sounding boards for tentative opinions and legal researchers who seek the authorities that affect decision. Clerks are privy to the judge's thoughts in a way that neither parties to the lawsuit nor his most intimate family members may be." *Hall v. Small Business Admin.*, 695 F.2d 175, 179 (5th Cir. 1983).

It must be emphasized that the entire question of whether my disqualification is required in this case, as set forth by Second Letter of Senator Cruz, is based solely on the conduct and/or participation of my law clerk in the case at bar. Thus, should there exist no disqualifying conduct on the part of my law clerk, the determination of whether my impartiality might

- 5 -

reasonably be questioned will be unnecessary.

**2. Law Clerk Disqualification Under Sections 455(b)(4) and 455(b)(5)(iii)**

Assuming for purposes of this decision that my law clerk must abide by the same rules of disqualification as set forth in section 455, and without more detailed legal argument by Senator Cruz, it appears that the particular sections of the statute that are called into question are sections 455(b)(4) and 455(b)(5)(iii). Section 455(b)(4) requires that a law clerk recuse herself from a case where she (or certain members of her family or household) "has a financial interest in the subject matter in controversy . . . or any other interest that could be substantially affected by the outcome of the proceeding . . . ." 28 U.S.C. § 455(b)(4). Section 455(b)(5)(iii) requires that a law clerk recuse herself from a case where she (or certain members of her family or household) has "an interest that could be substantially affected by the outcome of the proceeding . . . ." 28 U.S.C. § 455(b)(5)(iii).

**a. Financial interest in the subject matter in controversy**

Section 455(b)(4) requires the disqualification of a judge (or in this case, a law clerk) where the law clerk has a "financial interest in the subject matter in controversy." Title 28 U.S.C. § 455 defines "financial interest" as "ownership of a legal or equitable interest however small."

This is a Clean Water Act case. It is a lawsuit filed by the United States Government, against the Government of Guam, for violations of the Clean Water Act caused by the continued discharge of leachate at the Ordot Dump.

My law clerk clearly does not own a legal or equitable interest, however small, in the subject matter in controversy, and Senator Cruz's letter points to none. Her disqualification under the financial interest standard is therefore not required. *See, e.g.*, *Oglala Sioux Tribe of Pine Ridge Indian Reservation v. Homestake Min. Co.*, 722 F.2d 1407, 1414 (8th Cir. 1983) (holding that the request for disqualification is legally insufficient, the court stated that "[o]wnership of land within the Black Hills area does not qualify as a financial interest in the subject matter in controversy where the disposition of the [plaintiffs'] claim to the land would not affect [the judge's] title in any way.").

### b. Other interest that could be substantially affected

Section 455(b)(4) and (b)(5)(iii) both state that a judge (or, as here, a law clerk) must disqualify herself from a case where she "has an interest that could substantially be affected by the outcome of the proceeding."

It is well-recognized that the disqualifying interest must not be one shared with the general public. That is, "an interest which a judge has in common with many others in a public matter is not sufficient to disqualify him." *In re City of Houston*, 745 F.2d 925, 929-30 (5th Cir. 1984) (citing 48A C.J.S. *Judges* § 123 (1981). The interest of a judge (or law clerk) "as a resident, taxpayer, or property owner is not direct or immediate but remote or contingent, such interest ordinarily is not sufficient per se to disqualify him." *Id.* To be sure, "in view of the statutory requirement that interests must be substantially affected before recusal is required, . . . Congress did not intend to require disqualification in all cases in which the judge might benefit [or suffer detriment] as a member of the general public." *In re New Mexico Natural Gas Antitrust Litigation* 620 F.2d 794, 796 (10th Cir. 1980). As the Tenth Circuit Court of Appeals observed:

> [A]n interest shared by the judge in common with the public is distinguishable for at least two reasons. First, the policy to promote public confidence in the impartiality of the judicial system is not served to as great an extent by disqualifying a judge who would receive only such a benefit. It is not simply a question of de minimis effect; a personal benefit or detriment shared in common with the community at large is perceived to have a different psychological effect on a judge than would a benefit or detriment not so shared.
>
> Second, practical problems abound if recusal is required whenever a judge benefits simply as a member of the common populace. There is much litigation today that can have far-reaching effects on large segments of the nation. For instance, an antitrust suit against a major oil company could reduce gasoline prices within the entire United States, and hence affect the transportation costs of every judge. The rate-making proceedings of public utility commissions throughout the nation are reviewed by the courts in the states involved, where most of the reviewing judges are customers of the telephone, electric, water or gas company; yet there is no suggestion in any cases we have seen that these judges should disqualify themselves. Federal and state judges sit every day on tort, patent or other cases in which potentially large verdicts could affect an insurance or other company's profitability, and the loser is in a position to pass the loss on through higher future costs which increase the judges' cost of living.

*Id.* at 796-97; *see also United States v. Alabama*, 828 F.2d 1532, 1541 (11th Cir. 1987), *cert. denied*, 487 U.S. 1210 (1988) (where the judge's two minor children were members of a class

of all children eligible to attend universities in the Montgomery, Alabama area, the court concluded that the interests of the minor children were not substantial enough to require recusal of their parent because "[a]ny potential interest by the children . . . is shared by all young black Alabamians."); *Alaska Oil Co. v. State of Alaska*, 45 B.R. 358, 360-363 (D.C. Alaska 1985) (denying disqualification where there was a possibility that judge would receive a dividend as an Alaskan resident, because such interest was not a disqualifying financial interest in the subject matter in controversy, and because such interest was one shared with the general public).[5]

Moreover, "where an interest is not direct, but is remote, contingent, or speculative, it is *not* the kind of interest which reasonably brings into question a judge's impartiality." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 -1314 (2nd Cir. 1988) (emphasis added). *See also Herrington*, 834 F.2d at 1503 (finding a judge's security interest in a nearby property too remote), *cert. denied*, 489 U.S. 1090 (1989); *Mavis v. Commercial Carriers, Inc.,* 408 F. Supp. 55 (C.D. Cal. 1975) (district court cannot be disqualified because of ownership of stock in non-party oil company because a remote subsidiary of a corporation with which the oil company had engaged in joint ventures was a party in a proceeding before it); *In re Virginia Elec. & Power Co.*, 539 F.2d 357, 366 (4th Cir. 1976) (affirming trial judge's decision to deny disqualification because "[t]he only interest the judge has in the subject matter is the remote contingent possibility that he may in future share in any refund that might be ordered for all [party] customers. Such a contingent interest does not presently exist and will not be created by any judgment that may be entered in this litigation."); *Christiansen v. National Sav. & Trust Co.*, 683 F.2d 520, 526 (D.C. Cir. 1982) (finding the interest of a judge who was a subscriber to

---

[5] State courts have similarly held that a judge's interest in common with that of the general public in the locale is not a disqualifying interest. *See*, *e.g.*, *Russell v. Wheeler,* 165 Colo. 296, 439 P.2d 43 (1968); *Hidalgo County Water Improvement Dist. No. 2 v. Blalock,* 157 Tex. 206, 301 S.W.2d 593, 596-97 (1957); *City of Valdosta v. Singleton*, 197 Ga. 194, 28 S.E.2d 759 (1944); *Chumbley v. People's Bank & Trust Co.,* 165 Tenn. 655, 57 S.W.2d 787, 788 (1933); *Elliott v. Scott,* 119 Tex. 94, 25 S.W.2d 150, 151 (1930); *Peters v. Meeks,* 171 So.2d 562 (Fla. Dist. Ct. App. 1964).

a health plan in the lawsuit seeking a refund of interest was too remote).

Senator Cruz asserts that because my law clerk resides in the village of Santa Rita, her disqualification is required. The mere fact that my law clerk owns property in the village where a private entity *proposes* to construct a landfill does not give rise to any disqualifying interest. Rather, any interest possessed by my law clerk by the mere fact that she resides in the village of Santa Rita is an interest that is far too remote, contingent, or speculative, and thus, is not the kind of interest which brings into question her impartiality. The contingent and speculative nature of the interest that my law clerk possesses is found on the record of this case – it cannot be disputed that the site selection process is complete and did not involve this court's participation. Rather, Dandan was chosen using the selection process delineated in the Consent Decree. The possibility that another private company may build another landfill in another site in the same village that my law clerk resides bears no relevance to the enforcement of the Consent Decree in place. The possibility that we will have more than one landfill constructed concurrently, and that the Consent Decree may in fact be satisfied by the construction of another landfill in a non-selected site is, at this time, pure speculation. *See In re Virginia Elec. & Power Co.*, 539 F.2d 357.

More importantly, any interest that my law clerk may have by virtue of her residing in Santa Rita may be characterized as an interest in common with many people in the community. The court will take judicial notice that the island in which we live is of such a size that no matter where a new landfill is placed, many residents will be affected. Thus, Senator Cruz's statements that my law clerk has a conflict of interest because she is a Santa Rita resident is insufficient, as every other Santa Rita resident, as well as residents in the surrounding villages, will share the same general interest. Because such an interest is one which is in common with many in the community, the fact that my law clerk is a resident of Santa Rita, alone, is insufficient to warrant her disqualification.[6]

---

[6] Senator Cruz appears to suggest that because of the attendance at a public meeting by a member of my law clerk's household concerning the construction of a landfill in Santa Rita,

**3. The undersigned judge's impartiality under 455(a).**

"Discretion is confided in the district judge in the first instance to determine whether to disqualify [herself]." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2nd Cir. 1988). This is because "[t]he judge presiding over a case is in the best position to appreciate the implications of those matters alleged . . . the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case." *Id.*

As the Judicial Conference's Committee on Codes of Conduct has noted, "[r]espect for the judiciary depends upon public confidence in the integrity and independence of judges. Understanding and observing ethics standards is an important element in upholding the public's confidence and ensuring an independent and honorable judiciary." *Ethics Essentials: A Primer for New Judges on Conflicts, Outside Activities, and Other Potential Pitfalls* (Office of the General Counsel, Administrative Office of the United States Courts) at iv. This court does not take lightly the trust given to it by the public, and thus these ethical principles have been the foundation of every decision made by the court. Having thoroughly investigated the concerns

---

my law clerk should be disqualified. It is important to note that while the activities of a judge and her law clerks are restricted by the Code of Conduct for United States Judges, the Code of Conduct does not govern the conduct of the other members of a judge's (or law clerk's) household. *See* Advisory Opinion No. 53 issued by the Committee on Codes of Conduct of the Judicial Conference of the United States. That is, the restrictions placed on a judge's activities do not necessarily apply to a judge's family members or persons residing in a judge's home. For instance, while Canon 7 directs a judge to refrain from political activity, a judge's spouse may freely contribute to political campaigns and causes so long as the judge disassociates himself or herself from such political activity (such as by playing no role in the decision to contribute and making reasonable efforts to insure that the contribution is perceived as that of the spouse and not the judge). *Id.* The same would hold true for any member of the judge's family or any individual that resides in the judge's home. This same analysis would apply to those individuals residing with my law clerk. Although my law clerk's activities are restricted and her ability to exercise her First Amendment rights of free speech, assembly, and petition are curtailed, the civil rights of those residing with her are not equally confined. No facts have been presented to suggest that my law clerk herself has engaged in any activity prohibited by the relevant rules.

raised in the First and Second Letters, the court finds that a reasonable person with knowledge of all the facts as set forth above would not conclude that this court's impartiality might reasonably be questioned. *Yagman v. Republic Ins.*, 987 F.2d 622 (9th Cir. 1993) (stating the reasonable person standard is to be used with regard to determining a judge's impartiality).

As a judge, I have a duty to sit in all cases that come before me, when there is no legitimate reason to recuse myself. *United States v. Holland*, 501 F.3d 1120 (9th Cir. 2007); *see also In re Drexel Burnham Lambert Inc.*, 861 F.2d at 1312 ("A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is.").

I find that because my law clerk's disqualification is not required by any facts as presented to this court, my derivative disqualification pursuant to 28 U.S.C. § 455 is also not required. Accordingly, I must deny the request to recuse myself from this case.

**IT IS SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
Chief Judge
Dated: Mar 17, 2008

Senator Benjamin J. F. Cruz
ADA PLAZA CENTER
E-MAIL: cjbjcruz@aol.com
PHONE: (671)472-3546/48 • FAX: (671)472-3547

*I Mina'Bente Nuebi Na Liheslaturan Guåhan*
29th Guam Legislature
155 Hesler Place, Hagåtña, Guam 96910
OFFICE: Suite 205 Aspinal Avenue, Hagåtña, Guam 96910

March 11, 2008

The Honorable Frances Tydingco-Gatewood
Chief Judge
District Court of Guam
4th Floor, U.S. Courthouse
520 West Soledad Avenue
Hagatna, Guam 96910

**RECEIVED MAR 13 2008 DISTRICT COURT OF GUAM HAGATNA, GUAM**

Dear Chief Judge Tydingco-Gatewood:

In my letter to you dated February 15, 2008, I informed you that an appearance of a conflict of interest exists with regard to U.S. District Court of Guam Law Clerk Kim Walmsley and her participation in the Consent Decree filed against the government of Guam (*United States vs. Government of Guam*, Civil Case No. 02-00022).

I asked the Court to disclose whether or not Ms. Walmsley has been involved in the research and the writing of any of the court's decisions in this case, including the Court's order regarding Legislative Resolution No. 103. I also asked that the Court divulge or disclose the appearance of this conflict to all parties involved.

Furthermore, I stated that "The judicial office, through the representations of a law clerk, could be used to promote the private interests of others in violation of Canon 2B of the Code of Judicial Conduct. Judges must require their staff 'to observe the standards of fidelity and diligence that apply to him." Canon 3B(2).

In response to this matter, you issued an Order on February 19, 2008, which stated the following:
> Upon review of the contents of the letter and the relevant authorities – including Title 28 United States Code Section 455, which delineates the circumstances upon which a Judge must disqualify him-or-herself from sitting on a case, the Code of Conduct for United States Judges and the Code of Conduct for Judicial Employees – I find that my disqualification from this case is not required.

In the Order, you further stated:
> Because the Government of Guam has selected the new landfill location, and U.S. EPA has approved the selection process and proposed site, the court's involvement in the selection of the landfill site was not required. In other words, whether a landfill or incinerator will be placed in Guatali is not relevant to any issue before this court. At the hearing, the parties similarly agreed that the issues raised by the letter of February 15, 2008 had no relevance to any issue before this court and expressed no concerns or objections to the court's qualification to preside over this action. Additionally, the parties waived the opportunity for additional information or time to consider the matter further.

> For the reasons stated above, and having received no objections from either party as to the qualifications of this judge to continue to preside over this case pursuant to 28 U.S.C. § 455, the Code of Conduct for United States Judges, and



the Code of Conduct, for Judicial Employees, my disqualification from this case is not required.

With all due respect, I disagree with your conclusion that the development of a landfill at Guatali is "not relevant to any issues before this court." The language of the Consent Decree is clear that all dumping at Ordot shall cease once a properly licensed landfill is opened. The Consent Decree at section 10.b. explicitly states:

> Notwithstanding any of the time frames set forth in Paragraph 8 or 9 above, upon the opening of a properly licensed and permitted municipal solid waste landfill prior to the times set forth in Paragraphs 8 and 9 above, no further dumping of any kind will be permitted at the Ordot Dump.

Thus, the opening of any other properly licensed and permitted municipal solid waste landfill, such as the Guatali landfill, is clearly of relevance to this case. As evident from the Comments on Ordot Dump Action Report submitted by U.S. Attorney Leonardo M. Rapadas on January 31, 2008, if the Guatali landfill opens the Dandan/Layon landfill would be financially unfeasible.

According to Item D – Private Landfill, the United States Attorney says:
> The Action Report discusses the option of a "Private Landfill" proposed by Guam Resource Recovery Partners ("GRRP") as an alternative disposal site if the Dandan site is not yet available. Action Report at 31-32. If GovGuam selected this alternative, DPW stated that the required minimum daily waste tonnage for the GRRP landfill would be 300 tons per day and the maximum would be 350 tons per day. Id. at 32. Under this alternative, even the minimum disposal rate would necessarily mean that a significant portion (approximately 80-90 percent) of the Island's trash would be directed to the private landfill. This alternative would seriously limit GovGuam's ability to construct the Dandan landfill because only 10 to 20 percent of the Island's waste stream – and resulting revenue – would be available for the Dandan project.

> Consequently, if the waste stream for Dandan (and revenue from it) is limited to between 50-100 tons per day, it would be difficult for GovGuam to find a private company willing to undertake a "Design-Build-Finance" project for the construction and operation of the Dandan site. In addition, such a low volume of waste and revenue could make it difficult for GovGuam to support a bond for the construction of a landfill at Dandan if no private company is willing to finance the construction and operation. In sum, we believe that the concurrent operation of two landfills on Guam would not be financially viable.

Accordingly, as recognized by the United States Attorney, the opening of a private landfill at Guatali significantly impacts the Dandan/Layon landfill as the earlier opening of the Guatali landfill would effectively halt the opening of the Layon landfill, would cease all dumping at the Ordot dump, and would end these proceedings.

The purpose of the Consent Decree is to resolve the complaint made by the United States concerning violations of the Clean Water Act by continued dumping at Ordot Dump. The



Consent Decree prescribes a process for the closure of Ordot Dump and the opening of a new landfill that would guarantee closure. Although the effort to construct a licensed and permitted municipal solid waste landfill at Guatali B may be contrary to the desire of the United States government, nevertheless the Consent Decree itself recognizes that the opening of a licensed private landfill, such as the Guatali landfill, is a viable option under the Decree. Thus, the Guatali landfill is integral to and very much impacts this proceeding.

Your law clerk's participation in these proceedings despite her apparent interest in not having a landfill developed in close proximity to her residence creates an obvious appearance of impropriety. Unfortunately, because Ms. Walmsley has been allowed to participate in these proceedings despite her conflict, I strongly feel that your good office has been irreparably tainted by her conflict. *See Hall v. Small Business Admin.*, 695 F.2d 175 (5th Cir. 1983) (finding that magistrate's recusal was warranted where law clerk continued to participate with the magistrate in a case in which her future employers were counsel).

Unfortunately, your refusal to recuse yourself notwithstanding this conflict of interest, I believe, makes your recusal necessary and the conflict cannot be waived, and I once again request that you recuse yourself from these proceedings. *See Fredonia Broadcasting Corp. v. RCA Corp.*, 569 F.2d 251, *reh'g denied* 572 F.2d 320 (5th Cir. 1978) and *cert. denied* 439 US 859 (1978) ("When, as here, a judge is confronted with a situation where the appearance of impropriety is already established, a taint on the judicial system remains as long as he presides over the case. . . . Because of the nature of the judge-law clerk relationship, this trial judge invited serious questions to his impartiality when he refused to recuse himself.").

Respectfully submitted,

Benjamin J.F. Cruz

cc: Attorney General Alicia G. Limtiaco
U.S. Attorney Leonardo M. Rapadas