# Special Report of the Receiver

Concerns Regarding the Guam Environmental Protection Agency

## Civil Case No. 02-00022
## United States of America v. Government of Guam
## Guam Solid Waste Management Division

Prepared for:



U.S. District Court of Guam

Submitted by:



Gershman, Brickner & Bratton, Inc.
8550 Arlington Blvd, Suite 304
Fairfax, Virginia  22031

September 3, 2009

Printed on recycled paper

Civil Case No. 02-00022
United States of America v Government of Guam

Solid Waste Management Division

On June 5, 2009 the Receiver filed a Special Report to the Court in this matter. The Court subsequently issued an Order, also dated June 5, 2009 requiring that: "the Government of Guam provide the Receiver copies of:
- all written communications between GEPA staff members;
- all written communications between GEPA staff members and GEPA Board members;
- all written communications between GEPA Board members;
- all written communications between GEPA Board member(s) and any official of the Government of Guam, or between the entire GEPA Board and any official of the Government of Guam;
- all written communications between GEPA Board member(s) and GEPA applicants and their representatives; and
- any other written communication relevant to the GEPA Board's compliance with the Consent Decree and the court's subsequent orders enforcing the Consent Decree.

The Order also provided that the communications "shall be turned over personally to the Receiver representative at its Department of Public Works office by close of business on July 6, 2009."

A large volume of documents were provided to the Receiver in the manner and time prescribed by the Court's Order. These documents filled approximately six banker boxes plus there were hundreds of additional documents provided in an electronic format. We have now reviewed these documents and submit this Report to the Court for its consideration.

As we indicated in our report of June 5, 2009, we were informed by staff and officials of Guam EPA (the "Agency") of pressure to give equal or greater priority to other permit applications, thereby discouraging the Agency's staff from continuing to follow the Court's Orders that require that the Agency to give priority to the permit application for the Layon Landfill in the use of its staff and other resources. We were also informed that this pressure included a threat to terminate the employment of the Administrator of the Agency. The sources of this information were very credible. However, to avoid the possibility of any negative repercussions against the individuals involved, they will not be identified in this report.

Most of the information provided to the Receiver pursuant to the Court's Order is, as expected, routine in nature and do not bear on the concerns raised in our June 5, 2009 Special Report. There are, however, several communications that provide insight to the tensions within Guam EPA leading to the problems outlined in our Report of June 5, 2009. These include:

1. Concern and frustration within Guam EPA about the lack of adequate resources and a feeling among the staff of being caught between conflicting priorities of the Board and the Orders of the Court;

2

2. Tension between the Administrator and the Board; and
3. Conflict about who would replace the Administrator as the Acting Administrator after the Administrator recused herself in the GRRP Administrative Appeal to the GEPA Board.

These issues and concerns are only relevant to the work of the Receivership to the extent that they interfere with the Receiver's work to expeditiously bring about compliance with the Consent Decree. We have, therefore, limited the communications included in this report to those bearing directly on the concerns expressed in our June 5, 2009 Report.

**Conflicting Priorities and Staffing Issues**

In a series of emails during the latter part of January 2009, Barbara Torres stated "because of two landfill permits being a 'priority', one by the Courts and the other by the GEPA Board, I will need direction or additional support. But again, I also speak for other GEPA staff whose review time in these documents are also dealing with what 'priority' comes first." A response from Conchita S.N. Taitano attempts to clarify this by stating that "Guam EPA has a Court Order which should be clear to everyone." Ms. Torres then forwards this to Assistant Attorney General Phil Isaac and Mr. Benny Cruz stating that "my direction from this forward will be on the Consent Decree." In response, Assistant Attorney General Phil Isaac informs Ms. Torres that "I understand from Pat Mason who represents GovGuam in the consent decree case that the GovGuam position is that Guam EPA will treat all applicants equally." Mr. Cruz also responds to Ms. Torres, stating "I realize your dilemma with your duties. Equally important and recent direction from the Board is that the technical team for Guatali prioritize the review of GRRP's permit application. Thus, I do not understand how one priority trumps the other." (See Attachments 1 and 2) Ms. Torres subsequently resigned as GEPA's Solid Waste Program Manager.

There are numerous communications reflecting the same confusion and concerns. One example is contained in an email written on April 1, 2009 from the Administrator to Deputy Attorney General Patrick Mason saying "We are in a dilemma" After elaborating on several specific problems she states: "I am bringing this to your attention for I see no solution to getting both permits moving immediately and expeditiously. It is not fair that my employees are pulling hairs with the balancing act of their work time. Although both cases are to be treated separate, the employees are not separate to do the work. Talk to your AAGs and decide which is more important right now for us to work on. I feel that the board don't believe they are part of the consent decree issue. They think that is with the court." (See Attachment 3) A few days later, on April 7, 2009, Assistant Attorney General Tom Keeler provided a memo, characterized as "informational only", advising the Administrator that "GEPA is *required* to allocate its staff and resources such that the Layon project is prioritized." (See Attachment 4)

**Tension between the Administrator and the Board**

The tension that led to the threat to terminate the Administrator's job apparently had its origins in the difficulties mentioned above which were precipitated by the Legislature's passage of PL 29-116 to spot zone the Guatali location for a landfill. This, coupled with the Board's pressure on the Agency staff to meet the demands of the group advancing a landfill application for the

3

Guatali location, created an understandable perception among Guam EPA staff of intense political pressure to act on the permit application for the Guatali site. The concern about political pressure is articulated in an email from Assistant Attorney General Phil Isaac stating: "In my view no court in the U.S. would allow a legislature what this one attempted to do, dictate what an earlier legislature meant 12 years ago. That's utter nonsense. …….In the meantime I expect everyone at Guam EPA to stick to his/her moral compass regardless of political pressure."(See attachment 5)

It is also clear that the tension between the Administrator and the Board predated the above comment. On November 14, 2008, Assistant Attorney General John Weisenberger, acting as Hearing Officer for the Board in the matter of the GRRP application, admonished counsel for GRRP for his and Mr. Guirguis engaging the Board in "lengthy discussions" about the recusal of the Administrator in the absence of both the hearing officer and counsel for the Administrator. In a lengthy admonition on the matter, he told Arthur Clark, Counsel for GRRP, that "I consider your behavior contempt of this hearing process". (See attachment 6)

The tension escalated in late January 2009 when the Board first adopted a motion to instruct the Administrator to sign a conditional permit, but in a series of emails discussing a draft of the motion, Board Members expressed concern that the Administrator would not sign it. (See attachment 7) In late February the Board formally adopted the motion and on March 3, 2009 the Administrator gave notice through counsel of intent to appeal the Board's decision to the Superior Court of Guam. (See attachment 8)

The Administrator subsequently recused herself on her own volition and there ensued more debate about who would be appointed to replace her as the Authorizing Official for the GRRP permit applications. The Chairman of the Board wanted to name Liz Cruz in this capacity. In an email dated March 9, 2009 to John Weisenberger and two Board Members, the Chairman stated "I just talked to the Gov. and he is to send Liz Cruz to us on Wed. 1:00PM at the Chinese Chamber of Commerce for the GRRP matter! And I also mentioned to him that Lorilee is taking the GEPA Board of Directors to the Court!" (See attachment 9)

On March 10, 2009, in an email from Hearing Officer John Weisenberger, the Board was informed that the Administrator "has delegated her authority to an engineer on her staff, Mr. Ivan Quinata for the purposes of the GRRP permit application." The Chairman responds to this email later the same day with an email stating "I have talked to the Gov. and Shannon at Legal that we would like to keep Liz Cruz instead! Doesn't Ivan have a conflict of interest?? They are to convince Lorilee to appoint Liz instead!" (See attachment 10) The Administrator responds almost immediately with an email to the Board stating "the decision with Ivan Stands." (See attachment 11) It was after this that the threat to terminate the Administrator was apparently made.

There was also tension within the Board on all of these matters. There are many emails demonstrating that the Board was divided on many of these issues. Attachments 12 through 16 are illustrative.

4

**Budgetary Problems at Guam EPA**

Guam EPA's Administrator has indicated that the Agency is not properly funded by the Government of Guam. There is much to suggest that she is correct in this concern. This has resulted in the Administrator expressing concerns directly to the Court on several occasions. To better understand these concerns, the Court, in its Order of July 15, 2009, directed Guam EPA "to file a request detailing its budgetary need for additional funds in order to work on specific Consent Decree Projects. Said request shall be filed by 12:00 noon, July 29, 2009".

The report filed with the Court, outlines a situation that is no doubt exacerbated by the tensions outlined above. The Administrator outlines almost $600,000 in financial needs resulting from the Agency's work on Consent Decree related issues. While the Administrator's frustration is understandable, the appropriate way to address this matter is through a funding request to the Governor and Legislature of Guam. The Receiver should only pay directly for any extraordinary expense that Guam EPA experiences as a result of its regulatory activities in connection with the Consent Decree, and then only to the same extent that other parties seeking such permits are expected to pay such expenses. The only exception should be in the case of a clear problem that will otherwise jeopardize the Court approved schedule for the Consent Decree projects.

**Conclusions and Recommendations**

The documents provided pursuant to the Court's Order of June 5, 2009 substantiate the information provided to us that the staff was under serious pressure to give equal or greater priority to other applications, thereby discouraging the Agency's staff from continuing to follow the Court's Orders that require that the Agency to give priority to the application for the Layon Landfill in the use of its staff and other resources. The information also supports the concern expressed to the Receiver that tension between the Administrator and the Board gave rise to a threat to terminate the employment of the Administrator of the Agency.

To the credit of the Administrator, Lorilee Crisostomo, and staff of the Agency, they did not succumb to this pressure but instead stayed focused on their responsibilities under the Consent Decree and the subsequent Court Orders and have thus far kept the permitting process on track to a successful conclusion in accordance with the Court approved schedule. Given that there are now only 693 days of air space available at the Ordot Dump, maintaining the schedule approved by the Court is critically important to the people of Guam.

While it is also clear that the Agency is not adequately funded, this circumstance does not appear to be an appropriate issue for the Receiver or the Court to address except to the extent that it interferes with the expeditious implementation of the Consent Decree as ordered by the Court.

Based on this information, the Receiver recommends the following:

1. The Court should continue to monitor closely the progress of the permitting process for the Consent Decree projects;

2. The Administrator, staff and members of the Guam EPA Board of Directors should be ordered to report to the Court immediately any effort by anyone to interfere with the work necessary to complete the permitting of the Consent Decree projects in accordance with the Court's Orders;
3. All parties subject to the Court's Orders in this matter, specifically including the members of the Board of Directors of the Guam Environmental Protection Agency, should be reminded of their obligations under both the Consent Decree and the Orders of the Court and of the sanctions available to the Court to enforce its Orders in this matter; and
4. The Receiver should be authorized to pay any reasonable expense incurred by Guam EPA in the permitting process from the Citibank Trustee Account, if the Receiver, with the concurrence of the United States Environmental Protection Agency, determines that a failure to make such a payment would likely cause Guam EPA to be unable to complete the permitting process in a timely manner.

We thank the Court for its consideration of this Report.