# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF GUAM

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Civil Case No. 02-00022 |
| Plaintiff, | |
| vs. | **ORDER RE: RESPONSE TO ORDER TO SHOW CAUSE** |
| **GOVERNMENT OF GUAM**, | |
| Defendant. | |

On October 13, 2009, Attorney Stephanie G. Flores ("Ms. Flores") filed a document entitled "Motion to Recuse Pursuant to 28 U.S.C. § 455(a) and (b)" ("the Motion" or "Motion"). *See* Docket No. 498 at 1; *see also* Docket No. 499 (supporting declaration). On October 17, 2009, the court denied the Motion, citing, *inter alia*, its serious legal errors. *See* Docket No. 501. Then, on October 19, 2009, the court ordered Ms. Flores to show cause why she should not be sanctioned for having filed the Motion. *See* Docket No. 502. The court identified and briefly described the Motion's legal errors, and "specifically instructed [Ms. Flores] to account for each of [them] by explaining how they were reasonable." *Id*. at 5:14-15.

Having reviewed the response Ms. Flores filed on November 4, 2009, *see* Docket No. 513, having considered its points in light of the facts of this case and the applicable law, and finding it unsatisfactory, the court issues the following opinion.

I.  **ANALYSIS**

   A.  **False Assertion of Party Representation**

As to the first legal error highlighted by the court, Ms. Flores states that she "clearly designated" and "clearly laid out" that the motion was filed on behalf of the Guam Legislature." Docket No. 513 at 2:1; 2:5-6. Despite acknowledging that "it would have been more precise" to omit the phrase "Government of Guam" from the opening sentence of her motion, she asserts that "[t]he inclusion of the phrase was never intended to imply that [she] represented any entity other than the Guam Legislature." *Id*. at 2:8-12.

This explanation is not satisfactory. The very first words of the motion are "COMES NOW, the Government of Guam . . . ." Docket No. 498 at 1. If "[t]he inclusion of the phrase ['the Government of Guam']  was never intended to imply that [Ms. Flores] represented any entity other than the Guam Legislature," the court cannot understand why it was included *at all*. The phrase comprises the very first words of the motion, and it is positively misleading.

   B.  **Action In Fact on Behalf of Party Without Standing to File**

As to the second legal error highlighted by the court, Ms. Flores states that she "acknowledges that prior to the filing of the Motion to Recuse a separate Motion under Rule 24 of the Federal Rules of Civil Procedure seeking permission of the Court to file a Motion to Recuse the Court." Docket No. 513 at 2:15-17.

This is a sentence fragment, so the court cannot know exactly what Ms. Flores is saying here. However, her use of the word "acknowledges" suggests that she meant to end the sentence with something like "should have been filed." On this view, the court appreciates her candor.

Ms. Flores then appears to rationalize this particular error by stating that the Guam Legislature, her purported client, "has on several occasions requested that the Attorney General take action on its behalf and has been consistently met with resistance because of the conflicting positions held by the Guam Legislature and the Governor of Guam." Docket No. 513 at 2:18-21. This is the "local politics" variant of the impossibility defense: Ms. Flores is saying, in effect, "I could not comply with the Rules because it was (politically) impossible to do so." The court of

course recognizes that this case is intensely politicized—thanks, in part, to the efforts of private interests who appear to see the Consent Decree, with its legal niceties and underlying concern for the public good, as standing impertinently in the way of a business opportunity. *See*, *e.g.*, Docket Nos. 501 at 6 n.7, 10:13-19; 481; 450; 449; 450; 229.

It is well-established, though, that the "political impossibility" defense has no traction in consent decree litigation—that is, local political problems are not acceptable as excuses for non-compliance with a consent decree. *See*, *e.g.*, *Hook v. Arizona Dept. of Corrections*, 107 F.3d 1397, 1404, *cert. denied sub nom*. *Arizona Dept. of Corrections v. Hook*, 522 U.S. 865 (1997); *Stone v. City & County of San Francisco*, 968 F.2d 850, 856-64 (9th Cir. 1992), *cert. denied*, 506 U.S. 1081 (1993); *Twelve John Does v. District of Columbia*, 855 F.2d 874, 878 (D.C. Cir. 1988); *Badgley v. Santacroce*, 800 F.2d 33, 37-39 (2d Cir. 1986), *cert. denied*, 479 U.S. 1067 (1987); *Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 638 (3d Cir. 1982), *cert. denied*, 465 U.S. 1038 (1984).[1] On the same reasoning underlying that rule, local political problems are also not acceptable as excuses for non-compliance with procedural rules and requirements.

**C.   No Entry of Appearance**

As to the third legal error highlighted by the court, Ms. Flores "admits that no separate formal Entry of Appearance was filed prior to the filing of the Motion to Recuse," but states that "[she] did not believe that [such] a separate document was necessary in light of the fact that [she] had been receiving service of all documents in this proceeding . . . beginning on or about June 2009 to the present, and [also because her] name was appearing on the Court's calendar as a

---

[1] *Badgley* is particularly instructive. In that case, the inmates of a county correctional facility moved for an order holding the county correctional officers in contempt for violation of the amended consent judgment, which set the allowable maximum population in the county jail. *Badgley*, 800 F.2d at 35-36. The district court denied the motion because it concluded, among other things, that political problems (at the local-state level) made it impossible for the county officials to comply with the consent judgment. *Id*. at 36. The matter then went on appeal. Finding it irrelevant that the county officials were "hindered by political difficulties rather than physical impossibilities," the Second Circuit reversed, gave the officials thirty days to comply, and *ordered the district court to hold the county in contempt in the event of any subsequent failure to comply*. *Id*. at 37-39. The Supreme Court then denied review. *See* 479 U.S. 1067 (1987).

1 designated attorney." Docket No. 513 at 3:9-15.

2       This explanation is also unsatisfactory. Ms. Flores began receiving service of documents in this case because she filed the notice of appeal in this case. *See* Docket No. 441. As obvious as it may have been that the notice of appeal was untimely and otherwise procedurally improper, the court had to receive it, because a district court cannot dismiss an appeal. *See*, *e.g.*, *Sperow v. Melvin*, 153 F.3d 780, 781 (7th Cir. 1998); *Dickerson v. McClellan*, 37 F.3d 251, 252 (6th Cir. 1994) (*per curiam*); *Showtime/The Movie Channel, Inc. v. Covered Bridge Condominium Ass'n, Inc.*, 895 F.2d 711, 713 (11th Cir. 1990) (*per curiam*). Having received the notice of appeal, the court then had a ministerial duty to forward it to the Court of Appeals for the Ninth Circuit, which duty the court had no discretion to disregard. *See United States v. Colvin*, 204 F.3d 1221, 1225 (9th Cir. 2000). Thus did Ms. Flores become the attorney of record for the "Appellant" in this case. And since all lawyers on a case—including those on an appellate issue therein—receive service of documents filed, Ms. Flores did too. To think that this way of doing things is acceptable, though, is like thinking that you had no need to knock on the door and announce yourself because you found that you could kick the door down and walk in.

      In connection with the third legal error highlighted by the court, Ms. Flores states that Resolution 114 of the Thirtieth Guam Legislature authorized her to file the Motion on behalf of the Guam Legislature. *See* Docket No. 513 at 3:5-8; *see also* Docket No. 513-2 (copy of Resolution 114). However, Resolution 114 is clearly limited to "fil[ing] before the Ninth (9th) Circuit Court an action regarding the March 20, 2009 ruling of the Chief Judge of the District Court of Guam, Frances M. Tydingco-Gatewood." Docket No. 513-2 at 5:19-21. The Motion is not an appeal to the Ninth Circuit of the court's March 20, 2009 order. Rather, it is a motion, filed in this court, to recuse the undersigned judge. The two are not the same; they are not even remotely similar. Resolution 114 did not authorize Ms. Flores to file the Motion on behalf of the Guam Legislature in this court.

\\

\\

Page 4 of 8

Case 1:02-cv-00022  Document 529  Filed 12/03/2009  Page 4 of 8

**D.     Motion Untimely**

As to the fourth legal error highlighted by the court, Ms. Flores' entire response is: "The undersigned respectfully reincorporated [*sic*] the arguments put forth in the [Motion] regarding timeliness and acknowledges that the Court disagrees with the analysis however, [*sic*] the motion was filed shortly following the Court's September 3, 2009 Order which implicated the Guatali site and as such the Motion was timely."  Docket No. 513 at 3:17-21.

This run-on sentence is barely comprehensible and far from satisfactory.  It simply rehashes the same timeliness theory that Ms. Flores originally set forth in the Motion.  *See* Docket No. 498 at 13-15.  However, the court had criticized this theory even before it issued the order to show cause.  *See* Docket No. 501 at 3:18-4:24.  What the court wanted from Ms. Flores was a response to that criticism—an argument for how a seemingly unreasonable theory should be construed as reasonable.  What the court did not want was a mere restatement of an already-criticized theory.

**E.     Frivolous Legal Theory**

As to the fifth legal error highlighted by the court, which concerns the interpretation of Paragraph 10(b) of the Consent Decree, Ms. Flores simply acknowledges that the court "disagrees with [her] legal position" and then states that "the basis for [her] legal theory is found in reading Paragraph 10(b) in conjunction with Public Laws 23-95 and 29-116."  Docket No. 513 at 3:23-26.

This is a pitiful effort, for several reasons.  First, the "mere restatement of an already-criticized theory" point made just above applies with equal force here.  Second, Ms. Flores assumes that Public Laws 23-95 and 29-116 are actually relevant to the interpretation of Paragraph 10(b).  However, "the scope of a consent decree must be discerned within its four corners . . . ." *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 574 (1984) (quotation mark omitted).  Consent decrees are analyzed as contracts.  *See*, *e.g.*, *United States v. FMC Corp.*, 531 F.3d 813, 819 (9th Cir. 2008).  As such, "extrinsic evidence [is] relevant only to resolve ambiguity in the decree."  *United States v. Asarco Inc.*, 430 F.3d 972, 980 (9th Cir.

Page 5 of  8

Case 1:02-cv-00022     Document 529     Filed 12/03/2009     Page 5 of 8

2005).  There is nothing ambiguous about Paragraph 10(b), so no extrinsic evidence is needed to interpret it.   Thus, neither of those two Public Laws—nor any other Public Law, for that matter—can have any bearing on the interpretation of Paragraph 10(b).[2]

Third, Ms. Flores fails to explain how Paragraph 10(b) can be relevant *at all* when it is, effectively, inoperative and void.  Again, Paragraph 10(b) reads:

> b. Notwithstanding any of the time frames set forth in Paragraphs 8 or 9 above, upon the opening of a properly licensed and permitted municipal solid waste landfill *prior to the times set forth in Paragraphs 8 and 9 above*, no further dumping of any kind will be permitted at the Ordot Dump.

Docket No. 53 at ¶10(b) (emphasis added).  As the court has pointed out, this language is time-sensitive.  *See* Docket No. 501 at 8:14-16.  In abstract terms, Paragraph 10(b) says *only* that *if* event A occurs before certain deadlines, *then* event B must follow immediately.  Obviously, then, Paragraph 10(b) is relevant only to the world in which those deadlines have not yet passed.  But we do not live in that world; rather, we live in the world in which those deadlines have long since passed.  Thus, the essential "triggering condition" of Paragraph 10(b) *cannot be met*.  It follows that the paragraph is no longer of any consequence.

Fourth, and most importantly, Ms. Flores fails to explain how Paragraph 10(b)—if it were not inoperative and void, which it is—could be taken to mean that, in her words, "Guatali B is a legitimate alternative to the Dandan/Layon landfill . . . ."  Docket No. 498 at 8.  The theory seems to be that since Paragraph 10(b) says "a properly licensed and permitted municipal solid waste landfill" rather than something like "the one Municipal Solid Waste Landfill contemplated

---

[2] Moreover—and setting aside the fact that site selection is long over and done with—neither of these laws, nor any other Guam law, can having any bearing on where the landfill contemplated by the Consent Decree must be built. Under Paragraph 9(b) of the Consent Decree, the United States has a bargained-for right to require the Government of Guam to seek its agreement regarding the location of the Consent Decree landfill.  *See* Docket No. 53 at ¶9(b).  By entering the Consent Decree, then, the Government of Guam abridged its power to unilaterally fix the location of the landfill contemplated by the Consent Decree—presumably as partial consideration for the benefits it was to receive under the Consent Decree.  Further, with respect to the United States' bargained-for right under Paragraph 9(b), any legal impairment of that right by the Government of Guam would likely violate the Contract Clause.  *See generally* U.S. CONST. art. I, § 10; *see also U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1 (1977).  Finally, if the parties could not agree on a landfill location, the power to resolve that dispute is reposed in the court, not the Legislature—an arrangement decided by the parties to the Consent Decree.  *See* Docket No. 53 at ¶9(b).

Page 6 of 8

by the parties and discussed at every other point in Paragraphs 9 and 10," it must allow that a *different* landfill may satisfy the requirements of the Consent Decree. However, as the court has said, Paragraph 10(b) does not do this; rather, it "merely provides for the closure of the Ordot Dump earlier than was anticipated if the Government of Guam was successful in completing the new landfill prior to the deadlines set forth in Paragraphs 8 and 9 of the Consent Decree." Docket No. 501 at 8:11-14.

A bit of reflection on how contracts work is enough to show the problem in Ms. Flores' theory.[3] Suppose that a married couple hired Contractor A to build a house for them. The two parties had a detailed agreement that set forth certain deadlines for the planning, design, and construction of the house, after which the contractor would certify the house for occupancy. The design of the house was very important to the couple, but the deadlines were also important, because they wanted to move in as soon as possible. In fact, the agreement contained a provision to the effect that, should a house be finished ahead of schedule, Contractor A would certify it for occupancy even though the deadlines for planning, design and construction had not yet passed. Now suppose that—well after the relevant deadlines have passed—Contractor Z comes along. This contractor has read the agreement between the other two parties. Contractor Z then demands that the married couple recognize its right to perform *their* contract by building them a different house—ignoring the facts that (1) the certification acceleration provision is stale, (2) the married couple has the right to receive the particular house they bargained for, and (3) Contractor A has the *duty* to build the house it agreed to build. On Ms. Flores' theory, these facts *do not matter*. Contractor Z would build its version of the house, and the married couple would have to take it, and would also have to pay the full cost of the house they originally wanted. Thankfully, this is not how contracts (or consent decrees) work.

\\

\\

---

[3] Again, consent decrees are analyzed as contracts. *See FMC Corp.*, 531 F.3d at 819.

1  **II.    CONCLUSION**

2    Clearly, Ms. Flores gave little time and little thought to her response to the court's order
3  to show cause.  Nonetheless, the court finds that the errors it has described do not demonstrate
4  bad faith or misconduct so much as a serious lapse in judgment.  Though extremely disappointed
5  by her conduct in this matter, the court cannot overlook the many years that it has known Ms.
6  Flores to be a competent professional.  The court believes that such history entitles Ms. Flores to
7  the benefit of its doubts.  Therefore, the court will not impose any sanction.

8    Still, Ms. Flores would do well to review Rule 11—particularly the representations that,
9  under the rule, a signature entails.  The court urges her to be sure, going forward, that she can
10 make such representations as to her work.

11   **SO ORDERED**.



/s/ Frances M. Tydingco-Gatewood
    **Chief Judge**
**Dated: Dec 03, 2009**

Page 8 of  8