1  ANITA P. ARRIOLA
   ARRIOLA COWAN & ARRIOLA
2  259 Martyr Street, Suite 201
   Hagåtña, Guam 96910
3  Telephone: (671) 477-9730
   Facsimile: (671) 477-9734
4
   Attorneys for Proposed Intervenors
5  *Oxford Properties & Finance, Ltd.,*
   *Joaquin C. Arriola, and*
6  *Douglas Cushnie*
7
8  KATHLEEN V. FISHER
   RODNEY J. JACOB
9  JAY D. TRICKETT
   CALVO FISHER & JACOB LLP
10 259 Martyr Street, Suite 100
   Hagåtña, Guam 96910
11 Telephone: (671) 646-9355
   Facsimile: (671) 646-9403
12
13 Attorneys for Proposed Intervenors
   *Calvo's Insurance Underwriters, Inc.,*
14 *Jones & Guerrero Company, Inc.,*
   *Alfred C. and Diana Z. Ysrael*
15 *and Lee M. Holmes*
16



FILED
DISTRICT COURT OF GUAM

APR 10 2013

JEANNE G. QUINATA
CLERK OF COURT

17                    **DISTRICT COURT OF GUAM**

18
   UNITED STATES OF AMERICA,          CIVIL CASE NO. CV02-00022
19
                  Plaintiff,
20
                                      **REQUEST FOR JUDICIAL NOTICE IN**
21        vs.                         **SUPPORT OF THE FORMER**
                                      **LANDOWNERS' MOTION TO INTERVENE**
22
23 GOVERNMENT OF GUAM,
                  Defendant.
24
25
26
27
28

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THE LANDOWNERS' MOTION TO INTERVENE

ORIGINAL

The moving parties (the "Landowners"), by and through their undersigned counsel of record, hereby request that the Court take judicial notice of the attached documents in support of the Landowners' motion to intervene in this action.

Under the Federal Rule of Evidence 201, "[a] court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *In re Zoran Corp. Derivative Litigation*, 511 F.Supp.2d 986, 1001 (N.D. Cal. 2007) ("court may take judicial notice of public filings"); *see also Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 877 (1992) (court "may properly take judicial notice of a party's earlier pleadings and positions as well as established facts from both the same and *other cases*") (emphasis in original). Moreover, under Federal Rules of Evidence 201(b)(2), a judicially noticed fact is one "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

1.    Attached hereto as **Exhibit 1** is a true and correct copy of the Complaint to Acquire Property Through Eminent Domain filed in the case entitled *Government of Guam v. 1,348,474 Square Meters etc.,* et al., Superior Court of Guam Case No. CV 0084-08 (the "Condemnation Action") on January 24, 2008.

2.    Attached hereto as **Exhibit 2** is a true and correct copy of the Findings of Facts and Conclusions of Law filed in the Condemnation Action on October 31, 2012.

3.    Attached hereto as **Exhibit 3** is a true and correct copy of the Judgment entered in the Condemnation Action on December 10, 2012.

Respectfully submitted this _____ day of April, 2013.

ARRIOLA COWAN & ARRIOLA

By:  _____
**ANITA P. ARRIOLA**

Attorneys for Proposed Intervenors
*Oxford Properties & Finance, Ltd.,*
*Joaquin C. Arriola, and*
*Douglas Cushnie*

---

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THE LANDOWNERS' MOTION TO INTERVENE**

1

CALVO FISHER & JACOB LLP

By: _____

**RODNEY J. JACOB**

Attorneys for Proposed Intervenors
*Calvo's Insurance Underwriters, Inc.,*
*Jones and Guerrero Company, Inc.,*
*Alfred C. and Diana Z. Ysrael, and*
*Lee M. Holmes*

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THE LANDOWNERS' MOTION TO INTERVENE

2

FILED
SUPERIOR COURT
OF GUAM

2008 JAN 24 AM 8: 00

CLERK OF COURT.
BY:_____

Office of the Attorney General
**Alicia G. Limtiaco**
Attorney General of Guam
Civil Division
287 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3324 ● (671) 472-2493 (Fax)
www.guamattorneygeneral.com

**Attorneys for the Government of Guam**

# IN THE SUPERIOR COURT OF GUAM
# HAGÅTÑA, GUAM

GOVERNMENT OF GUAM, )
                  )   CIVIL CASE NO. CV**CV** 0 0 8 4 - 0 8

          Plaintiff, )

        vs. )

1,348,474 SQUARE METERS, MORE OR )
LESS, SITUATED IN THE MUNICIPALITY )
OF INARAJAN GUAM; and OXFORD )
PROPERTIES & FINANCE, LTD., a Hong )
Kong corporation; CALVO'S INSURANCE )
UNDERWRITER'S INC., a Guam )
Corporation; HENRY SY; JONES & )
GUERRERO COMPANY INC., a Guam )
Corporation; ALFRED C. and DIANE Z. )
YSRAEL; JOAQUIN C. ARRIOLA; LEE M. )
and JOAN S. HOLMES; VALENCIA )
INVESTMENTS CORPORATION, a Guam )
Corporation; DOUGLAS F. CUSHNIE; )
YOUNG CHULL KIM; and UNKNOWN )
OWNERS, )

         Defendants. )

**COMPLAINT
TO ACQUIRE PROPERTY
THROUGH EMINENT DOMAIN**

Page 1
Complaint to Acquire Property Through Eminent Domain
Superior Court of Guam Civil Case No. CV

**EXHIBIT**
**1**

The Government of Guam ("Government") brings this Complaint to acquire the property identified herein (the "Property") by the exercise of its power of eminent domain as follows:

1. This is an action of a civil nature brought by the Government for the taking of private property pursuant to its power of eminent domain and for the ascertaining and award of just compensation to the property owners and other parties in interest.

2. The Court has jurisdiction over this case pursuant to 21 GCA § 15106.

3. The authority for taking the Property is based upon 48 U.S.C. § 1421b(f); Title 21, Chapter 15 of the Guam Code Annotated; Guam Public Law 29-19:VI:98; and U.S. Public Law 104-134, Sec. 118.

4. The Property taken is to be used for a solid waste sanitary landfill (the "Landfill"), a permanent access road to the Landfill, and road "slope easements" for the road to the Landfill. The taking is necessary in order to comply with the Consent Decree entered in <u>United States v. Government of Guam</u>, United States District Court of Guam No. 02-00022 and the December 14, 2007-Order of the Court entered therein. Attached hereto as **Exhibit "A,"** and incorporated herein, is a copy of the Consent Decree. Attached hereto as **Exhibit "B,"** and incorporated herein, is a copy of the Court Order.

5. The Property being taken is a portion of basic Lots B-3 ("Lot B-3") and basic Lot B-3REM ("Lot B-3REM"), Dandan, Municipality of Inarajan, Guam. Attached hereto as **Exhibit "C,"** and incorporated herein, is a "Spread Sheet for Condemnation" showing the portions (parcels) being taken within Lot B-3 and Lot B-3REM; the area of each parcel being taken; the known owners (based upon information and belief) of the parcels being taken; and based upon appraisals of the parcels making up the Property, the estimated total just compensation for the Property. Attached hereto as **Exhibit "D,"** and incorporated herein, is a technical legal description of each parcel being taken within Lot B-3. Attached hereto as **Exhibit "E,"** and

incorporated herein, is a technical legal description of each parcel being taken within Lot B-3REM except the Realignment mentioned below. Attached hereto as **Exhibit "F,"** and incorporated herein, is a "Real Estate Requirements Survey Map" of Lot B-3 and Lot B-3REM.

6. The government of Guam presently has a right-of-way along the northern boarder of Lot B-3REM. This right-of-way is shown in Exhibit D. In order to construct the permanent access road to the Landfill site, a portion of the current government right-of-way will be realigned (the "Realignment"). The Realignment will result in the taking of a portion of Lot B-3REM for the permanent road to the Landfill site. Attached hereto as **Exhibit "G,"** and incorporated herein, is a document named "Layon Access Road Horizontal Control Plan." Exhibit G shows a sketch of the coordinates which show the center line of the Realignment. The coordinates for the center line of the Realignment are points C5, C6 and C7 on Exhibit E. The technical legal description for these coordinates is also shown on Exhibit E. The parcel of the Property taken for the Realignment is a strip of land 25 feet on each side of the line described by coordinates C5, C6 and C7 on Exhibit E (i.e., a 50 foot strip). For convenience these coordinates are highlighted on Exhibit E.

7. A description of the Property is contained in Exhibits D, E and F.

8. Upon information and belief, as to each separate parcel of property being taken, a designation of the defendants who have been joined as owners thereof, or of some interest therein, the defendants and their separate parcels are described in Exhibit C.

9. There are or may be others who have or claim interests in the Property whose names are unknown to the Government. Such persons are made parties to this action under the designation "Unknown Owners."

1     **WHEREFORE,** the Government of Guam demands: judgment that the Property herein

2 described be condemned; that just compensation for the taking be ascertained and awarded; that

3 the Court grant such other relief as it deems lawful and proper.

4     Respectively submitted this 23ʳᵈ day of January, 2008.

5
                                     OFFICE OF THE ATTORNEY GENERAL

6                                     **Alicia G. Limtiaco, Attorney General of Guam**

7
8             By:                                 
                            **J. PATRICK MASON**
                            Deputy Attorney General

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4
Complaint to Acquire Property Through Eminent Domain
Superior Court of Guam Civil Case No. CV

FILED
SUPERIOR COURT
OF GUAM

2012 OCT 31 PM 2: 48

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| GOVERNMENT OF GUAM, | CIVIL CASE NO. CV0084-08 |
| v. | **Findings of Fact and Conclusions of Law** |
| 1,348,474 SQUARE METERS, MORE OR LESS, SITUATED IN THE MUNICIPALITY OF INARAJAN GUAM, AND OXFORD PROPERTIES & FINANCE, LTD., a Hong Kong Corporation; CALVO'S INSURANCE UNDERWRITER'S INC., a Guam Corporation; HENRY SY, JONES & GUERRERO COMPNAY INC., a Guam Corporation; ALFRED C. and DIANE Z. YSRAEL; JOAQUIN C. ARRIOLA; LEE M. and JOAN S. HOLMES; VALENCIA INVESTMENTS CORPORATION, a Guam Corporation; DOUGLAS F. CUSHNIE; YOUNG CHULL KIM; and UNKNOWN OWNERS, | |
| Defendants. | |

RECEIVED
Time: _8:45_

NOV 0 1 2012

CALVO FISHER &
JACOB LLP
By:_____

## INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena III for a Bench Trial in June, July, and August, 2011. Assistant Attorney General Kathy A. Fokas and Specially Appointed Assistant Attorney General Janet Bush Handy represented the Government of Guam ("GovGuam"). Attorney Anita P. Arriola represented defendants Oxford Properties & Finance Ltd., Joaquin C. Arriola, and

EXHIBIT
2
_____

Douglas F. Cushnie ("Oxford Defendants"). Attorneys Kathleen V. Fisher, Rodney J. Jacob, and Jay D. Trickett (*pro hac vice*) represented defendants Calvo's Insurance Underwriters, Inc., Jones and Guerrero Company, Inc., Valencia Investments Corporation, Alfred C. and Diana Z Ysrael, and Lee M. Holmes ("CIU Defendants"). This Court refers to all defendants in this case collectively as the "Landowners."

Having considered the evidence presented at trial and the applicable law, this Court now issues its findings of facts and conclusions of law. The issues presented and decided herein involve mixed questions of law and fact; therefore, the content of the following discussion rather than simplistic labels assigned by this Court should drive any characterization of the subject matter as a factual finding or legal conclusion.

## FINDINGS OF FACT

Background

1. This case involves the condemnation by GovGuam of a portion of a tract of land in southern Guam commonly known as "Dandan." In 1964, the original owners of the land registered the larger parcel, then a single tract of land, with the Guam Department of Land Management under the designation "Lot B." Over a period of years, and following various transfers, Landowners in this case each acquired an undivided interest in Lot B.

2. Landowners subsequently divided Lot B into four parcels: Tract 3531, Lot B-1, Lot B-3, and Lot B-3REM. These four parcels each contain distinguishing features. Lot B-3 and Lot B-3REM (together "Combined Lot B-3") are large, undeveloped tracts of land separated by an access road. In 1991 the Landowners sold a portion of Lot B-3REM to the federal government on which the government constructed the NASA Tracking Station. Tract 3531 is located on the northeastern edge of Combined Lot B-

-2-

3. In 1977, the Landowners divided Tract 3531 into 100 residential lots and marketed and sold the lots to individual buyers. Sixty-seven of these lots have been sold and as of January 24, 2008 the Landowners continued to own thirty three of the remaining lots in fee simple. Lot B-1 is located in the upper northwest corner of Combined Lot B and contains Talafofo falls as well as the alleged site of Sergeant Shoichi Yokoi's[1] cave. In 1977, the Landowners leased Lot B-1 to Hamilton Tourist Development, Inc. ("Hamilton") for a term of 40 years. Hamilton, in seeking to create a tourist attraction on the leasehold, constructed a monorail and various recreational facilities as well an access road from Route 4.

3. The last significant activity relating to any of these parcels occurred on January 24, 2008 (the "Date of Take"), when GovGuam exercised its eminent domain authority to condemn land located in the southwest corner of Lot B-3REM as well as a portion of land on Lot B-3. Acting pursuant to a Consent Decree issued by the Federal District Court in a separate action, GovGuam ultimately condemned a total of 1,382,428 square meters of the Landowners' land for the purpose of constructing a landfill. Litigation ensued and a bench trial was conducted before this Court for the purpose of determining the amount of just compensation owed by GovGuam to the Landowners as a result of GovGuam's partial taking.

4. Where the government takes only a portion of a larger tract of land, just compensation consists of the fair market value of the part taken as well as any damages to the remaining property in the landowners' possession resulting from the government's activities on the condemned land. To calculate just compensation this Court will apply the before-and-after method whereby a determination will be made both as to the value of the

---

[1] Sgt. Shoichi Yokoi was a Japanese Imperial Army Soldier who lived in Guam's jungles for 28 years following the end of World War II.

entire tract of land just prior to the taking and the value of the land remaining in the Landowners' possession after the take. The difference, less any special benefits to the remainder, represents the just compensation owed to the Landowners. See Nichols' The Law of Eminent Domain 7A 12.02[2] (rev. 3d ed. 1991).

5. To date, GovGuam has deposited a total of $3,410,000 into the court reflecting its initial estimate of just compensation, of which all but $20,000.00 has been distributed to the Landowners.

6. Land Areas:

    a. Size of Lot B-3: 4,813,982 square meters;

    b. Size of Lot B-3 REM: 7,574,958 square meters;[2]

    c. Size of Combined Lot B-3 (combined areas of Lot B-3 and Lot B-3 REM): 12,388,940 square meters.

    d. Size of Lot B-1 (Talofofo Falls Resort): 80,040 square meters;

    e. Size of Tract 3531 (entire area, including sold lots): 456,906 square meters;

    f. Size of part taken: 1,382,428 square meters.

Joint Stipulation

7. Prior to the commencement of trial the parties executed a Joint Stipulation (dated March 20, 2011) reflecting an agreement that the sole issue to be adjudicated in the instant action is the determination of just compensation owed to the property owners with respect to GovGuam's partial taking of the Landowners' property. As stipulated by the parties, the value of just

---

[2] The parties originally stipulated that the area of Lot B-3REM is 7,171,758 square meters. Jt. Ex. 1. However, during trial the parties discovered that the maps they had relied upon to calculate land areas reflected inaccurate measurements relating to the size of the NASA Tracking Station. As a result, the parties agreed that an additional 403,200 square meters should be added to Lot B-3REM, resulting in an adjusted area of 7,574,958 square meters.

-4-

compensation ~~for the property will be stated as an undivided, 100%~~ ownership regardless of the each individual property owner's separate interests in the property.

## Determination of the Larger Parcel[3]

8. Because the circumstances in this case involve only a partial taking, this Court must determine the area of land that will constitute the parent tract for which severance damages will be awarded. Where multiple parcels may potentially be joined and considered as a single parcel for valuation purposes, the land that is separate from the parcel on which the partial condemnation has occurred must have contiguity, unity of ownership, and unity of use with the condemned land. Am. Sav. & Loan Ass'n v. Marin County, 653 F.2d 364, 369 (9th Cir. 1981); City of Los Angeles v. Wolfe, 6 Cal.3d 326, 491 P.2d 813 (1971).

9. The parties agree that Combined Lot B satisfies the three tests and should be included in the parent tract. The Landowners, however, claim that the parent tract also includes Lot B-1 and the unsold lots of Tract 3531. Randall F. Bell, the expert appraiser testifying on behalf of the Oxford Defendants, stated his opinion that Lot B-1 and Tract 3531 should be included within the larger parcel under the three tests.

10. While there is no dispute that Lot B-1 and Tract 3531 tracts are contiguous to Combined Lot B-3, GovGuam, and its expert appraiser, W. Nicholas Captain, argue that the two parcels do not meet the unity of use test.[4]

---

[3] Jurisdictions are split as to whether determination of the larger parcel constitutes a question of fact or a determination of law. Compare United States v. 8.41 Acres of Land, More or Less, Situated in Orange County, State of Tex., 680 F.2d 388, 393 (5th Cir. 1982); M & R Inv. Co., Inc. v. State ex rel. Dept. of Transp., 103 Nev. 445, 450, 744 P.2d 531, 535 (1987); State v. McDonald, 98 Wash. 2d 521, 525, 656 P.2d 1043 (1983) with Metro. Water Dist. of S. California v. Campus Crusade For Christ, Inc., 41 Cal. 4th 954, 971, 161 P.3d 1175, 1184 (2007).

11. "Where parcels are physically distinct there must be such a 'connection or relation of adaptation, convenience and actual and permanent use as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcels left, in the most advantageous and profitable manner in the business for which they are used.'" City of Los Angeles v. Wolfe, 6 Cal. 3d 326, 335-36, 491 P.2d 813, 819 (1971) (quoting City of Stockton v. Marengo 137 Cal.App. 760, 766, 31 P.2d 467, 470 (Ct. App. 1934). Some jurisdictions even require that the "[p]arcels . . . have a *present* unified use before they are part of a single, larger parcel for condemnation purposes." State v. Wandermere Co., 89 Wash. App. 369, 378, 949 P.2d 392, 398 (1997) (citing Doolittle v. City of Everett, 114 Wash.2d 88, 101-04, 786 P.2d 253 (1990)) (emphasis added); see also Commonwealth Transp. Com'r of Virginia v. Glass, 270 Va. 138, 150, 613 S.E.2d 411, 417-18 (2005) ("the actual joint use must be a present use at the date of take, not a use that might occur at some future date."). Cf. Cole Inv. Co. v. United States, 258 F.2d 203, 205 (9th Cir. 1958) (holding that an existing plan for an integrated future use was not sufficient to show unity of use entitling landowner to severance damages). Though this court does not impose the heightened standard requiring a present unified use, the present use of the distinct parcels is a relevant factor that will be considered.

12. This Court finds as both a matter of fact and law that, as of the Date of Take, Tract 3531 and Lot B-1 did not meet the unity of use test and will therefore not be considered as part of the larger parcel. First, it is clear that on the Date of Take neither Lot B-1 nor Tract 3531 had a present unified use with Combined Lot B-3. Lot B-1, subject to a leasehold, was (and still is) being operated as a tourist attraction. And Tract 3531 had been subdivided into separate lots, many of which were sold and housing constructed

---

[4] GovGuam also argues that the unity of ownership test has not been met with respect to Lot B-1 as Hamilton's ground lease will continue until the year 2017.

1     thereon. Neither of these improved parcels shared any current existing use

2     with Combined Lot B-3, which remained entirely undeveloped and for

3     which there were no existing plans for future development.

4

5 13. In an attempt to prove unity of use, Landowners offered testimony by

6     various witnesses that it was reasonably likely that both Lot B-1 and Tract

7     3531 would be integrated into a planned unit or mixed use development on

8     Combined Lot B-3 in the foreseeable future. This Court rejects the

9     proposition that the environmental and geographical landmarks located on

10     Lot B-1, utilized as a tourist attraction by Hamilton under its 40-year

11     ground lease, would represent a significant integrated use with any likely

12     future planned unit development ("PUD") on Combined Lot B-3. The value

13     in Combined Lot B-3 derived not from its proximity to the attractions and

14     tourist traffic on Lot B-1, but rather from its large, vacant area and

15     uniquely developable land attributes. The distinctive characteristics of Lot

16     B-1, which make it more suitable as a tourist attraction rather than as an

17     integrated part of a PUD dominated by single family homes, combined with

18     the fact that its present use is dependent on a leasehold unconnected to any

19     ownership interest in Combined Lot B-3 supports the conclusion that Lot B-

20     1 lacks the requisite unity of use with the vacant expanse and the unique

21     development potential of Combined Lot B-3.

22 14. This Court also finds that any adaptation and use of Combined Lot B-3 in

23     the reasonably near future would not likely benefit significantly from the

24     integration of the separately divided lots comprising Tract 3531. It is

25     unlikely that a developer would seek to include the separate parcels of

26     Tract 3531 in any new PUD utilizing Combined Lot B-3. The mere fact that

27     both parcels may have a common residential use does not necessarily create

28     a unity by which the separate parcels must be joined for purposes of

    assessing severance damages. Any future development on Combined Lot B-

    3 would include new construction and would not receive a significant

Case 1:02-cv-00022   Document 1034   Filed 04/10/13   Page 14 of 30

benefit from integrating an existing sub-divided and partially constructed residential neighborhood into its development plans.

15. The evidence supports the conclusion that the larger tract for valuation purposes consists only of the area contained within Combined Lot B-3 comprising 12,388,940 square meters, which will be referred to hereinafter as the "Larger Parcel."

Highest and Best Use

16. A necessary prerequisite to determining fair market value of a property in condemnation proceedings is a determination of the Highest and Best Use of the Larger Parcel just prior to the taking. Highest and Best Use is defined as "the reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible and that results in the highest value." (Jt. Ex. 51, p. 50 (citing *The Appraisal of Real Estate*, The Appraisal Institute (12th Ed. 2001)) Thus, the four criteria in determining Highest and Best Use are (1) legal permissibility (2) physical possibility (3) financial feasibility and (4) maximum profitability. Id.; Desert Citizens Against Pollution v. Bisson, 231 F.3d 1172, 1181 (9th Cir. 2000). A Highest and Best Use evaluation should not include speculative uses or uses that are not feasible in the reasonably foreseeable future. See United States v. 33.92356 Acres of Land, 585 F.3d 1, 7 (1st Cir. 2009).

17. Mr. Captain testified that the Highest and Best Use of the land on the Date of Take was continued land-banking (i.e., continuing to hold the vacant land until such time as it could be sold at a substantial profit). Notwithstanding the presumption that the current use constitutes the Highest and Best Use, given the finding that Mr. Captain's report and opinion as to value must be given very little weight, see infra., para. 24, this Court is not inclined to accept Mr. Captain's Highest and Best Use opinion.

-8-

18. Mr. Bell and the Property Owners testified that the Highest and Best Use was a mixed use development or PUD containing single-family homes, retail stores, golf courses, and tourist attractions. Both Mr. Bell and Mr. Captain concluded that obtaining appropriate zoning for such a development would be likely and that a PUD was legally permissible. As for physical possibility, Mr. Bell testified that the Larger Parcel contained vast developable areas sufficient for large scale development and that any land which could not be easily developed would be integrated as accompanying open space. Thus, Mr. Bell deemed a PUD to be physically possible. Finally, given the unique characteristics of the land, its development potential, and perceived demand for large property in Southern Guam as of the Date of Take, Mr. Bell concluded that a PUD would be both financially feasible and maximally profitable.

19. This Court notes that some assumptions applied by Mr. Bell in reaching his conclusion as to financial feasibility and maximum profitability of a PUD are suspect. For instance, Mr. Bell's lack of familiarity with Guam geography and real estate markets undermines his conclusions that there was truly a demand for projects of such scale in Southern Guam and provokes some concern by this Court as to whether Mr. Bell's conclusions as to Highest and Best Use are credible. However, upon consideration of all the evidence, including Mr. Captain's own documented statements in Guam real estate publications indicating strong foreign investment and development and sales potential on Guam during that time-period, (Def.'s Ex 281, Tab 9), this Court is convinced that the preponderance of the evidence supports Mr. Bell's conclusions.

20. The Highest and Best Use of the property on the Date of Take (i.e., the use that was legally permissible, physically possible, financially feasible, and maximally profitable in the reasonably near future) was a PUD dominated

by single family housing, and including some recreational facilities, open ~~space, and limited business development.~~

space, and limited business development.

Fair Market Value on the Date of Take

21. "The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." <u>United States v. Cartwright</u>, 411 U. S. 546, 93 S. Ct. 1713, 1716-17, 36 L. Ed. 2d 528 (1973) (quoting Treas. Reg. § 20.2031-1 (b)). The applicable date for determining fair market value of the larger parcel is the Date of Take, January 24, 2008.

22. The appraisers testifying at trial both agreed that the sales comparison approach was the appropriate method for determining value in this condemnation case.

23. Mr. Captain, GovGuam's only witness to offer testimony relating to land value, provided an initial appraisal of $16,000,000, or $1.33 per square meter for the Larger Parcel. However, after testifying at trial, Mr. Captain re-assessed his conclusions and altered various portions of his appraisal report. Mr. Captain then testified for a second time and presented a new before-take valuation for the Larger Parcel of $23,100,000, or $1.93 per square meter. This new appraisal is apparently based partly on information Mr. Captain learned while being cross-examined during his initial witness testimony and partly based on what appear to be new and poorly explained adjustments to the various comparable properties used by Mr. Captain in each of his appraisals.

24. While the Government characterizes Mr. Captain's spur-of-the-moment alterations to his first appraisal report as "courageous," the fact is that the second appraisal report not only lacks many indicators of reliability related to his revised conclusions, but the second report also undermines the

reliability of Mr. Captain's method and conclusions relating to his first report. Given what this court considers to be significant conflicts between the two appraisal reports, as well as unconvincing explanations for Mr. Captain's newest adjustments, this Court is left with no choice but to assign no weight to the bulk of Mr. Captain's land value assessment.

25. Oxford Defendants offered expert testimony by landowners Joaquin C. Arriola, Leonard Calvo, Alfred Ysrael, and Edward A. Calvo (collectively "Property Owners"). The Property Owners estimated the value of the land at the Date of Take at between $15.00 per square meter to $25.00 per square meter, or $185,000,000 to $300,000,000 for the land comprising Combined Lot B-3, Lot B-1, and Tract 3531. This Court, aside from the testimony of the property owners, finds little to no collaborative testimony or evidence to support these values. While the Property Owners clearly possess a breadth of real estate experience and unique knowledge relating to Combined Lot B-3, this Court finds that their value estimates in this case are high.

26. CIU Defendants' expert appraiser, Randall F. Bell, also provided testimony as to land value. Like Mr. Captain, Mr. Bell applied the well-recognized comparison sales approach. After reviewing a list of potential comparable properties (comparables) considered by Mr. Captain in his own appraisal report, Mr. Bell eventually selected eleven properties in southern Guam which he believed represented the most appropriate comparables to his proposed larger parcel.

27. As part of his preparation and selection of comparable properties, Mr. Bell consulted a local real estate agent and hired a surveyor to provide estimates of usable area (i.e., developable area) for each property. Mr. Bell also visited each of the comparables. Upon consideration of the information available, including the sale price for each of the comparable sales, Mr. Bell then

-11-

considering factors such as conditions of the sale, market conditions, location, size, shape, access, and usable area. (Jt. Exh. 51, pg. 54) Mr. Bell considered these factors in determining whether the comparable sales were superior or inferior to the Larger Parcel. When contrasted against Mr. Captain's seemingly random adjustments to his selection of comparable properties—especially when considering the divergent first and second appraisal reports—Mr. Bell's adjustments seem reasonable and well-articulated and his opinion as to value appear grounded in accepted appraisal techniques and competent application of those techniques.

28. Mr. Bell honed in on a fair market value for his proposed larger parcel before the Date of Take of $4.86 per square meter. (Jt. Exh. 51, Expert Rep. of R. Bell, p. 66) Using Mr. Bell's own calculations (which include valuations of Tract 3531 and Lot B-1), but adding the additional 403,200 square meters that the parties at trial agreed must be included in the Larger Parcel, results in an estimate of fair market price for the land in the before condition of $61,659,447.

29. Certain portions of Mr. Bell's testimony do, however, raise some concerns regarding the reliability of his report and opinion. For instance, Mr. Bell has comparatively little knowledge of Guam geography and historical real-estate trends. Moreover, Mr. Bell used some questionable comparable properties, including one property that was not a sale but rather merely a listing; he also used a sale that occurred in 1991, which this Court considers to be an unreliable comparable in determining the market value of the Larger Parcel as of the Date of Take. However, by consulting with a local real estate appraiser and applying adjustments in an attempt to account for the unique conditions regarding his less reliable comparable property selections, this Court finds that Mr. Bell mitigated the inherent weaknesses of his appraisal, resulting in an appraisal report and estimate of value that

represents the most credible evidence of pre-take value that was presented at trial.

30. However, this Court also recognizes that Mr. Bell's conclusion of a before-take value of $4.86 per square meter is enhanced by his inclusion of Lot B-1 and Tract 3531. (Jt. Exh. 51, pp. 61-62, 66). Excluding these properties, this Court finds that the $4.86 per square meter figure must be reduced to $4.53 per square meter.[5]

31. In addition to witness testimony regarding land value, this Court also benefitted from a site visit during which this Court was able to view the property. This view provided helpful context in considering witness testimony relating to land value.

32. The reliable evidence showed that the fair market value of the Larger Parcel on the date of take was **$4.53 per square meter.**

Severance Damages:

33. Severance damages result from "diminution in value of the remainder area by reason of the severance therefrom of the parcel appropriated. . . . Such damage has been held to be an inescapable sequel to the 'taking' and, therefore, compensable." Babinec v. State, 512 P.2d 563, 567 (Alaska 1973) (citing 4A Nichols on Eminent Domain § 14.31(3), at 14-33 (rev. 3d ed. 1971)); see also United States v. 50.50 Acres of Land, 931 F.2d 1349, 1359 (9th Cir. 1991). It is undisputed that construction of the landfill will diminish the value of the land area remaining in the Landowners' possession (the "Remainder Parcel"). Testimony by the Property Owners indicated that the Remainder Parcel will incur damage as a result of construction of the landfill from anywhere between seventy-five percent to

---

[5] See Appendix A for the Court's calculations.

one-hundred percent. Mr. Captain testified that the damage to the remainder is fifty percent. And Mr. Bell testified that a forty-five percent diminution is appropriate.

34. The evidence does not support the drastic estimates of damage offered by either Mr. Captain or the Property Owners. The credible evidence indicates that the Highest and Best Use of the remainder parcel will be smaller scale construction of a PUD in the areas farthest from the landfill site, while areas closer to the landfill will maintain either agricultural or industrial uses. (Jt. Exh. 51, Expert Rep. of R. Bell p. 52; R. Bell June 9, 2011 TR at 14:10-25)

35. This Court finds that a forty-five percent diminution in value to the Remainder Parcel constitutes a fair estimate of severance damages. As Mr. Bell indicated, this is the highest figure supported by appraisal literature and represents an appropriate assessment given the Highest and Best Use of the land in its after-take condition.

36. Accounting for severance damages in the amount of forty-five percent results in an after-take fair market price of $2.49 per square meter for the Remainder Parcel.

Benefits to the Remainder Parcel

37. Any benefit to the remainder parcel stemming from the Government's use of the part taken must be accounted for when determining just compensation. United States v. Miller, 317 U.S. 369, 373, 376, 63 S.Ct. 276, 87 L.Ed. 336, 342, 344 (1943); United States v. 33.5 Acres of Land, More or Less, Okanogan County, State of Wash., 789 F.2d 1396, 1398 (9th Cir. 1986); United States v. 901.89 Acres of Land in Davidson & Rutherford Counties, Tenn., 436 F.2d 395, 398 (6th Cir. 1970). At trial GovGuam offered evidence that the replacement of the gravel access road with a wide,

-14-

paved roadway and placement of underground utilities constituted a substantial benefit to the Remainder Parcel. Mr. Captain estimated that the value of these improvements to the Remainder Parcel is $3,600,000.00. Defendants, believing there are no unique benefit to Remainder Parcel, offered no testimony regarding enhanced value. Although this Court lacks confidence in Mr. Captain's report specifically with respect to his *valuation* of the larger parcel, and although there was some discrepancy as to the consistency and accuracy of his valuation of the infrastructure, this Court believes Mr. Captain's report relating specifically to special benefits represents an appropriate assessment of value retained by the Larger Parcel as a result of the condemnation. Upon consideration of Mr. Captain's report relating to benefits, viewed in the context of this Court's site visit, this Court finds that $3,600,000.00 constitutes a fair and reasonable estimate of the value of benefits to the Remainder Parcel.

## CONCLUSIONS OF LAW

38. This Court has jurisdiction over this matter pursuant to title 21, section 15106 of the Guam Code.

39. The Fifth Amendment to the United States Constitution, made applicable to the Territory of Guam by the Organic Act of Guam, 48 U.S.C 1421(u), requires that the government pay just compensation for any taking of private property for a public use. U.S. Const. amend. V. Just compensation must represent the "value of what [the owner] has been deprived of, and no more. To award him less would be unjust to him; to award him more would be unjust to the public." Bauman v. Ross, 167 U.S. 548, 574, 17 S. Ct. 966, 976, 42 L. Ed. 270 (1897).

40. In a partial takings case, just compensation constitutes the value of the part taken plus damages to the remaining property—commonly referred to

-15-

1  as "severance damages"—less any offsetting benefits to the remainder.

2  United States v. Miller, 317 U.S. 369, 376, 63 S. Ct. 276, 281, 87 L. Ed. 336 (1943).

### Special Benefits versus General Benefits:

41. In order to determine just compensation the factfinder must consider whether certain benefits should be applied to offset damages to the remainder. In many jurisdictions, and generally under federal law, only special benefits—those benefits that are unique to the remainder and not shared by the general public—will serve to offset severance damages. See United States v. River Rouge Imp. Co., 269 U.S. 411, 46 S.Ct. 144, 70 l.Ed 339 (1926); United States v. 2,477.79 Acres of Land, 259 F.2d 23 (5th Cir. 1958); but see Los Angeles County Metro. Transp. Auth. v. Cont'l Dev. Corp., 16 Cal. 4th 694, 718-19, 941 P.2d 809, 825 (1997) (applying the rule from a "respectable minority" of jurisdictions in which both general and special benefits will apply to reduce the amount owed as just compensation). Although the burden of proving the before and after value of the condemned property generally rests with the landowners, the burden of proving the existence and value of special benefits lies with the government. Acierno v. State, 643 A.2d 1328, 1333 (Del. 1994). While it is true that in this case various property owners other than the Landowners appearing as defendants in this case share benefits resulting from the enhanced utility and road access, and while it is also true that GovGuam documents refer to the road as a "community benefit," these factors do not compel the legal conclusion that the enhancements are a "general benefit."

42. "General benefit" is a term of art that has particular legal significance distinct from a "special benefit." The Supreme Court of Delaware distinguishes the two types of benefits thusly:

> General benefits arise from the fulfillment of the public project
> which justified the taking while special benefits arise from the

-16-

peculiar or unique relation of the property in question to the public improvement. United States v. 2,477.79 Acres of Land, 5th Cir., 259 F.2d 23, 28 (1958). Special benefits, unlike general benefits, add to the convenience, accessibility, and use of the property resulting from physical changes to the owner's remaining land or its proximity to the public project. 29A C.J.S. *Eminent Domain* § 170 (1992); 3 Julius L. Sackman, *Nichols' The Law of Eminent Domain* § 8A.04[1] (rev. 3d ed. 1991)

*Acierno*, 643 A.2d at 1332. A benefit may be characterized as a "special benefit" even though other parcels in the surrounding area are similarly benefited. United States v. River Rouge Imp. Co., 269 U.S. 411, 46 S.Ct. 144, 70 l.Ed 339 (1926); United States v. Crance, 341 F.2d 161, 167 (8th Cir. 1965) ("It is settled that special benefits do not become general merely because other lands in the area are similarly benefited."); see, e.g., Hall v. Com., 235 Mass 1, 126 N.E. 49 (1920) (frontage upon a much better and more desirable road constitutes a special benefit); Chicago v. S. Obermayer Co. 268 F. 237 (7th Cir. 1920) (streets abutting company factory that were rendered safer and more efficient following condemnation represented special benefits that offset damages).

43. In United States v. River Rouge, 269 U.S. 411 (1926), the Supreme Court considered whether the government's widening of a river, thereby creating enhanced access to land on the riverfront and increased value of those lands, constituted a general or special benefit to the several distinct parcels. The Court recognized that the various parcels

> are in no proper sense common because there are several estates, or many even, that are similarly benefited. ... The advantages of more convenient access to the particular lot of land in question, and of having a front upon a more desirable avenue, are direct benefits to that lot, giving it increased value in itself.

-17-

269 U.S. at 415-416. The Court held that so long as the benefits are particular to each parcel and not shared by all the lands in the vicinity, the benefit should be considered special, rather than general. Id.

44. As in River Rouge, the case here presents a scenario in which various distinct parcels received a direct benefit from GovGuam's improvements to infrastructure. The Remainder Parcel enjoys a far superior roadway and utilities that undoubtedly increase the value of the land still in the Landowners' possession. The mere fact that the benefits are shared among various other properties in direct proximity to the Remainder Parcel does not transform the benefits from special to general. This Court rules, as a matter of law, the enhanced value to the Remainder Parcel resulting from GovGuam's taking constitutes a special benefit that must be accounted for in reaching a determination of just compensation.

45. As determined in the above Findings, $3,600,000.00 constitutes a fair and reasonable assessment of the value of the benefit to the Remainder Parcel stemming from the enhanced infrastructure located on the land.

Just Compensation Calculation

46. Authorities recognize two generally accepted methods of computation of damages in partial taking cases. One involves determining the market value of the parcel actually taken and then calculating the difference in value of the remainder before the taking and after the taking. 7A Nichols, The Law of Eminent Domain, 12.02[3] at 12-5-12-6 (3rd ed. Rev. 1991). The second method, generally referred to as the "before-and-after method of valuation" places a value on the entire tract just prior to the taking and a value of the remaining parcel after the taking. The difference in these two values is the measure of damages. Id. Though both methods are proper, the before-and-after method is preferred by federal courts and this Court applies the before-and-after method in the case at hand. See United States v. Virginia Electric

-18-

& Power Co., 365 U.S. 624, 632, 81 S.Ct. 784, 5 L.Ed.2d 838 (1961); United States v. 33.92356 Acres Of Land, 585 F.3d 1, 9 (1st Cir. 2009); United States v. 6.24 Acres of Land, 99 F.3d 1140 (6th Cir. 1996); *United States v. 9.20 Acres of Land,* 638 F.2d 1123, 1126-27 (8th Cir.1981).

47. This Court's just compensation calculations are as follows:

    A. <u>Value of Larger Parcel on the Date of Take:</u>

        12,388,940 sq. m. x $4.53 per sq. m.  = **$56,121,898**

    B. <u>Value of Remainder Parcel (After Date of Take)</u>

        11,006,512 sq. m. x $2.49       = **$27,406,215**

    C. <u>Value of Remainder Parcel + Special Benefits</u>

        $27,406,214.88 + $3,600,000    = **$31,006,215**

    D. <u>Just Compensation</u>

        $56,121,898 − 31,006,215      = **$25,115,683**

48. Under Title 21, section 15107 of the Guam Code the Landowners are entitled to simple interest of six percent, from the Date of Take to the date of payment, on the awarded amount not already paid by GovGuam.

## CONCLUSION

Based on the reliable evidence presented at trial and given the above discussion, this Court concludes that the Landowners in this action are entitled to just compensation in the amount of $25,115,683. Judgment will be entered in the amount of the award over and above the $3,410,000.00 that GovGuam has already

deposited with the court. Landowners are thus entitled to $21,705,683 plus six percent interest calculated from January 24, 2008.

Counsel for Oxford Defendants shall prepare a judgment consistent with the above findings and conclusions. The judgment shall be approved as to form by counsel for GovGuam and CIU Defendants and shall be submitted for this Court's signature no later than November 30, 2012.

Dated this 31st day of October, 2012.

Original Signed By:
Hon. Alberto C. Lamorena III

HONORABLE ALBERTO C. LAMORENA III
Presiding Judge, Superior Court of Guam

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam.

OCT 3 1 2012

Alfred A. Santos
Deputy Clerk, Superior Court of Guam

-20-

## Appendix A

### Reduction to Randall Bell's Valuation of the Larger Parcel

To account for the enhanced value resulting from Randall Bell's inclusion of Tract 3531 and Lot B-1 in his conclusions regarding just compensation, this Court subtracts the values that Mr. Bell assigned to Tract 3531 ($1,680,000) and Lot B-1 (3,700,000) from his valuation of the Larger Parcel before the taking and divides the new figure by Mr. Bell's calculation of total square meters of land, less the area of Lot B-1 (80,940 sq. m) and Tract 3531 (217,249 sq. m). The resulting calculation represents the per square meter value of the Larger Parcel as determined by this Court.

Calculations:

A. <u>Value of Larger Parcel</u> ($59,712,328 - $1,680,000 - $3,700,000)     = $54,332,328

B. <u>Total square meters</u> (12,283,929 sq. m − 217,249 sq. m − 80,940 sq. m) = 11,985,740 sq. m

C. <u>Per Sq. M Value of Larger Parcel Before Take</u> (A/B)     = $4.53/sq. m

## IN THE SUPERIOR COURT OF GUAM

GOVERNMENT OF GUAM,

                      Plaintiff,

           vs.

1,382,428 SQUARE METERS, MORE OR
LESS, SITUATED IN THE
MUNICIPALITY OF INARAJAN,
GUAM, et al.,

                      Defendants.

**CIVIL CASE NO. CV0084-08**

**JUDGMENT**

This eminent domain action having come before the Court without a jury for a sixteen-day trial beginning March 21, 2011 and ending October 24, 2011, Assistant Attorney General Kathy A. Fokas and Specially Appointed Assistant Attorney General Janet Bush Handy appearing as attorneys for the Government of Guam, Anita P. Arriola, Esq., appearing as attorney for Oxford Properties & Finance Ltd., Joaquin C. Arriola, and Douglas F. Cushnie and Attorneys Kathleen V. Fisher, Rodney J. Jacob and Jay D. Trickett *(pro hac vice)* appearing as attorneys for Calvo's Insurance Underwriters, Inc., Jones and Guerrero Co., Inc., Alfred C. and Diane Z. Ysrael, Lee M. and Joan S. Holmes, Valencia Investments Corp. and Henry Sy and Young Chull Kim appearing *pro se*, (collectively "Landowners"), and the Court having heard the testimony and having examined the proofs offered by the respective parties, and the Court having been fully advised in the premises, and having filed herein its Findings of Facts and Conclusions of Law, and having directed that judgment be entered in accordance therewith.

EXHIBIT

**3**

PENGAD 800-831-6989

ARRIOLA, COWAN & ARRIOLA, HAGÅTÑA, GUAM 96910

NOW THEREFORE, by reason of the law and findings aforesaid:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Landowners have judgment against the Government of Guam in the amount of $25,115,683.00, inclusive of the amount already deposited in court by the Government of Guam in the amount of $3,410,000.00. Interest at the rate of six percent (6%) per annum shall accrue to the amount of $21,705,683.00 ($25,115,683.00 minus $3,410,000.00) from January 24, 2008 until the date of payment in full.

Dated this ___ day of November, 2012.

DEC 0 3 2012

Original Signed By:
Hon. Alberto C. Lamorena III

**HONORABLE ALBERTO C. LAMORENA III**
Presiding Judge, Superior Court of Guam

**Submitted By:**

By: _____
**ANITA P. ARRIOLA**
Attorney for Oxford Properties and Finance, Ltd., et al.

**Approved as to form:**

By: _____
**RODNEY J. JACOB**
Attorney for Calvo's Insurance Underwriters, Inc., et al.

By: _____
**KATHY A. FOKAS**
Attorney for Government of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam.

DEC 1 0 2012

Esther L. Pinaula
Deputy Clerk, Superior Court of Guam

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Page 2 of 2