1
2
3
4
5
6                          DISTRICT COURT OF GUAM
7                            TERRITORY OF GUAM
8
9   UNITED STATES OF AMERICA,                    CIVIL CASE NO. 02-00022
10           Plaintiff,
11      vs.
12  GOVERNMENT OF GUAM,                                      **ORDER**
13           Defendant.                          re Motion for Reconsideration
14
15          This matter is before the court on a Motion for Reconsideration filed by the Government of

16  Guam through the Cabot Mantanona LLP ("Cabot Mantanona") law firm.  Mot. for Recons., ECF

17  No. 1075.  The motion requests the court to reconsider its prior ruling allowing the law firm to

18  represent the Government of Guam for the limited purpose of addressing matters related to the

19  Former Landowners' Motion to Intervene.[1]  The Government of Guam asserts that the court should

20  instead grant full substitution so as to permit Cabot Mantanona to represent the Government of

21  Guam's interest in all aspects of this litigation, in place of the Attorney General of Guam (the

22

23  _____

24          [1] On April 10, 2013, a Motion to Intervene was filed by Former Landowners of the Layon
    Landfill.  *See* ECF No. 1031.  The motion identified these "Former Landowners" as Oxford
25  Properties & Finance, Ltd., Joaquin C. Arriola, Douglas Cushnie, Calvo's Insurance Underwriters,
    Inc., Jones & Guerrero Company, Inc., Alfred C. and Diana Z. Ysrael, and Lee M. Holmes.
26  Thereafter joinders to the Motion to Intervene were filed by Valencia Investments Corporation and
    Young Chull Kim.  *See* ECF Nos. 1037 and 1041.  These individuals and entities shall collectively
27  be referred to as the "Former Landowners."

1    "Attorney General"). The Motion for Reconsideration has been fully briefed by the parties.[2] Having

2    reviewed the submissions and relevant authority,[3] the court hereby denies the Motion for

3    Reconsideration.

4                                           **BACKGROUND**

5           This action has been pending in this court for almost 11 years. Although the court is

6    intimately aware of the facts of this case, the court will summarize relevant facts for the benefit of

7    those less familiar with this action and to provide a background for the issues raised in the Motion

8    for Reconsideration.

9           A.      The Consent Decree

10          The Ordot Dump, owned and operated by the Government of Guam, had a long history of

11   operational and environmental problems. The U.S. Environmental Protection Agency ("U.S. EPA")

12   issued several administrative orders under the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, directing

13   the Government of Guam to cease discharges of leachate from the Ordot Dump, and to design and

14   construct a cover system to eliminate discharges of untreated leachate. After years of inaction and

15   noncompliance with the U.S. EPA administrative orders, the United States initiated the present

16   action on August 7, 2002.

17          After participating in settlement conferences facilitated by the former chief judge over the

18   course of approximately one year, the parties entered into a Consent Decree, agreeing that

19   ─────────────────

20          [2]  The court has even permitted filings to exceed the standard page limitations. *See*
     Government of Guam's Reply Brief (captioned as a Second Supplemental Memorandum), ECF
21   No. 1130, which is 15 pages in length. The brief exceeds the ten-page limit for reply briefs as set
     forth in Rule LR 7.1(g) of the Local Rules of Practice for the District Court of Guam. The
22   Government of Guam did not obtain leave of court before filing its Reply Brief. Nonetheless, the
     court will exercise its discretion and not strike the brief or those portions of the brief which exceed
23   the 10-page limitation.

24          [3]  The court finds this motion suitable for decision without oral argument. *See* Rule
     LR 7.1(e) of the Local Rules of Practice for the District Court of Guam (reposing in court discretion
25   to decide motions "on the basis of the written materials on file," even where parties request oral
     argument). Given the court's current trial schedule (it is presently presiding over a multi-defendant
26   criminal trial that has spanned more than five weeks – including trial days on holidays and weekends
     – and is anticipated to last several more weeks), it would be difficult to schedule a hearing even if
27   the parties requested one.

1    "settlement of the civil judicial claims . . . [was] in the public interest and that entry of [the] Consent

2    Decree without further litigation [was] the most appropriate way to resolve this action and avoid

3    protracted litigation."  Consent Decree at 3, ECF No. 55.  The court approved the Consent Decree

4    on February 11, 2004.  *Id.*

5          Among other things, the Consent Decree established a schedule for the closure of the Ordot

6    Dump and the construction and operation of a new conforming municipal solid waste landfill.  *Id.*

7    at ¶¶8-9.  For instance, by March 2004, the Department of Public Works ("DPW") was required to

8    submit a list of three potential landfill sites to the U.S. EPA and Guam Environmental Protection

9    Agency ("GEPA").[4]  *Id.* at ¶9(a).  The Consent Decree also required operations at the new sanitary

10   landfill to begin by September 23, 2007, with operations at the Ordot Dump to cease by October 23,

11   2007.  *Id.* at ¶¶8(i) and 9(i).

12          B.          The Appointment of a Receiver

13          Following the entry of the Consent Decree, the Government of Guam was able to complete

14   some preliminary tasks but failed to meet the more critical deadlines.  Concerned over the

15   Government of Guam's lack of progress, on December 6, 2006 the United States petitioned the court

16   to hold a status hearing and then later moved to enforce the Consent Decree.  *See* ECF Nos. 56 and

17   68-69.

18          After conducting monthly status hearings and site visits, the court concluded that the

19   "problem of a highly dysfunctional, largely mismanaged, overly bureaucratic, and politically charged

20   solid waste system . . . is beyond correction by conventional methods."  Order Re: Appointment of

21   Receiver at 1, ECF No. 239.  After much deliberation and upon consideration of the Government

22   of Guam's lengthy history of violating the Clean Water Act and failing to comply with the Consent

23   Decree, the court exercised its equitable powers and appointed Gershman, Brickner & Bratton, Inc.

24   as the Receiver with "full power and authority to enforce the terms of the Consent Decree, and

25   assume all of the responsibilities, functions, duties, powers and authority of the Solid Waste

26   ────────────────

27          [4]  After extensive scientific studies and research, the Government of Guam selected the
     Layon site in 2005 as the best location for the new landfill.

1   Management Division of the Department of Public Works." *Id.* at 15.  To accomplish its mission,

2   the court, among other things, authorized the Receiver to "facilitat[e] the financing and/or borrowing

3   of such funds  necessary to carry out the duties relating to the Consent Decree as set forth in the

4   Government of Guam's Revised Financial Plan." *Id.* at 16.  The court further permitted that "[i]f,

5   in the best judgment of the Receiver, the Revised Financial Plan fail[ed] to provide the means or

6   methods of financing necessary or would unreasonably delay the progress in meeting the mandates

7   of the Consent Decree, the Receiver [was] authorized to modify the Plan to provide for alternative

8   means or methods of debt financing it deem[ed] appropriate." *Id.*

9          In its October 22, 2008 Quarterly Report, the Receiver estimated the capital needed to

10  achieve compliance with the Consent Decree was approximately $159.7 million.[5]  *See* ECF No. 269-

11  1 at 13.  Eventually, the Government of Guam opted to finance the Consent Decree projects through

12  the sale of approximately $202.4 million in Limited Obligation (Section 30) Bonds, Series 2009A

13  (the "Limited Obligation Bonds").  *See* ECF No. 455 at 3.  Of this amount, approximately $139.7

14  million was allocated for deposit to the  Project Construction Fund. *See* ECF No. 455-1 at 16.

15         On August 31, 2011, the Ordot Dump stopped receiving trash for disposal, and on

16  September 1, 2011, the Layon Landfill began operating as Guam's new conforming municipal solid

17  waste landfill.

18         C.     The Layon Condemnation Case

19         Although the Government of Guam had selected the Layon site in 2005 as the best location

20  for the new landfill, a condemnation action to obtain the property was not initiated in the Superior

21  Court of Guam until January 24, 2008 – months before the court appointed a Receiver.  *See*

22  *Government of Guam v. 1,348,474 Square Meters, More or Less,* Superior Court of Guam Civil Case

23  

24         [5]   The Quarterly Report cautioned that these estimates were "subject to change as the
    competitive bidding process provides the final measure of the cost for [the Consent Decree]
25  projects." ECF No. 269-1 at 13.  Furthermore, the "estimates related to the Ordot Dump's closure"
    would "require a full reexamination" as the time for the project to actually begin drew near because
26  there was "a significant amount of remedial investigation that remain[ed] to be accomplished . . . to
    determine the extent of environmental damage that has occurred [at the Ordot Dump] and devise
27  acceptable plans to mitigate the damage identified." *Id.* at 14.

No. CV0084-08 (the "Layon Condemnation Case"). According to the Attorney General, the Layon Condemnation Case "consisted of a 21-day trial that spanned an 8-month time frame and included over 10,000 pages of exhibits." *See* Attorney General's Response at 5, ECF No. 1102. On December 10, 2012, judgment in the approximate amount of $25 million was issued in the Layon Condemnation Case. *See* Decl. Benita Manglona at ¶4, ECF No. 1054. This judgment is accruing mandatory statutory interest at the rate of 6% per annum.

On February 4, 2013, Lieutenant Governor Raymond S. Tenorio wrote to Attorney General Leonardo M. Rapadas requesting the Attorney General sign a Joint Requisition for the Receiver's approval that would permit a portion of the Limited Obligation Bonds to be used to satisfy the $25 million Layon Condemnation Case judgment. *See* A. Arriola Decl, Ex. 3 thereto, ECF No. 1033-4. The Receiver was copied on this letter.

On February 7, 2013, the Receiver responded to the Lt. Gov. Tenorio's letter, stating that "the cost of closure [of the Ordot Dump] will be significantly higher than the preliminary 2008 estimate." *Id.,* Ex. 6 thereto at 4, ECF No. 1033-7. The Receiver believed that "the remaining bond proceeds must be preserved for . . . the final closure of the Ordot Dump" and therefore could not agree to the request that the remaining bond proceeds be used to satisfy the $25 million judgment owed to the Former Landowners. *Id.* at 5.

On April 10, 2013, the Former Landowners filed a motion seeking to intervene in this action so that they could petition the court to release the funds necessary to pay the Layon Condemnation Case judgment.[6] *See* ECF No. 1031.

D.    The Attempts to Substitute Counsel

On April 26, 2013, a Motion to Substitute Attorney[7] was filed by the Government of Guam.

---

[6] The motion to intervene is still pending before the court. The court believes it would be better to first resolve the Motion for Reconsideration before addressing the issues raised in the motion to intervene.

[7] The document was captioned "Substitution of Counsel" but electronically filed by counsel as a "Motion to Substitute Attorney." The court will hereinafter refer to this pleading as the "Substitution of Counsel."

1  *See* ECF No. 1045.  On May 3, 2013, the court disapproved the Substitution of Counsel because it

2  did not comply with the technical requirements of Local Rule GR 19.1(b)(1).  *See* ECF No. 1047.

3  The court also directed the Government of Guam to justify the need to substitute counsel at that time,

4  especially after more than nine years of representation by the Attorney General.  *Id.* at 2.

5        On May 9, 2013, attorney Sandra C. Miller – the Chief Legal Counsel for the Office of the

6  Governor of Guam – filed an Entry of Appearance as Co-Counsel.[8]  *See* ECF No. 1051.  In this

7  filing, Ms. Miller stated that "her appearance as co-counsel in this matter on behalf of the Defendant

8  Government of Guam" was "made by and through the Office of the Governor of Guam as the lawful

9  representative of the Governor of Guam."  *Id.*

10       On May 10, 2013 , in response to the court's Order of May 3, 2013, the Government of Guam

11  filed an Amended Substitution of Counsel (the "Amended Substitution"), seeking to substitute as

12  its counsel of record the Cabot Mantanona firm for and in place of the Attorney General.  *See* ECF

13  No. 1052.  The Government of Guam stated that the Amended Substitution was filed pursuant to

14  Local Rule GR 19.1(b)(2).  The Amended Substitution asserted that a conflict of interest arose

15  between a former client of the Attorney General (*i.e.*, the court-appointed Receiver) and a current

16  client (the Government of Guam through the Office of the Governor of Guam) which necessitated

17  a substitution of counsel under Rules 1.7 and 1.9 of the Guam Rules of Professional Conduct.

18  According to the Amended Substitution, "the federal Receiver is a former client" of the Attorney

19  General because the Attorney General "provid[ed] legal services to and on behalf of the Receiver"

20  "in the underlying land condemnation case[9] before the Superior Court" of Guam.  *See* Amended

21  Substitution at 7, ECF No. 1052.  It is alleged that the Receiver and the Office of the Governor of

22  Guam "disagree[] . . . over the  mechanism for payment of the Judgment and the $25 million just

23  compensation award."  Decl. R. Tenorio at ¶4, ECF No. 1053.  The Amended Substitution stated that

24  _____

25       [8]  Hereinafter referred to as the "Entry of Appearance."

26       [9]  *Government of Guam v. 1,348,474 Square Meters, More or Less,* Superior Court of Guam
    Civil Case No. CV0084-08 (the "Layon Condemnation Case").  On December 10, 2012, judgment
    in the approximate amount of $25 million issued in the Layon Condemnation Case.  *See* Decl. Benita
27  Manglona at ¶4, ECF No. 1054.

1    this "disagreement between the Receiver and the Office of the Governor . . . precludes . . . the

2    Attorney General from continuing to represent the Office of the Governor in this matter." *See*

3    Amended Substitution at 8, ECF No. 1052.

4         On May 16, 2013, the court issued an Order on the Amended Substitution.[10]  *See* ECF

5    No. 1064.  Therein, the court questioned the claim that the Receiver was the former client of the

6    Attorney General in the Layon Condemnation Case in light of the fact that the Government of Guam

7    had initiated the condemnation action and the Attorney General's acknowledgment that it

8    represented the Government of Guam in that action.  *Id.* at 2-3.  Nevertheless, based on what had

9    been presented, the court found there was "a limited dispute between the Attorney General and the

10   Office of the Governor" over the use of the bond proceeds to pay the $25 million judgment.  *Id.* at 3.

11   Therefore, the court approved the Government of Guam's Amended Substitution only for the limited

12   purpose of allowing the Cabot Mantanona firm to represent the Government of Guam with regard

13   to the issues raised in the Former Landowners' Motion to Intervene.  *See* Order at 4, ECF No. 1064.

14   The court ordered that "for all other purposes, the Attorney General shall remain counsel of record

15   for the Government of Guam."  *Id.*  It is from this Order that the Government of Guam now seeks

16   the court's reconsideration.

17                                    **DISCUSSION**

18        In its Motion for Reconsideration, the Government of Guam asserted that it was entitled to

19   relief from the court's May 16th Order "on the grounds of mistake or inadvertence, at least with

20   regard to two particular rulings contained in the subject Order."  ECF 1075 at 2.  The two "rulings"

21   the Government of Guam took issue with were (1) "the existence of conflicts of interest between the

22   Government of Guam [and] the Office of the Attorney General of Guam. . . and the existence of an

23   attorney-client relationship between the federal Receiver . . . and the [Attorney General]" and (2) the

24   court's "decision to approve a substitution only for a limited purpose" instead of permitting a full

25   substitution of the Cabot Mantanona law firm in this litigation for all matters.  *Id.* at 2-3.

26   _____

27        [10]  This Order shall hereinafter be referred to as the "May 16th Order."

1    A.    Motion for Reconsideration Standards

2    A district court may reconsider an interlocutory order pursuant to Federal Rule of Civil

3  Procedure 54(b), which allows courts to revise "any order or other decision, however designated, that

4  adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties  . . .

5  before the entry of a judgment[.]" Fed. R. Civ. P. 54(b). "A motion for reconsideration should not

6  be granted, absent highly unusual circumstances, unless the . . . court is presented with newly

7  discovered evidence, committed clear error, or if there is an intervening change in the controlling

8  law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir.

9  2009) (internal quotations marks and citations omitted).

10    Pursuant to the court's Local Rules, a motion for reconsideration may only be made on the

11  following grounds:

12    (1) a material difference in fact or law from that presented to the Court before such
       decision that in the exercise of reasonable diligence could not have been known to
13     the party moving for reconsideration at the time of such decision, or, (2) the
       emergence of new material facts or a change of law occurring after the time of such
14     decision, or, (3) a manifest showing of a failure to consider material facts presented
       to the Court before such decision.

15  Rule LR 7.1(i) of the Local Rules of Practice for the District Court of Guam.

16    In addition to Rule LR 7.1(i), the Motion for Reconsideration cites to Rule 60(b) of the

17  Federal Rules of Civil Procedure for the proposition that relief is available under said rule. *See* ECF

18  No. 1075 at 2.  Among other reasons, Rule 60(b)[11] permits relief from a court order based on the

19

20  _____

    [11]  In its entirety, Rule 60(b) states:

21
22    (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and
       just terms, the court may relieve a party or its legal representative from a *final
       judgment, order, or proceeding* for the following reasons:
23            (1) mistake, inadvertence, surprise, or excusable neglect;
              (2) newly discovered evidence that, with reasonable diligence, could
24            not have been discovered in time to move for a new trial under Rule
              59(b);
25            (3) fraud (whether previously called intrinsic or extrinsic),
              misrepresentation, or misconduct by an opposing party;
26            (4) the judgment is void;
              (5) the judgment has been satisfied, released, or discharged; it is
27            based on an earlier judgment that has been reversed or vacated; or

1  grounds of mistake, inadvertence, surprise, or excusable neglect. Fed. R. Civ. P. 60(b)(1). Here, the

2  Motion for Reconsideration claims "the Government of Guam is entitled to relief from the . . .

3  [May 16th Order] on the grounds of mistake or inadvertence, at least with regard to two particular

4  rulings" contained therein. *Id.* Rule 60(b), however, is inapplicable to the issues here because by

5  its specific terms the rule only applies to "a final judgment, order or proceeding." The court's

6  May 16th Order is not considered "a final judgment, order or proceeding." Thus, if the Government

7  of Guam is entitled to any relief, such relief must be grounded on one of the three reasons

8  enumerated in Rule LR 7.1(i).

9         B.      Government of Guam has not Satisfied Rule LR 7.1(i)

10         The first ground for relief under Rule LR 7.1(i) requires the Government of Guam to show

11  "a material difference in fact or law from that presented to the [c]ourt before such decision that in

12  the exercise of reasonable diligence could not have been known to the party moving for

13  reconsideration at the time of such decision." Rule LR 7.1(i)(1).

14         In its Motion for Reconsideration, the Government of Guam (through the Cabot Mantanona

15  firm) presented the court with two letters from Deputy Attorney General J. Patrick Mason; one dated

16  April 25, 2013, and the other dated May 1, 2013. These letter were written by Mr. Mason in

17  response to a request from the Former Landowners' counsel for information under Guam's Sunshine

18  Reform Act.[12] Therein, Mr. Mason objected to the release of the information based on the attorney-

19  client privilege and/or the work product doctrine.[13] *See* S. Miller Decl., Exs. A and B thereto, ECF

20  No. 1075-1. The Government of Guam now argues that these letters clearly contradict the court's

21

22                    applying it prospectively is no longer equitable; or
                      (6) any other reason that justifies relief.
23
    Fed. R. Civ. P. 60(b) (2013) (emphasis added).
24
            [12] The content of these letters is essentially identical.
25
            [13] These letters, in pertinent part, state: "Through the entry of judgment in the "Superior
26  Court Litigation", the Receiver, in its official capacity, was our client and therefore all
    communications between our office and the Receiver are protected by the attorney client privilege
27  and/or work product doctrine." *See* S. Miller Decl., Exs. A and B thereto, ECF No. 1075-1.

1    finding that the Receiver was not the Attorney General's client in the Layon Condemnation Case.

2         The Government of Guam knew about these letters from Mr. Mason, yet it intentionally

3    decided not to provide the court with these letters when it filed the Amended Substitution. *See* Mot.

4    for Recons. at 9, ECF No. 1075 ("In the spirit of cooperation, . . . the Government of Guam did not

5    produce the letters in which the [Attorney General] admitted to representing the Receiver.").  Given

6    the Government of Guam's admission that it had actual knowledge of these letters at the time it filed

7    the Amended Substitution, the Government of Guam cannot show that these letters constitute "a

8    material difference in fact or law from that presented to the [c]ourt before such decision that in the

9    exercise of reasonable diligence *could not have been known to the party moving for reconsideration*

10   *at the time of such decision*."  Rule LR 7.1(i)(1) (emphasis added).  "A motion for reconsideration

11   is not a vehicle to reargue the motion or to present evidence which should have been raised before."

12   *United States v. Westlands Water Dist.*, 134 F. Supp.2d 1111, 1131 (E.D. Cal. 2001) (citation and

13   quotation marks omitted).   The court will not allow the Government of Guam to benefit from the

14   fact that it deliberately withheld information it believed was relevant to the court's consideration just

15   so it could get another opportunity to argue the merits of its motion through a motion for

16   reconsideration.  The Government of Guam is not entitled to a "second bite at the apple."

17        The second ground for reconsideration is "the emergence of new material facts or a change

18   of law occurring after the time" of the court's original decision.  Here, the Government of Guam can

19   point to no new material facts or a change in the law which occurred after the court's May 16th

20   Order.  As stated above, all that the Government of Guam has produced for this court's

21   reconsideration are two letters drafted before the court's May 16th Order which the Government of

22   Guam decided not to provide the court in its Amended Substitution despite the fact that the court

23   specifically directed the Government of Guam to justify the need for a substitution of counsel.  The

24   Government of Guam has failed to meet its burden with regard to the second ground of Rule

25   LR 7.1(i).

26        Finally, with regard to the third basis for a motion for reconsideration, the Government of

27   Guam must show that the court committed clear error by failing to consider material facts presented

1  to it before such decision. Here, the Motion for Reconsideration fails to establish how the court

2  failed to consider material facts presented to it prior to its May 16th Order. The Government of

3  Guam cannot make this showing because it did not present the court with Mr. Mason's two letters

4  when it filed the Amended Substitution despite the fact that the Government of Guam knew of the

5  existence of these letters.

6       The Government of Guam has not met its burden under Rule LR 7.1(i) of showing any

7  grounds for reconsideration. Accordingly, the court denies the Motion for Reconsideration.

8  Notwithstanding this ruling, the court believes further discussion is warranted to correct the record

9  of any and all inaccuracies and misstatements.[14]

10      C.    Claims that the Receiver was the Client in the Layon Condemnation Case

11      In its May 16th Order, the court stated that

12      [t]he Amended Substitution appears to repeat the mistaken notion that the Receiver
        is a former client of the Attorney General because the Receiver was represented by
13      the Attorney General in the Layon Condemnation Case. This is simply incorrect.

---

[14]  Relevant to this discussion is a reminder to all counsel that

[b]y presenting to the court a pleading, written motion, or other paper – whether by
signing, filing, submitting, or later advocating it – an attorney . . . certifies that to the
best of the person's knowledge, information, and belief, formed after an inquiry
reasonable under the circumstances:
        (1) it is not being presented for any improper purpose, such as to harass,
        cause unnecessary delay, or needlessly increase the cost of litigation;
        (2) the claims, defenses, and other legal contentions are warranted by existing
        law or by a nonfrivolous argument for extending, modifying, or reversing
        existing law or for establishing new law;
        (3) the factual contentions have evidentiary support or, if specifically so
        identified, will likely have evidentiary support after a reasonable opportunity
        for further investigation or discovery; and
        (4) the denials of factual contentions are warranted on the evidence or, if
        specifically so identified, are reasonably based on belief or a lack of
        information.

Fed. R. Civ. P. 11(b). A violation of Rule 11(b) may result in the imposition of sanctions. *See*
Fed. R. Civ. P. 11(c).
        Furthermore, " a lawyer shall not bring or defend a proceeding, or assert or controvert an
issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes
a good faith argument for an extension, modification or reversal of existing law." GUAM RULES OF
PROF'L CONDUCT R. 3.1. The Guam Rules of Professional Conduct were adopted from the 2002
ABA Model Rules of Professional Conduct. *See* Supreme Court of Guam Promulgation Order 04-
002 (September 29, 2003).

1
2
3
4
5
> The Government of Guam – not the Receiver – exercised its eminent domain authority and initiated the Layon Condemnation Case. . . . The Attorney General acknowledges that it represented the Government of Guam in the Layon Condemnation Case, not the Receiver. *See* Acknowledgment at ¶3, ECF No. 1057. While the Receiver may have participated in and assisted with certain aspects of the litigation, the Government of Guam was the named party to that suit, not the Receiver. Thus, it is improper to assert or imply that such participation somehow converted the Receiver into the client in that case.

6
May 16th Order at 2-3, ECF No. 1064.

7   The Government of Guam (through the Cabot Mantanona firm) takes issue with the court's

8   characterization of the relationship between the Receiver and the Attorney General in the Layon

9   Condemnation Case. Based on Mr. Mason's letters produced in support of the Motion for

10   Reconsideration, the Government of Guam continues to assert that the Attorney General "was

11   representing the Receiver in the Layon condemnation case at the same time that it was also

12   representing the Government of Guam." Mot. for Recons. at 6, ECF No. 1075.

13   To whom does the Attorney General owe ultimate allegiance? The Governor, the

14   Legislature, Guam's government agencies and officers, or the people of Guam collectively?

15   Defining precisely the identity of the client and prescribing the resulting obligations owed to said

16   client is sometimes difficult in the government context, especially where an attorney general is

17   expected to represent a state officer in opposition to his or her own interpretation of the public

18   interest. *See generally,* Justin G. Davids, *State Attorneys General and the Client-Attorney*

19   *Relationship: Establishing the Power to Sue State Officers*, 38 COLUM. J.L. & SOC. PROBS. 365

20   (Summer 2005).

21   The court begins its discussion by looking at the Organic Act of Guam, 48 U.S.C. § 1421 *et*

22   *seq.* "The Organic Act serves the function of a constitution for Guam." *Haeuser v. Dep't of Law*,

23   97 F.3d 1152, 1156 (9th Cir. 1996); *see also People v. Perez*, 1999 WL 104497, at*4, 1999 Guam 2,

24   ¶15 ("Until Guam creates its own Constitution, the Organic Act of Guam is the equivalent of

25   Guam's Constitution."). In 1998, Congress amended the Organic Act to provide, among other

26   things, that "[t]he Attorney General of Guam shall be the Chief Legal Officer of the Government of

27   Guam." 48 U.S.C. § 421(g)(d)(1). Congress did not articulate further the duties and responsibilities

1  of the Attorney General in the Organic Act, but the Supreme Court of Guam has held that "the

2  Attorney General, as Chief Legal Officer, is charged with all the powers and duties pertaining to the

3  office at common law, except insofar as they have been expressly restricted or modified by statute."

4  *Guam Int'l Airport Auth. v. Moylan*, 2005 WL 291577, at *18, 2005 Guam 5, ¶67. Thus, the court

5  must look to local law for guidance as to the duties and responsibilities of the Attorney General.

6      Guam law provides that notwithstanding any other provision of law, as the Chief Legal

7  Officer the Attorney General is granted "cognizance of all legal matters . . . involving the Executive

8  Branch of the government of Guam, its agencies, instrumentalities, public corporations, autonomous

9  agencies and the Mayors Council." 5 GUAM CODE ANN. § 30102(a). Guam law also requires the

10  Attorney General to

11      . . . [c]onduct on behalf of the government of Guam all civil actions in which the
    government is an interested party; provided that those branches, departments or
12      agencies which are authorized to employ their own legal counsel may use them
    instead of the Attorney General[;] and . . . be diligent in protecting the rights and
13      properties of the government of Guam.

14  5 GUAM CODE ANN. § 30109(c) and (f).

15      With regard to this civil action brought by the United States against the Government of

16  Guam, the Attorney General has represented the Government of Guam since the filing of the case,

17  with the exception of a four-and-one-half-month period[15] where the Government of Guam was

18  represented by private counsel. When the Consent Decree was entered in February 2004, the main

19  government entity responsible for implementing its terms was the Solid Waste Management Division

20  ("SWMD") of DPW.[16] Throughout the course of this lawsuit, the Attorney General has represented

21

22

23      [15] From September 27, 2002 to February 5, 2003, the Government of Guam was represented
by the Mair, Mair, Spade & Thompson law firm. *See* ECF Nos. 6 and 21.

24      [16] Under Guam law, DPW is a department "within the Executive Branch of the government
of Guam," 5 GUAM CODE ANN. § 3106, while the SWMD was "a sub-entity" of DPW. *See* 10
25  GUAM CODE ANN. § 51A103. By the enactment of Guam Public Law 31-020:13, SWMD is now
known as the Guam Solid Waste Authority ("GSWA"), an autonomous, public corporation of the
26  Government of Guam. *See* 10 GUAM CODE ANN. § 51A103. Following said enactment, the court
vested the Receiver with "full power and authority over GSWA, to the full extent of its previously
27  granted authority over SWMD." Order (Sept. 2, 2011) at 9, ECF No. 798.

1 SWMD, DPW and now GSWA,[17] since all are a part of the Government of Guam.  The appointment

2 of the Receiver by the court did not change this relationship between the Attorney General and its

3 client (the Government of Guam).  Although the Receiver assumed all responsibilities of the

4 SWMD, "the Government of Guam remained the [] client [of the Attorney General].  The Receiver

5 [was] not and has never been the [Attorney General]'s client in this case."  Attorney General's

6 Response at 11, ECF No. 1102.

7     With regard to the Superior Court litigation, despite the Government of Guam's protestations

8 to the contrary, the facts and the law support the court's finding that the Receiver was not

9 represented by the Attorney General in the Layon Condemnation Case.  The Government of Guam

10 was the Attorney General's client in the condemnation action, not the Receiver.  The Government

11 of Guam exercised its eminent domain authority to condemn the Layon property for the new landfill,

12 not the Receiver.  *See generally* Title 21, Chapter 15, Guam Code Annotated for the Government

13 of Guam's power of eminent domain.[18]  The Government of Guam initiated that action as the named

14 plaintiff in the Layon Condemnation Case, not the Receiver.  All actions taken by the Receiver in

15

16    [17] The GSWA Board is statutorily authorized to appoint its own attorney or in-house counsel

17 to "advise the Board and the General Manager on all legal matters to which [GSWA] is a party or in which [GSWA] is legally interested. *See* 10 GUAM CODE ANN. § 51A110(a) and (c).  Said

18 attorney may also represent GSWA in connection with legal matters before the Legislature, boards and other agencies of the Government of Guam. 10 GUAM CODE ANN. § 51A110(c).  In contrast to

19 other autonomous agencies like the Guam International Airport Authority that are statutorily authorized to employ their own legal counsel separate from the Attorney General to represent their

20 interests, *see Guam Int'l Airport Auth.*, 2005 WL 291577, at *18, 2005 Guam 5, ¶64, Guam law requires the Attorney General to represent GSWA in all litigation concerning GSWA, subject to the

21 Attorney General delegating this duty to in-house counsel. *Id.* ("The Attorney General *shall* represent the Authority in litigation concerning the affairs of the Authority provided that he may

22 delegate this duty to the Attorney of the Authority, with respect to any such litigation.") (emphasis in original).

23    [18] "The government of Guam shall have power to acquire property by the exercise of eminent

24 domain." 21 GUAM CODE ANN. §15101.  "Eminent domain is the right or power of the *government* to take private property for public use." 21 GUAM CODE ANN. §15102 (emphasis added).  "The

25 power of Eminent Domain may be exercised by the government of Guam . . ." 21 GUAM CODE ANN. § 15105(a).  "In any proceeding in any court of the Territory of Guam which has been or may be

26 instituted by and in the name of and under the authority of the government of Guam for the acquisition of any land, or easement or right of way in land for the public use, . . ." 21 GUAM CODE

27 ANN. §15107.  Neither Guam law nor the court's Order appointing the Receiver gives the Receiver the power to acquire property through eminent domain.

1   relation to the Layon Condemnation Case were in its court-authorized capacity to carry out the work

2   of SWMD, consistent with the terms of the court's appointment order.[19]   The Receiver's task was

3   to ensure the Government of Guam's compliance with the Consent Decree.  As discussed above, one

4   of the main objectives of the Consent Decree was the requirement that the Government of Guam

5   construct and operate a new conforming landfill.  Because Layon was selected *by the Government*

6   *of Guam* as the site for this new landfill, the Attorney General kept the Receiver informed about

7   ongoing litigation matters in the Layon Condemnation Case since the Receiver had the duty to

8   manage and control all work associated with Consent Decree projects.  While the Receiver may have

9   participated in and assisted with certain aspects of the Layon Condemnation Case, it bears repeating

10  that such participation did not convert the Receiver into the "client" in that action.  The Government

11  of Guam remained the Attorney General's only client throughout the five years of the Superior Court

12  litigation.

13          The Receiver was never a party to the Layon Condemnation Case, and its actions in relation

14  to that case did not convert the Receiver to being a party or a "client" in that litigation, regardless

15  of how the matter was phrased in Mr. Mason's letters.  The Government of Guam argues in its

16  Motion for Reconsideration that the Receiver was the Attorney General's client in the Layon

17  Condemnation Case, but yet its Reply Brief acknowledges that "[a]lthough a receiver appointed by

18  the court acts on behalf of all parties interested, he is not a party, he is not the agent of the parties,

19  and he does not become an agent of the parties through the exercise of his official function."  Reply

---

[19]   The court's appointment Order granted the Receiver broad authority to ensure the
Government of Guam's compliance with the Consent Decree.

> [T]he Receiver shall have *full* power and authority to enforce the terms of the
> Consent Decree, and assume *all* of the responsibilities, functions, duties, powers and
> authority of the Solid Waste management Division of the Department of Public
> Works, and any and all departments, or other divisions of the Department of Public
> Works insofar as they affect the Government of Guam's compliance with the
> Consent Decree.

*See*  Order Re: Appointment of Receiver at 15-16, ECF No. 239 (emphasis added).  The court further
ordered that the Receiver have "the authority required for the *complete* management and control of
the Consent Decree projects, including . . . [t]he supervision of *all* Government of Guam employees
associated with the Consent Decree projects."  *Id.* at 16 (emphasis added).

1  Brief at 4,[20] ECF No. 1130 (citations omitted).[21]    Based on the above analysis, the Government of

2  Guam's claim in its Motion for Reconsideration that the court was mistaken about the existence of

3  an attorney-client relationship between the Receiver and the Attorney General based on the Attorney

4  General's representation of the Receiver in the Layon Condemnation Case simply has no merit.

5          Aside from the condemnation litigation, the Government of Guam further makes the

6  attenuated argument that an attorney-client relationship exists between the Receiver and the Attorney

7  General because "the Attorney General has . . . been representing the Receiver by doing the

8  administrative legal work that the Receiver is charged with handling as part of its duties over the

9  [SWMD of the DPW]."  Mot. for Recons. at 6, ECF No. 1075.

10          When the court appointed the Receiver in March 2008, it ordered the parties to "use their best

11  efforts to assist the Receiver in the performance of its duties."    Order re Appointment of Receiver

12  at 18, ECF No. 239.  Additionally, the court ordered the parties to "cooperate with, and assist the

13  Receiver to the extent necessary and appropriate to permit the Receiver to carry out its

14  responsibilities."  *Id.* at 18-19.  The Attorney General has obeyed the court's directive by assisting

15  the Receiver with a variety of issues, from procurement matters to permitting issues and even work

16  related to obtaining right of entry agreements allowing environmental testing on private properties

17  adjacent to the Ordot Dump.  The Attorney General cooperated with and assisted the Receiver in

18  performing its duties – duties that the Government of Guam was required to fulfill under the Consent

19  Decree, but failed to do.  Such interactions between the Receiver and the Attorney General do not

20  convert the Receiver to a client of the Attorney General.  To say that the Receiver then became a

21  client of the Attorney General would be akin to arguing that the court was the client of the Attorney

22  General, since the Receiver was appointed by the court and is an arm of the court.  This is certainly

23  _____

24      [20]   The internal page numbers of the Reply Brief are different from the page numbers
    imprinted on the ECF footer.  All citations to pleadings filed in this case refer to the internal page
25  number of said document.

26      [21]   The Reply Brief also states "[t]he Receiver is a separate entity, and is an officer of the
    Court belonging solely to the control of the Court, who never becomes the agent of one of the parties
27  to a case through the official exercise of its duties."  *Id.* at 7.

1   not the case here.  Robert Mullaney, counsel for the Plaintiff, has also been cooperating with and

2   assisting the Receiver in the performance of its duties, in conformance to the court's Order.

3   Applying the Government of Guam's distorted argument would also mean that the Receiver became

4   Mr. Mullaney's client.  The Attorney General and Mr. Mullaney's compliance with the court's Order

5   did not convert their roles to legal counsel for the Receiver; they remained counsel to their respective

6   parties, the Government of Guam and the United States.   The assistance provided by the Attorney

7   General to the Receiver in the performance of its official duties and responsibilities did not create

8   an attorney-client relationship between the Receiver and the Attorney General.

9        D.    Alleged Conflicts of Interest with the Attorney General

10       Both the Amended Substitution and the Motion for Reconsideration assert that the Attorney

11  General can no longer represent the Government of Guam in this action because of alleged conflicts

12  of interest under Rule 1.7 of the Guam Rules of Professional Conduct.  This contention also lacks

13  merit.

14       Rule 1.7 proscribes concurrent representation of clients when, among other grounds, the

15  clients' interests are directly adverse, *see* GUAM RULES OF PROF'L CONDUCT R. 1.7(a)(1), or there

16  is a significant risk that the representation of one client would be materially limited by the lawyer's

17  responsibilities to another client.  GUAM RULES OF PROF'L CONDUCT R. 1.7(a)(2).

18       The first alleged conflict between the Attorney General and the Government of Guam

19  (through the Office of the Governor) supposedly arises from the Attorney General's concurrent

20  representation of the Receiver in the Layon Condemnation Case and the Government of Guam.

21  However, as discussed above, the Receiver was never the Attorney General's client, and the Attorney

22  General did not represent the Receiver in the Superior Court litigation. A conflict of interest does

23  not exist under Rule 1.7(a) because the Attorney General represented only one client throughout the

24  course of the Layon Condemnation Case, that client being the Government of Guam.

25       Assuming, *arguendo,* that the Receiver was the Attorney General's client in the Layon

26  Condemnation Case, there still would be no conflict of interest under Rule 1.7(a) because the

27  interests of the Receiver and the Government of Guam were aligned during the course of the

1   condemnation litigation.[22]

2       Because there was no attorney-client relationship, the court also rejects the Government of

3   Guam's absurd contention that it was never "consulted or advised of the Attorney General's

4   concurrent representation of the Receiver." Mot. for Recons. at 7, ECF No. 1075. *See also* Gov't

5   of Guam Supp. Mem. at 13, ECF No. 1086 ("The Defendant Government of Guam and the Office

6   of the Governor of Guam were never consulted or advised of the Attorney General's decision to

7   concurrently represent the Receiver in [the Layon Condemnation Case], and did not consent to such

8   concurrent representation in writing."). The Government of Guam argues that the Attorney General

9   had an obligation under Rule 1.7(b)[23] of the Guam Rules of Professional Conduct to obtain informed

10   consent from the Government of Guam (through the Office of the Governor of Guam) because the

11   Attorney General also concurrently represented the Receiver. But the specific language of

12   Rule 1.7(b) applies only when a conflict of interest arises from *concurrent* representation of clients.

13   The concurrent representation issue does not arise here since the Receiver was never the Attorney

14   General's client in the Layon Condemnation Case nor has the Receiver ever been the client of the

15   Attorney General based on the interactions between the two in the performance of the Receiver's

16   duties to bring the Government of Guam into compliance with the Consent Decree. Accordingly,

17   the Attorney General's obligation under Rule 1.7(b) was never triggered. Furthermore, the

18   Government of Guam was well aware that the Attorney General was cooperating with and assisting

19

20       [22] The dispute between the Government of Guam (through the Office of the Governor) and
the Receiver arose after the judgment was issued in the Layon Condemnation Case.

21       [23] In its entirety, Rule 1.7(b) provides:

22   Notwithstanding the existence of a concurrent conflict of interest under
paragraph (a), a lawyer may represent a client if:

23   (1)     the lawyer reasonably believes that the lawyer will be able to provide competent and
diligent representation to each affected client;

24   (2)     the representation is not prohibited by law;

25   (3)     the representation does not involve the assertion of a claim by one client against
another client represented by the lawyer in the same litigation or other proceeding before a
tribunal; and

26   (4)     each affected client gives informed consent, confirmed in writing.

27   GUAM RULES OF PROF'L CONDUCT R. 1.7(b).

the Receiver in the performance of its duties.  The Receiver's Quarterly Reports[24] and court

presentations openly discussed the Attorney General's role in helping the Receiver, and either the

Governor or the Lieutenant Governor was always present at each of these presentations.[25]  Therefore,

any claim by the Government of Guam that it was unaware of the assistance being provided by the

Attorney General to the Receiver is specious, frivolous and without merit.  Furthermore, this

argument demonstrates counsel's clear lack of knowledge about the work performed by both the

---

[24] See the following Quarterly Reports:

- Quarterly Report (Dec. 7, 2011) at 3, ECF No. 859-1 ("We have worked closely with the Office of the Attorney General to obtain the [Rights of Entry]."  The quarterly Report also discusses the Attorney General's assistance in analysis of Guam Solid Waste Authority Act. *Id.* at 33-34.

- Quarterly Report (Apr. 11, 2012) at 4, ECF No. 931-1 ("We are working with the Attorney General's Office to ensure that the rights of property owners are respected in accordance with Guam law, as we obtain the needed ROEs and any additional land that is needed.").  The Receiver's report also stated: "[w]ith the assistance of the Office of the Attorney General, we have completed the transfer of all utilities constructed in connection with building the access roads to the Layon Landfill. We appreciate the assistance of the Office of the Attorney General and the various agencies to which these assets were transferred." *Id.* at 8.

- Quarterly Report (July 18, 2012) at 4, ECF No. 972-1 ("[W]e have worked with the Attorney General to obtain the services of a highly qualified appraiser to determine the value of any land that may have to be acquired to complete the closure of the Ordot Dump.").

- Quarterly Report (May 21, 2013) at 8, ECF No. 1067-1 (discussing the "lead role" of the Attorney General in acquiring private land adjacent to the Ordot Dump for a "buffer zone").  The Quarterly Report also stated:

    the Attorney General has been an important part of the progress made to date in achieving compliance with the Consent Decree. Without doubt, the work of the Attorney General has saved the Government of Guam hundreds of thousands in legal expenses to date. Of particular importance at this time is the Attorney General's work to clear up land ownership issues on lands required for the closure of the Ordot Dump. On this issue and many others, any limitation on the Receiver's access to the Attorney General will likely delay the final closure of the Ordot Dump and significantly increase cost.

    *Id.* at 35.

[25] *See* S. Miller Decl. at ¶2(a)(iv), ECF No. 1086-1 ("Since October 26, 2007, the order requiring the Governor [of] Guam and other government officials to appear and be present at all monthly (now quarterly) status hearings has been reiterated and referenced in nearly every order for the scheduling of the quarterly status hearing.").

1    Receiver and the Attorney General in this case.

2        The Government of Guam also asserts that "[e]ven if a conflict did not exist between the

3    Receiver and the Government of Guam as concurrent clients of the [Attorney General], acrimony

4    has arisen in the relationship between the [Attorney General] and the Government of Guam such that

5    the [Attorney General's] withdrawal is required[.]" Reply Brief at 8, ECF No. 1130. Specifically,

6    the Government of Guam asserts that the Attorney General failed to abide by the instructions of its

7    client – the Government of Guam – by (1) failing to sign the Amended Substitution as requested, and

8    (2) opposing the Former Landowner's Motion to Intervene. *Id.* The court will thus address each of

9    these arguments.

10       According to Mr. Mason's declaration, he signed the original Substitution of Counsel when

11   it was presented to him, "acknowledging the Office of the Governor's direction that the substitution

12   of counsel be made." P. Mason Decl. at ¶¶4-5, ECF No. 1101.[26] After the court denied the

13   Substitution of Counsel because it failed to comply with the requirements of Local Rule

14   GR 19.1(b)(1), the Government of Guam prepared the Amended Substitution but the Attorney

15   General "refused to sign the Amended Substitution." S. Miller Decl. at ¶5, ECF No. 1075-1.

16   Mr. Mason stated that "the Amended Substitution consisted of ten pages and included a

17   Memorandum of Points of Authorities containing facts and legal conclusions with which the

18   [Attorney General did] not agree." P. Mason Decl. at ¶7, ECF No. 1101. He further explains that

19   "[i]t would have been improper of me to sign the Amended Substitution because of the inaccuracies

20   included therein." *Id.* at ¶8. The Government of Guam takes issue with Mr. Mason's refusal to sign

21   the Amended Substitution and asserts that he should have signed it, whether he agreed with it or not,

22   because the client (the Government of Guam through the Office of the Governor) instructed him to

23   do so.

24       The Government of Guam is essentially arguing that Mr. Mason should have violated his

25   legal and ethical obligations to the court. Mr. Mason has an ethical duty  not to present facts or

26

27       [26]  *See also* S. Miller Decl. at ¶5, ECF No. 1075-1 ("the Office of the Attorney General of
     Guam previously voluntarily consented to a substitution of counsel[.]").

advance arguments that have neither evidentiary support nor legal basis. *See* Fed. R. Civ. P. 11 and GUAM RULES OF PROF'L CONDUCT R. 3.1 as discussed in footnote 13 *supra*. As the court noted in its May 16th Order and in its discussion above, the Amended Substitution contained many factual and legal inaccuracies. Since Mr. Mason also believed that there were inaccuracies in the Amended Substitution, he properly refused to sign it, even against his client's wishes, and instead filed an Acknowledgment that the Government of Guam had hired the Cabot Mantanona firm as substitute counsel for the Attorney General in this case. *See* Acknowledgment at ¶3, ECF No. 1057. "The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, *but also a duty not to abuse legal procedure*." MODEL RULES OF PROF'L CONDUCT R. 3.1 cmt. 1 (emphasis added).

> The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. *What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions.* Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. *The action is frivolous, however, if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law.*

MODEL RULES OF PROF'L CONDUCT R. 3.1 cmt. 2 (emphasis added). The Attorney General was well aware of the facts of this case and the Layon Condemnation Case, and the Attorney General knew that "the Amended Substitution incorrectly stated that the Receiver was the . . . "former client" [of the Attorney General] . . . in the underlying land condemnation case." P. Mason Decl. at ¶7, ECF No. 1101. Instead of correcting the inaccuracies in the Amended Substitution, the Government of Guam chose to file the pleading with the court – inaccuracies and all – without the Attorney General's signature. The court finds no fault with the Attorney General's good faith decision not to sign the Amended Substitution as presented.[27]

---

[27] The court is deeply disturbed that the Government of Guam is casting aspersions on Mr. Mason's refusal to sign the Amended Substitution. Mr. Mason has appeared before the below-signed judge numerous times in the 19 years she has sat on the bench. The court notes that Mr. Mason has always presented himself with the highest degree of professionalism and ethical conduct. Mr. Mason has always ensured that he presents facts or advances argument that have evidentiary

1    With regard to the Government of Guam's claim that the Attorney General opposed the

2    Former Landowners' Motion to Intervene, the Government of Guam asserts that it had to withdraw

3    the pleading filed by the Attorney General "because it did not correctly state the Government's

4    position on the issue." Reply Brief at 8, ECF No. 1130.

5        The Former Landowners filed the Motion to Intervene before attempts were made to

6    substitute the Cabot Mantanona firm for the Attorney General in this case. In an Order dated

7    April 10, 2013, the court directed the Government of Guam to file a response to the Motion to

8    Intervene by May 10, 2013. *See* Order, ECF No. 1036. On May 10, 2013, the "Government of

9    Guam" filed three responses to the Motion to Intervene:[28] one filed by the Attorney General, the

10   second filed by the Cabot Mantanona law firm, and the third filed by the Chief Legal Counsel for

11   the Office of the Governor of Guam. *See* ECF Nos. 1049,[29] 1058 and 1059.[30] Contrary to the

12   Government of Guam's assertions, the Attorney General did not oppose the Motion to Intervene.

13   Although the Attorney General did not agree that the Former Landowners had met the requirements

14   to intervene as of right under Rule 24(a) of the Federal Rules of Civil Procedure, *see* ECF No. 1049

15   at n.9, the Attorney General asked the court "to exercise its discretion to allow the Former

16   Landowners to intervene permissively for the limited purpose of determining whether Section 30

17   bonds should be used to pay the Condemnation Judgment in accordance with the position of the

18

19   support or legal basis.

20       [28] The court notes that on May 10, 2013, it had already denied the original Substitution of
     Counsel for noncompliance with the Local Rules, and the Amended Substitution had not yet been
     ruled upon because it was just filed that day.

21

22       [29] Because the court had not relieved the Attorney General of its responsibility to represent
     the Government of Guam, it was proper for the Attorney General to file a response to the Motion to
23   Intervene in order to protect its client's interests. However, after the court permitted the Cabot
     Mantanona firm to have a limited role in this action, *see* May16th Order, ECF No. 1064, the
24   Government of Guam (through the Cabot Mantanona firm) withdrew the Attorney General's
     response to the Motion to Intervene. *See* Motion to Withdraw, ECF No. 1065.

25       [30] The two filings made through the Office of the Governor were identical. Although ECF
26   No. 1058 was e-filed by the Cabot Mantanona firm using Mr. Mantanona's log-in account, the
     pleading was signed by Ms. Miller. This is in clear violation of the court's Administrative
27   Procedures for the Electronic Filing, Signing, Verifying and Serving of Civil and Criminal
     Documents, adopted by General Order No. 13-0003 on April 17, 2013.

1  Lt. Governor." *Id.* at 9.

2      The court recognizes that the division of authority between lawyer and client is not always

3  clear. Under the Guam Rules of Professional Conduct, "a lawyer shall abide by a client's decisions

4  concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client

5  as to the means by which they are to be pursued." GUAM RULES OF PROF'L CONDUCT R. 1.2(a).

6  "Paragraph (a) confers upon the client the ultimate authority to determine the purposes to be served

7  by legal representation, *within the limits imposed by law and the lawyer's professional obligations*."

8  MODEL RULES OF PROF'L CONDUCT R. 1.2 cmt. 1 (emphasis added). "[T]he rule gives the client the

9  ultimate authority over the objectives, but somewhat less authority over the means employed." ABA

10  ANN. MODEL RULES OF PROF'L CONDUCT R. 1.2, SUBSECTION (A). "On occasion, . . . a lawyer and

11  a client may disagree about the means to be used to accomplish the client's objectives. Clients

12  normally defer to the special knowledge and skill of their lawyer with respect to the means to be used

13  to accomplish their objectives, particularly with respect to technical, legal and tactical matters." *Id.*

14  cmt. 2.

15          The distinction between "objectives" and "means" is often expressed as the
          difference between decisions that directly affect the ultimate resolution of the case
16          or the substantive rights of the client and decisions that are procedural or tactical in
          nature. The client generally has control over the former, and the lawyer over the
17          latter. *See, e.g., Blanton v. Womancare, Inc.,* 696 P.2d. 645 (Cal. 1985) (decisions
          that would impair substantive rights differ from procedural both in degree to which
18          they affect client's interest and in degree to which they involve matters of judgment
          that extend beyond technical competence).

19

20  ABA ANN. MODEL RULES OF PROF'L CONDUCT R. 1.2, SUBSECTION (A).

21      With regard to the response due by the Government of Guam to the Motion to Intervene, the

22  Government of Guam's ultimate goal was to allow the Former Landowners to intervene in the action.

23  Consistent with its client's objective, the Attorney General agreed that the Former Landowners'

24  motion should be granted. What the Attorney General disagreed with was the means to accomplish

25  that objective. The Attorney General believed that the Former Landowners had not met the

26  requirements for intervention as of right. If the Attorney General had a good faith basis for this

27  position, then pursuant to Rule 11 of the Federal Rules of Civil Procedure and Rule 3.1 of the Guam

1   Rules of Professional Conduct, the Attorney General could not advocate this argument (that the

2   Former Landowners have a right to intervene) on behalf of its client. The Attorney General did not

3   ignore its client's wishes; instead, the Attorney General made the tactical decision to urge the court

4   to grant the Former Landowners' motion based on the permissive intervention standard under Rule

5   24(b) of the Federal Rules of Civil Procedure. This limited dispute over legal strategy does not merit

6   a full substitution of counsel, especially here where (1) the arguments advocated by the Attorney

7   General would have advanced the client's objective; (2) the Attorney General has urged the court

8   to use the Limited Obligation Bonds to pay the judgment in the Layon Condemnation Case;[31] and

9   (3) the Attorney General is intimately aware of the various issues in this multi-faceted case, having

10  represented the Government of Guam for more than 11 years.

11          E.      The Court's Authority to Supervise Conduct of Attorneys Appearing Before it and
                    to Allow Substitution for Limited Purpose
12

13          Finally, the court must address the Government of Guam's challenges to this court's

14  authority. First, in its Supplemental Memorandum, the Government of Guam claims that a court

15  should not *sua sponte* "raise questions of fact concerning an attorney's possible conflicts of interest

16  and/or disqualification." *See* Supp. Mem. at 1, ECF No. 1086. The Government of Guam further

17  asserts that it was "unable to find a single case or rule permitting a [c]ourt, on its own, to raise the

18  issue of the disqualification of an attorney, rather than a party." *Id.* The United States' response to

19  the instant motion cites numerous cases – from the Supreme Court of the United States and the

20  various appellate courts, including the Ninth Circuit Court of Appeals – supporting the clear law on

21  this matter that a court has an obligation to supervise the conduct of attorneys who appear before it.

22  *See* U.S. Resp. at 14, ECF No. 1113. In addition to the cases cited by the United States, the

23  following cases confirm that the court has the duty to raise a conflict of interest issue even if it is not

24

25          [31] *See* Attorney General's Resp. to Mot. to Intervene at 8, ECF No. 1049, where the Attorney
26  General states that "the Government seeks the authorization of the payment of the entire
    Condemnation Judgment" based on bond counsel's opinion as to the appropriateness of the use of
27  the funds, but the Attorney General correctly recognizes that use of said funds requires court
    approval.

1   raised by a party to the action in order to maintain the integrity of the judicial process. *See Int'l*

2   *Elecs. Corp. v. Flanzer*, 527 F.2d 1288, 1295-96 (2d Cir. 1975) (considering the issue of attorney

3   conflict despite failure of parties to raise the point); *Bernhoft Law Firm, S.C. v. Pollock*, 2013 WL

4   3520267, at *3 (S.D. Cal. Jul. 11, 2013) ("trial court's authority to disqualify an attorney derives

5   from the power inherent in every court to control in furtherance of justice, the conduct of its

6   ministerial officers, and of all other persons in any manner connected with a judicial proceeding

7   before it, in every matter pertaining thereto") (internal quotations omitted); *Preston v. Atlas Casting*

8   *& Tech.*, 2008 WL 50000459, at *1 (W.D. Wash. Nov. 21, 2008) ("once the Court is on notice of

9   a potential conflict of interest, it may disqualify an attorney *sua sponte*.").

10          Courts have the duty and responsibility to control and supervise the conduct of the attorneys

11  practicing before it. *Erickson v. Newmar Corp.*, 87 F.3d 298, 306 (9th Cir. 1996) (citing *Chambers*

12  *v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). This is because the "courts, as well as the bar, have a

13  responsibility to maintain public confidence in the legal profession." *Erickson*, 87 F.3d at 303.

14  Therefore, when the Government of Guam asserted that the Attorney General had a conflict of

15  interest in its continued representation of the Government of Guam, it was proper for this court to

16  *sua sponte* question whether Ms. Miller also had a conflict of interest based on her prior work with

17  the Attorney General's office. *See* Order (May 31, 2013), ECF No. 1078. As discussed above, the

18  court has found no grounds that would warrant a disqualification of the Attorney General in this

19  action. Based on this finding and a review of Ms. Miller's declaration, *see* ECF No. 1086-1, the

20  court determines there is no disqualification to impute to Ms. Miller.[32]

21          The Government of Guam's second challenge to the court's authority concerns the court's

22

23  [32] The court remains concerned about the propriety of the filing of the Entry of Appearance
    by Ms. Miller, who was aware that the Attorney General was then representing the Government of
24  Guam and had been for many years. The court assumes, without deciding, that such filing may be
    a veiled attempt to avert compliance with the requirements of Local Rule GR 19.1(b), particularly
25  because such filing was made only upon the court's denial of the Substitution of Counsel. The court
    has already permitted the Cabot Mantanona firm to make a limited appearance in this case on behalf
26  of the Government of Guam, so there is no need for both the law firm and Ms. Miller to address the
    court at hearings or file duplicate pleadings on behalf of the Government of Guam with regard to the
27  Former Landowners' Motion to Intervene.

1   decision to limit the scope of representation provided by the Cabot Mantanona firm.  In its Motion

2   for Reconsideration, the Government of Guam cites to Rule 1.16 of the Guam Rules of Professional

3   Conduct and argues that once the Governor's Office discharged the Attorney General, the court

4   should have simply granted the substitution of counsel *pro forma* without requiring further

5   justification for such substitution.  *See* Mot. for Recons. at 10-11, ECF No. 1075.  Again, the

6   Government of Guam is mistaken in its assertion.  The court will not blindly rubber stamp

7   substitutions of counsel presented for its approval, especially if there is a justified reason for refusing

8   to do so.

9       Although Rule 1.16 states that "a lawyer . . . shall withdraw from the representation of a

10  client if . . . the lawyer is discharged," GUAM RULES OF PROF'L CONDUCT R. 1.16(a)(3), the rule also

11  provides that "[a] lawyer must comply with applicable law requiring notice to or permission of a

12  tribunal when terminating a representation.  When ordered to do so by a tribunal, a lawyer shall

13  continue representation notwithstanding good cause for terminating the representation."  GUAM

14  RULES OF PROF'L CONDUCT R. 1.16(c).  Thus, the very rule cited by the Government of Guam

15  recognizes the court's authority to require counsel to obtain court permission when terminating

16  representation and the court's authority to require continued representation if warranted.  The

17  annotated version of Model Rule 1.16 further elaborates on the court's authority:

18      Subsection (c), applicable only in the context of litigation, provides that the right of
        a lawyer to withdraw from representation is *subject to a court's authority to order*
19      *the lawyer to continue the representation*.  Thus, *regardless of the reason* for seeking
        to withdraw as counsel, and regardless of whether the withdrawal is mandatory under
20      subsection (a) or permissive under subsection (b), *a lawyer is required to continue
        the representation if so ordered by a court*. . . .
21      [A] court has wide discretion on a motion to withdraw, and permission may be
        denied if withdrawal would adversely affect the parties or impeded the administration
22      of justice.

23  ABA ANN. MODEL RULES OF PROF'L CONDUCT R. 1.16, SUBSECTION (C) (emphasis added).

24      As stated in its May 16th Order, all substitutions of counsel are contingent on court approval.

25  "Until such substitution is approved by the [c]ourt, the authority of the attorney of record shall

26  continue for all proper purposes."  Local Rule GR 19.1(b).  Out of respect for the Office of the

27  Governor and the representations made to it in the Amended Substitution, the court permitted the

1    Government of Guam to be represented by the Cabot Mantanona firm for a limited purpose because

2    of the belief that the Governor's Office and the Attorney General have "inconsistent positions

3    between them with respect to the course of litigation and the litigation strategies involved in this

4    action." Amended Substitution at 3, ECF No. 1052. However, in denying a full substitution of

5    counsel, the court considered the important role the Attorney General has played in the 11 years since

6    this suit commenced and its valuable institutional knowledge in assisting the Receiver to bring the

7    Government of Guam into compliance with the Consent Decree. *See* Order (May 16, 2013) at 4,

8    ECF No. 1064. The court notes that the Amended Substitution was filed more than nine years after

9    entry of the Consent Decree and more than five years after the appointment of the Receiver. The

10   Receiver acknowledged that "the Attorney General has been an important part of the progress made

11   to date in achieving compliance with the Consent Decree." Quarterly Report (May 21, 2013) at 35,

12   ECF No. 1067-1. The Receiver also recognized that "the work of the Attorney General has saved

13   the Government of Guam hundreds of thousands in legal expenses to date." *Id.* The Government

14   of Guam claims that the substitution will not result in delay, *see* Amended Substitution at 9, ECF

15   No. 1052. Given the Government of Guam's past history of failing to comply with the Consent

16   Decree and other court Orders, and more specifically by undermining the Receiver's efforts to fund

17   the Consent Decree projects, the court simply cannot accept the Government of Guam's assurances,

18   especially when the Receiver advises the court that "any limitation on the Receiver's access to the

19   Attorney General will likely delay the final closure of the Ordot Dump and significantly increase

20   cost." Quarterly Report (May 21, 2013) at 35, ECF No. 1067-1. *See Robinson v. Boeing Co.,*

21   79 F.3d 1053, 1055 (11th Cir. 1996) ("Courts have long accepted that resulting delay may justify the

22   exercise of a trial judge's discretion to deny substitute counsel in the midst of litigation."); *Stewart*

23   *v. General Motors Corp.*, 756 F.2d 1285, 1294 (7th Cir. 1985) ("duplication of effort and delay

24   which would be caused by a substitution were certainly relevant factors for the district judge to

25   consider"). Under the terms of the Consent Decree, operations at the Ordot Dump were expected

26   to cease by October 23, 2007. Because of the Government of Guam's mismanagement, operations

27   at the dump did not cease until August 31, 2011, under the auspices of the Receiver. The work at

the Ordot Dump is not complete because it must still be environmentally closed to ensure that it no longer discharges harmful leachate into Guam's waters in violation of the Clean Water Act. The court finds that a full substitution of the Cabot Mantanona firm for the Attorney General in this case will likely result in substantial delay to the final closure of the Ordot Dump and significant expenses to the Receiver and ultimately the Government of Guam. Accordingly, the court denies the request to reconsider its decision to permit a full substitution of counsel in this matter.

## CONCLUSION

The Government of Guam has not met its heavy burden under Rule LR 7.1(i) of showing any grounds for reconsideration. Accordingly, the court denies the Motion for Reconsideration.

IT IS SO ORDERED.



**/s/ Frances M. Tydingco-Gatewood**
       **Chief Judge**
**Dated: Aug 13, 2013**