DISTRICT COURT OF GUAM

TERRITORY OF GUAM

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

GOVERNMENT OF GUAM,

    Defendant.

CIVIL CASE NO. 02-00022

**ORDER**
re Transition and End of the
Federal Receivership

Following the presentation of the Receiver's August 23, 2017 Report, the court held a series of hearings[1] to discuss issues related to the transition of the operations and management of the Guam Solid Waste Authority ("GSWA") from the Receiver to the Board of Directors (the "GSWA Board"), which is scheduled to occur at the end of the year pursuant to the timeline approved by the court. *See* Order re Revised Transition Timeline for the Termination of the Federal Receivership and Financing Plan for the Post-Closure of Ordot Dump (the "May 2, 2016 Order") at 6-9, ECF No. 1668. Although the court and the parties wish to ensure a smooth transition, there are several issues remaining that require resolution. The court addresses said issues herein.

**Transition of Contract Employees**

The Receiver entered into a contract with Pacific Human Resources, Inc. ("PHRS") to provide temporary services to GSWA in order to supplement the work performed by GSWA classified employees. Currently, the Receiver employs about 26-27 individuals under the PHRS

---

[1] Court hearings were held on September 14, 2017, October 19, 2017, and November 7, 2017. *See* Minutes, ECF Nos. 1759, 1763 and 1768.

contract, which accounts for approximately half of the GSWA work force. These contract employees carry out critical duties at GSWA; they work alongside GSWA's classified employees in customer service and administration, amongst the truck operators along the collection routes and at the scale house keeping track of the tons of solid waste crossing over the GSWA scales. The Receiver had hoped that these contract employees could transition into classified positions. Instead, the GSWA Board decided to seek legislation to extend the contract with PHRS in order to avoid disruption of services post-Receivership.

The Receiver expressed concerns that the approach pursued by the GSWA Board to resolve the transition of contract employees through local legislation may be contrary to the legal advice provided by former Deputy Attorney General Pat Mason. In his letter dated May 28, 2009, Mr. Mason indicated that while the Receiver could employ its own employees and enter into a contract for services, the Government of Guam could not do so because the Organic Act required the Government of Guam to hire employees pursuant to a competitive merit-based selection. *See* Receiver's Report re Transition Issues at Att. 3, ECF No. 1761-3.

The Government of Guam and the GSWA Board disagree with the Receiver's reliance on Deputy Attorney General Pat Mason's May 28, 2009 legal advice letter and maintain that the continuance of the contract with PHRS would not violate the Organic Act. The Attorney General issued an Opinion Memorandum dated October 16, 2017, addressing whether the services provided to GSWA under the PHRS contract may continue upon termination of the Receivership. *See* Government of Guam's Status Report at Ex. A, ECF No. 1762-1. The Opinion Memorandum concludes that "[m]aintaining the services of non-government employees to provide stability of solid waste services to the people of Guam does not violate the Organic Act." *Id.* at 3. Furthermore, the Government of Guam reported that Public Law 34-58 was recently enacted to address GSWA's transition out of federal receivership. *See* Government of Guam's Report in Anticipation of November 7 Hearing, ECF No. 1766. The new law provides that " in order to effect a stabilization of services during and after transition from federal receivership, [GSWA] shall be empowered to retain any non-government of Guam employees through employment contracts . . . for no more than three (3) years from the date of transfer of management from federal receivership." Guam Pub. L.

34-58 at Sec. 2.

The court had hoped that these hard-working contract employees could transition into classified positions prior to the end of the Receivership. In fact, the court gave all parties more than sufficient notice of when the Receivership would terminate. The GSWA Board should have been working with the Receiver during the interim period to establish a compensation and classification plan. As noted by Mr. Mason, "[t]he process for creating new positions in the Government of Guam is not complicated, nor time consuming." *See* Receiver's Report re Transition Issues, Att. 3 at 3, ECF No. 1761-3. The GSWA Board and the Government of Guam have decided instead to wait until after the Receivership has ended before completing the task of preparing a compensation and classification plan for GSWA.[2] The court is disappointed by the delay, but given the history of this case, the court should not be surprised that delays have occurred.

Although the Receiver's concerns have merit, the court does not believe it would be appropriate at this time for the court to take a position on the validity of Public Law 34-58. The Attorney General has opined that continuing the PHRS contract post-Receivership does not violate the Organic Act, and this opinion has been accepted by the GSWA Board and the Guam Legislature. Without deciding that particular issue, the court will defer to the Government of Guam's decision with regard to how it wishes to transition the contract employees into GSWA's operations post-Receivership.

**Fiscal Year ("FY") 2018 Budget**

The Receiver operates GSWA under the authority of this court in all matters, including the budget. Post-Receivership, however, the Board will manage GSWA and will be governed by applicable laws and regulations. Among said laws is the provision contained in GSWA's enabling legislation relative to its annual budget:

> . . . the term annual budget means a balanced budget for expenditures of the Guam Solid Waste Authority for a fiscal year to be funded by the anticipated revenues and other funds to be received and expended for the same fiscal year, submitted by the

---

[2] The Receiver reports that PHRS agreed to initiate work on November 6, 2017, with Greg Martin, the new general manager, and Alicia Fejeran to update GSWA's personnel classifications. *See* Receiver's Report re Transition Issues at 2, ECF No. 1767.

[GSWA] to *I Liheslaturan Guåhan* (the Guam Legislature) and approved by Law for the next fiscal year.

10 Guam Code Ann. § 51A116 (italics in original).

Since the Receivership is anticipated to terminate at the end of this year, the GSWA Board must adopt a budget for FY 2018 and have said budget approved by the Guam Legislature, as required by Guam Law.

The Receiver notes, however, that in September 2017, the Guam Legislature enacted Public Law 34-42, which essentially made appropriations for the operations of the Executive, Legislative and Judicial branches of the Government of Guam for FY 2018, including a provision appropriating $7,005,221 from the Solid Waste Operations Fund for GSWA operations in said fiscal year. *See* Guam Pub. L. 34-42 at Chpt. V, Sec. 1(ff).[3] The Receiver states that this appropriated amount is less than half of the funds required to sustain the solid waste system going forward and would have "disastrous consequences" for GSWA if implemented post-Receivership. Receiver's Report re Transition Issues at 6, ECF No. 1767.

The court shares the Receiver's concerns. Even the new general manager hired by the GSWA Board agreed that the $7 million approved budget would not be sufficient. The Receiver estimates that a more realistic budget for FY 2018 would be approximately $19 million. *Id.* at Ex. 1, ECF No. 1767-1. Without an increase in the approved budget, GSWA will not have the ability to pay its bills or fund the required reserves. Any transition is doomed to fail almost immediately. The Receiver has already provided the GSWA Board with all the information it will need to prepare a budget for FY 2018. Accordingly, in order to ensure a smooth transition, the court orders the GSWA Board to comply with Guam law by submitting to the Guam Legislature a revised FY 2018 budget for the Legislature's approval. The GSWA Board is advised to consult with the Receiver on the proposed budget.

**Trustee, Independent Engineer and Post-Closure Operator**

On May 2, 2016, the court adopted the Receiver's financing plan for the post-closure care

---

[3] There was no consultation with the Receiver on this budget.

of the Ordot Dump. *See* May 2, 2016 Order at 9-15, ECF No. 1668. Under said plan, the court would appoint a trustee when the Receivership ends to manage funds in the Ordot Dump Post-Closure Reserve. *Id.* at 10. All commercial haulers on Guam would make their payments through the trustee, and, upon receipt of said funds, the trustee will deduct what is needed to fully fund the Ordot Dump-Post-Closure Reserve[4] and pass the balance through to GSWA for operations. *Id.* The Trustee will continue these monthly set asides until approximately FY 2023, when it is anticipated the reserve will be fully funded. *Id.* The trustee also has the authority to retain an independent engineer to inspect and certify that the post-closure operator is performing all of the work necessary for the proper care of the environmental closure of the Ordot Dump. *Id.* at n.19.

The Government of Guam, through the Attorney General of Guam, never filed a motion to reconsider nor did it appeal the court's May 2, 2016 Order. Nevertheless, more than one year after its issuance, the Government of Guam and the GSWA Board object to the financing plan approved by the court and have asked the court to reconsider the appointment of a trustee.

With regard to motions for reconsideration, the court's Civil Local Rules provide as follows:

> Standard. Motions for reconsideration are generally disfavored. A motion for reconsideration of the decision on any motion may be made only on the grounds of:
>
> (A) a material difference in fact or law from that represented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or
>
> (B) the emergence of new material facts or a change of law occurring after the time of such decision, or
>
> (C) a manifest showing of a failure to consider material facts presented to the Court before such decision.

CVLR 7(p)(1). *See also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) ("A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the . . . court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.") (internal quotations marks and citations omitted).

---

[4] This amount shall not exceed $374,758.08 per month, unless amended by the court upon motion by the trustee.

　　　　Here, the Government of Guam has not met any of the requirements of CVLR 7.1(p)(1). The Government of Guam and the GSWA Board have not pointed to any material difference in fact or law from that represented to the court before its decision that, in the exercise of reasonable diligence, could not have been known to them at the time of the court's decision. They have not made a manifest showing of the court's failure to consider material facts presented before the decision was issued, nor have they argued the emergence of new material facts or a change of law occurring after the court's decision. There simply are no valid grounds presented for the court to reconsider its decision, and the court finds their objections to the approved financing plan to be untimely and meritless. The court will only revisit this decision after the GSWA Board has successfully managed GSWA in an efficient and responsible manner for an extended period of time.

　　　　With regard to the request that the GSWA Board participate in the selection of the trustee, the court will allow the Board to provide its input since the Receiver does not object to this request. The court will make the final decision on the appointment of the trustee, based on the Receiver's recommendation. The trustee will be answerable to this court, not the GSWA Board. Additionally, the court notes that the selection of the post-closure operator and the independent engineer will require technical expertise. Thus, while the court will allow the GSWA Board to provide its input, the court finds that it would be more appropriate for the Receiver to make the initial selection of the independent engineer and the ultimate decision on the post-closure operator.

　　　　As to the GSWA Board's request that it participate in a review process prior to any action taken by the trustee, the court declines to impose such a restriction. The trustee must be independent from the Board, and this cannot happen if the trustee must first seek board approval before carrying out its duties to this court. In the event the GSWA Board disagrees with a course of action taken or intended to be taken by the trustee, then the Board should bring the matter to the court's attention through the filing of a motion so the matter can be resolved by the court. The court anticipates that such disagreements should be few and far between since the trustee will primarily be making ministerial decisions. The court hereby orders all parties to cooperate with the selected trustee. The trustee will also be required to provide the GSWA Board and all parties with periodic financial updates, including account balances and expenditures.

**Approval of Post-Closure Plan**

The Post-Closure Plan is still pending approval before the U.S. Environmental Protection Agency ("EPA") and the Guam Environmental Protection Agency ("GEPA"). The court has been advised that approval can not occur until the plan is updated to address the issues related to the exceedances of methane detected at certain sites at the Ordot Closure Facility. The updates will include both the procedures and the funding to address future problems as they arise. The Receiver reported that although the design to address this issue is nearing completion, the work to be done will require several months, possibly until March or June 2018. The United States would prefer that this project remain with the Receiver to complete.

The court concurs with the United States that it would be more efficient for the Receiver to remain to complete this matter. This is a critical public health issue, and the Receiver has both the expertise and historical knowledge to finish this work in a timely manner. At this juncture, the court is uncertain whether the Receivership will terminate on December 31, 2017, as originally contemplated, or whether only a portion of GSWA's operations will be turned over to the GSWA Board for management. In addition to the unfinished work on the Post-Closure Plan, the court notes that other issues have still not been resolved, including the budget. Additionally, the GSWA Board has still not hired a comptroller, and there is no definite date when a comptroller will be on board. The individual selected will be in charge of the finances for this multi-million dollar solid waste system, and it will take some time for the comptroller to become familiar with all the requirements of the job. Furthermore, the GSWA Board has not finalized the drafting of its rules and regulations, and these rules and regulations must still undergo the approval process set forth in Guam's Administrative Adjudication Law, 5 Guam Code Ann. Chapter 9 – a process that can take several months. The court notes that there are several new rules and policies implemented by the Receiver under the authority of the court. These new rules and regulations affect the commercial haulers and residential customers and deal with matters such as banned materials, the collection of bulky items and metallic goods, and penalties imposed for late payments. The GSWA Board has yet to determine whether they intend to adopt any of these rules and regulations after the Receivership terminates. The court reminds the Government of Guam that it has had more than ample notice about the end

of the Receivership, yet the Government of Guam and/or the GSWA Board have failed to take all necessary steps to ensure that the transition of management and operations of GSWA will be a smooth one.  Accordingly, the parties shall come prepared to discuss at the next scheduled hearing whether the Receivership should be extended beyond the December 31, 2017 deadline.

IT IS SO ORDERED.



**/s/ Frances M. Tydingco-Gatewood**
　　**Chief Judge**
**Dated: Nov 24, 2017**