1

2

3

4

5

6                                    DISTRICT COURT OF GUAM

7

8   UNITED STATES OF AMERICA,                         CIVIL CASE NO. 02-00022

9            Plaintiff,

10       vs.                                                      **ORDER**
                                                        re Extension of the
11  GOVERNMENT OF GUAM,                                  Federal Receivership

12           Defendant.

13

14           This case came before the court for a hearing on November 28, 2017, at which time the court

15  and the parties discussed issues related to the transition of control over the Guam Solid Waste

16  Authority ("GSWA") from federal Receivership to the Board of Directors (the "Board"). This

17  transition is scheduled to occur at the end of the year pursuant to the timeline approved by the court.

18  *See* Order re Revised Transition Timeline for the Termination of the Federal Receivership and

19  Financing Plan for the Post-Closure of Ordot Dump (the "May 2, 2016 Order") at 6-9, ECF

20  No. 1668. The court, however, expressed uncertainty over whether the Receivership should

21  terminate on December 31, 2017, or whether only a portion of GSWA's operations will be turned

22  over to the Board for management.

23           As noted by the court in its previous Order, the Post-Closure Plan for the Ordot facility has

24  still not been approved because the proposed plan needs to be updated to address the mitigation of

25  residual methane gas in the soil. *See* Order re Transition and End of the Federal Receivership at 7,

26  ECF No. 1771. At the hearing, the United States stated that the Receiver and its contractors are

27  working diligently to determine the nature and extent of the problem so that an appropriate remedial

28  plan can be implemented, but it will take several months for the Receiver to get the data it needs to

1  prepare the remediation plan.  The United States reiterated its request that the Receiver remain on

2  board to complete this project, stating that the Receiver is aware of the issues and is the most

3  prepared to deal with this serious public health issue in the most efficient manner.  Neither the Board

4  nor the Government of Guam objected to this request, and the court concurs that it would be more

5  efficient for the Receiver to remain to complete this matter.  Accordingly, the court orders that the

6  Receivership be extended until at least June 30, 2018, to complete the work associated with the

7  methane gas mitigation plan and the Post-Closure Plan.  Additionally, the Receiver is ordered to

8  delay the selection of the trustee[1] and independent engineer to coincide with the schedule for

9  completing the work to resolve the landfill gas migration problem.

10         The issue the court must determine is whether GSWA's operations and management will

11  remain under the control of the Receiver or whether the Board will assume responsibility over these

12  duties.  If the court is inclined to keep the Receiver beyond the December 31st deadline, the

13  Government of Guam and the Board request that the Receiver's purview be limited to issues related

14  to the Post-Closure Plan approval but that control over all administrative, operational and managerial

15  matters should be transferred to the GSWA management and Board.  The United States  expressed

16  reservations about whether the Board and new GSWA management would be ready to resume

17  control over the agency's operations by the end of the year.   The Receiver stated it was prepared to

18  implement whatever the court decided, but it, too, did not believe the Board was ready to assume full

19  responsibility over GSWA's operations.  The court agrees with the United States and the Receiver

20  that a smooth transition cannot occur as originally contemplated.

21         Under the court approved transition timeline, the recruitment of a general manager and chief

22

23

24         [1] The appointment of a trustee  to manage funds in the Ordot Dump Post-Closure Reserve
    was approved by the court last year.  *See* May 2, 2016 Order at 10, ECF No. 1668.  The Attorney
    General and the Board waited more than one year later to object to the financing plan approved by
25  the court and to ask the court to reconsider the appointment of a trustee.  A smooth and orderly
    transition can not reasonably occur when the Government of Guam and the Board wait until what
26  essentially is the eve of transition to address or correct issues such as the transition of contract
    employees, the adoption of a rate structure and the GSWA budget.  The court notes that the issue of
27  the transition of contract employees has been resolved through emergency legislation.  *See* Guam
28  Pub. L. 34-58.

financial officer was to begin in January 2017.[2] *See* May 2, 2016 Order at 6-8, ECF No. 1668 and

Status Report (Oct 21, 2015) at 54, Fig. 42, ECF No. 1634-1. In early January 2017, the Receiver

began working with the Board to begin the recruitment for these positions. *See* Status Report

(May 17, 2017) at 49, ECF No. 1739-1.

> In each step of this process[,] the Receiver . . . worked cooperatively with the Board
> following the Board's lead with respect to this process. The job announcements were
> widely advertised on behalf of the Board both on Guam and in industry circles where
> persons qualified for such a position would pursue such an opportunity. The
> Receiver . . . also assisted the Board further by evaluating the qualifications of the
> applicants and working with the Board to schedule interviews [to] advance the
> process further.

*Id.*

In August 2017, the Receiver reported that

> [t]he Board has made an offer to a qualified candidate for General Manger contingent
> on completion of an acceptable background check. With respect to the finance
> position, there was no interest from qualified individuals in the Chief Financial
> Officer position as initially advertised. To broaden its search, the Board has revised
> the job description to solicit applications for a financial [c]ontroller. [The Receiver]
> agree[s] with this change and are hopeful it will yield qualified candidates for the
> Board's consideration.[3]

---

[2] The court acknowledges that the Board wanted to start this recruitment process earlier and proposed that the general manager and comptroller begin working with the Receiver as early as October 2016, with a termination of the Receivership by March 2017. *See* Government of Guam and the Guam Solid Waste Authority Board's Response to Receiver's Oct. 21, 2015 Report (the "Government of Guam Alternative Plan") at 3, ECF No. 1648. The court adopted the Receiver's proposal instead in order to allow the Receiver to minimize GSWA's expenses by delaying the hiring process for a general manager and comptroller until 2017. Additionally, the approved timeline would allow the Receiver to complete the remaining Consent Decree projects and provided a significant period of overlap for the Receiver to mentor and train the new management team.

[3] According to the Minutes of the Board's meeting held on July 19, 2017,

> [t]he Board agreed that they will change the job opening from the position of CFO
> (which requires a CPA license) to Controller. Board member, Joseph Duenas,
> suggested that the Board start the position as unclassified because it allows the Board
> flexibility with the candidate's salary. Chace Anderson suggested that the advertising
> for the Controller position should state that pay is negotiable.

> Jonathan Denight made a motion to have GSWA management advertise the
> Controller position and indicate that the position is unclassified and that the pay is
> negotiable. Joseph Duenas seconded the motion. Motion was passed.

1   Status Report (Aug. 23, 2017) at 59, ECF No. 1749-3.

2          The new General Manager Greg Martin was hired by the Board in September 2017, but the

3   position of chief financial officer or comptroller still has not been filled.  The Board represented that

4   an offer had been made to a qualified individual and the selected candidate would begin working by

5   December 11, 2017.[4]  The court is troubled, however, that the person selected as the new comptroller

6   will have only three weeks to orient himself and gain a thorough understanding of GSWA's finances

7   such that he can properly assume his role and responsibilities.  At the hearing, the Board stated that

8   the three weeks would be sufficient for the selected candidate to transition into the new role, but the

9   court finds this representation to be disingenuous and contrary to the Board's earlier position that

10  "there should be at least a six (6) month transition overlap."  Government of Guam Alternative Plan

11  at 3, ECF No. 1648.[5]  Regardless of his qualifications, the court finds that a three-week transition

12

13

14  GSWA Board of Directors' Meeting (July 19, 2017), Minutes at IV.c.i. available at
    http://www.guamsolidwasteauthority.com/pdf/GSWA-BOD-Approved-Board-Meeting-Minutes-
15  19JULY2017.pdf (last visited Nov. 30, 2017).  A copy of these Meeting Minutes is also attached as
    Exhibit 3 to GSWA Board of Directors' Status Report in Response to Court's Order, ECF 1771 (the
16  "Board's November 27, 2017 Status Report"), ECF No. 1772-3.

17         [4]  At the hearing, the court was informed that the Board asked Senator Ada to amend Bill
    No. 209-34 (COR) – which originally only dealt with the appropriation of additional funds to GSWA
18  for fiscal year 2018 – on the session floor to include provisions that would create a new unclassified
    comptroller position.  This emergency legislation was needed after the Office of the Attorney
19  General of Guam reviewed the proposed comptroller's contract at the Receiver's request and
    determined that the Board had no authority to hire a comptroller in an unclassified position.  Senator
20  Ada and Speaker Benjamin J.F. Cruz acted swiftly to pass the emergency legislation.  Both Speaker
    Cruz and Senator Ada have consistently attended the numerous hearings held in this case.  The
21  Governor signed the amended bill into law on November 28, 2017.  See Guam Pub. L. 34-68.
22         The Board had made a determination on July 19, 2017, to advertise the comptroller position
    as an unclassified position, yet it waited until late November to seek the emergency legislation to
23  authorize the creation of this new position.  If the Attorney General had not reviewed the
    comptroller's contract as requested by the Receiver, then the Board would have likely hired an
24  individual for an unclassified position when it did not have the authority to do so.
25
           [5]  The Government of Guam and the Board stated, "**It is important that the new and
26  current management teams have as much time working together as possible, so that the
    transition can be smooth and seamless**. . . .  Assuming the [c]ourt permits the GSWA Board to
27  hire a Management Team, the GSWA Board would like to complete the transition within six (6)
    months after new management is hired."  Id. (emphasis added).
28

1   period is wholly inadequate for the new comptroller to familiarize himself with all the requirements

2   of the job.  Even Mr. Martin, who has been working with the Receiver and the GSWA staff for more

3   than two months now, admits that he does not have a full understanding of GSWA's finances.  He

4   stated that he was focusing more on operations and was waiting for the new comptroller to come

5   onboard to work with the Receiver on the specifics of GSWA's finances.

6           When the Receiver was first appointed, the finances of GSWA's predecessor – the Solid

7   Waste Management Division ("SWMD") of the Department of Public Works – was in shambles.

8   SWMD was spending as much as $11,000 each day[6] to furnish rental equipment and contract

9   operators because SWMD's equipment was broken.  Status Report (Jan. 14, 2009) at 5, ECF

10  No. 328-1 and Status Report (Oct. 21, 2009) at 7, ECF No. 505-1. SWMD's ability to track the

11  accounts of customers who had not paid or who cancelled service was so poor that approximately

12  4,000 customers – 25% of its customer base – were receiving free services.  Status Report (Jan. 14,

13  2009) at 14, ECF No. 328-1.  The Receiver devised a plan for customer tracking and revenue

14  collection that assured both fairness and accountability for services provided, and today GSWA's

15  finances remain strong because of the Receiver's management.  GSWA's new management team

16  will not have to deal with the challenges the Receiver faced when it was first appointed, but it is

17  important for the new management team to understand this history in order to fully appreciate all the

18  work the Receiver did to turn this agency into a paragon of efficiency.[7]

19          As the Receiver noted, a lot of work was done to put in place a complex but rational and

20  manageable computerized system, and the person who assumes responsibility for GSWA's financial

21  management system needs to fully understand it.  If the new comptroller starts on December 11,

22  2017, he would not have gone through one month of closing on the accounts before the Receivership

23  ends.  The comptroller needs to thoroughly understand how all the banking arrangements work, how

24  the cost studies have been performed, and these are rather unique to GSWA's operations.  It is

25  _____

26          [6] At this rate, the Government of Guam was spending more than $4 million each year for
     rental equipment.

27

28          [7] "Those who cannot remember the past are condemned to repeat it." George Santayana, *Life
     of Reason, Reason in Common Sense* (1905).

1   unreasonable to believe that three weeks is sufficient for the new comptroller to gain all this

2   knowledge. Furthermore, as pointed out by the United States, both the selected comptroller and

3   Mr. Martin will have to wait until January 2018 to undertake mandatory procurement training. Thus,

4   if the Receivership were to end on December 31st, no one at GSWA would be qualified to procure

5   supplies and/or services until the comptroller and Mr. Martin finish the procurement training. This

6   is not the ideal way to transfer control over this multi-million dollar agency, and the court will not

7   allow even a partial transition over GSWA operations to occur in such a slipshod or careless manner.

8           In addition to the insufficient time to train the new comptroller, extension of the federal

9   Receivership is necessary because the Board has not demonstrated that it is ready to assume control

10  over GSWA's operations. As early as October 21, 2015, the Receiver advised the Board that it needs

11  to focus on revising the rules and regulations:

12          Another area the Board should address is the solid waste rules and regulations. The
            Board has now adopted rules governing its own deliberations and actions. There are,
13          however, operational rules and regulations that should be updated to reflect the way
            the system operates today as compared to its operation prior to the Receivership.
14          These rules are entitled "Solid Waste Collection, Disposal, Processing and
            Recycling" and are found in Title 29 of the Guam Administrative Rules and
15          Regulations under the Department of Public Works.

16  Status Report (Oct 21, 2015) at 54, ECF No. 1634-1.

17          Under the approved transition timeline, review and upgrade of the solid waste rules and

18  regulations was scheduled to begin in September 2016. *Id.,* Fig. 42. The Board, however, did not

19  take any action to address the rules and regulations until six months ago.[8] According to the Board,

20  "it enlisted the assistance of the Receiver in identifying which rules and regulations the Receiver has

21  implemented conflict with existing solid waste statutes and rules and regulations." Board's

22  November 27, 2017 Status Report at 3, ECF No. 1772. The Board then blames the Receiver for the

23  delay in its own responsibility for updating the rules and regulations by stating that "[t]he Board and

24

25          [8] The court recalls that it raised the issue about the status of GSWA's operational rules and
26  regulations at the May 17, 2017 Status Hearing. Thereafter, the Board included the issue on the
    Agenda for its May 24, 2017 Board meeting. *See* GSWA Board of Directors' Meeting Agenda
27  (May 24, 2017), available at http://www.guamsolidwasteauthority.com/pdf/GSWA-BOD-Agenda-
    2017-05-24.pdf (last visited Nov. 30, 2017). *See also* Board's November 27, 2017 Status Report
28  at Ex. 1, ECF No. 1772-1.

1   its recently hired General Manger have been waiting on the Receiver for months to provide the rules

2   and regulations in issue." *Id.* at 5.  The Board stated it only received the Receiver's comments on

3   the existing rules and regulations on November 27, 2017.

4          The Board argued that it sought the Receiver's assistance because the Board members had

5   no experience with GSWA's operations[9] and the Receiver, who was in charge of management,

6   would be in a better position to put these rules together.  The court disagrees.  The promulgation of

7   rules and regulations to govern GSWA operations post-Receivership is primarily a legal matter that

8   is better addressed by the Board and its attorney.  The Board has been in place and meeting regularly

9   for more than four years, and its sole responsibility has been to gain an understanding of GSWA's

10  operations so that it would be prepared to take charge of operations at the end of the Receivership.[10]

11  The Board has also had the assistance of legal counsel for most of the time it has been in existence.

12  It is the Board and legal counsel's responsibility to review and update GSWA's rules and

13  regulations.  *See* 10 GUAM CODE ANN. §§ 51A104(i) ( "The Authority shall . . . adopt such rules and

14  regulations as may be necessary for the  exercise of the powers and performance of the duties

15  conferred or imposed upon the Authority or the Board by th[e Guam Solid Waste Authority] Act.")

16  and 51A105 ("All powers vested in the Authority . . . shall be exercised by a GSWA Board of

17  Directors[.]").  The Board has not adequately explained why it did not start this review process in

18  _____

19      [9]  While the Board is comprised of voluntary members from the public, having accepted the
    appointment, the Board had an obligation to diligently carry out its fiduciary duties.  As noted by the
20  court,

21          a smooth and orderly transition of authority . . . can only be accomplished through
            a cooperative working relationship between the Board and the Receiver.  The
22          Receiver has lived up to the fiduciary duty entrusted to it by this court and the people
            of Guam.  With time and experience, the court hopes the Board will become equally
23          capable of managing Guam's solid waste system, exercising the high standard of care
            required by a fiduciary.
24

25  Order re Transition from Court-Appointed Receiver to the GSWA Board (July 1, 2013) at 2, ECF
26  No. 1132.

27      [10]  *See* Order (June 26, 2013) at 1, ECF No. 1123 ("The court appreciates the Board's desires
    to learn more about GSWA operations in preparation for the eventual transition from
28  [R]eceivership.").

1  September 2016 as envisioned under the approved timeline.

2      Since the Board's creation and appointment, the court has always encouraged the Board

3  members to utilize the time during the transition period wisely in order

4         to become proficient in its knowledge about the system so there can be an orderly
           handoff when court orders it.  The Board should read the Consent Decree (ECF
5          No. 55), the Order appointing the Receiver (ECF 239), and all 16 Quarterly Reports
           prepared by the Receiver.  Additionally, the court believes the Board should also be
6          knowledgeable about the financial status of GSWA and the supplemental bond
           indenture in connection with the 2009 Section 30 bonds.  Therefore, the Board
7          should read all Orders related to how these bond monies were obtained and how they
           are to be disbursed, including all previous audit reports of the solid waste system
8          since the Consent Decree was entered.

9  Order re Transition from Court-Appointed Receiver to the GSWA Board (July 1, 2013) at 2, ECF

10 No. 1132.  To date, the Receiver has filed a total of 25 status reports.[11]  These status reports, in

11 addition to the Receiver's special reports, describe in detail the various components of the solid

12 waste system implemented by the Receiver.  There is nothing new in the narrative report recently

13 provided by the Receiver to the Board.  All of the information contained in the narrative report were

14 previously discussed in past status reports and special reports.  *See e.g.,* Status Report (Jan. 14, 2009)

15 at 13-20, ECF No. 328-1 (describing cart rollout plan); Status Report (July 15, 2009) at 10-15, ECF

16 No. 463-1 (describing cart rollout plan and customer outreach); Status Report (Jan. 14, 2010) at 13-

17 17, ECF No. 538-1 (discussing rollout of new cart system and new operating procedures used to

18 clean-up customer records and accounts); Status Report (Apr. 8, 2010) at10-15, ECF No. 557-1

19 (continuing discussion of residential collections, new systems and billing); Status Report (Aug. 11,

20 2010) at 10-21, ECF No. 605-1 (detailed discussion of new residential services model, the new

21 customer billing system, curbside recycling pilot program, bulky waste collection program and

22 delinquent customer issues and police to address this); Status Report (Apr. 14, 2011) at 32-34, ECF

23 No. 715-1 (commercial customers); Status Report (Dec. 7, 2011) at 18-19 and 26-29, ECF No. 859-1

24 (discussion of metallic and bulky waste collection program, introductory discussion of household

25 hazardous waste, discussion of commercial account collection issues); Status Report (Apr. 11, 2012)

26 _____

27     [11]  These status reports can be found at ECF Nos. 250-1, 269-1, 328-1, 427-1, 463-1, 505-1,
   538-1, 557-1, 605-1, 646-1, 715-1, 794-1, 859-1, 931-1, 972-1, 1067-1, 1267-1, 1369-1, 1422-1,
28 1531-1, 1634-1, 1675-1, 1687-1, 1739-3 and 1749-3.

1   at 14-22, ECF No. 931-1 (discussing hauler only transfer station, Layon Landfill operations, curbside

2   recycling program and Standard Operator Procedures ("SOPs")[12] as under development); Special

3   Report re Islandwide Curbside Recycling, ECF No. 1158; and Status Report (Mar. 5, 2015) at 13,

4   ECF No. 1531-1 (discussion of household hazardous waste facility and program).

5          If the Board and its counsel had read these reports as directed by the court, then it would have

6   been clear from the start that the existing rules and regulations promulgated before the appointment

7   of the Receiver are no longer applicable to the  solid waste system currently in existence.  While the

8   Board has expressed its intent to adopt the rules implemented by the Receiver, the Board has not

9   taken any concrete steps to draft these rules despite the fact that it has had the information it needed

10  to begin the revision process.  The Receiver has always cooperated in this process, and there is no

11  reason why the relationship between the Receiver and the Board continues to be strained and

12  antagonistic.[13]  The Board needs to begin treating the Receiver as an ally and not an adversary in this

13  transition process.[14]  Everyone – the court, the Receiver and the United States included – wants the

14

15          [12] The Receiver later reported that

16

17          GSWA has been developing Standard Operating Procedures (SOPs) in order to
            provide direction, improve communication, reduce training time, and improve work
            consistency for GSWA personnel.  SOPs are designed to enhance quality control by
18          defining the work proce4ss, identifying records, and developing confidence in
            personnel that they are meeting the goals of the organization.  The SOP development
19          process includes workers in all areas of the organization, who are identifying and
            working through issues to come up with clear and pragmatic SOPs.  During this
20          quarter, 25 SOPs have been finished.

21

22  Status Report (July 18, 2012) at 16-17, ECF No. 972-1.
           In addition to these SOPs, the court is aware that operations manuals have been developed
23  and submitted to the Government of Guam for GSWA's facilities as part of the permitting process.
    Thus, the Government of Guam has had access to operating manuals for the following facilities:
24  Layon Landfill, the Hauler-Only Transfer Station, the Residential Transfer Stations and the
    Household Hazardous Waste Facility.
25
           [13] The court cautions that it will not tolerate unprofessional decorum in the courtroom.
26

27         [14] The court reminds the Government of Guam and the Board that it was the Government
    of Guam who included Gershman, Birckner & Bratton, Inc. on its list of qualified receivers.  *See*
28  Government of Guam List of Receivers, Ex. A, ECF No. 206.

1  Board to succeed once the transition occurs, but control over GSWA operations can not be

2  transferred to the Board without the proper promulgation of the revised rules and regulations, a

3  process which will take several months. Accordingly, the court orders the Board, its legal counsel

4  and the new general manager to begin drafting and updating the operational rules and regulations.

5  Until then, the court orders that the Receivership be extended until at least June 30, 2018,[15] and the

6  Receiver shall continue to exercise full power and authority over all GSWA functions, duties and

7  responsibilities.

8      IT IS SO ORDERED.



**/s/ Frances M. Tydingco-Gatewood**
     **Chief Judge**
**Dated: Dec 01, 2017**

---

[15] The compensation and classification plan for GSWA being worked on by Maria Connelly of Pacific Human Resources, Inc. ("PHRS"), Mr. Martin and Alicia Fejeran should be completed before then, and the court looks forward to reviewing the updated classification plan.